IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

JESSIE HOFFMAN,                                    )
        *Plaintiff*                               )
                                   )        Civil Action No. 12-796
v.                                                 )
                                   )        Section _____
BURL CAIN, Warden, Louisiana State                 )
Penitentiary; BOBBY JINDAL, Governor               )
of Louisiana; JAMES LEBLANC, Secretary,            )
Louisiana Department of Public Safety and          )
Corrections; LOUISIANA DEPARTMENT OF               )
PUBLIC SAFETY AND CORRECTIONS;                     )
ANGELA NORWOOD, Warden, Death Row;                 )
and JOHN DOES, unknown executioners,               )
        *Defendants*

## ORIGINAL COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

### NATURE OF THE CASE

This action is brought pursuant to 42 U.S.C. § 1983 for violations and threatened violations of Plaintiff Jessie Hoffman's rights to due process and to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. At this time, the State of Louisiana lacks any current written rules, procedures, or protocols by which to execute condemned inmates. Plaintiff contends that the lack of oversight and properly-trained personnel unnecessarily creates a wanton risk of pain and suffering. Additionally, the last-known execution protocol, dated as of 2010, requires the use of an outdated and/or illegally-obtained drug and otherwise does not adequately protect Plaintiff from

1

cruel and unusual punishment.  Plaintiff seeks injunctive relief to prevent the Defendants from executing him through unconstitutional means.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

2.  Venue is proper in this District pursuant to 24 U.S.C. § 1391(b), as the events complained of have occurred/ will occur in this District.

## PARTIES

3.  Plaintiff, Jessie Hoffman, is a citizen of the United States of America, currently incarcerated under a sentence of death at the Louisiana State Penitentiary, in Angola, Louisiana ("Angola"), and is under the control and supervision of the Louisiana Department of Public Safety and Corrections. There is no date set for his execution.  Mr. Hoffman has an appeal pending before the United States Fifth Circuit Court of Appeals from the denial of his federal habeas corpus petition. Should Mr. Hoffman's efforts to obtain habeas relief ultimately be unsuccessful in the courts, Mr. Hoffman anticipates that the State of Louisiana will order his execution.

4.  Defendant Piyush "Bobby" Jindal is the Governor of Louisiana.  As governor, he is the chief executive officer of the state and is charged with supporting the Constitution and laws of the state and seeing that the laws are faithfully executed.  LA. CONST. art. IV, § 5.  At all relevant times, Governor Jindal was acting under color of law as the agent, and, as a matter of law, the official representative of the State of Louisiana. Governor Jindal is sued in his individual and official capacities.

2

a.  Defendant Jindal can be served at 900 North Third Street, 4th Floor, Baton Rouge, Louisiana 70802. *Waiver of service will be requested.*

5.  Defendant James LeBlanc is the chief executive officer of the Louisiana Department of Public Safety and Corrections ("DOC"). He was appointed to this position by Governor Jindal.  In this capacity, he has control of the DOC. By law, he is responsible for protecting the constitutional rights of all persons held in DOC's custody. At all relevant times, Leblanc was acting under color of law and as the agent, and, as a matter of law, the official representative of the DOC.   Secretary Leblanc is sued in his individual and official capacities.

a.  Defendant LeBlanc can be served at 504 Mayflower Street, Baton Rouge, Louisiana 70802. *Waiver of service will be requested.*

6.  Defendant Burl Cain is the Warden of the Louisiana State Penitentiary in Angola.  Under Louisiana law, Warden Cain is responsible for carrying out all Louisiana executions at Angola.   In this capacity, he has operational control over Angola by making staffing, budget, and administrative decisions.  By law, he is responsible for protecting the constitutional rights of all persons held in Angola's custody.  At all relevant times, Warden Cain was acting under color of law and as the agent, and, as a matter of law, the official representative of Angola. Warden Cain is sued in his individual and official capacities.

a.  Defendant Cain can be served at 17544 Tunica Trace, Angola, Louisiana 70712. *Waiver of service will be requested.*

3

7. Defendant Angela Norwood is the Assistant Warden of Angola's Death Row. She has been in that position since 2011. In this capacity, Warden Norwood has operational control over Death Row by making staffing, budget, and administrative decisions. By law, she is responsible for protecting the constitutional rights of all persons held on Angola's Death Row. At all relevant times, Warden Norwood was acting under color of law and as the agent, and, as a matter of law, the official representative of Angola. Warden Norwood is sued in her individual and official capacities.

   a. Defendant Norwood can be served at 17544 Tunica Trace, Angola, Louisiana 70712. *Waiver of service will be requested.*

8. Defendants John Does are involved in the implementation of the DOC's execution protocols including transport, administration of drugs, security, preparation for the execution, and a variety of other tasks. Mr. Hoffman has not been able, through due diligence, to discover their identities. Defendants LeBlanc, Cain, Norwood and DOC possess information identifying these individuals as they are responsible for selecting the individuals to carry out these tasks. Mr. Hoffman anticipates that the identities of these unknown executioners will be revealed in discovery. John Does are sued in their individual and official capacities.

   a. Upon information and belief, Defendants John Does are citizens of the United States of America and residents of Louisiana.

9. The Louisiana Department of Public Safety and Corrections is a division of the State of Louisiana which is charged with overseeing the custody and care of offenders in Louisiana.

At all relevant times, the DOC operated Angola, a public facility with programs and services. The DOC is the recipient of federal funds.

    a. Defendant DOC can be served at 504 Mayflower Street, Baton Rouge, Louisiana 70802. *Waiver of service will be requested.*

### STATEMENT OF CLAIMS

10. This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988,  18 U.S.C. § 3599, and 28 U.S.C. §§ 2201 and 2202 for violations and threatened violations by the Defendants of Mr. Hoffman's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution, and for violations and threatened violations of Mr. Hoffman's rights to due process, access to the courts, and equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution.

11. Mr. Hoffman challenges the constitutionality of his execution, whether performed (1) in the absence of any protocol delineating the procedures to be followed; (2) pursuant to a secret protocol to which Mr. Hoffman has been denied access; or (3) pursuant to the protocol dated as of 2010 which would require the use of expired and/or illegally-obtained drugs and which otherwise does not adequately protect Mr. Hoffman from cruel and unusual punishment.

12. Mr. Hoffman seeks a permanent injunction to prevent the defendants from executing him through unconstitutional means.

13. Mr. Hoffman seeks a declaratory judgment that the United States Constitution prohibits the DOC from carrying out an execution without first promulgating a viable protocol and then

providing Plaintiff with a certified copy of said protocol with sufficient time before any scheduled execution date.

14. This Complaint does not challenge Mr. Hoffman's underlying capital conviction or sentence of death. Rather, Mr. Hoffman challenges only the manner and means by which the DOC intends to execute him.

## FACTS

15. All statements of fact and allegations anywhere in this Complaint are incorporated by reference into the Complaint.

### Adoption of Lethal Injection as Method of Execution

16. In 1991, Louisiana adopted lethal injection as its method of execution pursuant to La. R.S. § 15:569.

17. Under La. R.S. § 15:568, the Secretary of the Department of Public Safety and Corrections is responsible for executing offenders in conformity with the death warrant issued in each case.

18. Louisiana defines lethal injection as "the intravenous injection of a substance or substances in a lethal quantity into the body of a person convicted until such person is dead." La. R.S. § 15:569.

19. No legislative guidance exists regarding lethal injection in Louisiana other than La. R.S. § 15:569.

20. The remaining details are left to the discretion of the DOC in developing and adopting an execution protocol.

**Lethal Injection Procedures Have Resulted in "Botched" Executions**

21. At least thirty-one botched lethal injection executions occurred between 1982 and 2001.[1] Additional botched executions have occurred in the years since 2001.

22. In 2011, during the lethal injection of Emmanuel Hammond in Georgia, witnesses reported that, sometime after being sedated, Mr. Hammond awakened, opened his eyes, and grimaced in pain. A doctor filed an affidavit that the drugs used by the Georgia Department of Corrections would have caused an agonizing burning sensation and asphyxiation without adequate anesthesia.

23. In 2009, an attempt to execute Romell Broom was called off after Ohio prison officials were not able to find a vein in which to insert the intravenous tubing for 90 minutes. During the 90 minutes. Mr. Broom cried, attempted to assist his executioners, and experienced severe pain as the executioners attempted to use veins in his legs and neck.

24. On December 13, 2006, it took 34 minutes for an execution team to kill Angel Diaz at Florida State Prison. Eyewitnesses reported Mr. Diaz spoke, gasped for air, and grimaced in pain during his execution. They observed his face contort, his jaw clench, and his head roll back and for the throughout the botched execution. A subsequent study by a special Commission convened by the Governor determined that, as a result of an inadequately trained and incompetent execution team, both of the IVs in Mr. Diaz's arms were improperly

---

[1] Deborah W. Denno, *When Legislatures Delegate Death: The Troubling Paradox Behind State Uses of Electrocution And Lethal Injection And What It Says About Us*, 63 OHIO ST. L.J. 63, 139-41 (2002) (listing by inmate name the botched lethal injection executions, and describing evidence of error).

placed.  As a result, the first drug, sodium thiopental, was injected subcutaneously, rather than intravenously, as intended, and the first drug to enter Mr. Diaz' circulation was the paralytic, pancuronium bromide.  Mr. Diaz's death likely resulted from asphyxiation, and he was conscious or partly conscious throughout the process, rather than adequately anesthetized and insensate pain or suffering.

## Louisiana's Lethal Injection Protocols

25. The DOC's lethal injection protocol, which consists of prison directives, checklists, and any other documents that guide the prison in its administration of lethal injection, has been revised at least seven (7) times since the adoption of lethal injection in 1991.

26. On information and belief, the most recent publically-available protocol is the "Louisiana State Penitentiary Directive 09.049" dated January 7, 2010, and an undated checklist obtained in 2010. These documents comprise what is herein referred to as the 2010 Protocol.

27. The 2010 Protocol calls for the serial administration of three drugs: first, sodium thiopental; second, pancuronium bromide; and third, potassium chloride.

28. Under the 2010 Protocol, sodium thiopental is intended to induce anesthesia and maintain it throughout the execution to prevent the inmate from suffering torture and pain when the second and third drugs are administered.

29. Pancuronium bromide is a paralytic agent.  Under the 2010 Protocol, its function is to cause paralysis of all skeletal muscles, including the diaphragm.

30. The paralysis will prevent an individual from crying out or moving, but it does not affect consciousness.

31. If the individual is not adequately anesthetized, the administration of pancuronium bromide will cause him or her to experience excruciating pain and suffering while being unable to breathe and experiencing the burning sensation of the potassium chloride injection.

32. Under the 2010 Protocol, the intended function of potassium chloride is to stop the heart.

33. If administered to an inadequately anesthetized person, potassium chloride causes immensely painful internal burning as it passes through the circulatory system.

34. The Supreme Court has recognized that the administration of pancuronium bromide and potassium chloride without sodium thiopental would violate the Eighth Amendment's ban on cruel and unusual punishment. *Baze v. Rees*, 553 U.S. 35, 53 (2008).

35. The last person to be executed in Louisiana was Gerard Bordelon, on January 7, 2010.

36. The drugs and method used to carry out Mr. Bordelon's execution are still not known.

37. In December of 2009, Nathaniel Code, an inmate on Louisiana's death row, filed a lawsuit in Louisiana state court alleging that the DOC had violated the Louisiana Administrative Procedures Act, La. R.S. § 49:950 et seq. ("LAPA"), in promulgating the protocols for lethal injection.

38. In 2010, in response to Mr. Code's efforts to enforce his legal rights under the LAPA, the Louisiana Legislature passed an amendment to La. R.S. § 15:569, adding a section stating that "[t]he provisions of the Administrative Procedure Act, R.S. 49:950, et seq., shall not

apply to the procedures and policies concerning the process for implementing a sentence of death." La. R.S. § 15:569(D).

39. Jessie Hoffman is currently an inmate at Angola sentenced to death. He is litigating an appeal in the United States Fifth Circuit Court of Appeals from a denial of federal habeas corpus relief.

40. The State and its agents, by statute, will execute Mr. Hoffman by use of lethal injection once he has exhausted challenges to his conviction and sentence.  La. R.S. § 15:567 et seq.

**Plaintiff has been Denied Access to Defendants' Lethal Injection Protocol**

41. The Defendants will not disclose the lethal injection protocol they plan to use to carry out Mr. Hoffman's execution.

42. Mr. Hoffman has attempted to obtain details of the applicable lethal injection protocols in two ways.

43. First, on July 18, 2012, Mr. Hoffman's attorneys made a Louisiana Public Records Act request for the current protocols pursuant to La. R.S. §§ 44:1 *et seq*.  The request for public records included, among other things, the procedures to be followed, the types and quantities of drugs to be used, the individuals who will be permitted to witness the execution, how the drugs are administered, the individuals who will administer the drugs, and information concerning previous executions.

44. On July 30, 2012, counsel for the DOC denied Mr. Hoffman's attorneys' Public Records Act request claiming that (a) they were exempted from disclosure because they include internal

security information, and (b) because the protocol is not subject to the Administrative

Procedures Act, it is not subject to disclosure as a Public Record.

45. Second, Mr. Hoffman filed a request for an administrative remedy procedure ("ARP") with

the Louisiana State Penitentiary, which was accepted into Angola's system on September 28,

2012.

46. As a part the ARP, Mr. Hoffman requested that he be provided with a copy of the current

protocols for his execution.

47. On December 6, 2012, Mr. Hoffman's ARP was rejected from Angola's administrative

remedy system on the basis that "the issue in your ARP has not happened to you as of the

date of your complaint."

48. Attached to this Complaint is an unsigned copy of Mr. Hoffman's ARP. EXHIBIT 1

49. A signed copy is in the possession of the Defendants, who will not provide a copy to Mr.

Hoffman.

50. As a result of the rejection of his ARP, Mr. Hoffman is wholly unable to obtain a copy of the

current protocol to be used for his execution.

51. On information and belief, the Defendants do not currently have a protocol for administering

lethal injection.

52. Due to the DOC's refusal to disclose the lethal injection protocol it plans to use to execute

Mr. Hoffman, Mr. Hoffman is unable to ascertain whether he may be compelled to undergo

unconstitutional pain and torture upon his execution.

53. As there is no legislative guidance constraining the DOC's discretion in carrying out lethal injections, the DOC has a virtual blank slate as to the upcoming execution of Mr. Hoffman.

54. Mr. Hoffman has experienced extreme emotional distress due to the significant danger that he will experience pain and torture during his execution.

**Unavailability of Sodium Thiopental**

55. In a letter dated October 28, 2010, William Kline, general counsel for the DOC, stated that the DOC had no sodium thiopental in stock and that its pharmacy vendor had indicated that sodium thiopental was unavailable.

56. In an April 10, 2011, article in the *Baton Rouge Advocate*, "Drug shortage changes La. capital punishment," counsel and spokeswoman for the DOC are quoted recognizing the need to revise the protocol due to the unavailability of sodium thiopental in Louisiana.

57. Attached to this Complaint is a true and correct copy of this article. EXHIBIT 2

58. On information and belief, Defendants do not have possession of sufficient sodium thiopental to humanely execute Mr. Hoffman.

59. Defendants are aware that Mr. Hoffman is likely to suffer intense pain without administration of sodium thiopental prior to injecting the lethal substance(s), but they are deliberately indifferent to his right to protection for cruel and unusual punishment.

60. On April 25, 2012, during oral argument in the state lawsuit brought under the Louisiana Administrative Procedures Act, *Code v. Louisiana State Public Safety & Corrections*, 11-1282, 2012 WL 5266135 (La.App. 1 Cir. 10/24/12), counsel for the DOC was repeatedly

asked by the First Circuit Court of Appeals to provide an update on the status of a current lethal injection protocol, given the unavailability of drugs, but counsel did not comply.

61. If the DOC has promulgated a new protocol, neither Mr. Hoffman nor the public have had an opportunity to review it.

**Lack of Review of the Protocol**

62. On information and belief, if there is a new protocol, it has not been examined by a licensed medical professional to ensure that there are adequate safeguards to protect Mr. Hoffman's constitutional rights against torture, pain, and suffering.

63. On information and belief, these purported rules were promulgated without any medical research or review to determine that a prisoner would not suffer a painful death.

64. On information and belief, no member of the medical community was involved in the adoption of the new purported protocols.

65. On information and belief, the DOC will attempt to substitute drugs within their lethal injection process without amending the purported protocols.

**Risk of Constitutional Violations**

66. On information and belief, the DOC will attempt to substitute drugs within their lethal injection process without creating procedures appropriate to the properties of the new drugs such as how to flush the IV lines, the amount of the drug, or the timing of the drug.

67. On information and belief, Mr. Hoffman will suffer the wanton and unnecessary infliction of pain, and torture, or a prolonged lingering death without careful review of the entire protocol

if the DOC substitutes sodium thiopental.  On information and belief, the purported protocol will not be carried out in accordance with the written instructions, or will be administered in such a way that fails to adequately safeguard Mr. Hoffman's rights.

68. The 2010 Protocol promulgated by the Defendants does not include adequate safeguards to protect Mr. Hoffman from cruel and unusual punishment.

69. On information and belief, Mr. Hoffman's execution will not be carried out in accordance with the written instructions, or will be administered in such a way that fails to adequately safeguard Mr. Hoffman's rights.

70. There is a reasonable likelihood that sodium thiopental will be ineffectively delivered, and as a result, it will not provide a sedative effect for the duration of the execution process.

71. Without adequate sedation, Mr. Hoffman will experience excruciating pain under the 2010 Protocol as a result of the conscious asphyxiation caused by pancuronium bromide and the painful internal burn and cardiac arrest caused by a potassium chloride overdose.

72. Pancuronium bromide, the second chemical administered in the lethal injection process under the 2010 Protocol, paralyzes voluntary muscles, including the diaphragm, but it does not affect consciousness or the perception of pain.

73. Pancuronium bromide, administered by itself as a "lethal dose" under the 2010 Protocol would not result in a quick death; instead, it would ultimately cause someone to suffocate to death while still conscious.

74. There is no indication in the DOC's 2010 Protocol that pancuronium bromide is used to cause death. It therefore is unnecessary in the lethal injection process and only serves to mask any pain or suffering that Mr. Hoffman may experience.

75. Pancuronium bromide under the 2010 Protocol could not lawfully be used alone as the fatal agent because causing death by suffocation violates the Eighth Amendment's prohibition against cruel and unusual punishment.

76. The intravenous tubing necessary to administer the drugs in question will not be inserted under the 2010 Protocol by a qualified medical professional. The Defendants John Does will insert the tubing which will result in a malfunction or the missing of a vein which will produce a tortuous result for Mr. Hoffman.

77. On information and belief, Defendants Does are not medical professionals and have no medical training.

78. On information and belief, in the past the DOC has employed corrections officers to carry out the execution.

79. The drugs that will be administered under the 2010 Protocol will have expired or not been stored properly by the Defendants Does in advance of the execution and thus will not have the effect that the protocol anticipates.

80. On information and belief, the efficacy of the drugs cannot be assured with any reasonable amount of certainty once they have been improperly stored or expired.

81. The members of execution team (John Does) will not have received adequate training and will make errors in carrying out the execution under the 2010 Protocol.

82. The execution will be carried out without adequate medical supervision under the 2010 Protocol by Defendants John Does.

83. On information and belief, the equipment used to carry out the execution under the 2010 Protocol has not been tested for efficacy or maintained by the Defendants since the last execution and thus will malfunction.

84. The equipment used to carry out the execution includes medical equipment that must be inspected by a medical professional to ensure that it can be used effectively.

85. The protocols are not adequately specific, and as such the execution may be carried out in different manners each time.  There are no safeguards to protect against this variance under the 2010 Protocol.

86. There is nothing in the 2010 Protocol that requires Defendants John Does to become familiar with the drugs they are administering in order to understand their properties, dangers associated with the drugs, and any other relevant medical information.

87. The 2010 Protocol fails to standardize the timing for the administration of the drugs, and the execution team thus may err in the delivery.

88. There is no provision for a medical history review by the Defendants under the 2010 Protocol to ensure that Mr. Hoffman does not take any medications or have any medical conditions that might interfere with the efficacy of the lethal injection protocol. Likewise, because any

protocol and the drugs to be used are secret, Mr. Hoffman lacks adequate notice to independently investigate the likelihood of any negative drug interaction.

89. Those who will be selected to carry out the execution, Defendants John Does, lack the qualifications, training, and competence to do so in a constitutional manner under the 2010 Protocol.

90. The  named Defendants know the Defendant John Does are unqualified to administer lethal drugs, but are deliberately indifferent to the risks their failure to train and supervise the John Does will result in violations of Mr. Hoffman's constitutional rights.

91. Defendants John Does have not engaged in adequate practice sessions or complied with other provisions of the 2010 Protocol.

92. The use of the 2010 Protocol creates a substantial risk that Mr. Hoffman will suffer the wanton and unnecessary infliction of pain, and torture, or a prolonged lingering death, as he is put to death. This includes experiencing substantial pain and suffering, conscious paralysis, suffocation, or conscious cardiac arrest. On information and belief, any purported revised and current protocol, does not include adequate safeguards to protect Mr. Hoffman from cruel and unusual punishment.

93. On information and belief, any purported revised and current protocol will not be administered in a way that adequately protects Mr. Hoffman from cruel and unusual punishment.

**The Defendants are Responsible for Hoffman's Harm**

94. Warden Cain is responsible for ensuring that there is a constitutional protocol for executing Mf. Hoffman. He is also responsible for ensuring that executions are carried out in a constitutional fashion.

95. Warden Norwood is responsible for assisting Warden Cain in ensuring that there is a constitutional method of executing Mr. Hoffman.

96. The DOC and Secretary LeBlanc are responsible for overseeing Warden Cain in his drafting of the protocols.

97. Governor Jindal is responsible for overseeing the DOC in its supervision of Warden Cain.


**CLAIMS FOR RELIEF**


I.    Executing Mr.  Hoffman without Giving Him Notice of the Procedures to Be Used Violates the his Rights to Due Process and Fundamental Fairness under the Fifth and Fourteenth Amendment

    a.   Among other due process violations, executing Mr. Hoffman without giving him a fair opportunity to review the lethal injection protocol and lodge any legal objections violates due process. U.S. CONST. AMEND. XIV.

    b.   Fundamental fairness and due process require that an individual be given an opportunity to receive notice of how one's rights will be affected and opportunity to respond and be heard.

c. By refusing to disclose the protocol, the Defendants have denied Mr. Hoffman the ability to effectively enforce his Eighth Amendment rights and thwarts judicial review.

d. Mr. Hoffman has been prevented from knowing and therefore challenging the lethal injection which is a part of due process.

e. The Defendants are deliberately indifferent to Mr. Hoffman's rights.

II. Executing Mr. Hoffman in the absence of a valid protocol violates his rights under the Eighth and Fourteenth Amendments to be Free from Cruel and Unusual Punishment**.**

a. The 2010 Protocol is no longer valid as the Defendants are not able to access sodium thiopental, one of the key components of the protocol.

b. Among other violations, executing Mr. Hoffman without a protocol would violate *Baze v. Rees*, 553 U.S. 35 (2008), because none of the procedural safeguards enumerated by that opinion, nor any other procedures, would be present to protect against Eighth and Fourteenth Amendment violations resulting from the infliction of cruel and unusual punishment.

c. Defendants must comply with their own written protocols in order to ensure that they are adhering to the safeguards necessary to prevent violations of the constitutional prohibition against cruel and unusual punishment.

d. The Defendants are deliberately indifferent to Mr. Hoffman's rights.

19

III.   Executing Mr. Hoffman pursuant to any purported current applicable protocol would violate his rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment.

    a.   Among other violations, the 2010 Protocol does not include adequate safeguards and/or will not be administered in a way which adequately protects Mr. Hoffman's constitutional rights to be free from cruel and unusual punishment.

    b.   Among other violations, the purported current protocol does not include adequate safeguards, and/or will not be administered in a way that adequately protects Mr. Hoffman's constitutional rights to be free from cruel and unusual punishment.

    c.   The Defendants are deliberately indifferent to Mr. Hoffman's rights.

IV.   Executing Mr. Hoffman after substituting drugs used in any purported protocol without promulgating a new protocol would violate Hoffman's rights to due process and to be free from cruel and unusual punishment.

    a.   The substitution of drugs without creating a new protocol to address the difference between the new drug and old drugs violates Mr. Hoffman's rights to due process, and will result in the infliction of cruel and unusual punishment.

    b.   The Defendants are deliberately indifferent to Mr. Hoffman's rights.

V.   Executing Mr. Hoffman using any of the purported protocols violates Mr. Hoffman's right to equal protection under the law.

20

    a.   Among other violations, Defendants have, and will, materially deviate from any purported written execution protocol, impermissibly burdening Mr. Hoffman's right to be free from cruel and unusual punishment and violating his right to equal protection under the law.

    b.   The Defendants are deliberately indifferent to Mr. Hoffman's rights.

VI.   Executing Mr. Hoffman using any purported future or current protocol would violate Mr. Hoffman's rights to due process and to be free from cruel and unusual punishment.

    a.   Any future protocol, will likely be as constitutionally inadequate as past protocols have been.

    b.   Among other violations, in exempting the protocol from the Louisiana Administrative Procedures Act, the state has attempted to thwart well-established administrative rules, in violation of due process.

    c.   The Defendants are deliberately indifferent to Mr. Hoffman's rights.

VII.   Request for Declaratory Judgment Pursuant to 28 U.S.C. § 1331.

    a.   A declaration that it is unconstitutional under the Eighth and Fourteenth Amendments for the DOC to carry out an execution without first affording Mr. Hoffman an opportunity to access and review the execution protocol.

    b.   A declaration that it violates the Eighth and Fourteenth Amendments for the DOC to carry out an execution using expired drugs, illegally obtained drugs, or drugs which were not properly stored in advance of the execution.

    c.  A declaration that it violates the Eighth and Fourteenth Amendments for the DOC to carry out an execution without a detailed protocol in place.

    d.  A declaration that it violates the Eighth and Fourteenth Amendments for the DOC to execute Mr. Hoffman pursuant to the DOC's current purported protocol.

VIII.   Request for a Permanent Injunction.

    a.  A permanent injunction banning the Defendants from executing Mr. Hoffman without first promulgating an up-to-date protocol that comports with the protections guaranteed by the Eighth and Fourteenth Amendments and giving Mr. Hoffman adequate time to review and challenge it.

## DAMAGES

I.   As the actions and omissions of Defendants, their agents, employees, and/or representatives, proximately caused and/or were the moving force of the injuries and damages to Mr. Hoffman, Mr. Hoffman asserts claims under 42 U.S.C. § 1983, including, but not limited to, the following:

    a.  Compensatory damages for past physical pain and suffering and past mental anguish;

    b.  Punitive damages;

    c.  Presumed and nominal damages in the maximum amounts allowed by law; and

    d.  Attorneys' fees and costs pursuant to 42 U.S.C. § 1988, or as allowed by law.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Hoffman requests that this Court:

1.  Grant declaratory and permanent injunctive relief, as requested in this Complaint;

2.  Grant a permanent injunction enjoining defendants from executing Mr. Hoffman without first promulgating an up-to-date protocol and giving Mr. Hoffman adequate time to review and challenge it;

3.  Grant a permanent injunction enjoining the DOC from carrying out an execution with expired drugs;

4.  Grant a permanent injection enjoining the DOC from carrying out an execution pursuant to any current purported protocol;

5.  Grant such further relief as it deems just and proper;

6.  Exercise continuing jurisdiction over the matter in order to ensure ongoing adherence to the Constitution; and

7.  Award Mr. Hoffman, as the prevailing party, attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 and the laws of the United States, court costs, expert costs, litigation expenses, and any such relief as the Court deems just and proper.

Respectfully submitted,

/s Michael D. Rubenstein____
Michael D. Rubenstein, La. Bar No. 22860
Liskow & Lewis
1001 Fannin Street, Suite 1800

23

Houston, TX 77002
Tel. (713) 651-2953
Fax (713) 651-2952

/s Cecelia Trenticosta Kappel
Cecelia Trenticosta Kappel, La. Bar No. 32736
Mercedes Montagnes, La. Bar No. 33287
The Promise of Justice Initiative
636 Baronne Street
New Orleans, LA 70113
Tel. (504) 529-5955
Fax (504) 558-0378

*Counsel for Plaintiff Jessie Hoffman*