UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JESSIE HOFFMAN | : CIVIL ACTION |
| | : NUMBER: 12-cv-0796 |
| VERSUS | |
| | : JUDGE JAMES J. BRADY |
| BURL CAIN, ET AL | : MAGISTRATE JUDGE STEPHEN C. RIEDLINGER |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>SECOND MEMORANDUM IN OPPOSITION TO INTERVENOR'S
MOTION FOR PRELIMINARY INJUNCTION</u>

<u>MAY IT PLEASE THE COURT</u>:

**A.    BACKGROUND**

Intervenor, Christopher Sepulvado (hereinafter "Intervenor" or "Sepulvado"), has asked this Court to stay his February 13, 2013 execution. For the reasons below he does not meet the requirements for a preliminary injunction to stay his execution.

As noted in an earlier brief filed by Defendants, Intervenor's first-degree murder conviction was affirmed by the Louisiana Supreme Court on April 8, 1996. *State v. Sepulvado*, 93-2682 (La. 4/8/96), 672 So.2d 158, *rehearing denied,* (La. 5/10/96). His petition for writ of certiorari with the U.S. Supreme Court was denied on October 15, 1996. *Sepulvado v. Louisiana,* 519 U.S. 934, 117 S.Ct. 310 (1996). His petition for rehearing was likewise denied. *Sepulvado v. Louisiana,* 519 U.S. 1035, 117 S.Ct. 600 (1996). His conviction and sentence to death have been final for over sixteen years now.

More than one month after the district judge signed his death warrant on December 12, 2012, Intervenor filed his Motion to Intervene in this case, on January 23, 2013. And eight days later, on January 31, 2013, a mere fourteen days before his execution, Intervenor for the first

1

time asked this court to stay his execution to review the legality of the State's execution protocols via a Motion for Preliminary Injunction.

In his Motion for Preliminary Injunction, Intervenor argues that he cannot be executed under the last known protocol as it requires a drug – sodium thiopental – which was taken off the market, and requiring Intervenor to be executed with this drug would violate the Eighth Amendment. Alternatively, Intervenor claims that the State has no protocol. Intervenor is incorrect on both accounts.

**B.    LAW AND ARGUMENT**

**1. PRELIMINARY INJUNCTION STANDARD.**

The purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits. *Exhibitors Posters Exchange, Inc. v. National Screen Service Corp.,* 441 F.2d 560 (5th Cir. 1971). A preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion. *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 573 (5th Cir. 1974); *Anderson v. Jackson,* 556 F.3d 351, 360 (5th Cir. 2009). The four elements that the movant must satisfy before injunctive relief can be granted are (1) substantial likelihood that the movant will prevail on the merits; (2) substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest. *Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir. 1987.) The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted. *Id.*

a. Preliminary Objection.

The State has already disclosed its drug protocol – 1 dose of pentobarbital. This also negates his second argument that the State will execute via a protocol where one drug is unobtainable. Now that his original complains have failed, Intervenor manufacturers a new and wholly unsupported criticism – that the drug may have been obtained from illegal means, as the manufacturer of pentobarbital does not want its drug to be used in executions. This argument should be rejected as not included in his complaint or motion for preliminary injunction. Furthermore, DPSC procured it through lawful means and did not go out of country to get it. Finally, the fact that a manufacturer may have a problem with the State of Louisiana executing an individual for committing an especially heinous crime against a seven-year old defenseless child is completely irrelevant for the purpose of an Eighth Amendment challenge.

  b. <u>Intervenor Can Show No Likelihood of Success on the Merits.</u>

The seminar case from the United States Supreme Court regarding cruel and unusual death sentences is *Baze v. Rees,* 553 U.S. 35, 128 S. Ct. 1520, 170 L. Ed. 2d 420 (2008). It is well-settled that capital punishment is constitutional. *Baze,* at 47. Because some risk of pain is inherent in even the most humane execution method, if only from the prospect of error in following the required procedure, the Constitution does not demand the avoidance of all risk of pain. *Baze,* at 47. To constitute cruel and unusual punishment, an execution method must present a "substantial" or "objectively intolerable" degree of serious harm. *Baze,* at 35-36. Simply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of "objectively intolerable risk of harm" that qualifies as cruel and unusual. *Baze,* at 50.

Furthermore, allowing a condemned prisoner to challenge a State's execution method merely by sowing a slightly or marginally safer alternative finds no support in the Supreme

3

Court's cases. *Baze,* at 51. The Supreme Court does not allow courts to turn into boards of inquiry based on "best practices" for executions. *Baze,* at 15. Furthermore, the Supreme Court has never invalidated a State's chosen procedure for carrying out a death sentence as cruel and unusual. *Baze,* at 48.

> **I.  Inmates have argued that one-drug executions are safer method as opposed to the previously used three drug combination.**

It is undisputed that the three-drug protocol utilized previously by Louisiana is substantially the same as that declared constitutional in *Baze.* Nor has Intervenor alleged otherwise. His argument to this court is simply that the three-drug protocol in absence of the availability of the first would be unconstitutional. Defendants do not address this argument, as it is moot. Louisiana's current drug of choice is one-dose of pentobarbital.

Ironically, and fatal to Intervenor's argument, is that inmates on death row have routinely argued that a one-drug combination is more humane than the three-drug combination rule constitutional in *Baze*. In fact the inmates in *Baze* made this exact argument:

> "Much of petitioners' case rests on the contention that they have identified a significant risk of harm that can be eliminated by adopting alternative procedures, such as ***a one-drug protocol*** that dispenses with the use of pancuronium and potassium chloride"

*Baze,* at 51, and

> "First, petitioners contend that Kentucky could switch from a three-drug protocol to a one-drug protocol by using a single dose of sodium thiopental or other barbiturate [such as pentobarbital]."

*Baze,* at 56. Numerous death penalty inmates in Idaho, Florida, and Tennessee also argued for a one-drug combination instead of a three-drug one. See, *Roades v. Reinke,* 671 F.3d 856 (9th Cir. 11/16/11); *Roades v. Reinke,* 830 F.Supp.2d 1046 (9th Cir. 11/14/11); *Creech v. Reinke*, 2012 WL 1995085 (D. Idaho 6/5/12); *Pardo v. Palmer,* 2012 WL 6106331 (12/10/12); and *Harbison v. Little,* 571 F.3d 531 (6th Cir. 2009). See also, *Cooey v. Strickland,* 589 F.3d 210, 222 (6th Cir.

4

12/7/09) ("By adopting a one-drug injection, Ohio purposely ceased using the pancuronium bromide and potassium chloride that had been the focus of previous Eighth Amendment challenges to lethal injection protocols.")

Now that Louisiana has chosen what death row advocates contend is a more humane method than that previously ruled constitutionally-sound, Intervenor still complains.

## II. The use of a one-drug protocol has been declared constitutional by other courts.

Louisiana is far from the only state to use the one-drug pentobarbital. Six states have used a single-drug method of execution – Arizona, Idaho, Ohio, South Dakota, Texas, and Washington. Four states including Louisiana have announced plans to carry out one-drug pentobarbital executions in the future. See, website from www.deathpenaltyinfo.org.

Coincidentally, the one-drug protocol in Ohio, California, and Arizona were all ruled constitutional. *Towery v. Brewer,* 5672 F.3d 650 (9th Cir. 2/28/12) (Arizona); *Morales v. Tilton,* 465 F.Supp.2d 972 (12/15/06) (California); and *Cooey v. Strickland,* 589 F.3d 210 (6th Cir. 12/7/09) (Ohio).

The Ninth Circuit in *Towery* found the use of one drug in an execution protocol to be constitutional, even despite the fact that the protocol was changed to this method only 48 hours prior to the scheduled execution. This Court in this matter extensively discussed the one drug protocol, stating explicitly that the use of one drug rather than three fully complies with the protocol approved in *Baze*. Therefore, the Plaintiff's request for temporary injunction was denied. The Sixth Circuit came to the same conclusion in *Cooey*. In this matter, medical experts explained that the one-drug protocol is in fact a more humane execution procedure. *Cooey,* at

215.[1] The Court recognized that this sentiment was the ongoing demand of litigants since 2004. It went on to state that "a thorough review of the evidence presented regarding the one-drug procedure "reveals that the similarities with *Baze* are considerable and the risk of severe pain no greater-and likely less- than the risk of pain inherent in any lethal injection procedure found constitutional by a federal court."

In fact, in news articles concerning the administration of pentobarbital alone in Texas reported that the offender "showed no apparent unusual reaction to the drug as his execution began." See, attached news articles from BBC News and Death Penalty News.

Thus, there is no evidence to suggest that Louisiana's use of a one-drug procedure – pentobarbital – is unconstitutional.

### III. Courts have upheld on constitutionality grounds the substitution of Pentobarbital for Sodium Thiopental.

Courts across the country have refused to declare that a simple replacing one barbiturate for another creates constitutional infirmities. See, *West v. Brewer,* 2011 WL 6724628 (D. Ariz. 12/21/11); *Beaty v. Brewer,* 791 F.Supp.2d 678 (D. Ariz. 5/25/11); *Powell v. Thomas,* 641 F.3d 1255 (11th Cir. 5/19/11); *Pavatt v. Jones,* 627 F.3d 1336 (10th Cir. 2010); *DeYoung v. Owens,* 646 F.3d 1319 (7/20/11); *Powell v. Thomas,* 643 F.3d 1300 (11th Cir. 6/15/11); and *Jackson v. Danberg,* 656 F.3d 157 (3rd Cir. 9/7/11).

In fact, the medical evidence supports the conclusion that the one-drug procedure is more humane than the approved-three-drug combination. In *Dickens v. Brewer,* 2009 WL 1904294 (D. Ariz. 7/1/2009), the court discussed the effects of replacing the three-drug to a one-drug of either pentobarbital or sodium thiopental:

---

[1] *The inmate's own medical expect is quote by the court as stating "[I]t was gratifying to see that Ohio has decided to renounce the use of pancuronium and potassium. That really is a big step forward, and its taken many years, but I think they are really to be commended for doing that.*

> "Replacing the three-drug protocol with a one-drug protocol using pentobarbital or sodium thiopental would eliminate the risk of severe pain from pancuronium bromide and potassium chloride. *Five grams* of sodium thiopental alone will cause death to almost everyone within a number of minutes, but it may take thirty to forty-five minutes for the death to be indicated by a flat line on an EKG. Pentobarbital acts as rapidly as sodium thiopental, and it is eliminated from the brain more slowly than sodium thiopental and causes death more predictably. When pentobarbital is given intravenously in a large dose (three to four times its anesthetic dose), loss of consciousness, cessation of breathing, and stoppage of the heart occur *in less than two minutes*."

*Dickens v. Brewer*, 2009 WL 1904294 (D.Ariz. 7/1/09) *affirmed,* 631 F.3d 1139 (9th Cir. 2011)

The Third Circuit in *Jackson* stated:

> "Pentobarbital is a barbiturate commonly used to euthanize terminally ill patients who seek death with dignity in states such as Oregon and Washington. It has been used successfully for executions in at least four other states, and there is no evidence that it fails to render an inmate unconscious. The District Court did not abuse its discretion in finding that the use of pentobarbital did not create "a demonstrated risk of severe pain, as required by the Supreme Court."

*Jackson,* 656 F.3d at 165.

Finally, inmates' own expert in *Cooey* congratulated Ohio for moving forward to a one-drug combination. *Cooey,* at 215.

### IV. Claims of Illegally-Obtained Drugs or Non-Approval by FDA or Condemnation of Use of Drugs in Execution by Manufacturer Has Been Held Insufficient.

Intervenor has already told this court that it believes pentobarbital is not appropriate because its manufacturer does not approve it for use. This argument and other similar has been rejected in "method of execution" actions like the current one. The Eleventh Circuit in *Valle v. Singer,* 655 F.3d 1223 (11th Cir. 9/7/11) rejected the argument that a manufacturers condemnation of the use of drug in execution has little if any evidentiary weight, as it has no bearing of whether cause the individual being executed needless pain or suffering. *Valle,* 655 F.3d at 1233-1234. The Eleventh Circuit also noted a number of courts which have rejected claims that drugs not approved by the FDA could not be used in a lethal injection. See, *Valle,*

7

655 F.3d at 1234. The District Court of Idaho in *Creech, supra,* likewise rejected the arugment that illegally-obtained drugs may increase a risk of harm during an execution. *Creech,* 2012 WL 1995085, * 20-21.

> **V.    Courts have likewise rejected claims that states have failed to disclosure their protocols until the last hour.**

The Fifth Circuit in *Walker v. Epps,* 550 F.3d 407 (5th Cir. 11/24/08) explicitly rejected the argument that Mississippi's resistance to requests to produce the protocol, disclosure of only portion, and only production of the entity at the summary judgment in this case was not enough to prevent the plaintiff's claim from being declared time-barred. Importantly, the Fifth Circuit noted:

> We cannot accept that the State fraudulently concealed the plaintiffs' cause of action, given that the ***plaintiffs were aware that they were subject to execution by lethal injection from the moment their convictions became final. The plaintiffs could have filed their § 1983 action on the basis of this fact alone***, within the limitations period. ***They did not need the detailed information they allege the State belatedly disclosed*** to *file* their action. The plaintiffs have failed to show the State affirmatively acted to conceal their cause of action and, accordingly, the statute was not tolled on the basis of fraudulent concealment.

*Walker,* 550 F.3d at 417. See also, *Powell v. Thomas,* 641 F.3d 1255 (11th Cir. 5/19/11) where the court rejected a claim that the plaintiff has an Eighth Amendment right to know the details of his execution.

Thus, Intervenor's claim that he does not all of the details is unavailing.

> c.    Intervenor Can Not Show Irreparable Harm.

The State does not dispute that if the preliminary injunction is not granted, Intervenor will be executed as scheduled on February 13, 2013. However, that is not enough to declare irreparable harm. The tight time-crunch with which the Court, the State and Intervenor finds themselves currently is solely due to the delay of Intervenor. He can file an action like this any time after his conviction is final, which was in 1996. The death warrant itself reveals an

8

extensive history of litigation by Intervenor in both state and federal courts. The district court issued the death warrant on December 12, 2012, and yet Intervenor still never filed this action. He waited until January 23, 2013, more than one month after the death warrant was issued. Even then, he did not seek a stay. He waited until 14 days before his execution to do so. ***A plaintiff cannot be allowed to "create" his own irreparable injury.***

In fact his own Motion for Preliminary Injunction cuts against him. He asks this Court for a stay because by the time the 21-day period to file an answer will have run, he will be executed. The fact that he will be executed in the meantime is due to his own fault. He should not have waited until the eleventh hour to request a stay. This is simply a last-ditch effort to avoid execution.² Any irreparable injury is due to his own delay from which he should not be allowed to benefit.

    d. <u>The Threatened Harm to Intervenor Does Not Outweigh the Harm to the State and the Public Interest Will be Dissuaded.</u>

The State has a great interest in ensuring that its criminal laws – designed to protect the public – are swiftly enforced. A further delay in a six-year old case is contrary to the State's interest. Further, the victims of Intervenor's crimes do not deserve the agony of having Intervenor's death warrant recalled once again. The current motion is simply a last effort by Intervenor.

---

2 It is import to note that Intervenor was previously set to die in 2008 but was granted a stay at that time. This is his second request for a stay.

**C.     CONCLUSION**

For this reason, Defendants request this Court deny Intervenor's request for stay.

**Respectfully Submitted:**

**James D. "Buddy" Caldwell**

_s/Jacqueline B. Wilson_
**SHOWS, CALI & WALSH, L.L.P.**
E. Wade Shows, LA Bar No. 7637
Jacqueline B. Wilson, LA Bar No. 31055
628 St. Louis Street (70802)
Post Office Drawer 4425
Baton Rouge, LA 70821-4425
Phone: (225) 346-1461
*Special Assistant Attorneys General*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **6th** day of **February, 2013**, a copy of the foregoing has this date been served upon all counsel of record via CM/ECF system and has been filed electronically with the Clerk of Court using the CM/ECF system.

/s/ Jacqueline B. Wilson
JACQUELINE B. WILSON