IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JESSIE HOFFMAN, )<br>*Plaintiff* )<br>CHRISTOPHER SEPULVADO, )<br>*Intervenor* )<br>)<br>)<br>v. )<br>)<br>BURL CAIN, Warden, Louisiana State )<br>Penitentiary; BOBBY JINDAL, Governor )<br>of Louisiana; JAMES LEBLANC, Secretary, )<br>Louisiana Department of Public Safety and )<br>Corrections; LOUISIANA DEPARTMENT OF )<br>PUBLIC SAFETY AND CORRECTIONS; )<br>ANGELA NORWOOD, Warden, Death Row; )<br>and JOHN DOES, unknown executioners, )<br>*Defendants* | Judge James Brady<br><br>Civil Action No. 12-796-JJB SCR |

**I.   SUPPLEMENTAL   MEMORANDUM   IN   SUPPORT   OF MOTION FOR PRELIMINARY INJUNCTION**

NOW COMES Plaintiff-in-Intervention Christopher Sepulvado, through counsel, and files this supplemental memorandum in support of Mr. Sepulvado's *Motion for Preliminary Injunction* (Doc. No. 14-4). Mr. Sepulvado is currently scheduled for execution on February 13, 2013. Despite numerous requests over the past three years, the State of Louisiana remains steadfast in its refusal to disclose the very protocol by which it intends to kill Mr. Sepulvado. As

{00111350.DOC}

late as January of this year, the State denied having any information regarding the lethal injection drug. Now at the eleventh hour, the State claims that it is Mr. Sepulvado who has been dilatory in failing to bring the instant lawsuit at an earlier date, and at the same time, argues that without a protocol to evaluate, Mr. Sepulvado cannot state a claim of constitutional injury under the Eighth and Fourteenth Amendments. The only way to determine the constitutionality of the procedure by which the State intends to execute Mr. Sepulvado is to enjoin the execution until that procedure is disclosed and subject to full evaluation under the United States Supreme Court's guidance in *Baze v. Rees*, 553 U.S. 35 (2008).

## A. Background

### 1. Collateral Court proceedings

The defendant's recitation of the procedural background in Mr. Sepulvado's case omits numerous attempts that Mr. Sepulvado has made in state court over the last five years to challenge the constitutionality of Louisiana's lethal injection procedures. Since 2008, Mr. Sepulvado has made unremitting efforts to obtain Louisiana's lethal injection protocol and related records and to challenge the State's lethal injection process and procedures in state court. On June 27, 2008, Mr. Sepulvado filed a motion in state district court to stay proceedings in his case until the Louisiana Supreme Court ruled on the constitutionality of the lethal injection procedures that existed in 2008. The State joined with the defense in requesting that the District

Court stay the proceeding until The Louisiana Supreme Court decided if the procedures in effect in 2008 were constitutional. On July 1, 2008, Louisiana District Court Judge Robert Burgess stayed all proceedings in Mr. Sepulvado's case, due to the ongoing lethal injection litigation in Louisiana in another death row inmate's state post-conviction proceedings.[1] However, on December 12, 2012, Hon. Burgess lifted the stay, despite the Petitioner's request for discovery and an evidentiary hearing on Louisiana's current method of lethal injection that had changed as a result of drug shortages since *Code* had been decided. See Ex. 1.

At the hearing, the district court stated it did not wish to address the change in the lethal injection procedures, but was limiting the hearing to whether or not the litigation in the old lethal injection procedures in *Code* had been finally held to be constitutional. The district court at the hearing also advised counsel to file a written motion for a stay and for a hearing to address the current lethal injection procedures. On December 18, 2012, Mr. Sepulvado filed a motion for a stay and requested an evidentiary hearing on the current lethal injection procedures in state district court. See Ex. 2.

The district court denied the stay and the motion on December 21, 2012. However, counsel did not receive notice or a copy of the denial until January 5, 2013. The district court

---

[1] The state district court's Order from 2008 was based on Petitioner's motion, which advised the court that an unresolved issue concerning Louisiana's method of implementing lethal injection was pending before the Louisiana Supreme Court. *Code v. Cain*, 138,860-A; Caddo Parish)

denied the motion on the grounds that it did not have jurisdiction to rule on the matter. Ex. 3. On January 11, 2013, Mr. Sepulvado filed an emergency writ and request for a stay with the Louisiana Supreme Court asking for the court to order discovery and hearings on the current lethal injection procedures. Ex. 4. In that writ application, Mr. Sepulvado's basic argument was that a nationwide shortage existed of sodium thiopental, the drug Louisiana had traditionally used for executions since 1993. In essence, the writ complained that the method of execution had to change, but that the State was not revealing what that change would be. The Louisiana Supreme Court declined to exercise writ of review on January 25, 2013. *Sepulvado v. Cain*, No. 2013-KP-0098 (La. 1/23/13).

Since early 2010, state civil litigation regarding another aspect of Louisiana's lethal injection procedure and processes has also been ongoing. In January 2010, death row inmate Nathaniel Code filed a challenge addressing how Louisiana has tinkered with modifications in the methods in which it carries out lethal injections in the State. Mr. Code raised a challenge against the Louisiana Department of Public Safety and Corrections, essentially alleging that the Department has changed its rules for carrying out executions without complying with mandates for public notice of rule changes, as required under the Louisiana Administrative Procedures Act (LAPA). *Code v. Dept. of Public Safety and Corrections,* No.585410 (19th J.D.C. 2010).

On January 22, 2010, the Louisiana Department of Public Safety and Corrections expanded this civil litigation well beyond Mr. Code, when it counter-sued Petitioner and all other condemned inmates in Louisiana as defendants-in-reconvention. Christopher Sepulvado was thus a named party to this lethal injection challenge for nearly three years.

Oral argument was heard before the Louisiana First Circuit Court of Appeal on April 25, 2012. *Code v. Dept. of Public Safety and Corrections,* Docket No. 2011-1282 (La.App.1 Cir. 4/25/12). The First Circuit denied relief to Mr. Code, the Petitioner and all other defendants in-reconvention on October 24, 2012. *Code v. Dept. of Public Safety and Corrections,* 2011-1282 (La.App. 1 Cir. 10/24/12); 2012 La. App. LEXIS 1320. Mr. Code, Mr. Sepulvado, and the other defendants-in-reconvention then filed an *Application for Writ of Review* with the Louisiana Supreme Court on November 26, 2012. *Code v. Dept. of Public Safety and Corrections,* No. 12-K-2515 (La. 2010). On January 23, 2013, the Louisiana Supreme Court denied an *Application for Writ of Review*.

On the same day, the Court denied writs on Mr. Sepulvado's challenge of his denial of stay. Mr. Sepulvado filed in which he challenged the District Court's issuance of an execution warrant as erroneous because there is a nationwide shortage of sodium thiopental, which necessitates that the Louisiana Department of Public Safety and Corrections changed its lethal injection protocol without giving Mr. Sepulvado notice and an opportunity to challenge the new

{00111350.DOC}

procedures, in violation of his fundamental right to due process and in violation of his Eighth Amendment right to be free from cruel and unusual punishment because such non-disclosure heightens the risk of cruel and unusual punishment.

### 2. Public Records Act litigation

On April 16, 2012, and December 18, 2012, Gary Clements, counsel for Christopher Sepulvado, sent Louisiana Public Records Act requests to the Louisiana Department of Corrections, requesting public records regarding the quantities of lethal injection drugs Louisiana currently possesses, Louisiana's lethal injection process, and Louisiana's former and current protocols.

On January 7, 2013, the Department responded to the latest Public Records request and essentially refused to provide names, sources or quantities of chemicals to be used as well as denied other requests, on various grounds of exception ranging from security risks to attorney client privilege and so forth. Ex. 6. A state *Petition for Writ of Mandamus* for production of these critical records was filed on Mr. Clements' behalf on January 15, 2013.

### 3. Administrative Remedy litigation

The defendants complain that Mr. Sepulvado did not file his motion to intervene in this suit until a month after his death warrant was signed. However, in order to file his motion to intervene with this court, Mr. Sepulvado first had to exhaust his claim through the prison system.

{00111350.DOC}

On December 18, 2012, Mr. Sepulvado filed a request for an administrative remedy procedure ("ARP") with the Louisiana State Penitentiary. As a part the ARP, Mr. Sepulvado requested that he be provided with a copy of the current protocols for his execution.

On January 14, 2013, Mr. Sepulvado's ARP was rejected from Angola's administrative remedy system, and he was informed that he could not appeal the decision. Ex. 5. Thus the delay of almost a month was caused by the Louisiana State Penitentiary's delay in denying the ARP. Significantly the reason given for the denial was "Because of this date nothing has personally happened to you." See Ex. 5. Petitioner's counsel repeatedly called and requested that the LSP act on the ARP as soon as it was filed but this one sentence rejection took almost a month for the LSP to prepare.

For the last four years, Mr. Sepulvado had a stay in state court, while ongoing challenges to the lethal injection procedures in state court were being conducted. All of that time, the presumption was that eventually, the state district court would conduct its own hearing on lethal injection. Unexpectedly, the district court took steps, on its own motion, to lift that stay in late November 2012. On November 12, 2012, the state district court issued an order for a hearing to show cause on why the stay should remain in effect. On December 12, 2012, the court declined to order any hearing on the lethal injection issue in the 42nd Judicial District Court.

On January 15, 2013, counsel for Mr. Sepulvado filed a *Petition for Writ of Mandamus* in state district court to force the DOC to produce the lethal injection protocol. This petition is currently pending a hearing before the Nineteenth Judicial District Court at 1:30pm on Friday February 8, 2013. At the status conference held before this Court on February 5, 2013, counsel for the DOC indicated that they intend to argue at the 2/8/13 state court hearing that the protocol is not public record as defined by the Louisiana Public Records Act

## B. The Stay Request is not untimely

The Fifth Circuit Court of Appeals has at times refused to consider method-of-execution challenges that were filed by a death-sentenced inmate "with his execution imminent." *Harris v. Johnson*, 376 F.3d 414, 417 (5th Cir. 2004). However, the Fifth Circuit has acknowledged that such late filings may be necessary. For example, the court commented about the plaintiff in *Harris* that: "Unlike the plaintiff in *Nelson*—who challenged a procedure that had been newly instituted… —Harris cannot excuse his delaying until the eleventh hour on the ground that he was unaware of the state's intention to execute him by injecting the three chemicals he now challenges." *Id.* The court also stated: "For the entirety of his eighteen years on death row, Harris knew of the state's intention to execute him in this manner." *Id.* at 418. *See also White v. Johnson*, 429 F.3d 572, 574 ("White has been on death row for more than six years, and only

now, with his execution imminent, has decided to challenge a procedure for lethal injection that the State has been using for his entire stay on death row.")

Mr. Sepulvado's situation is distinguishable from those of the plaintiffs in *Harris* and *White*. Both Harris and White were aware, from the moment that they arrived on death row, of the procedure the state intended to follow in their executions. Mr. Sepulvado, by contrast, has been robbed of his ability to enforce his Eighth Amendment rights, because the State has refused to disclose any information about its execution protocol. Only yesterday, February 5, 2013, eight days before Mr. Sepulvado's execution date, did he learn that the State intends to use the chemical pentobarbital in his execution. Mr. Sepulvado is therefore similarly situated to the plaintiff in *Nelson v. Campbell*, 541 U.S. 637 (2004) referred to in *Harris*, who challenged a "newly instituted" procedure. In fact, Mr. Sepulvado is faced with an even more daunting circumstance, because unlike the plaintiff in *Nelson*, Mr. Sepulvado is *still* unaware of all of the other vitally required information pertaining to the State's protocol.

The Defendant cites to *Walker v. Epps*, 550 F.3d 407 (5th Cir. 2008) for the proposition that an "inmate did not need to know all details of protocol before filing section 1983 action; it was enough to know that inmate was subject to lethal injection at the time his conviction was final." *Defendant's Memorandum in Opposition to Intervenor's Motion for Preliminary Injunction*, at 4. The Defendant, however, fails to provide this Court with an accurate picture of

{00111350.DOC}

the *Walker* decision. In *Walker*, the Fifth Circuit stated that "Mississippi adopted its lethal injection protocol in 1998. Since then, it has been no secret that Mississippi uses a three-drug combination used in other states." *Id.* at 416. The instant circumstance is distinguishable, as Mr. Sepulvado is unaware of *any* lethal injection protocol in Louisiana, and only learned yesterday about the drug that the State intends to use in his execution. Moreover, the court in *Walker* made clear that a change in execution protocol is an important consideration when deciding the timeliness of a §1983 challenge. *Id.* at 414 ("*in the event a state changes its execution protocol* after a death-row inmate's conviction has become final, the limitations period will necessarily accrue on the date that protocol change becomes final") (emphasis supplied).[2]

---

[2] Other federal courts have also stated that when the protocol is disclosed is an important consideration when considering whether a §1983 method-of-execution challenge is timely filed. In *Oken v. Sizer*, 321 F.Supp.2d 658, 664 (D.C. Md. 2004), the federal district court rejected the defendant's argument that the plaintiff "could have raised his challenge to any aspect of the State's lethal injection procedure years ago", *id.*, explaining:

> Because the State's Execution Protocol was amended as recently as May 26, 2004, it would have made little difference whether Oken's request had come any time before that date. As of that date, a different Protocol was put in place and, whatever changes it might contain, Oken was entitled to review it with his counsel and medical expert and attempt to challenge it. It can hardly be said that the filing of suit in this Court today, June 14, 2004, the Monday following the Friday that Oken's attorneys first received the Amended Execution Protocol, was untimely…
>
> Fundamental fairness, if not due process, requires that the execution protocol that will regulate an inmate's death be forwarded to him in prompt and timely fashion.

*Id.* (citations omitted). *See also Powell v. Thomas*, 784 F.Supp.2d 1270 (M.D. Ala. 2011), decision aff'd on other grounds, 641 F.3d 1255 (11th Cir. 2011), cert. denied, 131 S.Ct. 2487, 179 L.Ed.2d 1243 (2011) (finding that a death-sentenced inmate did not inexcusably delay in filing § 1983 action challenging his execution under the Eighth Amendment, because there was a recent change regarding one of the drugs used in state's lethal injection protocol,

The Defendant now argues that Mr. Sepulvado's request for a preliminary injunction should be denied because he "should not be allowed to wait until the eleventh hour to question the method of his execution." *Defendant's Memorandum in Opposition to Intervenor's Motion for Preliminary Injunction* at 4. However, in open court yesterday, the Defendant defended its refusal to disclose to Mr. Sepulvado any information regarding its execution protocol. And earlier today, on a telephone status conference call with undersigned counsel and this Court, the Defendant asserted that the instant §1983 action was frivolous because Mr. Sepulvado and Mr. Hoffman could not *prove* that the method-of-execution was in violation of the Eighth Amendment. The Defendant's conflicting arguments illustrate the catch-22 that Mr. Sepulvado has been forced to encounter. He can file a § 1983 action before the State has provided him with any information regarding its execution protocol—but the Defendant will call the suit frivolous. Or he can wait to file a § 1983 action until the State has disclosed its protocol—but such disclosure may never occur, and if it does, the Defendant will argue that the § 1983 claim is being made too late in time. The State's actions have put Mr. Sepulvado in the untenable situation of trying to challenge a protocol that has not been allowed to review; the State should not be allowed to benefit from their concealment.

---

and thus, the strong equitable presumption against a prisoner's motion for stay of execution did not apply) (citations omitted).

{00111350.DOC}

In its *Memorandum in Opposition to Intervenor's Motion for Preliminary Injunction*, the Defendants did not state that they would be prejudiced or harmed by this Court granting the preliminary injunction, in order to allow the judicial process to proceed in an orderly fashion. The State would be hard-pressed to argue otherwise in this case, given that the State declined to seek Petitioner's execution at any point in the nine years since he exhausted his initial appeals. Moreover, the public interest is served by according all Constitutional protections to a condemned prisoner, particularly one who has a substantial claim on the merits that, until recently, the federal courts have been unable to reach because of procedural considerations.

## II. CONCLUSION

Mr. Sepulvado respectfully requests that this Court issue a preliminary injunction preventing the Defendants and all other Louisiana officials and agents from executing him until the lethal injection records are disclosed and this action challenging lethal injection, as shown to be practiced in Louisiana under the protocols produced, has been resolved or terminated.

Respectfully submitted,

/s/ Gary Clements
Gary Clements, La. Bar Roll # 21978
Kathleen Kelly La. Bar Roll #25433
Capital Post-Conviction Project of Louisiana
1340 Poydras Street, Suite 1700
New Orleans, Louisiana 70112
Tel: (504) 212-2110; Facsimile: (504)212-2130
Counsel for Christopher Sepulvado

{00111350.DOC}