IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JESSIE HOFFMAN, <br>     *Plaintiff* <br><br> v. <br><br> BOBBY JINDAL, Governor of Louisiana; <br> BURL CAIN, Warden, Louisiana State <br> Penitentiary; JAMES LEBLANC, Secretary, <br> Louisiana Department of Public Safety and <br> Corrections; LOUISIANA DEPARTMENT OF <br> PUBLIC SAFETY AND CORRECTIONS; <br> ANGELA NORWOOD, Warden, Death Row; <br> and JOHN DOES, unknown executioners, <br>     *Defendants* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL ACTION <br><br> NO. 3:12-cv-00796 <br><br> JUDGE JAMES BRADY <br><br> MAGISTRATE JUDGE <br> STEPHEN RIEDLINGER |

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

MAY IT PLEASE THE COURT:

    The Motion to Dismiss is both procedurally improper and substantively misplaced. The Defendants have fought every step of the way to prevent Mr. Hoffman from obtaining information regarding the facts surrounding the lethal injection protocol (or lack thereof) which form the basis of his claims. Yet, in the Motion to Dismiss, the Defendants argue that this suit should be dismissed on fact-specific grounds which have not even begun to be developed in discovery. In any event, the Defendants fail to accept the allegations pleaded in Mr. Hoffman's Complaint as true, which underlies their fundamental understanding of the law surrounding 12(b)(6) dismissal. Ultimately, the Motion to Dismiss fails to show that the allegations in the Complaint (Rec. Doc. 1), do not state a claim on their face and that there is no possibility that discovery could lend support to the claims or their elements. *See Ashcroft v. Iqbal,* 556 U.S.

1

662, 678 (2009). As this Court's preliminary rulings make clear, the factual allegations made in Mr. Hoffman's Complaint state a claim upon which relief can be granted.

## STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The Fifth Circuit has emphasized that dismissal of a lawsuit under Rule 12(b)(6) is "disfavored and rarely granted." *Nottingham v. Richardson*, No. 11-11027, 2012 WL 6019093 at *1 & n. 1 (5th Cir. Dec. 4, 2012). Indeed,

> [a] claim may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The strict standard of review under rule 12(b)(6) has been summarized as follows: The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.

*Id.* (internal quotations omitted) (quoting *Conley*, 355 U.S. at 45–46); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)). Put simply, a 12(b)(6) motion may not be granted as long as Mr. Hoffman's claim is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re So. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008).

### I. Mr. Hoffman's Claim is Not Prescribed.

The allegations in Mr. Hoffman's complaint, which must be taken as true for purposes of the present motion, establish that the last-disclosed execution protocol in Louisiana (dated

January 7, 2010) became obsolete at an unknown date thereafter, and that as of the date of filing, no new protocol had been promulgated, announced, or disclosed. Complaint at ¶¶ 8-14. Even as it sought to maintain an Ash Wednesday execution date of Christopher Sepulvado, the Defendants refused to produce a copy of any protocol, despite repeated inquires from this Court. If a protocol does exist, the date it was promulgated is unknown. The only information that has been offered in this proceeding is (i) a Wikipedia printout allegedly stating the name of the drug the Defendants planned to use to execute Mr. Sepulvado—over a month after the filing of this lawsuit—and (ii) an affidavit from a pharmacist stating that drugs had been purchased by the State. Yet the Defendants ask this Court to hold that prescription began running on April 10, 2011—the date of a newspaper article quoting counsel for the Defendants as admitting that as a result of the unavailability of sodium thiopental, the state would need to change its protocol. *See* Complaint at ¶ 56 & Exhibit 2. The article does not state that a new protocol had been promulgated, much less describe the contents of any supposed protocol. *Id.* Nor does the article indicate which drug the State had chosen as a replacement for sodium thiopental. *Id.* Based on the allegations in the Complaint, there was no protocol, and the lethal drug was not disclosed until after the Complaint was filed.[1] Prescription has not run on this lawsuit.

The Fifth Circuit has held that a challenge pursuant to 28 U.S.C. § 1983 to a state's method of execution is subject to that state's statute of limitations for personal injury actions, and that the cause of action accrues on the later of two dates: (1) the date of completion of direct review of the conviction and sentence in the state court or, (2) if the protocol has changed, the

---

[1] Not only must these allegations be considered as true, but the statements of counsel for the Defendants before this Court makes clear that, to the extent the State has developed a new protocol, it has never made that fact known to Mr. Hoffman.

date the new protocol was instituted. *Walker v. Epps*, 550 F.3d 407, 415 (5th Cir. 2008). The Fifth Circuit's jurisprudence, however, does not speak to the applicable date of accrual where, although the former protocol has been rendered obsolete or impossible, a new protocol had yet to be promulgated. *Walker* dealt with a situation where the lethal injection protocol was adopted in 1998 and had not been changed by 2008. *Walker*, 550 F.3d at 416.

Here, as pleaded in the Complaint, several new protocols were instituted subsequent to the date Mr. Hoffman's conviction and sentence became final on direct review. *See* Complaint at 8-11. Thereafter, on an unknown date, the Department of Corrections' stock of sodium thiopental either expired or was depleted, making the last known protocol (dated January 7, 2010) invalid and obsolete. Complaint at ¶ 55. On April 25, 2012, during oral argument before the Louisiana First Circuit Court of Appeal, counsel for the Department of Corrections refused to provide answers to questions posed by the judges regarding whether the Department had adopted a new protocol. Complaint at ¶ 60. At the time of the filing of the Complaint, upon information and belief, there was *no operative protocol*; and even if the Department had adopted a new protocol, it refused to admit to its existence or provide a copy to Mr. Hoffman upon request. Complaint at 10-11.

It was not until over a month *after* the filing of the Complaint that the Department announced, in open court on February 5, 2013, that it had decided to use a dose of pentobarbital to execute condemned prisoners. As of this date, due to the intransigence of the Defendants, Mr. Hoffman has not seen a written execution protocol and doubts the existence of such. *See* Doc No. 29 (Order granting preliminary injunction, February 7, 2013). It would be a miscarriage of justice for this Court to hold that Mr. Hoffman's claims are prescribed, especially in light of this

4

Court's ruling finding that, at a minimum, the claim based upon lack of a disclosed protocol is likely to succeed on the merits. *See id.*

Finally, prescription is not a proper ground for a motion to dismiss under Rule 12(b)(6) where it is contingent upon undeveloped facts. *Watts v. Graves*, 720 F.2d 1416, 1423 (5th Cir. 1983). Here, the Defendants argue that Mr. Hoffman's claim is prescribed and at the same time have refused to disclose the date upon which its protocol, if any, was promulgated. No facts have been developed regarding what Louisiana's execution protocol entails, whether in fact there is a protocol, or, if the old protocol remains in place, what effect the switch to pentobarbital had on that protocol.

The Eleventh Circuit recently considered a similar case, where Alabama had expressly changed its protocol to replace sodium thiopental with pentobarbital. In *Arthur v. Thomas*, 674 F.3d 1257 (11th Cir. 2012), the plaintiff instituted his action two months after the state announced that it would be substituting pentobarbital for sodium thiopental in its three-drug lethal injection procedure. In a motion to dismiss, the state argued that the substitution of pentobarbital for sodium thiopental did not constitute a "significant change" in the lethal injection protocol such that the statute of limitations would begin anew. *Id.* at 1260 & n. 2. The Eleventh Circuit rejected the state's argument, noting that the question of "whether a significant change has occurred in a state's method of execution is a fact-dependent inquiry." *Id.* at 1260. Because, as in this case, the statute of limitations defense was raised in a motion to dismiss under Rule 12(b)(6), the court found that it had "no evidentiary basis whatsoever on which to conclude whether, as Arthur alleges, a 'substantial change' in Alabama's administration of its execution protocol has occurred." *Id.* at 1261.

5

> There has been no finding about the manner in which Alabama administers its lethal injections, no evaluation of whether Alabama's representations are accurate, and no opportunity whatsoever to contradict the State's assertions with Arthur's own evidence. **And the lack of factual development in this record is only exacerbated by Alabama's policy of maintaining secrecy surrounding every aspect of its three-drug execution method.**

*Id.* (emphasis added). The court concluded that the district court had committed reversible error in granting the state's motion to dismiss without any opportunity for factual development and discovery. *Id.* at 1262. In this case as well, it is inappropriate to resolve the fact-intensive issue of whether prescription has run on a motion to dismiss.

## II. Mr. Hoffman Properly States a Claim Against Bobby Jindal, James Leblanc, Angela Norwood and The State Of Louisiana Through The Department of Public Safety and Corrections.

Mr. Hoffman has stated a claim against all the Defendants. Unlike the cases cited by the Defendants, Mr. Hoffman's assertions are not based on pure vicarious liability but rather the stated policies and procedures of the State of Louisiana, the Department of Public Safety and Corrections, and the other Defendants who are statutorily required to participate in the execution process.

In fact, the Defendants fundamentally misunderstand Mr. Hoffman's claims and their statutory obligations. Mr. Hoffman's claims against the Defendants are not based on a theory of vicarious liability but rather based on the fact that all the Defendants are active participants in carrying out the unconstitutional policies of the State of Louisiana.

The Governor appointed Secretary James M. LeBlanc to carry out his policies with respect to the DOC. This power is statutorily conferred in Section 36:403 of the Louisiana Revised Statutes:

> There shall be a secretary of public safety and corrections who shall be appointed by the governor with consent of the Senate and who shall serve at the pleasure of

6

the governor at a salary fixed by the governor, which salary shall not exceed the amount approved for such position by the legislature while in session. The secretary shall serve as the executive head and chief administrative officer of the Department of Public Safety and Corrections and shall have the responsibility for the policies of the department except as otherwise provided by this Title, and for the administration, control, and operation of the functions, programs, and affairs of the department; however, the secretary shall perform his functions under the general control and supervision of the governor.

The Secretary is statutorily obligated to carry out the execution policies of Louisiana, For example, pursuant to Section 15:568:

The secretary of the Department of Public Safety and Corrections, or a competent person selected by him, shall execute the offender in conformity with the death warrant issued in the case. Until the time of his execution, the Department of Public Safety and Corrections shall incarcerate the offender in a manner affording maximum protection to the general public, the employees of the department, and the security of the institution

Similarly, pursuant to Section 15:570, the Warden of Angola is statutorily obligated to carry out various aspects of the lethal injection including acting as a witness or appointing someone else to act as witness, and summoning physicians. Additionally, the Secretary is responsible for coordinating the attendance of witnesses to an execution.

Angela Norwood, upon information and belief, is active in overseeing the Administrative Remedy system at Angola on death row. As such, she had an obligation to respond to Mr. Hoffman's request to see the enumerated plan of execution. In order to make any more specific determination of her liability, discovery is necessary.

Finally, numerous allegations are made against all Defendants throughout Mr. Hoffman's complaint. The Defendants assert that "there is no allegation of direct acts or omissions of Bobby Jindal, James LeBlanc, and Angela Norwood and their inclusion in this lawsuit is strictly based upon conclusory allegations of respondent [sic] superior." Memorandum in Support of Motion to Dismiss at 5. However, a careful reading of the complaint makes clear that Mr.

7

Hoffman alleges a plethora of constitutional violations against each Defendant. The fact that the allegations are made against "the Defendants" collectively and not against each individual defendant specifically has no bearing in analyzing whether the pleadings make sufficient allegations to defeat a Motion to Dismiss.

### III. The Defendants Are Not Entitled to Qualified Immunity Since They Have Violated Mr. Hoffman's Clearly Established Constitutional Rights.

Defendants' Motion to Dismiss with respect to qualified immunity should be denied. Issues of qualified immunity are best resolved once full and complete discovery has taken place. *See Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994) (holding that "summary judgment can rarely be granted without allowing the plaintiff an opportunity for discovery as to the questions bearing on the Defendants' claims of immunity"). All but one of the cases Defendants cite in support of qualified immunity took place after discovery. *See* Memorandum in Support of Motion to Dismiss 4-8 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (summary judgment); *Alton v. Texas A&M Univ.*, 168 F.3d 196, 199 (5th Cir. 1999) (summary judgment); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997) (summary judgment); *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995) (summary judgment); *Walton v. Alexander*, 44 F.3d 1297 (5th Cir. 1995) (summary judgment); *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443 (5th Cir.1994) (summary judgment); *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597 (5th Cir. 1988) (post-trial); *Lopez v. Houston Indep. Sch. Dist.,* 817 F.2d 351 (5th Cir. 1987) (summary judgment); *Kline v. North Texas State University*, 782 F.2d 1229 (5th Cir. 1986) (summary

judgment); *Thibodeaux v. Arceneaux*, 768 F.2d 737 (5th Cir. 1985) (post-trial); *Bennett v. Slidell*, 728 F.2d 762, 765 (5th Cir. 1984) (post-judgment)).[2]

Mr. Hoffman acknowledges that in order to fully understand the roles of the individually named Defendants further discovery is required. For example, Mr. Hoffman will seek information as to who supervises the required "practice sessions" contemplated in *Baze v. Rees*, 553 U.S. 35, 55 (2008). Additionally, Mr. Hoffman will also seek to determine who promulgates the constitutionally required protocols and who decides when and if those documents should be made publically available. Without this information, neither Mr. Hoffman nor this Court can make a fully informed decision regarding qualified immunity.

However, even if the court chooses to make an initial determination of qualified immunity, Mr. Hoffman must prevail. The Defendants accurately state the two prong approach traditionally applied to analyzing the issue of qualified immunity: (1) "whether the defendant's conduct violated the Constitution" and (2) whether these actions violated "clearly established" law. *Pearson v. Callahan*, 555 U.S. 223, 238 (2009). Mr. Hoffman's claims as set forth in the Complaint satisfy both prongs of the *Pearson* test.

Beginning with the first prong, as this Court has already found, "[f]undamental fairness requires that the inmate be given meaningful and adequate notice of how his rights have been affected by the changes in the execution protocol." Rec. Doc. 28, p. 3. Clearly, Mr. Hoffman has properly pleaded a violation of the Constitution, which is the reason this Court prohibited the State from executing Mr. Sepulveda.

---

[2] In fact, the only case cited by Defendants in which the issue of qualified immunity was decided prior to discovery was *Polk County v. Dodson*, 454 U.S. 312 (1981). There, the Court found that a public defender did not act under the color of state law when it performed its duties as an attorney. The Court relied on the reasoning that, as a matter of law, a public defender is an adversary of the state when it represents a criminal defendant.

The Defendants' characterization of the similarities between the present case and *Thorson v. Epps,* 701 F.3d 444 (5th Cir. 2012) are exaggerated. While both cases address the constitutionality of a lethal injection procedure, the facts of the two cases are vastly different. In the present case, despite Mr. Hoffman's numerous attempts to obtain the State's planned method of execution well in advance of any execution date being set, the State has remained intransigent in its refusal to disclose any information regarding the protocol it intends to follow in the event of an execution. In *Thorson*, the challenges to the protocol were not grounded in due process but rather addressed specific aspects of the promulgated protocol that had been disclosed. *Id.* at 447.

In fact, *Thorson* simply further establishes the existence of a right to review the protocol for constitutional safeguards. The Fifth Circuit found the execution method in *Thorson* was constitutional because:

> Mississippi's written instructions detail virtually every step related to an execution. Those steps not written are systematically ensured by conscientious training, repeated practice runs, and the experience of the participants relied on by the prison.

*Id.* Mr. Hoffman has been denied any ability to review the planned execution protocol and therefore to make a determination as to the constitutionality of the protocols.

Turning to the second prong of the *Pearson* analysis, it is clearly established that an inmate condemned to die must be given the chance to know and review how he will be executed to ensure constitutional safeguards. The right to access, review, and challenge how the state chooses to execute an inmate is well established. *Baze v. Rees* and *Thorson* make this clear. It is clearly established that the State has an obligation to ensure that it can perform a constitutional execution and that those facing execution have a right to challenge those executions. By carrying out a state policy that clearly violates the Constitution through its denial of due process

10

and presenting a risk that is "sure or very likely to cause serious illness and needless suffering" the Defendants are not entitled to qualified immunity. *Baze*, 553 U.S at 50.

**IV.    This Action is not Barred by the Eleventh Amendment.**

Defendants assert this action is barred by the Eleventh Amendment. It is not. Under the longstanding doctrine of *Ex parte Young*, 209 U.S. 123 (1908), federal courts may enforce federal constitutional and statutory rights in actions against state officials seeking prospective injunctive relief. In determining whether *Young*'s exception to sovereign immunity applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Public Service Comm. of Maryland*, 535 U.S. 635, 645 (2002). The court need not look to the merits of the suit to determine whether *Young* applies; an allegation in the complaint will suffice. *Id*. Here, Mr. Hoffman has alleged, *inter alia*, that "by refusing to disclose the protocol, the Defendants have denied Mr. Hoffman the ability to effectively enforce his Eighth Amendment rights;" "executing Mr. Hoffman without giving him a fair opportunity to review the lethal injection protocol and lodge any legal objections violates due process;" and "[e]xecuting Mr. Hoffman using any purported protocol without promulgating a new protocol would violate Mr. Hoffman's rights to due process and to be free from cruel and unusual punishment." Complaint at 18-22. Because Mr. Hoffman has alleged ongoing and future violations of federal law seeking prospective relief, and his allegations are "not clearly frivolous," sovereign immunity presents no bar to this action. *See Dombrowski v. Pfister*, 380 U.S. 479, 484 & n. 2, 490 (1965) (reversing dismissal of complaint challenging Louisiana's Subversive Activities and Communist Control Law, because the complaint was "not clearly frivolous" and established a claim properly under the rubric of *Ex parte Young*).

11

Defendants cite to no case in which a federal court has dismissed a suit challenging an execution protocol on Eleventh Amendment grounds. Nor can they, as this argument has been roundly rejected by the courts. In *Thorson v. Epps*, a challenge under Section 1983 to Mississippi's lethal injection protocol, the district court noted that "suits for prospective injunctive relief against a state official who is alleged to be acting in violation of federal law are not barred by the Eleventh Amendment." 2009 WL 1766806 (N.D.Miss. June 22, 2009) (citing *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) and *Cox v. City of Dallas, Tex.*, 256 F.3d 281, 307–08 (5th Cir. 2001)). In the district court's decision in *Baze v. Rees*, the court rejected the state officials' assertion of Eleventh Amendment immunity and held that

> the Eleventh Amendment does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief. Baze's federal claims for injunctive or declaratory relief are not clearly frivolous or malicious on their face, and they state a claim for which relief could be granted.

*Baze v. Kentucky Dept. of Corrections*, 2008 WL 5082881 (E.D.Ky. Nov. 20, 2008). *See also Henderson v. Thomas*, 2012 WL 3846439, at *14 (M.D.Ala. Sept. 5, 2012) (holding that prisoners' claim that Alabama Department of Corrections' policy of segregating HIV-positive prisoners from general prison population violated the ADA and were not barred by the Eleventh Amendment sovereign immunity).

Finally, the Defendants make the factual assertion that the claims against Governor Jindal and Warden Norwood must be dismissed because "[n]either Defendant has the authority to enforce the death penalty statute." Memorandum in Support of Motion to Dismiss at 10. The Complaint, however, which must be taken as true, alleges that "Governor Jindal is responsible for overseeing the DOC in its supervision of Warden Cain [who in turn is responsible for overseeing the execution protocol,]" and has the responsibility of appointing the Secretary of the

DOC, and that "Warden Norwood is responsible for assisting Warden Cain in ensuring that there is a constitutional method of executing Mr. Hoffman." Complaint at 3, 18. These allegations establish a sufficient relationship between the alleged harm (death by an undisclosed and/or unconstitutional execution protocol) and the Defendants. The *Ex parte Young* doctrine is not limited to the single state officer with ultimate supervisory authority over any given law or government function. To the contrary, all that *Ex parte Young* requires is that the official have "some connection with the enforcement of the act, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *Ex parte Young*, 209 U.S. at 157. *See also K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (discussing *Ex parte Young*). The Defendants' citation to *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) is simply misplaced, as that the decision came after discovery and was not a ruling on the pleadings.[3] Here, there has been no discovery and any issues surrounding Governor Jindal and Warden Norwood's connections to executions are inappropriate to resolve in a Rule 12 (b)(6) motion to dismiss. *See Death Row Prisoners of Pennsylvania v. Ridge*, 948 F.Supp. 1258 (E.D. Pa. 1996) (holding that factual issues regarding the authority possessed by Defendants cannot be resolved in a motion to dismiss).

## V.    Mr. Hoffman Has Standing to Seek Damages

Mr. Hoffman's allegations regarding his injury are sufficient to maintain his claim for emotional distress. As reiterated several times above, further discovery and investigation will be forthcoming. At this stage, Mr. Hoffman's allegations must be construed in a light most favorable to him. Defendants have not shown through law that he is not entitled to this recovery.

---

[3] Additionally, the portion of the opinion in *Okpalobi* discussing the application of a higher standard for determining "connection" under *Ex parte Young* did not garner majority support and as such is not binding precedent. *K.P.*, 627 F.3d at 125.

## CONCLUSION

For the reasons stated herein, Mr. Hoffman requests that this Court deny the Defendants' Motion to Dismiss and allow this suit to proceed.

Respectfully submitted,

/s Michael D. Rubenstein_____
Michael D. Rubenstein (Bar No. 22860)
Liskow & Lewis
1001 Fannin Street, Suite 1800
Houston, TX 77002
Tel. (713) 651-2953
Fax (713) 651-2952

Cecelia Trenticosta Kappel (Bar No. 32736)
Mercedes Montagnes (Bar No. 33287)
The Promise of Justice Initiative
636 Baronne Street
New Orleans, LA 70113
Tel. (504) 529-5955
Fax (504) 558-0378

*Attorneys for Jessie Hoffman*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and forgoing was filed electronically with the Clerk of Court using CM/ECF on this 14th day of March, 2013. Notice of this filing as generated by the electronic filing system constitutes service of the filed document on counsel for the Respondent.

/s Michael D. Rubenstein_____
Michael D. Rubenstein