## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JESSIE HOFFMAN | : | CIVIL ACTION NO. 12-796 |
| | : | |
| VERSUS | | JUDGE JAMES J. BRADY |
| | : | |
| BURL CAIN, ET AL | : | MAGISTRATE JUDGE STEPHEN C. RIEDLINGER |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS JESSIE HOFFMAN'S COMPLAINT**</u>

MAY IT PLEASE THE COURT:

Defendants, the State of Louisiana, through the Department of Public Safety and Corrections ("DPSC"); Governor Bobby Jindal ("Jindal"); Secretary James D. LeBlanc ("LeBlanc"); Warden Burl Cain ("Cain"); and Assistant Warden Angela Norwood ("Norwood") (collectively referred to herein as "Defendants") submit the instant reply memorandum in support of Defendants' Motion to Dismiss [Doc. 40].

<u>***1. Plaintiff's Memorandum In Filled With Statements Outside of the Scope of the Complaint That Cannot Be Considered.***</u>

Plaintiff's opposition memo [Doc. 46] is filled with argument of counsel and discussion of matters outside of the scope of the four-corners of Plaintiff's complaint.  Because the only matters of interest in a motion to dismiss are factual allegations contained in the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1955, 173 L.Ed.2d 868 (2009), unsupported assertions by counsel and factual allegations not included in his complaint should

1

not be considered.

### *2. Plaintiff Misstates the Applicable Standard for a Rule 12b Motion.*

In his brief, plaintiff cites outdated and overruled jurisprudence for the legal standard for Rule 12(b)(6) dismissal. Plaintiff relies on the fifty-six year old case of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and other outdated cases. He articulates the legal standard as requiring the complaint to be maintained unless "the plaintiff can prove no set of facts." [Doc. 26, p. 2.]  Plaintiff's reliance on *Conley* however, is incorrect.

First, the Supreme Court expressly abrogated *Conley* in 2007 in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and again in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1955, 173 L.Ed.2d 868 (2009). Beginning with the Supreme Court's opinion in *Twombly,* and culminating recently with the Supreme Court's decision in *Iqbal,* pleading standards have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.  In fact, the *Twombly* Court expressly rejected the *Conley* standard of "no set of facts," stating that "after puzzling the profession for 50 years, this famous observation has earned its retirement" and "is best forgotten."  *Twombly,* 544 U.S. at 563.

Further, the Supreme Court's opinion in *Iqbal* makes clear that the *Twombly* "facial plausibility" pleading requirement applies to all civil suits in the federal courts. After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* at 1949. To prevent dismissal, all civil complaints must now

set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal,* 556 U.S. at 678. Neither are courts "bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

### 3. Plaintiff's Claims Are Prescribed.

In his brief to the Court, Hoffman also cites the wrong prescription standard. The U.S. Fifth Circuit in *Walker v. Epps,* 550 F.3d 407 (5th Cir. 2008) set forth the accrual dates in "method of execution" action, such as this. The *Walker* court announced that such actions accrue on the later of two dates: 1. the date direct review of an individual case is complete, or 2. the date on which the challenged protocol was adopted. *Id,* at 414-415. The limitations period begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id,* at 414.

There is no question that more than one year has passed from date of finality of Hoffman's sentence. Now, Hoffman claims that the filing of his complaint in this case was timely, because the lethal injection drug in the protocol had to be changed. Therefore, he argues, his complaint is not prescribed.

However, based on the allegations in his complaint, Hoffman admits that he has known

3

since at least April 10, 2011 that DOC would change the drug combination.[1] [Doc. 1, par. 56.] Because by this date, he had sufficient information to know that the drug would be changed, the statute of limitation began to run at least by April 11, 2011. This lawsuit was not filed until December 20, 2012, a difference of greater than one year.

A section 1983 action accrues when a plaintiff knows or has reason to know of the injury which is the basis of the action. Hoffman has failed to show any reason or make any argument that he did not know on or before April of 2011 of any of the allegations which make up the basis of his complaint. To the contrary, he states he was made aware on or about April of 2011. Therefore, his claim is prescribed.

Hoffman however argues that the change of the drug combination restarts the limitation period. Luckily, this exact question has already been decided, answering this question in the negative. Other courts in virtually identical "method-of-execution" cases have rejected the argument that the mere change of a drug is considered a new protocol and therefore start the statute of limitation period anew. *Powell v. Thomas,* 643 F.3d 1300 (11th Cir. 6/15/2011) (argument that Eighth Amendment claim to Alabama's lethal injection protocol because of change of drugs was rejected, as the change was not a significant alteration in the injection protocol"); *DeYoung v. Owens,* 646 F.3d 1319 (11th Cir. 7/20/2011) (inmate became subject to execution protocol when Georgia Supreme Court declared that all future execution shall be by lethal injections; substitution of drugs did not substantially change the execution protocol); and

---

[1] He also admits that he should have known at least six months earlier - October 28, 2010 – that DOC would change the drug. [Doc. 1. Par. 55.]

4

*Valle v. Singer*, 655 F.3d 1223 (11th Cir. 9/7/2011) (Florida's substitution of drugs did not restart the statute-of-limitation clock).

Furthermore, allowing a dilatory plaintiff to restart the statute of limitations clock when only one item in an entire procedure is changed is contrary to the principle of limitation periods, which is to foreclose stale claims. Hoffman acknowledges the complexity of the injection protocol when he states that it consists of "prison directives, checklists, and any other documents" [Doc. 1, par. 25], much more than the identity of the execution drugs. In fact, Hoffman attacks in his complaint other portions of the protocol which would not have been affected by the change in the drug. Specifically, he questions whether the 2010 Protocols provide adequate safeguards, the placement of tubing, the qualifications and training of the injection team, the storage of the drugs, and the equipment used during executions. [Doc. 1, pars. 68, 76-9.] Because none of these challenges pertain to the drugs and should have been known to Hoffman long before, they may not be saved from a statute of limitation challenge. See, *Valle,* 655 F.3d at 1236:

> "Since the facts supporting Valle's claim of an already broken lethal injection process and botched executions should have been apparent to any person with a reasonably prudent regard for his rights, in 2006, Florida's switch to pentobarbital does not awaken this long stale claim. Accordingly, Valle has not shown that he has a substantial likelihood of success on the merits of his claims in that the statute-of-limitations clock did not restart in 2007 when Florida adopted additional safeguards in its lethal injection protocols. Moreover, the substitution of pentobarbital did not reset the statute of limitations." (Internal citations omitted.)

Additionally, accepting Hoffman's argument would mean that any change in a protocol - no matter how minor or inconsequential - restarts the limitation period, placing an unimaginable

5

burden on Defendants to continuously defend lethal injection litigation when minor changes occur. Changing one item in a detailed procedure is not a new protocol for the purpose of prescription.

Hoffman also argues that, because a drug is not available, no valid protocol exists. [Doc. 46, p. 3.] In addition to being over-exaggerated, this argument is illogical. Simply because one portion in otherwise admittedly lengthy procedure is changed does not mean that the State has no protocol. See, *Valle, supra, DeYoung, supra;* and *Powell, supra.*

By Hoffman's own allegations, he knew that Louisiana did not have sodium thiopental since October 28, 2010 (and at the very latest April 10, 2011). He could have filed the instant action on that basis alone. Nothing in his complaint has changed since that time. See, *Walker,* 550 F.3d at 417, where the U.S. 5th Circuit stated that "[w]e cannot accept that the State fraudulently concealed the plaintiffs' cause of action, given that the plaintiffs were aware that they were subject to execution by lethal injection from the moments their conviction became final. The plaintiffs could have filed their section 1983 action on the basis of this fact alone, within the limitations period. They did not need the detailed information they allege the State belatedly disclosed to file their action." The Sixth Circuit has likewise rejected the argument that a death-row inmate does not have all the facts sufficient to file a § 1983 action until he is given all the details. *Cooey v. Strickland,* 479 F.3d 412, 222 (6th Cir. 2007) ("Cooey asserts, and the district court found, that Cooey did not have actual knowledge of Ohio's protocol until May 2002 when he received responses to his inquiries from the Warden. Actual knowledge, however, is not the appropriate measure; the test is whether he knew or should have known based upon

6

reasonable inquiry, and could have filed suit and obtained relief. Cooey should have known of his cause of action in 2001 after amendments to the law required that he be executed by lethal injection."

Just in *Walker* and *Cooey,* Hoffman was aware that he was to be executed via lethal injections since his conviction was final in 2000. Since 1991, Louisiana law has provided that "[e]very sentence of death …. shall be by **lethal injection**; that is, by the **intravenous** injection of a substance or substances in a lethal quantity into the body of a person convicted until such person is dead." La. R.S. 15:569(B). (Emphasis supplied.) Thus, he has always known that he will be executed by lethal injection intravenously. That has never changed, since his conviction became final in 2000.

Hoffman's complaint that he was not provided all of the details of an execution has been likewise rejected. In *Powell v. Thomas,* 643 F.3d 1300 (11th Cir. 6/15/2011), the plaintiff, Powell, claimed that the change of drug in Alabama's execution protocol was unconstitutionally cruel and unusually. The Eleventh Circuit found that the complaint was too-late, rejecting Powell's argument that the "secrecy" surrounding Alabama's execution protocol affected the plaintiff's limitation period. Specifically the court stated that:

> "Powell could have challenged the ADOC's "secrecy" surrounding the method of execution beginning July 31, 2002 [when Alabama switched its execution method to execution], as the facts supporting this cause of action should have been apparent to any person with a reasonably prudent regard for his rights. Indeed, as Powell acknowledges in his opening brief, '***Alabama does not mandate by statute or regulation what drugs are to be used in conducting a lethal injection, and the ADOC may change the drugs used in the protocol at any time for any reason without notice or oversight, ... and the drug used is subject to change at any time.***' Thus, ***Powell fails to show how his claim about the secrecy surrounding the ADOC's recent change in lethal injection protocol was***

7

>   *revived by the ADOC's 2011 switch in drugs*. … The district court, therefore, did not err in finding Powell's second claim for relief barred by the statute of limitations as well."

*Id,* at 1305. (Emphasis supplied.) (Internal citations omitted.) Just as Powell, Hoffman has known since his sentence became final the method by which he will be executed. Furthermore, at no point has Louisiana's statute listed the drug(s) to be used, leaving that to DPSC. This has never changed during the almost thirteen years since Hoffman's sentence has become final. There is no reason that this lawsuit could not have been filed within one year of either October, 2010 or April, 2011, the dates that Hoffman knew or should have known that the drugs would have changed. Hoffman's own admission undercut his argument that the complaint is not prescribed.

### 4. Hoffman Has Failed to State a Claim Against Defendants DPSC, Jindal, LeBlanc, and Norwood.

<u>DPSC</u>. Because a state and its agencies are not "persons" under § 1983, *Will v. Michigan,* 491 U.S. 58, 109 S.Ct. 214 (1989), Hoffman cannot a suit against DPSC pursuant to § 1983. As a state agency, DPSC is not a "person" subject to suit. *McGuire v. Lafourche Parish Work-Release Facility,* 2009 WL 4891914, (E.D.La.,2009), *citing Will, supra*; *Hyatt v. Sewell,* 197 Fed. App'x 370 (5th Cir.2006); *Cronen v. Texas Dep't of Human Services,* 977 F.2d 934, (5th Cir.1992); *Levy v. Office of Legislative Auditor,* 362 F.Supp.2d 729, (M.D.La.2005); *Goins v. State of Louisiana,* , 2004 WL 2694899, (E.D.La. Nov. 22, 2004); *Greer v. Tran,* 2003 WL 21467558, (E.D. La. June 23, 2003). Hoffman has cited no law to contradict DPSC's argument.

<u>Jindal, LeBlanc, Norwood.</u> Supervisory officers, like Jindal, LeBlanc, and Norwood, cannot be held liable under § 1983 on any theory of vicarious liability. *Alton v. Texas A&M*

*University,* 168 F.3d 196 (5th Cir. 1999). Only the direct acts or omissions of government officials, will give rise to individual liability under § 1983. *Id*. Hoffman's statement that "[t]he fact that the allegations are made against 'the Defendants' collectively and not against each individual defendant specifically has no bearing" is an incorrect statement. In fact the opposite is true. Failure to articulate specific acts or omissions by Defendants individually is fatal to Hoffman's claims.

Because Hoffman points to no individual acts or omissions committed by Jindal, LeBlanc or Norwood that arguably diminishes his constitutional rights, the only of theory of liability possible is vicarious. As explained in Defendants' original memorandum, the complaint contains no facts that Jindal, LeBlanc, or Norwood had any direct participation or were "active participants" in carrying out the execution procedures.

For the first time in his opposition memorandum, Hoffman claims that Jindal's liability stems from his power to appoint the Secretary of DPSC. [Doc. 46, p. 6-7.] Even so, that authority alone falls short of establishing any connection between Jindal and the allegedly unconstitutional lethal injection procedure. Jindal should be dismissed.

For the same reason, Hoffman fails to plead any facts support direct participation by LeBlanc, only that he oversees Warden Cain. [Doc. 1, par. 96.] Again, conclusory allegations of respondeat superior are insufficient to establish liability as to LeBlanc.

With respect to Defendant Norwood, Hoffman now claims for the first time in brief that she "is active in overseeing the Administrative Remedy systems at Angola." Even assuming that this new fact can be considered, Norwood's involvement in the Administrative Remedy

9

procedure has no bearing on lethal injection executions. Hoffman still fails to articulate a viable claim against Norwood, and the claims against her must be dismissed.

### 5. Defendants Are Entitled to Qualified Immunity.

Qualified immunity is "immunity from suit rather than a mere defense to liability," which the U.S. Supreme Court has repeatedly "stressed the importance of resolving … at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991). Furthermore, immunity ordinarily should be decided by the court long before trial. *Id.*

In suits brought under federal law, government employees are presumptively entitled to the defense of qualified immunity, and once the defense is asserted, the burden shifts to the plaintiff to show that immunity does not bar recovery. *Salas v. Carpenter,* 980 F.2d 299, 306 (5th Cir.1992); *Bennett v. City of Grand Prairie, Tex.,* 883 F.2d 400, 408 (5th Cir.1989).

Because the doctrine is designed to protect public officials from "the broad-ranging discovery that can be peculiarly disruptive of effective government," questions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery. *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal quotations omitted). "Accordingly, [the Fifth Circuit] requires that § 1983 plaintiffs meet heightened pleading requirements in cases, such as this, in which an immunity defense can be raised." *Jackson v. City of Beaumont Police Department,* 958 F.2d 616, 620 (4th Cir. 1992) (citing *Geter v. Fortenberry,* 849 F.2d 1550, 1553 (5th Cir.1988)). Because Defendants have invoked the qualified immunity defense, the burden is on Hoffman to satisfy

10

the heightened pleading standard, which he has failed to do. He cannot simply continue to assert that "further discovery is required." [Doc. 46, p. 9.]

Furthermore, the U.S. Supreme Court has declared that in order to be "clearly established," the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson, supra*. The question of whether the right was clearly established requires an assessment of whether the official's conduct would have been objectively reasonable ***at the time of the incident***. *Conroe Creosoting Co. v. Montgomery County,* 249 F.3d 337, 340 (5th Cir.2001). An official's conduct is protected by qualified immunity ***unless the very action in question has been held unlawful***. *Kinney,* 367 F.3d at 349-350, citing *Anderson, supra.*

An official does not lose qualified immunity merely because a certain right is clearly established in the abstract. *Id.* It is clearly established that the government may not deny due process or inflict cruel and unusual punishments, for example, but those abstract rules give officials little practical guidance as to the legality of particular conduct. *Id.* Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful. *Id.*

Hoffman points to no specific act or omission by any of the individual Defendants which has been held unlawful. *Kinney, supra.* While he makes the sweeping statement that "it is clearly established that an inmate condemned to die must be given the chance to know and review how he will be executed," [Doc. 46, p. 10], such a statement is vague and abstract and stops short of the "particularized" standard required by the jurisprudence. Because it is

11

undisputed that capital punishment is constitutional, *Baze v. Rees,* 553 U.S. 35, 47, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), Hoffman point to a particular act previously identified as unconstitutional. Because he has been unable to do so, Jindal, LeBlanc, Cain, and Norwood are entitled to qualified immunity.

### *6. Defendants Are Entitled to 11th Amendment Immunity.*

Plaintiff fails to address the defendant's individual and official status when arguing that defendants are not entitled to Eleventh Amendment Immunity. He simply argues that other cases citing this cause of action have proceeded and they must have therefore stated a claim. However, the Eleventh Amendment is not a defense based upon a cause of action, but rather jurisdiction. As such, Fed. R. Civ. P. 12(b)(1) dictates that the Court lacks subject matter jurisdiction to hear and decide the plaintiff's claims under 42 U.S.C. §1983 filed against the State of Louisiana through the Department of Public Safety and Corrections and against Governor Bobby Jindal, Secretary James D. LeBlanc, Warden Burl Cain and Assistant Warden Angela Norwood in their official capacity for damages. The Eleventh Amendment bars a state's citizens from filing suit against the State in federal court unless the state has waived its immunity. *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F. 3d 273, 280 (5th Cir. 2002). A state is not a "person" under 42 U.S.C. §1983. *Will v. Michigan*, 491 U.S. 58, 70, 109 S. Ct. 2314, 2312 (1989). Therefore, the Eleventh Amendment deprives this court of jurisdiction over plaintiff's claims against DPSC and against the State defendants in their official capacity. All such claims against them for damages in their official capacity must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12 (b)(1). *Warnock v. Pecos County, Texas*, 88 F. 3d 341,

343 (5th Cir. 1996).

Hoffman does contest that Jindal and Norwood do not have the requisite connection to the lethal injection protocols. The requirement that the defendant state official have some connection with the alleged unconstitutional act or statute stems from *Ex Parte Young* itself. The Supreme Court stated that "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, ***it is plain that such officer must have some connection with the enforcement of the act***, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id,* at 157. (Emphasis added.)

As stated earlier, the only connection that Hoffman makes in the complaint concerning Jindal is that he is responsible for overseeing DOC in its supervision of Cain. The law, however, makes the secretary of DPSC responsible for executing offenders sentenced to death. La. R.S. 15:568. Because this factual allegation is rebutted by the law, the Court is not required to accept it as true. Hoffman's second assertion that Jindal has the requisite connection, because the Governor appoints the Secretary of DPSC is insufficient as well. See, *Doe v. Jindal,* 2011 WL 3925072 (E.D. La. 9/7/2011) (court rejected as insufficient the contention that, because the Governor appoints the officials charged with enforcing the crime against nature criminal statute and, because the Governor has general duty to see that the laws are faithfully executed, a sufficient nexus existed between the Governor and the alleged unconstitutional statute.) Just as in *Doe*, Hoffman fails to articulate any connection greater that the Governor appoints DPSC's Secretary.

13

For the same reason, Hoffman has failed to articulate a nexus between Norwood and the challenged death penalty protocols. The statement that she is responsible for assisting Cain in ensuring there is a constitutional method of executing Hoffman is an improper legal conclusion couched as facts. *Iqbal, supra.* As to newly raised allegation that Norwood is active in overseeing the Administrative Remedy systems at Angola, it is unrelated to the claims in this lawsuit - that the injection protocols were not provided to Hoffman or the protocols amount to cruel and unusual punishment.

### *7. Hoffman Has Not Disputed His Failure to State a Claim Against Defendants in Their Individual Capacities for Injunctive Relief.*

Hoffman has failed to address Defendants' argument he is not entitled to seek equitable relief against Jindal, LeBlanc, Cain, or Norwood individually. By not addressing this argument, he has effectively conceded that injunctive relief is unavailable as to Jindal, LeBlanc, Cain or Norwood individually, and that this Court should dismiss these claims.

### *8. Hoffman Has No Standing to Seek Monetary Damages for Alleged Emotional Distress Damages.*

Plaintiff has set forth no allegation of injury. His argument for maintaining a damage claim is contained in four sentences that state that discovery and investigation are forthcoming and that his allegations are to be construed in the light most favorable to him. He has alleged no injury in his complaint and discovery will not produce some unknown physical injury that plaintiff does not know about or can not allege at this time. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), states that a prisoner can not recover for emotional or mental damages without a showing of a specific physical injury. *Herman v. Holiday*, 238 F.3d 660 (C.A.5 (La.),

14

2001). More specifically, 42 U.S.C. § 1997e(e) states in pertinent part that, "No federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury."

There is no allegation whatsoever of any physical injury. Plaintiff's request for monetary damages should be dismissed as he lacks standing to bring forth a claim for damages.

**Respectfully Submitted:**

**James D. "Buddy" Caldwell**

_s/Jacqueline B. Wilson_
**SHOWS, CALI & WALSH, L.L.P.**
E. Wade Shows, LA Bar No. 7637, ews@scwllp.com
Jacqueline B. Wilson, LA Bar No. 31055, jbw@scwllp.com
628 St. Louis Street (70802)
Post Office Drawer 4425
Baton Rouge, LA 70821-4425
Phone: (225) 346-1461
*Special Assistant Attorneys General*

David G. Sanders (La. Bar Roll No. 11696)
Douglas G. Swenson (La. Bar Roll No. 28773)
Assistant Attorneys General
**Louisiana Department of Justice**
Litigation Division
1885 North 3rd Street
P. O. Box 94005
Baton Rouge, Louisiana 70804-9005
(225) 326-6300 Telephone
(225) 326-6192 Facsimile
E-Mail Address: swensond@ag.state.la.us

*Counsel for Governor Bobby Jindal, Secretary James D. LeBlanc, Warden Burl Cain, Assistant Warden Angela Norwood and the State of Louisiana through the Department of Public Safety and Corrections*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on the **28th** day of **March, 2013**, a copy of the foregoing has this date been served upon all counsel of record via CM/ECF system and has been filed electronically with the Clerk of Court using the CM/ECF system.

           _/s/ Jacqueline B. Wilson_
           JACQUELINE B. WILSON