UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JESSIE HOFFMAN, ET AL.

CIVIL ACTION

VERSUS

NO. 12-796-JJB

BOBBY JINDAL, ET AL.

**RULING ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on two motions to dismiss filed by Defendants Governor Bobby Jindal, Secretary James D. LeBlanc, Warden Burl Cain, Assistant Warden Angela Norwood and the State of Louisiana through the Department of Public Safety and Corrections ("DPSC") (collectively "Defendants"). (Docs. 40 and 42[1]). Plaintiff Jessie Hoffman ("Hoffman") has filed an opposition (Doc. 46), to which Defendants have filed a reply. (Doc. 53). Hoffman has filed a sur-reply. (Doc. 55). Intervenor Christopher Sepulvado ("Sepulvado") has filed an opposition (Doc. 50), to which Defendants have filed a reply. (Doc. 58). Oral argument is not necessary. For the reasons herein, the Court DENIES Defendants' Motions to Dismiss. (Docs. 40 and 42).

I.

Hoffman and Sepulvado are both incarcerated under a sentence of death at the Louisiana State Penitentiary, in Angola, Louisiana ("Angola"). On December 20, 2012, Hoffman filed this action against Defendants pursuant to 42 U.S.C. § 1983, challenging the undisclosed method of execution as cruel and unusual punishment. (Doc. 1). On January 23, 2013, Sepulvado filed a motion to intervene (Doc. 11) and on January 31, 2013, Sepulvado requested a preliminary injunction to stay his execution, which was scheduled for February 13, 2013. (Doc. 14). On

---

[1] Doc. 40 is a motion to dismiss as to Hoffman and Doc. 42 is a motion to dismiss as to Sepulvado.

February 6, 2013, this Court granted his motion to intervene (Doc. 26), and on February 7, 2013, this Court granted Sepulvado's motion for a preliminary injunction and stayed his execution. (Docs. 27 & 28). On February 15, 2013, Defendants appealed from this Court's order to the United States Court of Appeals for the Fifth Circuit. (Doc. 38). However, this pending appeal does not divest this Court of jurisdiction. *See United States v. Lynd*, 321 F.2d 26, 28 (5th Cir. 1963).

II.

The following facts are taken from Hoffman's complaint (Doc. 1)[2] and are accepted as true for the purposes of this motion. *See Bass v. Stryker Corp.*, 669 F.3d 501, 507 (5th Cir. 2012). In 1991, Louisiana adopted lethal injection as its method of execution. Lethal injection is defined as "the intravenous injection of substance or substances in a lethal quantity into the body of person convicted until such person is dead." La. R.S. § 15:569. The Secretary of the DPSC is charged with executing "the offender in conformity with the death warrant issue in the case." La. R.S. § 15:568. The "remaining details are left to the discretion of the DOC in developing and adopting an execution protocol." (Doc. 1, ¶ 20).

The DOC's lethal injection protocol contains "prison directives, checklists, and any other documents that guide the prison in its administration of lethal injection," and has been revised multiple times since 1991. (Doc. 1, ¶ 25). The most recent protocol available is from 2010 ("2010 Protocol"), which provides for the administration of three drugs: first, sodium thiopental; second, pancuronium bromide; and third, potassium chloride. Sodium thiopental is an anesthetic, which is administered to "prevent the inmate from suffering torture and pain when the second and third drugs are administered." (Doc. 1, ¶ 28). If an individual is not properly anesthetized, the administration of pancuronium bromide and potassium chloride causes excruciating pain and

---

[2] The complaints are substantially similar and any factual distinctions between the complaints will be noted.

suffering. However, sodium thiopental is no longer available in Louisiana. In a letter dated October 28, 2010, general counsel for DOC indicated that that the DOC did not have sodium thiopental in stock. In a local newspaper article dated April 10, 2011, representatives of the DOC recognized the "need to revise the protocol due to the unavailability of sodium thiopental in Louisiana." (Doc. 1, ¶ 56).

Both Hoffman and Sepulvado have unsuccessfully tried to obtain the lethal injection protocol from the Defendants.[3] On July 18, 2012, Hoffman made a Louisiana Public Records Act request for the current protocols pursuant to La. R.S. §§ 44:1 *et seq*. On July 30, 2012, DOC denied the request, explaining that the requests "were exempted from disclosure because they include internal security information," and "because the protocol is not subject to the Administrative Procedures Act, it is not subject to disclosure as a Public Record." (Doc. 1, ¶ 44). Similarly, on December 18, 2012, Sepulvado made the same request, and on January 8, 2013, DOC denied the request for the same reasons it denied Hoffman's request. (Doc. 47, ¶¶ 42-43).

Hoffman and Sepulvado both filed requests for an administrative remedy procedure ("ARP") with the Louisiana State Penitentiary. Both requested to be provided copies of the current protocols. Hoffman's ARP was rejected on December 6, 2012 because "the issue in your ARP has not happened to you as of the date of your complaint." (Doc. 1, ¶ 47). Similarly, Sepulvado's ARP was rejected on January 14, 2013. (Doc. 47, ¶ 45).

Because neither Hoffman nor Sepulvado have been able to obtain a copy of the lethal injection protocol, they are unable to determine whether they will be subjected to

---

[3]This is not the first suit in which Defendants have been asked to provide information about the status of Louisiana's lethal injection protocol since it became clear that sodium thiopental was no longer available. On April 25, 2012, during oral arguments in a state action brought under the Louisiana Administrative Procedures Act, *Code v. Louisiana State Public Safety & Corrections*, 2012 WL 5266135 (La. App. 1 Cir. 10/24/12), the court repeatedly asked counsel for DOC to "provide an update on the status of a current lethal injection protocol, given the unavailability of drugs, but counsel did not comply." (Doc. 1, ¶ 60).

3

"unconstitutional pain and torture upon [their] execution[s]." (Doc. 1, ¶ 52). Hoffman and Sepulvado assert that DOC will substitute alternative drugs for sodium thiopental without amending the protocols or "creating procedures appropriate to the properties of the new drugs[.]" (Doc. 1, ¶ 66). The last known protocol, the 2010 Protocol, failed to "include adequate safeguards to protect [condemned inmates] from cruel and unusual punishment." (Doc. 1, ¶ 68).[4] Hoffman and Sepuvaldo fear that their executions will not be carried out in "accordance with the written instructions, or will be administered in such a way that fails to adequately safeguard [their] rights." (Doc. 1, ¶ 70). They also fear that "any purported revised and current protocol will not be administered in a way that adequately protects [them] from cruel and unusual punishment." (Doc. 1, ¶ 93).

     Hoffman and Sepulvado assert that Defendant Warden Cain is responsible "for ensuring that there is a constitutional protocol" for executions and that he is responsible for "ensuring that executions are carried out in a constitutional fashion." (Doc. 1, ¶ 94). Defendant Warden Norwood is responsible for assisting Warden Cain in his duties. Defendants DOC and Secretary LeBlanc are responsible "for overseeing Warden Cain in his drafting of the protocols." (Doc. 1, ¶ 96). Finally, Defendant Governor Jindal is responsible "for overseeing the DOC in its supervision of Warden Cain." (Doc. 1, ¶ 97). Hoffman and Sepulvado claim that Defendants' failure to provide notice of the protocol violates their Fifth and Fourteenth Amendment Rights to Due Process, their Eighth and Fourteenth Amendments to be Free from Cruel and Unusual Punishment, and their right to equal protection under the law.

---

[4] The lack of adequate safeguards include: (1) the executioners are not medical professionals and have not received adequate training; (2) the equipment has not been tested or maintained; (3) the protocols are not sufficiently specific and thus, there is a likelihood that the execution will be carried out differently each time and subject to variances; (4) the executioners are not required to be familiar with the drugs; (5) there is no standardized timing for the administration of the drugs; (6) there is no provision for a medical history review; and (7) there are no provisions for practice sessions .

4

III.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing the complaint, a court must accept all well-pleaded factual allegations as true. *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995). In order to survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Defendants have filed two motions to dismiss, arguing that, as to both Hoffman and Sepulvado, (1) their claims are prescribed; (2) they have failed to state a claim upon which relief can be granted, mandating dismissal under Federal Rule of Civil Procedure 12(b)(6); (3) Defendants are entitled to qualified immunity; (4) this Court lacks jurisdiction under Federal Rule of Civil Procedure 12(b)(1) due to defendants' sovereign immunity; (5) Defendants cannot be sued in their individual capacity; and finally, as to Hoffman only, (6) Hoffman has not suffered any damages and lacks standing to assert monetary damages.

*Prescription*

Defendants argue that the claims are prescribed and must be dismissed. Because Section 1983 has no statute of limitations, courts must look to the forum state's applicable limitations for the claim. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The United States Court of Appeals for the Fifth Circuit has held that a Section 1983 challenge to a state's "method of execution" is subject to the state's statute of limitations for personal injury actions. *Walker v. Epps*, 550 F.3d 407, 415 (5th Cir. 2008). Here, the applicable prescriptive period is one year. La. Civil Code art. 3492. "Method of execution" actions accrue on the later of two dates: (1) "the date direct review of an individual case is complete," or (2) "the date on which the challenged protocol was adopted." *Id.*

at 414. "Of course, in the event a state changes its execution protocol after a death-row inmate's conviction has become final, the limitations period will necessarily accrue on the date that protocol change becomes effective." *Id.*

Defendants assert that the dates direct review of both Hoffman and Sepulvado's convictions and sentences were complete when the United States Supreme Court denied their writs of certiorari (October 16, 2000 for Hoffman and October 15, 1996 for Sepulvado), and thus, their claims are prescribed. Alternatively, Defendants argue that it has been more than one year since the protocols were changed or adopted, suggesting three possible dates: (1) January 7, 2010, the date of the most recent publically available protocol; (2) October 28, 2010, the date of a letter from the DOC's general counsel indicating that the DOC did not have sodium thiopental in stock; or (3) April 10, 2011, the date of a newspaper article in which DOC's representatives stated that the protocol needed to be revised due to the lack of sodium thiopental. Defendants argue that the latest possible date was April 10, 2011, and thus, both Hoffman and Sepulvado's claims have prescribed.

Defendants also argue that their failure to produce the protocol does not toll the prescriptive period, relying on *Walker*. In *Walker*, the Fifth Circuit explained that because the plaintiffs knew that they would be executed via lethal injection "from the moment their convictions became final . . . [they] could have filed their § 1983 action on the basis of this fact alone, within the limitations period. They did not need the detailed information they allege the State belatedly disclosed to *file* their action." *Walker*, 550 F.3d at 417.

Hoffman and Sepulvado argue that the DOC's supply of sodium thiopental either expired or was depleted at some unknown date, rendering the 2010 Protocol obsolete. At the time of filing the complaint, it was Hoffman's belief that there was no operative protocol and

6

even if there were an operative protocol, this was not disclosed to the plaintiff. Hoffman and Sepulvado argue that the Defendants' reliance on *Walker* is misplaced because in *Walker*, the challenged protocol was adopted in 1998 and had not been changed by 2007, when the petitioners filed their actions. *Id.* at 416 (noting that since Mississippi had adopted its protocol, "it has been no secret that Mississippi uses a three-drug combination[.]" *Walker*, 550 F.3d at 417. Here, Louisiana's lethal injection protocol has been kept secret since it became clear that sodium thiopental was no longer available. It was not until February 5, 2013 that Defendants, in open court, announced that it would use a single dose of pentobarbital to execute condemned inmates.

Finally, Hoffman and Sepulvado assert "prescription is not a proper ground for a motion to dismiss under Rule 12(b)(6) where it is contingent upon undeveloped facts." (Doc. 46 at 50.) For instance, Hoffman and Sepulvado argue that it is still unclear as to what the execution protocol entails, if there is a protocol in place at all, and what effect switching from sodium thiopental to pentobarbital has had on the protocol. Hoffman and Sepulvado point to the Eleventh Circuit's recent opinion in *Arthur v. Thomas*, in which Alabama had changed its protocol to replace sodium thiopental with pentobarbital. *Arthur v. Thomas*, 674 F.3d 1257 (11th Cir. 2012). In *Arthur*, the district court dismissed the plaintiff's claims as time-barred. *Id.* at 1259. The plaintiff "first became subject to lethal injection . . . in July 2002 [and] initiated this action in June, 2011, two months after Alabama announced that it would be substituting pentobarbital for sodium thiopental in its three-drug lethal injection procedure." *Id.* at 1260, n. 2. Plaintiff had to show that he filed his Section 1983 action "within two years of a significant change in Alabama's method of administering lethal injections." *Id.* at 1260. The Eleventh Circuit found that "[w]hether a significant change has occurred in a state's method of execution is a fact-dependent inquiry," and there was "no finding about the manner in which Alabama

7

administers its lethal injections, no evaluation of whether Alabama's representations are accurate, and no opportunity whatsoever to contradict the State's assertions with Arthur's own evidence." *Id.* at 1260-61. "[T]he lack of factual development in this record is only exacerbated by Alabama's policy of maintaining secrecy surrounding every aspect of its three-drug execution method." *Id.* at 1261. The Eleventh Circuit concluded that it was erroneous for the district court dismiss the plaintiff's claims "without any opportunity for factual development[.]" *Id.* at 1262. Hoffman and Sepulvado argue that like *Arthur*, it would be erroneous to dismiss their claims in the absence of further factual development.

In response, Defendants argue changing the drug combination in lethal injections is not a "substantial or significant change in the lethal injection protocol," and does not restart the prescriptive period. *Powell v. Thomas*, 643 F.3d 1300, 1304 (11th Cir. 2011). Additionally, Defendants assert that the complaints attack other portions of the 2010 Protocol, such as adequate safeguards and the training of the execution team, which would not be changed by the substitution of sodium thiopental for pentobarbital. Thus, Defendants contend that these issues were known or should have been known to Hoffman and Sepulvado long before they filed suit, and their claims are still prescribed. Defendants point to *Valle v. Singer*, in which the Eleventh Circuit explained that Florida's 2006 "switch to pentobarbital does not awaken this long stale claim" and "the substitution of pentobarbital did not reset the statute of limitations." *Valle v. Singer*, 655 F.3d 1223, 1236 (11th Cir. 2011) (internal quotations omitted).

Defendants argue that Hoffman and Sepulvado knew as early as October 28, 2010 that Louisiana did not have sodium thiopental in stock, and could have filed their actions then. Defendants assert that condemned prisoners do not need to wait until they have all the facts to file a section 1983 action. *See Walker*, 550 F.3d at 417; *see also Cooey v. Strickland*, 479 F.3d

8

412, 422 (6th Cir. 2007) (finding that "[a]ctual knowledge [of the protocol] is not the appropriate measure; the test is whether he knew or should have known based upon reasonable inquiry, and could have filed suit and obtained relief." *Id.*).

Finally, Defendants point to the Eleventh Circuit's reasoning in *Powell*, in which the Eleventh Circuit explained

> Powell could have challenged the ADOC's 'secrecy' surrounding the method of execution beginning July 31, 2002, as the facts supporting this cause of action should have been apparent to any person with a reasonably prudent regard for his rights. Indeed, as Powell acknowledges in his opening brief, "Alabama does not mandate by statute or regulation what drugs are to be used in conducting a lethal injection, and the ADOC may change the drugs used in the protocol at any time for any reason without notice or oversight[,] ... [and the drug used] is subject to change at any time." Thus, Powell fails to show how his claim about the secrecy surrounding the ADOC's recent change in lethal injection protocol was revived by the ADOC's 2011 switch in drugs.

*Powell*, 643 F.3d at 1305 (internal quotations and citations omitted). Defendants assert that as in *Powell*, Louisiana does not list what drugs are to be used in its lethal injection, which is subject to change at the discretion of the DPSC. Defendants argue that Hoffman and Sepulvado have known that they would be executed via lethal injection, and there is no reason that they could not have filed their suit when they first became aware that Louisiana did not have sodium thiopental.

The Court is not convinced by the Defendants' arguments. There are factual distinctions between the cases cited by the Defendants and the case at bar. In *Powell*, the plaintiff filed suit *after* the Alabama Department of Corrections "publicly announced that it was changing the first drug in its lethal injection protocol from sodium thiopental to pentobarbital." *Powell*, 643 at 1302. Similarly, in *Valle*, the plaintiff knew that Florida had switched from sodium thiopental to pentobarbital, and then filed suit. *Valle*, 655 F.3d at 1226.

9

Here, Hoffman and Sepulvado did not know that Louisiana was switching to pentobarbital when they filed suit. All Hoffman and Sepulvado knew was that Louisiana did not have sodium thiopental in stock based on an October 2010 letter from DOC's general counsel and a newspaper article from April of 2011. However, as the Fifth Circuit made clear, a "method of execution" action accrues on the later of two dates: (1) "the date direct review of an individual case is complete," or (2) "the date on which the challenged protocol was adopted." *Walker*, 550 F.3d at 414. "Of course, in the event a state changes its execution protocol after a death-row inmate's conviction has become final, the limitations period will necessarily accrue on the date that protocol change becomes effective." *Id.* Defendants have not revealed when the protocol was changed and Defendants cannot rely on a newspaper article in which DOC representatives stated the need to change the protocol. Recognizing that a protocol needs to be changed is not the same as changing the protocol. Thus, because of the Defendants' refusal to provide this information, Hoffman and Sepulvado's claims have not prescribed.[5]

*Failure to State a Claim upon which Relief can be Granted Against Governor Jindal, Secretary LeBlanc, Warden Norwood, and the State of Louisiana through the DPSC*

Defendants argue that under Section 1983, only "the direct acts or omissions of government officials . . . will give rise to individual liability.' *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). Defendants assert that Hoffman and Sepulvado have not asserted any claims of direct actions or omissions as to Governor Jindal, the DPSC, Secretary LeBlanc, and Warden Norwood. Rather, Defendants contend that any claims against these defendants are "based upon conclusory allegations of respondeat superior." Additionally, Defendants argue that

---

[5] While the Court recognizes the Defendants' position with respect to the challenged procedures in the 2010 Protocol, such as inadequate training of the executioners, this does not change the outcome because the Defendants have indicated that the 2010 Protocol will need to be changed. Hoffman and Sepulvado have no way of knowing whether the challenged procedures in the 2010 Protocol will be the same in the new protocol, if there is a new protocol. Thus, the Court still finds that Hoffman and Sepulvado's claims have not prescribed.

10

one-drug protocols have been ruled constitutional by other circuits, and thus, Sepulvado has failed to state a claim upon which relief can be granted.

The Court first addresses Defendants' argument as to Sepulvado and the notion that a one-drug protocol is constitutional. While other circuits may have found that one-drug protocols are constitutional, this is not the issue addressed in the complaint. The complaint is not challenging the constitutionality of a one-drug protocol. Rather, the complaint is challenging the constitutionality of executing a condemned prisoner without telling him the means and manner by which he will be executed. To introduce an argument about one-drug protocols goes beyond the scope of the complaint and will not be considered.

Turning to whether Hoffman and Sepulvado have stated a claim against the Defendants, Hoffman and Sepulvado argue that their claims are not based on a theory of vicarious liability, but based instead on statutorily conferred duties and powers. The Governor is authorized to appoint a Secretary of the DPSC and the Secretary "shall perform his functions under the general control and supervision of the governor." La. R.S. 36:403. The Secretary is responsible for "execut[ing] the offender in conformity with the death warrant issued in the case." La. R.S. 15:568. The Warden of Angola is charged with summoning physicians and a "competent person . . . to administer the lethal injection." La. R.S. 15:570. The Secretary is also responsible for arranging for the witnesses to attend the execution. Finally, Hoffman and Sepulvado assert that Warden Norwood is responsible for the Administrative Remedy system on death row at Angola, and thus is obligated to respond to Hoffman and Sepulvado's ARP requests.

In response, Defendants first assert that a state and its agencies are not "persons" under Section 1983, and thus, Hoffman and Sepulvado cannot maintain a Section 1983 action against DPSC. Defendants are correct. *See McGuire v. Lafourche Parish Work-Release Facility*, 2009

WL 4891914, at *3 (E.D. La. 2009) (finding that the Louisiana DPSC "is a state agency and, as such, is not a 'person' subject to suit under [Section 1983]." *Id.*). Defendants further argue that Hoffman and Sepulvado have failed to show a specific act or omission by the individual Defendants, leaving supervisory liability as the only possible theory of recovery, which, as previously stated, is not permissible under Section 1983.

The Court finds that Hoffman and Sepulvado cannot maintain actions as to Governor Jindal and the DPSC, but can maintain 1983 actions as to Warden Norwood, Warden Cain, and the Secretary. Governor Jindal's only responsibility as alleged is appointing the Secretary and supervising his actions. However, the Secretary is charged with executing condemned prisoners and the Warden(s) are charged with overseeing the execution. Thus, the Court finds that Hoffman and Sepulvado can maintain 1983 actions as to these Defendants.

*Qualified Immunity*

Defendants next argue that they are entitled to qualified immunity under the two step method established in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In *Saucier*, the Supreme Court found that the initial question is whether, taking the facts in the light most favorable to the party asserting injury, the conduct violated a constitutional right. *Id.* If the conduct did not violate any constitutional right, "there is no necessity for further inquiries." *Id.* If the conduct did violate a constitutional right, the next step "is to ask whether the right was clearly established." *Id.*

Defendants argue that their conduct does not violate a constitutional right because of the possibility of future violations. Defendants point to the Fifth Circuit's recent decision in *Thorson v. Epps*, where a condemned Mississippi inmate Mississippi's lethal injection protocol as violating his Eighth Amendment right to be free from cruel and unusual punishment. *Thorson v. Epps*, 701 F.3d 444 (5th Cir. 2012). The Fifth Circuit rejected Thorson's argument that the

12

protocol "*could* result in cruel and unusual punishment[,]" because "mere speculation cannot rise to the level of an objectively intolerable risk." *Thorson v. Epps*, 701 F.3d 444, 449 (5th Cir. 2012). In short, challenges to protocols based on the risk of what could go wrong are insufficient.

However, Defendants miss the point. In *Thorson*, the plaintiff already had the protocol. Hoffman and Sepulvado do not have a copy of the protocol, and thus, their argument is not based on the potential of what could go wrong. Rather, Hoffman and Sepulvado cannot even begin to challenge the protocol without knowing what it is. As this Court has already said, "[f]undamental fairness, requires that the inmate be given meaningful and adequate notice of how his rights have been affected by the changes in the execution protocol." (Doc. 28, at 3). Thus, the Court finds that at this juncture, the Defendants are not entitled to qualified immunity.

*Eleventh Amendment*

Defendants further argue that this action is barred by the Eleventh Amendment and this Court lacks jurisdiction to hear this dispute. However, this argument has no merit under *Ex parte Young*, 209 U.S. 123 (1908) and its progeny. As the Fifth Circuit explained, under *Ex parte Young*, "the Eleventh Amendment does not bar a suit against a state official who is alleged to be acting in violation of federal law. The *Ex parte Young* doctrine is premised on the concept that a state cannot authorize its officials to violate the Constitution and laws of the United States." *Cox v. City of Dallas, Tex.*, 256 F.3d 281, 307 (5th Cir. 2001). In the context of challenges to lethal injection protocols, challenges based on the Eleventh Amendment have also been rejected. *See Thorson v. Epps*, 2009 WL 1766806, at *1(N.D. Miss. 2009) (finding that "suits for prospective injunctive relief against a state official who is alleged to be acting in violation of federal law are not barred by the Eleventh Amendment."). Thus, the Court is not persuaded by this argument.

*Equitable Relief and Standing for Monetary Damages*

13

Finally, Defendants argue that Hoffman and Sepulvado cannot seek equitable relief against Jindal, LeBlanc, Cain, or Norwood in their individual capacities. Hoffman and Sepulvado did not address this in their opposition, which Defendants argue is a concession. The Court finds that because neither party adequately addressed this issue, it will decline ruling on this matter.

Defendants also argue that Hoffman and Sepulvado cannot seek monetary damages because this remedy is unavailable to them pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(e), which states that "No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."

The Court finds that Hoffman and Sepulvado have alleged that they have experienced emotional distress but have not alleged any physical injury. The Fifth Circuit has determined that if a plaintiff "fails to show a physical injury, § 1997e(e) bars recovery for mental and emotional damages." *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (citing *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)). Thus, because Hoffman and Sepulvado have not alleged any physical injury, they are unable to recover for mental and emotional damages, and this claim shall be stricken from the complaints.

IV.

Accordingly, the Court finds that Hoffman and Sepulvado's claims should be permitted to proceed as to all the named Defendants with the exception of Governor Jindal and DPSC. Additionally, Hoffman and Sepulvado are not entitled to seek monetary damages absent a showing of prior physical injury.

Defendant's Motions to Dismiss are DENIED. (Doc. 40 and 42).

Signed in Baton Rouge, Louisiana on April 16th, 2013.

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**