JESSIE HOFFMAN, ET AL.

VERSUS

BOBBY JINDAL, ET AL.

CIVIL ACTION

NO. 12-796-JJB

## RULING ON DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss (Doc. 70) brought by Defendants, Secretary James D. LeBlanc, Warden Burl Cain, Assistant Warden Angela Norwood, and unknown John Does (collectively "Defendants"). Plaintiffs, Jessie Hoffman ("Hoffman") and Christopher Sepulvado ("Sepulvado"), have filed an opposition (Doc. 74), to which Defendants have filed a reply (Doc. 75). Oral Argument is not necessary. For the reasons stated herein, the Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

**I.  Background**

Hoffman and Sepulvado are both incarcerated under a sentence of death at the Louisiana State Penitentiary, in Angola, Louisiana ("LSP"). On December 20, 2012, Hoffman filed this action against Defendants pursuant to 42 U.S.C. § 1983, challenging the undisclosed method of execution as cruel and unusual punishment. (Doc. 1). On January 23, 2013, Sepulvado filed a motion to intervene (Doc.11), which was subsequently granted. (Doc. 26). Shortly after filing his motion to intervene, Sepulvado requested a preliminary injunction to stay his execution (Doc. 14), which the Court granted. (Docs. 27 and 28). Upon appellate review, the Fifth Circuit reversed this Court's decision. *Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013).

While the appeal was pending, the Court considered the Defendants' motion to dismiss in response to the original complaint. After considering the motion, the Court granted it in part, dismissing Governor Jindal and the Department of Public Safety and Corrections ("DPSC"), as

1

well as monetary damages, and denied it in part. (Doc. 59). In ruling on the Defendants' motion for a protective order (Doc. 60), the magistrate judge ordered the Defendants to produce lethal injection protocols (Doc. 62), which the Defendants provided. After receiving these protocols, Hoffman and Sepulvado filed an amended complaint. (Doc. 67).

The following facts are taken from the Plaintiffs' amended complaint (Doc. 67) and are accepted as true for the purposes of this motion. *See Bass v. Stryker Corp.*, 669 F.3d 501, 507 (5th Cir. 2012). In 1991, Louisiana adopted lethal injection as its method of execution. Lethal injection is defined as "the intravenous injection of a substance or substances in a lethal quantity into the body of a person convicted until such person is dead." La. R.S. § 15:569. The Secretary of the DPSC is charged with executing "the offender in conformity with the death warrant issued in the case." La. R.S. § 15:568. The "remaining details are left to the discretion of the DOC in developing and adopting an execution protocol." (Doc. 67, ¶ 20).

The DOC's lethal injection protocol contains "prison directives, checklists, and any other documents that guide the prison in its administration of lethal injection," and has been revised at least nine times since 1991. (Doc. 67, ¶ 28). Prior to the filing of the original complaint, the most recent protocol available was from 2010 ("2010 Protocol"). (Doc. 67, ¶ 29). However, a new protocol was enacted on June 17, 2013 ("2013 Protocol"). (Doc. 67, ¶31). While the 2013 Protocol is notably longer than the 2010 Protocol, there are other significant differences between the two. (Doc. 67, ¶ 33). For one, the 2010 Protocol provided for the administration of three drugs: first, sodium thiopental; second, pancuronium bromide; and third, potassium chloride. (Doc. 67, ¶ 34). This three-drug cocktail consisted of an anesthetic, a paralytic, and a salt to stop the heart. (Doc. 67, ¶ 37). Now, these three drugs have been substituted for one: pentobarbital, followed by a saline flush. (Doc. 67, ¶ 34). Pentobarbital is a sedative ((Doc. 67, ¶ 37), that even

2

when administered properly can result in insufficient loss of consciousness and sensation, causing the inmate to suffer excruciating pain and suffering while still conscious. (Doc. 67, ¶ 40). Additionally, unlike sodium thiopental, which takes effect in seconds, pentobarbital is not fast acting, taking fifteen to sixty minutes to take full effect. (Doc. 67, ¶ 39).

Originally, both Hoffman and Sepulvado unsuccessfully tried to obtain the lethal injection protocol from the Defendants. On July 18, 2012, Hoffman made a Louisiana Public Records Act request for the current protocols pursuant to La. R.S. §§ 44:1 *et seq*. (Doc. 67, ¶ 48). On July 30, 2012, DOC denied the request, explaining that the requests "were exempted from disclosure because they include internal security information," and "because the protocol is not subject to the Administrative Procedures Act, it is not subject to disclosure as a Public Record." (Doc. 67, ¶ 49).

Hoffman and Sepulvado both filed requests for an administrative remedy procedure ("ARP") with the LSP which were accepted into the LSP's system on September 28, 2012 and December 18, 2013 respectively. (Doc. 67, ¶ 50). Both requested to be provided copies of the current protocols. (Doc. 67, ¶ 51). Hoffman's ARP was rejected on December 6, 2012 because "the issue in your ARP has not happened to you as of the date of your complaint." (Doc. 67, ¶ 52). Similarly, Sepulvado's ARP was rejected on January 14, 2013. (Doc. 67, ¶ 53). While Plaintiffs were unable to secure the 2013 Protocol through these means, Defendants recently provided them with the most recent protocol via a discovery request. (Doc. 67, ¶ 31).

After reviewing the 2013 Protocol, Hoffman and Sepulvado are concerned that the new protocol is insufficient to adequately protect a myriad of their constitutional rights. Most of these concerns are predicated on the fact that the 2013 Protocols were neither promulgated with any input from those in the medical community, nor were they examined by a medical

3

professional. (Doc. 67, ¶¶ 57-59). As a result, the Plaintiffs assert that there are not "adequate safeguards to protect Plaintiffs from cruel and unusual punishment."[1] (Doc. 67, ¶ 63). Additionally, there is a possibility that sodium thiopental will be substituted for pentobarbital without amending its procedures. (Doc. 67, ¶ 60). The Plaintiffs assert that this will cause them to "suffer the wanton and unnecessary infliction of pain, and torture, or a prolonged lingering death…" (Doc. 67, ¶ 62). Finally, Plaintiffs assert that the 2013 Protocol, which requires that all attorney visits end by 3:00 P.M. on the date of execution and excludes attorneys from the execution chamber while the execution is performed, is tantamount to a denial of the right of access to the courts. (Doc. 67, ¶¶ 84 and 87).

Hoffman and Sepulvado assert that the Defendants are responsible for their harm. Defendant Warden Cain is responsible "for ensuring that there is a constitutional protocol" for executions and that he is responsible for "ensuring that executions are carried out in a constitutional fashion." (Doc. 67, ¶ 88). Defendant Warden Norwood is responsible for assisting Warden Cain in his duties. (Doc. 67, ¶ 89). Defendant Secretary LeBlanc is responsible "for overseeing Warden Cain in his drafting of the protocols." (Doc. 67, ¶ 90). Hoffman and Sepulvado claim that (1) Defendants' failure to provide notice of the protocol violates their Fourteenth Amendment Rights to Due Process; (2) executing them pursuant to the 2013 Protocol would violate their rights under the Eighth and Fourteenth Amendment Rights to be free from cruel and unusual punishment and equal protection of the law; (3) substituting drugs without promulgating a new protocol would violate due process and cruel and unusual; and (4) denying

---

[1] The lack of adequate safeguards include: (1) the executioners are not medical professionals and have not received adequate training; (2) the equipment has not been tested or maintained; (3) the protocols are not sufficiently specific and thus, there is a likelihood that the execution will be carried out differently each time and subject to variances; (4) the executioners are not required to be familiar with the drugs; (5) there is no standardized timing for the administration of the drugs; (6) there is no provision for a medical history review; and (7) there are no provisions for practice sessions.

4

them access to counsel and the courts violates their First, Sixth, and Fourteenth Amendment rights.

## II. Discussion

### A. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When reviewing the complaint, a court must accept all well-pleaded factual allegations as true. *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995). In order to survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court need not determine at this preliminary stage whether the plaintiff's claims will ultimately succeed on the merits. *Id.* at 556. Instead, a court must identify the factual allegations entitled to the presumption of truth and determine whether they state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Defendants have filed a motion to dismiss arguing that (1) Sepulvado and Hoffman have failed to state a claim upon which relief can be granted, mandating dismissal; and (2) in the alternative, Defendants are entitled to qualified immunity.

### B. Timeliness

As a preliminary matter, the Court must address Plaintiffs' contention that the Defendants' motion to dismiss the amended complaint is untimely. Plaintiffs, relying upon the 14 day deadline imposed by Federal Rule of Civil Procedure 15(a)(3), argue that the Court should deny the Defendants' motion as untimely because the Defendants filed their motion to dismiss 24 days after the Plaintiffs filed their amended complaint. Defendants counter that their motion should not be dismissed because of a technical violation. Instead, the Defendants assert

that the Court should only dismiss the motion if the Court finds that the Plaintiffs have been prejudiced by this technical violation.

Rule 15(a)(3) requires that "any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." FED. R. CIV. P. 15(a)(3). Courts that have recently addressed the effect of an amendment on the timing of a motion to dismiss have found that Rule 15(a)(3)'s timing mandate is inapplicable. *See Automotive Indus. Pension Trust Fund v. Ali*, 11-CV-5216, 2012 WL 2911432 (S.D. Cal. July 16, 2012); *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Door, LLC*, 10-CV-677, 2012 WL 202664 (S.D. Cal. Jan. 23, 2012). In *Weiland*, the court reasoned that since a 12(b)(6) motion is not a responsive pleading it did not need to be filed within the time constraints imposed by Rule 15(a)(3). 2012 WL 202664 at *3. Instead, the motion to dismiss should be governed by the time constraints imposed by Rule 12(b)(6), which requires that the motion be filed before pleading. *Id.*; *see also* FED. R. CIV. P. 12(b).

Here, Defendants' motion to dismiss was filed on September 9, 2013 which was ten days after the deadline for a responsive pleading. However, Defendants were only required to file their motion to dismiss before filing any other responsive pleading. Since the Defendants complied with this rule, the Court finds that the Defendants' motion is timely.

### C. Due Process Right to Timely Notice

Defendants seek to dismiss Hoffman and Sepulvado's due process claim for timely notice of any change to the lethal injection protocol by arguing that it is not a cognizable legal claim. To support this argument, the Defendants rely solely upon the Fifth Circuit's decision in this very case. *See Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013). After noting that no other

6

sister circuit had recognized the Plaintiffs' claimed due process right and declining to be the first, the court held that "[t]here is no violation of the Due Process Clause from the uncertainty that Louisiana has imposed on Sepulvado by withholding the details of its execution protocol." *Id.* at 420; *see also Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir. 2013) ("[The inmate's due process claim] is arguably foreclosed by *Sepulvado*, which held that uncertainty as to the method of execution does not about to a cognizable liberty interest."). Though this Court must and will dutifully follow the law as pronounced by the Fifth Circuit, its view is more in line with that expressed in Judge Dennis's opinion dissenting from the denial of a rehearing en banc. *See Sepulvado v. Jindal*, No. 13-7007, 2013 WL 6912820 (5th Cir. 2013 Dec. 23, 2013). After reviewing Supreme Court jurisprudence articulating applicable constitutional principles, Judge Dennis concluded,

> In sum, Sepulvado has demonstrated that he has a strong liberty interest in receiving definite, official notice of the drug or combination of drugs that will be used to execute him. This conclusion is consistent with the general principles that changing and keeping secret the details of a pending execution offends the basic constitutional principle of fair notice, and that criminal proceedings of all kinds must be subject to public scrutiny.

*Id.* at *5 (footnotes omitted). While the Court agrees with this conclusion, its decision is constrained by the binding precedent of this circuit, which holds that the Plaintiffs have no cognizable due process claim. Therefore, left with no other alternative, the Court must dismiss the Plaintiffs' due process claim.

### D. Eighth Amendment Claims

Hoffman and Sepulvado assert Eighth Amendment claims arguing that the 2013 Protocol promulgated by the Defendants lacks adequate safeguards to ensure that their respective executions are performed without incident. They further allege that improperly stored, expired, compounded or non-FDA approved drugs may be used which raises a significant risk that the

executions will not be performed in a safe and humane manner. Defendants argue that these claims must be dismissed because they are supported by mere speculation. The Court disagrees.

An evaluation of a state's execution protocol starts with an examination of the Supreme Court's decision in *Baze v. Rees*, 553 U.S. 35 (2008). There, after noting that that subjecting a an inmate to future pain and suffering can qualify as cruel and unusual punishment, the Supreme Court reiterated that to prevail on such a claim, an inmate must show "substantial risk of serious harm," or an "objectively intolerable risk of harm". *Id.* at 50; *see also Thorson v. Epps*, 701 F.3d 444, 446 (5th Cir. 2012) (summarizing that an inmate must show "more than just the potential for something to go wrong.").

The Court finds that at this stage in the litigation, the Plaintiffs have adduced sufficient factual matter to make an Eighth Amendment claim plausible on its face. Here, the Plaintiffs allege several facts to support their claim including that the State has changed its protocols on the eve of an execution (Doc. 67, at ¶¶ 30, 31); the protocol has not been reviewed by a medical professional to ensure adequate safeguards (Doc. 67, at ¶57), and that those charged with performing the execution will not be adequately trained under the 2013 protocol (Doc. 67, at ¶¶ 76, 79, 81). Furthermore, the Plaintiffs' allegation that expired and improperly stored drugs will be used, which even if administered properly can result in insufficient loss of consciousness and sensation, causing the inmate to suffer excruciating pain and suffering while still conscious, (Doc. 67, ¶ 40), also supports their Eighth Amendment claim. Defendants' arguments to the contrary miss the point. Not only do they appear not to recognize that it is the sum of the factual allegations that support the Eighth Amendment claim and not merely the individual parts, but it also seems that they fail to appreciate the procedural posture of the present matter. While courts are charged with the responsibility of being the proverbial gatekeeper, they are not charged with

picking winners and losers at the genesis of litigation. Therefore, the Court finds that Hoffman and Sepulvado have asserted sufficient facts to survive the motion to dismiss.

### E. Equal Protection

Defendants challenge Plaintiffs' equal protection claim by arguing that it is based upon conclusory allegations couched as facts. In response, the Plaintiffs point to a venerable laundry list of facts contained in their amended complaint that support their equal protection claim.

A court must perform a two-step inquiry to determine whether a prisoner has alleged in equal protection violation. *Arthur v. Thomas*, 674 F.3d 1257, 1262 (11th Cir. 2012). First, a court must determine if the prisoner has shown that the State will treat him differently from other similarly situated prisoners. *Id.* If the court determines that there will be disparate treatment based upon a suspect classification, then the matter will be evaluated under strict scrutiny. *Id.* Otherwise, the matter will be evaluated under the rational basis test of constitutional scrutiny. *Id.*

At this juncture of the case, the Court is only concerned with whether the Plaintiffs have asserted enough factual matter to make their claim of disparate treatment plausible. The Court finds that they have. Here, Hoffman and Sepulvado have alleged enough facts to constitute a plausible Equal Protection claim because they contend that the State of Louisiana will substantially deviate from its protocols that will significantly reduce inmate safeguards and significantly risks their subjection to a painful death. Furthermore, Plaintiffs contend that Defendants' past practices suggest that they will not be executed in a uniform and equal way which also violates the Equal Protection Clause of the Fourteenth Amendment. To support these contentions the amended complaint makes several factual allegations including the state revised its protocol on the exact date it carried out its last execution (Doc. 67, ¶ 30); the protocols lack the necessary specificity to ensure that they are carried out in a uniform fashion (Doc. 67, ¶¶ 75,

9

77); and the people who are to perform the execution are not properly trained (Doc. 67, ¶¶ 71, 76, 79, 81). These facts, and others found on the face of the amended complaint, make a plausible showing that the Plaintiffs may be subjected to disparate treatment during their respective executions. *See Arthur*, 674 F.3d at 1263 (finding that the plaintiff's allegations, including that the State reduced safeguards and made unexpected changes to execution protocols, were enough to survive a motion to dismiss). Therefore, the Court finds that Hoffman and Sepulvado have stated a claim for relief.

### F. Access to Courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To meet constitutional muster, a prisoner's access to the courts must be "adequate, effective, and meaningful." *Id.* That said, there is no set methodology in place that guarantees this right. *Lewis v. Casey*, 518 U.S. 343, 356 (1996). Instead, the right of access guarantees "the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.; see also Turner v. Epps*, 460 Fed. Appx. 3232 (5th Cir. 2012) (explaining that "an inmate who brings a § 1983 claim based upon his right of access to the courts must be able to show that the infringing act somehow defeated his ability to pursue a legal claim.").

To assert an access to the courts claim, a prisoner must demonstrate actual injury, that is, they have suffered, or will imminently suffer, actual harm and an actual legal claim. *Turner*, 460 Fed. Appx. at 328 (citing *Lewis*, 518 U.S. at 350-352). Courts have recognized that the traditional access to the courts analysis requiring actual injury is unworkable in the prisoner execution context. *Cooey v. Strickland*, Nos. 2:04-cv-1156, 2:09-cv-242, 2:09-cv-823, 2:10-cv-27, 2011 WL 320166, *11 (Jan. 28, 2011) (reasoning that a traditional actual injury analysis

10

"makes no sense when many of the claims could not even be recognized until during the execution process."). Instead, within in this "unusual context" courts have found that the actual injury is "self evident". *Id.*; *see also id.* (explaining that the circumstances surrounding an execution "present an inherent risk of actual injury to the timely and meaningful presentation of non-frivolous claims to a court.").

Defendants argue that Hoffman and Sepulvado have not asserted a cognizable access to the courts claim because they have failed to assert how the Defendants' actions will preclude them from pursuing a legal claim. This argument boils down to a contention that Hoffman and Sepulvado have not alleged an actual injury. To support their argument, Defendants rely upon two Fifth Circuit cases, both of which are inapposite to the present matter. The first, *Turner v. Epps*, 460 Fed. Appx. 322 (2012) involved a death row inmate's access to the court claim involving a psychiatric evaluation and testing which he claimed he needed to avoid being unconstitutionally executed due to his mental disorders. *Id.* Without discussing whether or not the inmate would suffer an actual injury, the Court held that his access to the courts claim failed because he had no viable legal claims. *Id.* at 328. Therefore, without a cognizable legal claim to protect, the inmate had no access to the court claim. *Id.* The second case is *Whitaker v. Livingston*, 732 F.3d 465 (2013). There, an inmate argued that the state's failure to timely disclose execution protocols violated his constitutional right of access to the courts. *Id.* The Court found that it was doubtful that the inmate asserted a viable due process claim that could be vindicated by access to the courts. *Id.* at 467. Even if he could assert such a claim, the court found that the inmate had not adduced enough evidence to be successful on his Eighth Amendment claim under the demanding preliminary injunction standard. *Id.* at 468-69.

11

The differences in procedural posture notwithstanding, these cases do not directly speak to the issue at hand. As the Court has previously found, Hoffman and Sepulvado have cognizable legal claims that may require access to the courts to be vindicated. Additionally, the Court agrees with the reasoning of courts from sister circuits, that the inherent risk of actual injury in this unusual context is enough to satisfy the actual injury requirement. Here, Hoffman and Sepulavdo assert that attorney contact with clients ceases three to six hours before an execution and attorneys are not allowed to witness the execution (Doc. 67, at ¶ 84). Without such access, attorneys are not there to ensure that the protocol is carried out as directed (Doc. 67, at ¶ 85) or that the inmate did not suffer pain and suffering while conscious (Doc. 67, ¶ 86). These factual allegations, along with the fact that the Plaintiffs have asserted a viable claim that may necessitate the protection that the constitutional right to access to the courts provides, are enough to survive the Defendants' motion to dismiss.

### G. Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Fifth Circuit has continuously recognized a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity. "First, viewing the facts in a light most favorable to the plaintiff, the court must determine if the plaintiff has alleged the violation of a constitutional right." *Barrow v. Greenville Independent School District*, 332 F.3d 844, 846 (5th Cir. 2003). If the first step is met, the court must next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).

Case 3:12-cv-00796-JJB-SCR   Document 99   01/10/14   Page 12 of 14

"The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Glenn v. City of Tyler,* 242 F.3d 307, 312 (5th Cir. 2001) (quoting *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)).

The Court declines to address the Defendants' qualified immunity at this time for two reasons.[2] First, it is unclear upon which claims Plaintiffs are seeking damages. Plaintiffs are instructed to file an amendment to the complaint within 7 days making plain the basis for their claim for damages. Second, qualified immunity is an affirmative defense to be applied retroactively, that is, "at the time of the conduct in question."[3] *Tarver*, 410 F.3d at 312. Here, the Plaintiffs' remaining claims appear to be forward looking, proactively seeking to prevent the possibility of future harms. Therefore, the Court is unable to perform an analysis of whether an action is reasonable in light of the clearly established law when an action has not yet taken place, especially given the fact that the submitted briefs did not address this issue. Defendants may reurge their entitlement to qualified immunity at a later time. If the Defendants choose to do so, they should include in their supporting briefs how qualified immunity applies to the Plaintiffs remaining claims when those claims are predicated on a potential future violation.

---

[2] It is important to note, that when the Court previously addressed the Defendants' assertion of qualified immunity, it did not definitively determine its application in this case. Instead, the Court found that a resolution of the defense's applicability to this case was premature stating, "the Court finds that at this juncture, the Defendants are not entitled to qualified immunity." (Doc. 59). Therefore, contrary to the Plaintiffs' contention, the issue of qualified immunity has not been resolved by the Court and is not the law of the case.

[3] There appears to be an exception to a retroactive analysis when the law allows a claim based on a future harm. For example, in *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003), the court evaluated the defendants' qualified immunity with respect to the inmate plaintiff's Eighth Amendment claim predicated on both present and future injury resulting from exposure to environmental tobacco smoke. This determination could be made because the law clearly established a future claim. *Id.* at 263. Similarly, the law clearly provides for an Eighth Amendment claim predicated on future risk of harm caused by lethal injection procedures. *See Baze*, 553 U.S. at 49 ("Our cases recognize that subjecting individuals to a risk of future harm…can qualify as cruel and unusual punishment."). That said, it is unclear if this exception is applicable to any or all of the Plaintiffs' remaining claims for damages.

### III. Conclusion

For the reasons stated herein, the Court finds that the Plaintiffs' due process claim must be dismissed. The Court further finds that the remainder of the Plaintiffs' claims may proceed. Finally, the Court declines to address the Defendants' qualified immunity defense. Accordingly, Defendant's Motion to Dismiss (Doc. 70) is GRANTED in part and DENIED in part.

Plaintiffs are instructed to file an amendment to the complaint within 7 days making plain the basis for their claim for damages.

Signed in Baton Rouge, Louisiana, on January 10, 2014.

**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**