RECEIVED

JAN 1 5 2014

U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DEPUTY CLERK
CLERK

# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

January 03, 2014

Ms. Donna Gregory
U.S. District Court, Middle District of Louisiana
777 Florida Street
Baton Rouge, LA 70801

    No. 13-70007   Jessie Hoffman v. Bobby Jindal, et al
                USDC No. 3:12-CV-796

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

The electronic copy of the record has been recycled.

                Sincerely,

                LYLE W. CAYCE, Clerk

                By: _____
                Mary Frances Yeager, Deputy Clerk
                504-310-7686

cc w/encl:
      Mr. Gary Patrick Clements
      Ms. Kathleen Ann Kelly
      Mr. Edmond Wade Shows
      Mr. Jacqueline Bordelon Wilson

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 30, 2013

Lyle W. Cayce
Clerk

---

No. 13-70007

---

D.C. Docket No. 3:12-CV-796

CHRISTOPHER SEPULVADO,

      Intervenor Plaintiff - Appellee

v.

BOBBY JINDAL, Governor of Louisiana; JAMES M. LEBLANC,
SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS;
BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY; ANGIE
NORWOOD, Warden, Death Row; LOUISIANA DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS; JOHN DOES, Unknown Executioners,

      Defendants - Appellants

Appeal from the United States District Court for the
Middle District of Louisiana, Baton Rouge

Before STEWART, Chief Judge, SMITH and SOUTHWICK, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and the briefs on
file.

It is ordered and adjudged that the preliminary injunction and stay of
execution are reversed.

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
Deputy

New Orleans, Louisiana

ISSUED AS MANDATE: 0 3 JAN 2014

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 30, 2013

No. 13-70007

Lyle W. Cayce
Clerk

CHRISTOPHER SEPULVADO,

Intervenor
Plaintiff–Appellee,

versus

BOBBY JINDAL, Governor of Louisiana;
JAMES M. LEBLANC,
Secretary, Department of Public Safety and Corrections;
BURL CAIN, Warden, Louisiana State Penitentiary;
ANGIE NORWOOD, Warden, Death Row;
LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS;
JOHN DOES, Unknown Executioners,

Defendants–Appellants.

Appeal from the United States District Court
for the Middle District of Louisiana

Before STEWART, Chief Judge, SMITH and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Defendants Bobby Jindal, Governor of Louisiana; the Louisiana Depart-

No. 13-70007

ment of Public Safety and Corrections; and various state officials (the "state") appeal a preliminary injunction and stay of execution granted to death-row inmate Christopher Sepulvado.[1] Finding reversible error, we reverse the injunction and the stay.

## I.

In 1993, Sepulvado was convicted and sentenced to death for the first-degree murder of his six-year-old stepson. His conviction and sentence were affirmed. *State v. Sepulvado*, 672 So. 2d 158 (La.), *cert. denied*, 519 U.S. 934 (1996). He sought post-conviction relief in state and federal court. The federal district court denied habeas corpus relief, *Sepulvado v. Cain*, No. 00-596 (W.D. La. Aug. 9, 2002), and denied Sepulvado's application for a certificate of appealability. In a detailed opinion setting out the facts and proceedings, we denied Sepulvado's request for a certificate of appealability on six issues, *Sepulvado v. Cain*, No. 02-30909, 2003 WL 261769 (5th Cir.) (per curiam), *cert. denied*, 540 U.S 842 (2003), then dismissed his successive habeas petition for want of jurisdiction, *In re Sepulvado*, 707 F.3d 550, 552 (5th Cir. 2013), *petition for cert. filed* (May 8, 2013) (No. 12-10251).

On December 12, 2012, a state court issued a death warrant and set Sepulvado's execution for February 13, 2013. State law provides that "[e]very sentence of death . . . shall be by lethal injection; that is, by the intravenous injection of a substance or substances in a lethal quantity into the body of a person convicted until such person is dead." La. R.S. 15:569(B) (2012). "Prior to 2010, the State of Louisiana used a three-drug procedure to execute inmates via lethal injection." *Hoffman v. Jindal [Hoffman I]*, No. 12-796-JJB, 2013 WL 489809,

---

[1] In subsequent proceedings, the district court has concluded that "Sepulvado cannot maintain actions as to Governor Jindal and the DPSC" but that "[his] claims should be permitted to proceed as to all [other] named Defendants." *Hoffman v. Jindal [Hoffman II]*, No. 12-796-JJB, 2013 WL 1637244, at *7, *9 (M.D. La. Apr. 16, 2013).

No. 13-70007

at *1 (M.D. La. Feb. 7, 2013). Since 2010, the first drug in the procedure—sodium thiopental—has been unavailable. In December 2010, the state repealed the section of its administrative code enumerating the specific procedures to be followed for the lethal injection of those individuals sentenced to death.[2]

On December 20, 2012, death-row inmate Jessie Hoffman[3] sued under 42 U.S.C. § 1983 alleging, among other claims, that the state's refusal to disclose the details of its execution protocol violates the Due Process Clause of the Fourteenth Amendment. "Counsel for the State has indicated that . . . a single dose of pentobarbital will now be used to execute inmates. However, the State has refused to officially disclose what the protocol is until formal discovery procedures have been complied with." *Hoffman I*, 2013 WL 489809, at *1.

On February 6, 2013, the district court granted Sepulvado's January 23 motion to intervene in Hoffman's suit. The next day—less than a week before Sepulvado's scheduled execution—the court issued a preliminary injunction and stay, reasoning as follows:

> "Fundamental fairness, if not due process, requires that the execution protocol that will regulate an inmate's death be forwarded to him in prompt and timely fashion." *Oken v. Sizer*, 321 F. Supp. 2d 658, 664 (D. Md. 2004). Fundamental fairness requires that the inmate be given meaningful and adequate notice of how his rights have been affected by the changes in the execution protocol. Sepulvado is entitled to review the full protocol itself.

*Id.* at *2.

## II.

We begin by noting what is *not* at issue. Sepulvado does not challenge the

---

[2] *See* La. Admin. Code tit. 22 § 103, *amended by* Louisiana Register, Vol. 36, No. 3, at 525–28 (March 20, 2010), *repealed by* Louisiana Register, Vol. 36, No. 12, at 2873 (Dec. 20, 2010).

[3] Hoffman is not a party to this appeal.

No. 13-70007

legitimacy or legality of his death sentence, which has been upheld by every court that has considered it over the past two decades. "[C]apital punishment is constitutional. . . . It necessarily follows that there must be a means of carrying it out."[4] In *Baze*, the Court explicitly approved lethal injection as a legal means of execution.[5]

*Baze* addressed Kentucky's three-drug protocol, but "a one drug protocol [is] also acceptable under the flexible *Baze* standard. . . ." *Thorson v. Epps [Thorson II]*, 701 F.3d 444, 447 n.3 (5th Cir. 2012), *petition for cert. filed* (Feb. 12, 2013) (No. 12-1010). Other federal courts of appeals agree that pentobarbital-only protocols comport with the Eighth Amendment's prohibition against cruel and unusual punishment.[6] Indeed, the *losing plaintiffs* in *Baze* urged Kentucky to do what Louisiana has done: Adopt "a one-drug protocol that dispenses with the use of pancuronium and potassium chloride . . . ."[7]

The district court did not reach Sepulvado's Eighth Amendment claim.[8] Our review is thus limited to determining whether the court erred by issuing an injunction and stay on due-process grounds.

---

[4] *Baze v. Rees*, 553 U.S. 35, 47 (2008) (plurality opinion) (citation omitted).

[5] *See id.* at 62–63 (plurality opinion); *id.* at 87 (Stevens, J., concurring); *id.* (Scalia, J., concurring); *id.* at 107 (Thomas, J., concurring); *id.* at 113 (Breyer, J., concurring).

[6] *See Towery v. Brewer*, 672 F.3d 650, 659 (9th Cir.) (per curiam), *cert. denied*, 132 S. Ct. 1656 (2012); *Cooey v. Strickland*, 589 F.3d 210, 221 (6th Cir. 2009).

[7] *Baze*, 553 U.S. at 51 (plurality opinion); *see also Cooey*, 589 F.3d at 222 ("By adopting a one-drug injection, Ohio purposely ceased using the pancuronium bromide and potassium chloride that had been the focus of previous Eighth Amendment challenges to lethal injection protocols. . . .").

[8] *Hoffman I*, 2013 WL 489809, at *1 ("There are two claims raised in Sepulvado's Section 1983 complaint and this ruling addresses the first of the two. The Court expresses no opinion on the second issue. The first issue is a 14th Amendment Due Process Claim relative to the disclosure of the current protocol for the execution of an inmate by the State of Louisiana. The second issue is an 8th Amendment Cruel and Unusual Punishment claim.").

4

No. 13-70007

III.

Regarding the standard for an injunction,

> A preliminary injunction is an extraordinary remedy that should only issue if the movant establishes:
>
>> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006)).

We review a preliminary injunction for abuse of discretion. *See Janvey v. Alguire*, 647 F.3d 585, 591–92 (5th Cir. 2011). "Despite this deferential standard, 'a decision grounded in erroneous legal principles is reviewed de novo.'" *Id.* at 592 (quoting *Byrum*, 566 F.3d at 445). "As to each element of the district court's preliminary-injunction analysis, the district court's findings of fact are subject to a clearly-erroneous standard of review, while conclusions of law are subject to broad review and will be reversed if incorrect." *Id.* (internal quotation marks omitted).


IV.

"To assess the likelihood of success on the merits, we look to standards provided by the substantive law." *Id.* at 596 (internal quotation marks omitted). The district court determined that Sepulvado was likely to prevail on his claim that the Due Process Clause of the Fourteenth Amendment entitles him to prompt and detailed disclosure of Louisiana's most recent execution protocol. *Hoffman I*, 2013 WL 489809, at *2. The only authority the district court cited to support its conclusion was *Oken v. Sizer*, 321 F. Supp. 2d at 664, in which the

5

No. 13-70007

Supreme Court, 542 U.S. 916, 916 (2004), swiftly—and summarily—vacated the stay.[9]

At least one of our sister circuits has rejected a similar claim based on *Oken*. Less than twenty-four hours before the scheduled execution of inmate Beaty, Arizona informed him that it intended to substitute pentobarbital for sodium thiopental in its lethal injection protocol. *Beaty v. Brewer [Beaty I]*, 791 F. Supp. 2d 678, 682–83 (D. Ariz. 2011). Beaty alleged that the "failure to timely notify him of the drug substitution violates his right to due process under the Fourteenth Amendment because he lacks sufficient time to review the protocol change, as well as his medical records, to determine whether there are any constitutional concerns with the new drug." *Id*. at 681. The district court disagreed:

> In his motion for injunctive relief, Plaintiff relies on *Oken* in support of his assertion that he has a right to reasonable notice of protocol changes so that he can ensure such changes comport with constitutional requirements. However, this Court cannot rely on one district court's unsupported assertion that capital plaintiffs have such a due process right, especially in view of the fact that the United States Supreme Court vacated the stay of execution granted by the district court in *Oken*. . . .
>
> Moreover, other than the district court order in *Oken*, Plaintiff cites no authority to support his allegation that the Due Process Clause provides a right to review protocol changes and attempt to challenge them. Other courts to address this issue have found no such authority. *See Clemons v. Crawford*, 585 F.3d 1119, 1129 n.9 (8th Cir. 2009) (noting lack of authority indicating due process right to probe into backgrounds of execution personnel); *Powell v. Thomas [Powell I]*, . . . 784 F. Supp. 2d 1270, 1282–83 . . . (M.D. Ala. . . . 2011) (finding no authority for proposition that condemned inmate has due process right to receive notice and an opportunity to be heard regarding substitution of pentobarbital).

---

[9] *See also Harris v. Johnson*, 376 F.3d 414, 419 (5th Cir. 2004) (per curiam) (vacating district court opinion that had granted injunctive relief to death-row inmate and had distinguished Supreme Court's vacatur in *Oken*).

No. 13-70007

> Given the lack of authority to support Plaintiff's procedural due process violation, the Court finds that he has failed to establish a likelihood of success on the merits of that claim to notice. . . .

*Id.* at 685–86 (citation omitted). The Ninth Circuit affirmed "*[f]or the reasons expressed by the district court. . . .*" *Beaty v. Brewer [Beaty II]*, 649 F.3d 1071, 1072 (9th Cir. 2011) (per curiam) (emphasis added).

Sepulvado relies heavily on *Arthur v. Thomas*, 674 F.3d 1257, 1263–64 (11th Cir. 2012) (per curiam), in which the court reversed the dismissal of a claim that Alabama had materially deviated from its execution protocol. *Arthur* is inapposite, because the court grounded its decision in the Eighth Amendment and the Equal Protection Clause. *See id.* at 1262, 1263. Arthur also alleged that the "Alabama's policy of keeping information about its lethal injection procedure secret violates the Due Process Clause. . . ." *Id.* at 1259. The court did not reach that claim and expressly refrained from requiring Alabama to produce its execution protocol.[10] We agree with the state that nothing in *Arthur* overruled a prior holding from the same court rejecting an intervenor's claim—made pursuant to the Eighth Amendment rather than the Fourteenth—that he possessed a "broad . . . right to know the details of his execution in order to ensure proper oversight and avoid uncertainty that unnecessarily creates anxiety. . . ."[11]

---

[10] *See Arthur*, 674 F.3d at 1263 n.7 (emphasis added) ("Arthur argues that it is necessary for his Equal Protection and Due Process claims that Alabama make available a copy of its written execution protocol. *We leave it to the district court to determine if production of Alabama's written execution protocol is necessary to resolve Arthur's claims.*").

[11] *Powell v. Thomas (Powell II)*, 641 F.3d 1255, 1258 (11th Cir. 2011) (per curiam); *see Valle v. Singer*, 655 F.3d 1223, 1237 n.13 (11th Cir.) (per curiam) (adopting portion of district court opinion that concluded "to the extent Valle is claiming that secrecy prevented him from litigating his issues up to now, this claim was rejected in *Powell [] II* and the failure to disclose is not unconstitutional"), *cert. denied*, 132 S. Ct. 73 (2011); *Powell v. Thomas (Powell III)*, 643 F.3d 1300, 1305 (11th Cir. 2011) (per curiam) (finding no error in the dismissal—on statute-of-limitations grounds—of death-row inmate's claim "that his rights under the Eighth and Fourteenth Amendments were violated because Alabama's private execution protocol was changed secretly and without any oversight").

No. 13-70007

In summary, no appellate court has recognized the due-process claim on which the district court *a quo* granted relief; we decline to be the first. Sepulvado's assertion of necessity—that Lousiana must disclose its protocol so he can challenge its conformity with the Eighth Amendment—does not substitute for the identification of a cognizable liberty interest.[12] According to the district court, "[i]t is axiomatic that . . . an inmate who is to be executed cannot challenge a protocol as violative of the 8th Amendment until he knows what that protocol contains." *Hoffman I*, 2013 WL 489809, at *1. We disagree.[13] Adopting the district court's reasoning would frustrate "the State's significant interest in enforcing its criminal judgments. . . ." *Nelson v. Campbell*, 541 U.S. 637, 650 (2004) (citation omitted). Courts are not supposed to function as "boards of inquiry charged with determining 'best practices' . . . ." *Baze*, 553 U.S. at 51 (plurality opinion).

Despite Louisiana's concealment of its protocol, Sepulvado has managed to assert a litany of specific cruel-and-unusual-punishment claims.[14] Other

---

[12] *See, e.g., Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted) ("The types of interests that constitute 'liberty' and 'property' for Fourteenth Amendment purposes are not unlimited. . . . Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it.").

[13] *See Valle*, 655 F.3d at 1237 n.13 (rejecting claim that failure to disclose protocol prevented death-row inmate from litigating underlying issues); *see also Clemons*, 585 F.3d at 1129 n.9 (noting lack of authority indicating due-process right to probe into backgrounds of execution personnel).

[14] Sepulvado has alleged that (1) the executioners are not medical professionals and have not received adequate training; (2) the equipment has not been tested or maintained (3) the protocols are not sufficiently specific and thus there is a likelihood that the execution will be carried out differently each time and subject to variances; (4) the executioners are not required to be familiar with the drugs; (5) there is no standardized timing for the administration of the drugs; (6) there is no provision for a medical history review; and (7) there are no provisions for practice sessions. Although Sepulvado's underlying Eighth Amendment claim is not before us, it appears to constitute "an attempted constitutionalization of the planned regimen for practice by staff, with nothing but guessing that staff lack the judgment and skill to administer the pentobarbital. . . ." *Beaty I*, 791 F. Supp. 2d at 686, *aff'd by Beaty II*, 649 (continued...)

inmates have survived motions to dismiss and have obtained discovery on the strength of similar, unsubstantiated allegations.[15]   In later proceedings, Sepulvado himself has overcome the state's contention that his complaint failed to state a claim. *See Hoffman II*, 2013 WL 1637244, at *3–*6.

There is no violation of the Due Process Clause from the uncertainty that Louisiana has imposed on Sepulvado by withholding the details of its execution protocol.   Perhaps the state's secrecy masks "a substantial risk of serious harm,"[16] but it does not create one.  Having failed to identify an enforceable right that a preliminary injunction might safeguard, Sepulvado cannot prevail on the merits.[17]

The injunction, which is "grounded in erroneous legal principles," is an abuse of discretion. *Janvey*, 647 F.3d at 592 (quoting *Byrum*, 566 F.3d at 445). "Because we have determined that [Sepulvado] cannot show a substantial likelihood of success . . . , we need not address [the state]'s additional arguments regarding the other necessary elements for preliminary injunctive relief."  Our ruling on the initial element is sufficient for reversal.  The holding on the initial element is sufficient to vacate the injunction." *La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 608 F.3d 217, 225 (5th Cir. 2010).

---

[14] (...continued)
F.3d at 1072.

[15] *See, e.g., Chester v. Beard,* 657 F. Supp. 2d 534, 542–45 (M.D. Pa. 2009) (denying motion to dismiss and permitting discovery to proceed); *see also Thorson v. Epps [Thorson I],* No. 1:08-CV-1261, 2009 WL 1766806, at *2 (N.D. Miss. June 22, 2009) (denying motion to dismiss).

[16] *Baze*, 553 U.S. at 52 (plurality opinion) (internal quotation marks omitted).

[17] *See Albright v. Oliver,* 510 U.S. 266, 271 (1994) (plurality opinion) (citation and internal quotation marks omitted) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. . . . The first step in any such claim is to identify the specific constitutional right allegedly infringed.").

No. 13-70007

## V.

"We review a district court's grant of a stay of execution for abuse of discretion." *Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir.), *cert. denied*, 132 S. Ct. 1995 (2012). "[A] stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "As we read *Hill*, a plaintiff cannot wait until a stay must be granted to enable him to develop facts and take the case to trial—not when there is no satisfactory explanation for the delay." *Reese v. Livingston*, 453 F.3d 289, 291 (5th Cir. 2006).

## VI.

"In *White v. Johnson*[, 429 F.3d 572 (5th Cir. 2005) (per curiam)], [we] denied a motion for a stay, explaining that the inmate had been sentenced to death for over six years and 'only now, with his execution imminent, has decided to challenge a procedure for lethal injection that the State has been using for his entire stay on death row.'"[18] Sepulvado has been on death row for more than twenty years. The State maintains that his intervention in Hoffman's suit—less than a month before his scheduled execution—was impermissibly dilatory. The district court disagreed, concluding that

> there is a satisfactory explanation for the delay. Sepulvado has been trying to determine what the protocol is for years and the State will not provide this information. It is also factually distinguishable from *White* because in *White*, the inmate was challenging a known procedure that had been in place for the duration of his death row stay. Here, ever since 2010, the procedure has been unknown.

*Hoffman I*, 2013 WL 489809, at *1.

---

[18] *Hoffman I*, 2013 WL 489809, at *1 (quoting *White*, 429 F.3d at 574); *see also Hill*, 547 U.S. at 584 (citing *White*).

No. 13-70007

As the district court observed, Louisiana's repeal of its lethal-injection protocol—which forms the basis of Sepulvado's due-process claim—occurred *two years* before he challenged the state's secrecy on the eve of his execution.[19] Any harm accrued in December 2010, and Sepulvado has not explained his failure to bring a claim before December 2012.[20] The district court abused its discretion by granting Sepulvado's untimely motion for a stay. Even assuming *arguendo* that the motion was timely, there is no equitable basis for further delay, because Sepulvado is not entitled to injunctive relief.[21]

The preliminary injunction and stay of execution are REVERSED.

---

[19] Before intervening in Hoffman's suit, Sepulvado sought to exhaust his claim by filing a request for an administrative remedy procedure on December 18, 2012—*after* his most recent death warrant was signed and almost two years after Louisiana had repealed the last published version of its execution protocol. *See* Louisiana Register, Vol. 36, No. 12, at 2873 (Dec. 20, 2010), *repealing* La. Admin. Code tit. 22 § 103.

[20] From Sepulvado's briefing, we infer the reason for his delay was that proceedings in his primary state-court case were stayed from July 2008 until December 2012. That stay does not excuse Sepulvado's failure timely to develop a § 1983 claim based on the due-process violation that allegedly accrued in December 2010.

Since January 22, 2010, Sepulvado has been party to additional state-court litigation concerning whether the protocol is a "rule" for purposes of the Louisiana Administrative Procedure Act. *See Code v. Dep't of Pub. Safety & Corr.*, 103 So. 3d 1118 (La. App. 1st Cir. 2012), *writ denied*, 105 So. 3d 59 (La. 2013). That litigation has no bearing on the timeliness of Sepulvado's § 1983 claim.

[21] *Cf. Adams*, 679 F.3d at 323; *Herrera v. Collins*, 954 F.2d 1029, 1034 (5th Cir. 1992) *aff'd*, 506 U.S. 390 (1993).