IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JESSIE HOFFMAN and | ) | |
| CHRISTOPHER SEPULVADO | ) | CIVIL ACTION |
| *Plaintiffs* | ) | |
| | ) | NO. 3:12-cv-00796 |
| v. | ) | |
| | ) | JUDGE JAMES BRADY |
| BOBBY JINDAL, Governor of Louisiana; | ) | |
| BURL CAIN, Warden, Louisiana State | ) | MAGISTRATE JUDGE |
| Penitentiary; JAMES LEBLANC, Secretary, | ) | STEPHEN RIEDLINGER |
| Louisiana Department of Public Safety and | ) | |
| Corrections; LOUISIANA DEPARTMENT OF | ) | |
| PUBLIC SAFETY AND CORRECTIONS; | ) | |
| ANGELA NORWOOD, Warden, Death Row; | ) | |
| and JOHN DOES, unknown executioners, | | |
| *Defendants* | | |

## INTERVENOR'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### NATURE OF THE CASE

This action is brought pursuant to 42 U.S.C. § 1983 for violations and threatened violations of Intervenor Bobby Lee Hampton's rights to due process and to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. Louisiana's current execution protocol, disclosed six months after Plaintiff Jessie Hoffman filed his *Original Complaint* in this matter, does not adequately protect Intervenor Hampton from cruel and unusual punishment due to the insufficient training, expertise, and supervision of those involved in the administration of the lethal drug. Defendants have also engaged in a pattern of revising the execution protocol immediately before a scheduled execution date, which, coupled with Defendants' refusal to provide access to the protocols, denies Mr.

1

Hampton the due process right to evaluate and challenge the method by which the Defendants seek to execute him. Intervenor seeks injunctive relief to prevent the Defendants from executing him through unconstitutional means.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in this District pursuant to 24 U.S.C. § 1391(b), as the events complained of have occurred/ will occur in this District.

## PARTIES

3. Intervenor Bobby Lee Hampton is a citizen of the United States of America, currently incarcerated under a sentence of death at the Louisiana State Penitentiary, in Angola, Louisiana ("Angola"), and is under the control and supervision of the Louisiana Department of Public Safety and Corrections. He is presently litigating a petition for a writ of habeas corpus in the United States District Court for the Western District of Louisiana.

4. Defendant James LeBlanc is the chief executive officer of the Louisiana Department of Public Safety and Corrections ("DOC"). He was appointed to this position by Governor Jindal. In this capacity, he has control of the DOC. By law, he is responsible for protecting the constitutional rights of all persons held in DOC's custody. At all relevant times, Leblanc was acting under color of law and as the agent, and, as a matter of law, the official representative of the DOC. Secretary Leblanc is sued in his individual and official capacities.

    a. Defendant LeBlanc can be served at 504 Mayflower Street, Baton Rouge, Louisiana 70802. *Waiver of service will be requested.*

5.    Defendant Burl Cain is the Warden of the Louisiana State Penitentiary in Angola.  Under Louisiana law, Warden Cain is responsible for carrying out all Louisiana executions at Angola.  In this capacity, he has operational control over Angola by making staffing, budget, and administrative decisions.  By law, he is responsible for protecting the constitutional rights of all persons held in Angola's custody.  At all relevant times, Warden Cain was acting under color of law and as the agent, and, as a matter of law, the official representative of Angola.  Warden Cain is sued in his individual and official capacities.

     a.  Defendant Cain can be served at 17544 Tunica Trace, Angola, Louisiana 70712. *Waiver of service will be requested.*

6.    Defendant Angela Norwood is the Assistant Warden of Angola's Death Row.  She has been in that position since 2011.  In this capacity, Warden Norwood has operational control over Death Row by making staffing, budget, and administrative decisions.  By law, she is responsible for protecting the constitutional rights of all persons held on Angola's Death Row.  At all relevant times, Warden Norwood was acting under color of law and as the agent, and, as a matter of law, the official representative of Angola.  Warden Norwood is sued in her individual and official capacities.

     a.  Defendant Norwood can be served at 17544 Tunica Trace, Angola, Louisiana 70712. *Waiver of service will be requested.*

7.    Defendants John Does are involved in the implementation of the DOC's execution protocols including transport, administration of drugs, security, preparation for the execution, and a variety of other tasks.  Mr. Hampton has not been able, through due diligence, to discover their identities.  Defendants LeBlanc, Cain, and Norwood possess information identifying these individuals as they are responsible for selecting the

individuals to carry out these tasks.  Mr. Hampton anticipates that the identities of these unknown executioners will be revealed in discovery.  John Does are sued in their individual and official capacities.

   a.   Upon information and belief, Defendants John Does are citizens of the United States of America and residents of Louisiana.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8.   On or about November 18, 2013, Mr. Hampton filed a request for administrative remedy procedure ("ARP") with the Louisiana State Penitentiary, challenging the State's lethal injection procedure.  On December 9, 2013, Mr. Hampton's ARP was rejected from the prison's administrative remedy system.  A copy of the denial of Mr. Hampton's ARP is attached as Exhibit 1.

**STATEMENT OF CLAIMS**

9.   This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 18 U.S.C. § 3599, and 28 U.S.C. §§ 2201 and 2202 for violations and threatened violations by the Defendants of Mr. Hampton's rights to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution, and for violations and threatened violations of Mr. Hampton's rights to due process, access to the courts, access to governmental proceedings, and equal protection as guaranteed by the First and Fourteenth Amendment to the United States Constitution.

10.  Intervenor Hampton challenges the constitutionality of his execution, whether performed pursuant to the latest protocol which would require the use of expired and/or illegally-obtained drugs and which otherwise does not adequately protect Mr. Hampton from cruel

and unusual punishment, or performed pursuant to a newly amended protocol with insufficient time for review and evaluation.

11.   Mr. Hampton seeks a declaratory judgment that the United States Constitution prohibits the DOC from carrying out an execution without first promulgating a viable protocol and then providing him with a certified copy of the applicable protocol within 6 months before any scheduled execution date.   Additionally, Mr. Hampton seeks a judgment ordering Defendants to notify him in a timely manner in the event that the execution protocol is revised.

12.   Mr. Hampton also seeks a declaratory judgment that the Defendants cannot execute him without providing him access to counsel in the execution chamber.

13.   Intervenor Hampton seeks a permanent injunction to prevent the defendants from executing him through unconstitutional means.

14.   This Complaint does not challenge Mr. Hampton's underlying capital conviction or sentence of death.   Rather, Mr. Hampton challenges only the manner and means by which the DOC intends to execute him.

## FACTS

15.   All statements of fact and allegations anywhere in this Complaint are incorporated by reference into the Complaint.

### Adoption of Lethal Injection as Method of Execution

16.   In 1991, Louisiana adopted lethal injection as its method of execution pursuant to La. R.S. § 15:569.

17. Under La. R.S. § 15:568, the Secretary of the Department of Public Safety and Corrections is responsible for executing offenders in conformity with the death warrant issued in each case.

18. Louisiana defines lethal injection as "the intravenous injection of a substance or substances in a lethal quantity into the body of a person convicted until such person is dead." La. R.S. § 15:569.

19. No legislative guidance exists regarding lethal injection in Louisiana other than La. R.S. § 15:569.

20. The remaining details are left to the discretion of the DOC in developing and adopting an execution protocol.

### Lethal Injection Procedures Have Resulted in "Botched" Executions

21. At least thirty-one botched lethal injection executions occurred between 1982 and 2001.[1] Additional botched executions have occurred in the years since 2001.

22. In 2011, during the lethal injection of Emmanuel Hammond in Georgia, witnesses reported that, sometime after being sedated, Mr. Hammond awakened, opened his eyes, and grimaced in pain. A physician filed an affidavit that the drugs used by the Georgia Department of Corrections would have caused an agonizing burning sensation and asphyxiation without adequate anesthesia.

23. In 2009, an attempt to execute Romell Broom was called off after Ohio prison officials were not able to find a vein in which to insert the intravenous tubing for 90 minutes.

---

[1] Deborah W. Denno, When Legislatures Delegate Death: The Troubling Paradox Behind State Uses of Electrocution And Lethal Injection And What It Says About Us, 63 OHIO ST. L.J. 63, 139-41 (2002) (listing by inmate name the botched lethal injection executions, and describing evidence of error).

During the 90 minutes, Mr. Broom cried, attempted to assist his executioners, and experienced severe pain as the executioners attempted to use veins in his legs and neck.

24.  On December 13, 2006, it took 34 minutes for an execution team to kill Angel Diaz at Florida State Prison. Eyewitnesses reported Mr. Diaz spoke, gasped for air, and grimaced in pain during his execution. They observed his face contort, his jaw clench, and his head roll back and forth throughout the botched execution. A subsequent study by a special Commission convened by the Governor determined that, as a result of an inadequately trained and incompetent execution team, both of the IVs in Mr. Diaz's arms were improperly placed. As a result, the first drug, sodium thiopental, was injected subcutaneously, rather than intravenously, as intended, and the first drug to enter Mr. Diaz' circulation was the paralytic, pancuronium bromide. Mr. Diaz's death likely resulted from asphyxiation, and he was conscious or partly conscious throughout the process, rather than adequately anesthetized and insensate to pain or suffering.

25.  On June 16, 2011, the State of Alabama used pentobarbital in an execution for the first time, to execute Eddie Powell. The Birmingham News reported: "After a moment his eyes opened again and he raised his head and neck off the gurney. Seemingly confused and startled, he jerked his head to one side and began breathing heavily, his chest rose and contracted."[2]

26.  On June 24, 2011, the State of Georgia used pentobarbital in an execution for the first time, to execute Roy Willard Blankenship. The Associated Press reported: "Blankenship jerked

---

[2]Matthew Busch, Powell Says He's Sorry Before Death By Lethal Injection At Alabama's Holman Prison, BIRMINGHAM NEWS, June 16, 2011, available at http://blog.al.com/spotnews/2011/06/powell_says_hes_sorry_before_d.html.

his head several times, mumbled inaudibly and appeared to gasp for breath for several minutes after he was pumped with pentobarbital on Thursday in Georgia's death chamber."[3]     Within a week of Blankenship's death, Danish pharmaceutical company Lundbeck announced that it would stop shipping pentobarbital to American prisons that carry out the death penalty by lethal injection.[4]

## Louisiana's Lethal Injection Protocols

27.   The State and its agents, by statute, will execute Mr. Hampton by the use of lethal injection. La. R.S. § 15:567 et seq.

28.   The DOC's lethal injection protocol, which consists of prison directives, checklists, and any other documents that guide the prison in its administration of lethal injection, has been revised at least nine (9) times since the adoption of lethal injection in 1991.

29.   Prior to the filing of the *Original Complaint* (Doc. No. 1) in this matter, the last-disclosed execution protocol consisted of:

   a.   A 9-page document dated January 7, 2010 and titled "Penitentiary Directive No. 09.049"; and

   b.   A 12-page checklist dated April 30, 2008.

30.   The date on the "Penitentiary Directive No. 09.049" corresponds with the date on which the State executed Gerald Bordelon.   Mr. Bordelon was the last person executed in Louisiana.

---

[3] Associated Press, Georgia Inmate's Thrashing During Execution Raises New Questions About Death Row Drug, July 28, 2011.

[4] 4 David Jolly, Danish Company Blocks Sale of Drug for U.S. Executions, N.Y. TIMES, July 1, 2011.

31. On June 17, 2013, approximately six months after the *Original Complaint* was filed, Defendants provided in discovery a set of documents collectively titled the "*Louisiana Execution Protocol*," on June 17, 2013 (hereinafter "2013 Protocol"). This protocol consists of the following documents:

    a. A list of the holders of the "Execution Manual";

    b. A telephone contact list;

    c. A chain of command;

    d. A list of institutional staff telephone numbers;

    e. "Department Regulation No. C-03-001" dated August 1, 2012 (9 pages);

    f. A copy of La. R.S. § 15:567-571;

    g. "Penitentiary Directive No. 09.049" dated January 9, 2013 (8 pages);

    h. "Form C-03-001-A" (Agreement by Witness to execution);

    i. A checklist of "Internal Procedures for Execution," dated January 10, 2013 (8 pages);

    j. An "LSP Pharmacist Checklist" (1 page);

    k. A list of execution team duties (1 page);

    l. "LCIW Policy No. 3-04-005," dated December 1, 2012 (5 pages);

    m. An undated checklist of "LCIW Internal Procedures for Execution" (1 page);

    n. A form letter from James LeBlanc to Burl Cain, advising that a death warrant has been set;

o. A "Receipt of Warrant of Execution" form;

p. A form letter from James LeBlanc to Bobby Jindal enclosing a death warrant;

q. A form letter from James LeBlanc to "Clerk," enclosing redacted telephone numbers;

r. A Clerk of Court Mailing List for Executions;

s. A form letter from James LeBlanc to a victim's relative advising of an execution date;

t. A form letter from James LeBlanc to a witness to the execution;

u. An "Agreement by Witness to Execution" form;

v. A "Request for Clergy Witness" form;

w. A form regarding "Instructions for Disposition of Personal Property";

x. A form regarding funeral arrangements; and

y. A form letter from James LeBlanc to Bobby Jindal advising of phone numbers.

32. At the time of the filing of the *Original Complaint* in this matter, the amended protocol had not yet been enacted.

33. Aside from length, there are several significant differences between the 2010 Protocol and the 2013 Protocol.

34. Under the 2010 Protocol, a three-drug cocktail was used as the "lethal substance," namely, sodium thiopental, pancuronium bromide, and potassium chloride. The 2013 Protocol has changed the lethal substance to 5 g of "pentobarbitol [sic]," followed by a saline flush.

35.   Under the 2013 Protocol, there are now separate directives and checklists for male and female inmates, although all executions take place in the same location.

36.   The 2013 Protocol has also deleted several items from "Penitentiary Directive No. 09.049," including entire sections regarding preparations which formerly took place three days and one day prior to a scheduled execution.

37.   Under the 2013 Protocol, the Defendants have substituted a sedative—pentobarbital—for a three drug cocktail consisting of an anesthetic, a paralytic, and a salt to stop the heart.

38.   Pentobarbital was not designed to produce unconsciousness, but sedation.

39.   Pentobarbital is not rapid-acting.   Unlike sodium thiopental, an ultra-short acting barbiturate which takes effect within seconds, pentobarbital is a less lipid soluble and crosses the blood-brain barrier much more slowly, taking 15 to 60 minutes to take full effect.

40.   Upon information and belief, the use of pentobarbital alone will likely cause serious harm to the condemned inmate.   Even if properly administered, pentobarbital can result in an insufficient loss of consciousness and sensation, causing the condemned inmate to suffer excruciating pain and suffering while still conscious.

41.   Indeed, pentobarbital apparently failed to induce loss of consciousness and sensation in the executions of Eddie Powell and Roy Willard Blankenship, both of whom gasped for air and jerked their heads after the drug was administered.

## Lack of Review of the Protocol

42. On information and belief, the 2013 Protocol has not been examined by a licensed medical professional to ensure that there are adequate safeguards to protect Mr. Hampton's constitutional rights against torture, pain, and suffering.

43. On information and belief, the 2013 Protocol was promulgated without any medical research or review to determine that a prisoner would not suffer a painful death.

44. On information and belief, no member of the medical community was involved in the adoption of the 2013 Protocol.

45. On information and belief, the DOC may attempt to substitute drugs within their lethal injection process without amending the 2013 Protocol.

## Risk of Constitutional Violations

46. On information and belief, the DOC will attempt to substitute drugs within their lethal injection process without creating procedures appropriate to the properties of the new drugs, such as how to flush the IV lines, the amount of the drug, or the timing of the administration of the drug.

47. On information and belief, Mr. Hampton will suffer the wanton and unnecessary infliction of pain and torture, or a prolonged lingering death without careful review of the entire protocol if the DOC substitutes pentobarbital. On information and belief, the purported protocol will not be carried out in accordance with the written instructions, or will be administered in such a way that fails to adequately safeguard Mr. Hampton's rights.

48. The 2013 Protocol promulgated by the Defendants does not include adequate safeguards to protect Mr. Hampton from cruel and unusual punishment.

49. On information and belief, Mr. Hampton's execution will not be carried out in accordance with the written instructions, or will be administered in such a way that fails to adequately safeguard Mr. Hampton's rights.

50. There is a reasonable likelihood that pentobarbital will be ineffectively delivered, and, as a result, it will not cause unconsciousness or adequate sedation for the duration of the execution process.

51. The intravenous tubing necessary to administer the drugs in question will not be inserted under the 2013 Protocol by a qualified medical professional.  The Defendants John Does will insert the tubing that will result in a malfunction or the missing of a vein which will produce a tortuous result for Intervenor Hampton.

52. On information and belief, Defendants Does are not medical professionals and have no medical training.

53. On information and belief, in the past the DOC has employed corrections officers to carry out the execution.

54. The DOC's supply of pentobarbital (the drug to be administered under the 2013 Protocol) has expired.  On information and belief, the efficacy of pentobarbital cannot be assured with any reasonable degree of certainty once it has expired.  Thus far, the DOC has refused to disclose whether it intends to substitute another drug for the expired pentobarbital.

55. The drug to be administered under the 2013 protocol will have been stored improperly by the Defendants Does in advance of the execution and thus will not have the effect that the protocol anticipates.

56.  The members of the execution team (John Does) will not have received adequate training and will make errors in carrying out the execution pursuant to the 2013 Protocol.

57.  Under the 2013 protocol, the execution will be carried out by Defendants John Does without adequate medical supervision.

58.  On information and belief, the equipment used to carry out the execution under the 2013 Protocol has not been tested for efficacy or maintained by the Defendants since the last execution and thus will malfunction.

59.  The equipment used to carry out the execution includes medical equipment that must be inspected by a medical professional to ensure that it can be used effectively.

60.  The protocols are not adequately specific, and as such the execution may be carried out in different manners each time.  There are no safeguards to protect against this variance under the 2013 Protocol.

61.  There is nothing in the 2013 Protocol that requires Defendants John Does to become familiar with the drugs they are administering in order to understand their properties, the dangers associated with those drugs, and/or any other relevant medical information.

62.  The 2013 Protocol fails to standardize the timing for the administration of the drugs, and the execution team thus may err in their delivery.

63.  There is no provision for a medical history review by the Defendants under the 2013 Protocol to ensure that Mr. Hampton does not take any medications or have any medical conditions that might interfere with the efficacy of the lethal injection protocol.  Likewise, because any protocol and the drugs to be used are secret, Mr. Hampton lacks adequate notice to independently investigate the likelihood of any negative drug interaction.

64.   Those who will be selected to carry out the execution, Defendants John Does, lack the qualifications, training, and competence to do so in a constitutional manner under the 2013 Protocol.

65.   The named Defendants know the Defendant John Does are unqualified to administer lethal drugs, but are deliberately indifferent to the risks that their failure to train and supervise the John Does will have on Mr. Hampton's constitutional rights.

66.   Defendants John Does have not engaged in adequate practice sessions or complied with other provisions of the 2013 Protocol.

67.   The use of the 2013 Protocol creates a substantial risk that Mr. Hampton will suffer the wanton and unnecessary infliction of pain and torture, or a prolonged, lingering death, as he is put to death.   This includes experiencing substantial pain and suffering, conscious paralysis, suffocation, or conscious cardiac arrest.   On information and belief, any purported revised and current protocol does not include adequate safeguards to protect Mr. Hampton from cruel and unusual punishment.

68.   On information and belief, any purported revised and current protocol will not be administered in a way that adequately protects Mr. Hampton from cruel and unusual punishment.

**Lack of Attorney Access**

69.   Under the 2013 Protocol, all attorney visits must end by 3:00 p.m. on the execution date. Executions, however, must take place between 6:00 p.m. and 9:00 p.m.   Attorneys, moreover, are not allowed to be present in the execution chamber while the execution is performed.

70. Without attorney access, there is no way to ensure that the execution protocol is carried out as directed.

71. Without attorney access, there is no way to confirm that the condemned inmate did not suffer pain and suffering while conscious.

72. Defendants' failure to provide inmates with meaningful access to counsel during the execution amounts to a denial of the right of access to the court system.

**The Defendants are Responsible for Intervenor Hampton's Harm**

73. Warden Cain is responsible for ensuring that there is a constitutional protocol for executing Mr. Hampton. He is also responsible for ensuring that executions are carried out in a constitutional fashion.

74. Warden Norwood is responsible for assisting Warden Cain in ensuring that there is a constitutional method of executing Mr. Hampton.

75. Secretary LeBlanc is responsible for overseeing Warden Cain in his drafting of the protocols.

**CLAIMS FOR RELIEF**

I.  Executing Mr. Hampton without adequate notice of the procedures to be used violates due process and fundamental fairness under the Fourteenth Amendment.

    a.  Among other due process violations, executing Mr. Hampton without giving him a fair opportunity to review the lethal injection protocol and lodge any legal objections violates due process. U.S. CONST. AMEND. XIV.

b.  Fundamental fairness and due process require that an individual be given an opportunity to receive notice of how one's rights will be affected and an opportunity to respond and be heard.

c.  By refusing to disclose the protocol, the Defendants have denied Mr. Hampton the ability to effectively enforce his Eighth Amendment rights and have attempted to thwart judicial review.

d.  By amending the protocols on the day of Gerald Bordelon's execution (January 7, 2010) and a mere month prior to Christopher Sepulvado's original execution date (February 13, 2013), the Defendants have precluded timely and effective evaluation and judicial review.

e.  Mr. Hampton has been prevented from knowing and therefore challenging the lethal injection which is a part of due process.

f.  The Defendants are deliberately indifferent to Mr. Hampton's rights.

II.  Executing Mr. Hampton pursuant to the 2013 Protocol would violate his rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment and to equal protection of law.

a.  Among other violations, the 2013 Protocol fails to include adequate safeguards and/or will be administered in a way that fails to adequately protect Mr. Hampton's constitutional rights to be free from cruel and unusual punishment.

b.  Among other violations, in exempting the protocol from the Louisiana Administrative Procedures Act, the state has attempted to thwart well-established administrative rules, in violation of due process.

c. Among other violations, Defendants have, and will, materially deviate from any purported written execution protocol, impermissibly burdening Intervenor Hampton's right to be free from cruel and unusual punishment and violating his right to equal protection under the law.

d. The Defendants are deliberately indifferent to Mr. Hampton's rights.

III. Executing Mr. Hampton after substituting drugs used in any purported protocol without promulgating a new protocol would violate his rights to due process and to be free from cruel and unusual punishment.

a. The substitution of drugs without creating a new protocol to address the difference between the new drug and old drugs violates Mr. Hampton's rights to due process, and will result in the infliction of cruel and unusual punishment.

b. The Defendants are deliberately indifferent to Mr. Hampton's rights.

IV. The 2013 Protocol denies the condemned inmate access to counsel and the courts, in violation of the First, Sixth and Fourteenth Amendments.

a. The 2013 Protocol expressly excludes the condemned inmate's attorney from the execution chamber, preventing attorney access and observation during the execution, and preventing access to the courts.

b. The Defendants are deliberately indifferent to Mr. Hampton's rights.

V. Defendants' deliberate actions in concealing pertinent information violates Mr. Hampton's First Amendment right to be informed about the manner in which the State intends to execute him.

a. Defendants' refusal to provide Intervenor with information that would enable him to determine how the State intends to execute him denies him his First Amendment right of access to governmental proceedings. See *Cal. First Amendment Coal. V. Woodford*, 299 F.3d 868, 873 (9th Cir. 2002) ("It is well-settled that the First Amendment guarantees the public – and the press – a qualified right of access to governmental proceedings."); *id*. at 875 (nothing that the public's First Amendment right of access to governmental proceedings extends to executions).

b. Defendants' deliberate concealment of information that would enable Intervenor Hampton to determine how the State intends to carry out the death sentence, including information relating to lethal-injection drugs and the authority of Defendants to handle controlled substances, deprives Intervenor of his First Amendment right of access to governmental proceedings.

c. Defendants' deliberate concealment of information that would enable Intervenor Hampton to determine how the States intends to carry out the death sentence, including information relating to lethal-injection drugs and the authority of Defendants to handle controlled substances, denies Plaintiff of his First Amendment right to be informed about how the State intends to implement the most serious punishment possible: the penalty of death.

VI. Request for Declaratory Judgment Pursuant to 28 U.S.C. § 1331.

a. A declaration that it is unconstitutional under the Eighth and Fourteenth Amendments for the DOC to carry out an execution without first affording Mr. Hampton a meaningful opportunity to access and review the execution protocol.

b.  A declaration that it violates the Eighth and Fourteenth Amendments for the DOC to carry out an execution using expired drugs, illegally obtained drugs, or drugs that were not properly stored in advance of the execution.

c.  A declaration that it violates the Eighth and Fourteenth Amendments for the DOC to carry out an execution without a detailed protocol in place.

d.  A declaration that it violates the Eighth and Fourteenth Amendments for the DOC to execute Mr. Hampton pursuant to 2013 Protocol.

e.  A declaration that it violates the Sixth and Fourteenth Amendments for the Defendants to prohibit Mr. Hampton from having access to his attorneys during his execution.

VII.  Request for a Permanent Injunction.

a.  A permanent injunction preventing the Defendants from executing Mr. Hampton without affording access to the protocol by which he will be executed at least six months in advance of any execution date.

b.  A permanent injunction preventing the Defendants from executing Mr. Hampton without first promulgating an up-to-date protocol that comports with the protections guaranteed by the Eighth and Fourteenth Amendments and providing him adequate time to review and challenge it.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Hampton requests that this Court:

1.  Grant declaratory and permanent injunctive relief, as requested in this Complaint;

2. Order the Defendants to provide timely notice to Intervenor Hampton every time the execution protocol is modified, regardless of whether an execution date has been set;

3. Grant a permanent injunction enjoining defendants from executing Mr. Hampton without first promulgating an up-to-date protocol and providing him adequate time to review and challenge it;

4. Grant a permanent injunction preventing the Defendants from executing Mr. Hampton without affording access to the protocol by which he will be executed at least six months in advance of any execution date;

5. Grant a permanent injunction enjoining the DOC from carrying out an execution with expired drugs;

6. Grant a permanent injunction enjoining the DOC from carrying out an execution without giving the condemned inmate access to counsel during the execution;

7. Grant a permanent injection enjoining the DOC from carrying out an execution pursuant to the 2013 Protocol;

8. Grant such further relief as it deems just and proper;

9. Exercise continuing jurisdiction over the matter in order to ensure ongoing adherence to the Constitution.

Respectfully submitted,

_____/s/ Letty Di Giulio_____
Letty Di Giulio, La. Bar Roll # 29836
Law Office of Letty S. Di Guilio
1305 Dublin Street
New Orleans, LA  70118
(504) 864-1275 (Phone)
(504) 764-1278 (Fax)

J. Samuel Sweeney, La. Bar Roll # 28304
Capital Post-Conviction Project of Louisiana
1340 Poydras Street, Suite 1700
New Orleans, Louisiana 70112
Tel: (504) 212-2110
Facsimile: (504)212-2130

*Counsel for Bobby Lee Hampton*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and forgoing was filed electronically with the Clerk of

Court using CM/ECF on this 8th day of January, 2014.  Notice of this filing as generated by the

electronic filing system constitutes service of the filed document on counsel for the Respondent.

_____/s/ Letty Di Giulio_____
Letty Di Giulio, La. Bar No. 29836