IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JESSIE HOFFMAN and | ) | |
| CHRISTOPHER SEPULVADO | ) | CIVIL ACTION |
| *Plaintiffs* | ) | |
| | ) | NO. 3:12-cv-00796 |
| v. | ) | |
| | ) | JUDGE JAMES BRADY |
| BOBBY JINDAL, Governor of Louisiana; | ) | |
| BURL CAIN, Warden, Louisiana State | ) | MAGISTRATE JUDGE |
| Penitentiary; JAMES LEBLANC, Secretary, | ) | STEPHEN RIEDLINGER |
| Louisiana Department of Public Safety and | ) | |
| Corrections; LOUISIANA DEPARTMENT OF | ) | |
| PUBLIC SAFETY AND CORRECTIONS; | ) | |
| ANGELA NORWOOD, Warden, Death Row; | ) | |
| and JOHN DOES, unknown executioners, | | |
| *Defendants* | | |

**INTERVENOR'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

### NATURE OF THE CASE

This action is brought pursuant to 42 U.S.C. § 1983 for violations and threatened violations of Intervenor Kevan Brumfield's rights under the First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Louisiana's current execution protocol, disclosed six months after Plaintiff Jessie Hoffman filed his *Original Complaint* in this matter, does not adequately protect Mr. Brumfield from cruel and unusual punishment due to the insufficient training, expertise, and supervision of those involved in the administration of the lethal drug. Mr. Brumfield is also at a substantial risk of suffering a lingering or unnecessarily painful death due to the nature of the drug itself, which may be expired and/or obtained from unregulated and unlawful sources. Defendants have also engaged in a pattern of revising the execution protocol

immediately before a scheduled execution date, which, coupled with Defendants' refusal to provide access to the protocols, denies Mr. Brumfield the due process right to evaluate and challenge the method by which the Defendants seek to execute him and imposes essentially a separate execution protocol for each individual inmate, in violation of equal protection of the law. Mr. Brumfield additionally asserts that the execution protocol's secrecy provisions violate his rights to counsel and to access to the courts and access to government proceedings under the Fourteenth, Sixth and First Amendments. Mr. Brumfield seeks injunctive relief to prevent the Defendants from executing him through unconstitutional means.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

2.  Venue is proper in this District pursuant to 24 U.S.C. § 1391(b), as the events complained of have occurred/ will occur in this District.

## PARTIES

3.  Intervenor Kevan Brumfield is a citizen of the United States of America, currently incarcerated under a sentence of death at the Louisiana State Penitentiary, in Angola, Louisiana ("Angola"), and is under the control and supervision of the Louisiana Department of Public Safety and Corrections.

4.  Defendant James LeBlanc is the chief executive officer of the Louisiana Department of Public Safety and Corrections ("DOC"). He was appointed to this position by Governor Jindal. In this capacity, he has control of the DOC. By law, he is responsible for protecting the constitutional rights of all persons held in DOC's custody. At all relevant times, Leblanc was acting under color of law and as the agent, and, as a matter of law, the official

representative of the DOC. Secretary Leblanc is sued in his individual and official capacities.

    a. Defendant LeBlanc can be served at 504 Mayflower Street, Baton Rouge, Louisiana 70802. *Waiver of service will be requested.*

5.    Defendant Burl Cain is the Warden of the Louisiana State Penitentiary in Angola. Under Louisiana law, Warden Cain is responsible for carrying out all Louisiana executions at Angola. In this capacity, he has operational control over Angola by making staffing, budget, and administrative decisions. By law, he is responsible for protecting the constitutional rights of all persons held in Angola's custody. At all relevant times, Warden Cain was acting under color of law and as the agent, and, as a matter of law, the official representative of Angola. Warden Cain is sued in his individual and official capacities.

    a. Defendant Cain can be served at 17544 Tunica Trace, Angola, Louisiana 70712. *Waiver of service will be requested.*

6.    Defendant Angela Norwood is the Assistant Warden of Angola's Death Row. She has been in that position since 2011. In this capacity, Warden Norwood has operational control over Death Row by making staffing, budget, and administrative decisions. By law, she is responsible for protecting the constitutional rights of all persons held on Angola's Death Row. At all relevant times, Warden Norwood was acting under color of law and as the agent, and, as a matter of law, the official representative of Angola. Warden Norwood is sued in her individual and official capacities.

    a. Defendant Norwood can be served at 17544 Tunica Trace, Angola, Louisiana 70712. *Waiver of service will be requested.*

7.     Defendants John Does are involved in the implementation of the DOC's execution protocols including transport, administration of drugs, security, preparation for the execution, and a variety of other tasks. Mr. Brumfield has not been able, through due diligence, to discover their identities. Defendants LeBlanc, Cain, and Norwood possess information identifying these individuals as they are responsible for selecting the individuals to carry out these tasks. Mr. Brumfield anticipates that the identities of these unknown executioners will be revealed in discovery. John Does are sued in their individual and official capacities.

    a.     Upon information and belief, Defendants John Does are citizens of the United States of America and residents of Louisiana.

## STATEMENT OF CLAIMS

8.     This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 18 U.S.C. § 3599, and 28 U.S.C. §§ 2201 and 2202 for violations and threatened violations by the Defendants of Mr. Brumfield's rights to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution, and for violations and threatened violations of Mr. Brumfield's rights to counsel, due process, access to the courts, and equal protection as guaranteed by the First, Sixth and Fourteenth Amendment to the United States Constitution.

9.     Intervenor Brumfield challenges the constitutionality of his execution, whether performed pursuant to the latest protocol which would require the use of expired and/or illegally-obtained drugs and which otherwise does not adequately protect Mr. Brumfield from cruel and unusual punishment, or performed pursuant to a newly amended protocol with insufficient time for review and evaluation.

4

10. As the drug identified in the Department's last-disclosed execution protocol is completely unavailable in the United States for use in executions, there is a substantial risk that this drug will be changed at the last minute or illegally compounded in violation of Louisiana Administrative Code §§ 46:LIII.2303, 2305, 2535, and the federal Controlled Substances Act 21 U.S.C. § 353(b); 21 C.F.R. § 1306.04(a), and additionally subject Mr. Brumfield to a substantial risk of serious harm.

11. Mr. Brumfield alleges that the Defendants' past practices suggest that the execution protocol will not be executed in a uniform and equal way, as they may substantially deviate from their execution protocols or promulgate a new protocol without sufficient time for review before his execution. As such he asserts that his rights under the Equal Protection Clause may be violated.

12. The constant change of execution protocols also puts Mr. Brumfield at a substantial risk of a violation of the Ex Post Facto Clause, Article I, § 10 of the Constitution, because the Defendants may change the method of execution to a manner that is more painful or protracted than the method in effect at the time he was originally sentenced.

13. Mr. Brumfield seeks a declaratory judgment that the United States Constitution prohibits the DOC from carrying out an execution without first promulgating a viable protocol and then providing him with a certified copy of the applicable protocol within 6 months before any scheduled execution date. Additionally, Mr. Brumfield seeks a judgment ordering Defendants to notify him in a timely manner in the event that the execution protocol is revised.

14. Mr. Brumfield alleges that the Defendants' lack of transparency regarding their execution protocol violates his First Amendment right of access to government proceedings and prevents him from determining that the Defendants are capable for carrying out the death sentence in a lawful manner. To the extent that it allows the Defendants to impose a shroud of secrecy over information regarding their execution procedures, Mr. Brumfield alleges that La. Rev. Stat. § 15:570(G) is unconstitutional under the First and Fourteenth Amendments.

15. Mr. Brumfield alleges that the secrecy of the execution protocol also violates the Eighth Amendment's Cruel and Unusual Punishment Clause, as the clause derives its meaning from the evolving standards of decency that mark the progress of a maturing society. This standard requires that a court look to objective indicia that reflect the public attitude toward a given sanction; because the public is deprived of knowledge regarding Louisiana's executions, Mr. Brumfield's right to a punishment in line with contemporary values is violated.

16. Mr. Brumfield seeks a declaratory judgment that the Defendants cannot execute him without providing him access to counsel in the execution chamber from the time the strap-down team arrives until he is pronounced dead.

17. Mr. Brumfield seeks a permanent injunction to prevent the defendants from executing him through unconstitutional means.

18. This Complaint does not challenge Mr. Brumfield's underlying capital conviction or sentence of death. Rather, Mr. Brumfield challenges only the manner and means by which the DOC intends to execute him.

## FACTS

19.  All statements of fact and allegations anywhere in this Complaint are incorporated by reference into the Complaint.

### Adoption of Lethal Injection as Method of Execution

20.  In 1991, Louisiana adopted lethal injection as its method of execution pursuant to La. R.S. § 15:569.

21.  Under La. R.S. § 15:568, the Secretary of the Department of Public Safety and Corrections is responsible for executing offenders in conformity with the death warrant issued in each case.

22.  Louisiana defines lethal injection as "the intravenous injection of a substance or substances in a lethal quantity into the body of a person convicted until such person is dead." La. R.S. § 15:569.

23.  No legislative guidance exists regarding lethal injection in Louisiana other than La. R.S. § 15:569.

24.  The remaining details are left to the discretion of the DOC in developing and adopting an execution protocol.

### Lethal Injection Procedures Have Resulted in "Botched" Executions

25.  At least thirty-one botched lethal injection executions occurred between 1982 and 2001.[1] Additional botched executions have occurred in the years since 2001.

---

[1] Deborah W. Denno, *When Legislatures Delegate Death: The Troubling Paradox Behind State Uses of Electrocution And Lethal Injection And What It Says About Us*, 63 OHIO ST. L.J. 63, 139-41 (2002) (listing by inmate name the botched lethal injection executions, and describing evidence of error).

26. In 2011, during the lethal injection of Emmanuel Hammond in Georgia, witnesses reported that, sometime after being sedated, Mr. Hammond awakened, opened his eyes, and grimaced in pain. A physician filed an affidavit that the drugs used by the Georgia Department of Corrections would have caused an agonizing burning sensation and asphyxiation without adequate anesthesia.

27. In 2009, an attempt to execute Romell Broom was called off after Ohio prison officials were not able to find a vein in which to insert the intravenous tubing for 90 minutes. During the 90 minutes, Mr. Broom cried, attempted to assist his executioners, and experienced severe pain as the executioners attempted to use veins in his legs and neck.

28. On December 13, 2006, it took 34 minutes for an execution team to kill Angel Diaz at Florida State Prison. Eyewitnesses reported Mr. Diaz spoke, gasped for air, and grimaced in pain during his execution. They observed his face contort, his jaw clench, and his head roll back and forth throughout the botched execution. A subsequent study by a special Commission convened by the Governor determined that, as a result of an inadequately trained and incompetent execution team, both of the IVs in Mr. Diaz's arms were improperly placed. As a result, the first drug, sodium thiopental, was injected subcutaneously, rather than intravenously, as intended, and the first drug to enter Mr. Diaz' circulation was the paralytic, pancuronium bromide. Mr. Diaz's death likely resulted from asphyxiation, and he was conscious or partly conscious throughout the process, rather than adequately anesthetized and insensate to pain or suffering.

29. On June 16, 2011, the State of Alabama used pentobarbital in an execution for the first time, to execute Eddie Powell. The Birmingham News reported: "After a moment his eyes opened again and he raised his head and neck off the gurney. Seemingly confused and

startled, he jerked his head to one side and began breathing heavily, his chest rose and contracted."[2]

30.  On June 24, 2011, the State of Georgia used pentobarbital in an execution for the first time, to execute Roy Willard Blankenship. The Associated Press reported: "Blankenship jerked his head several times, mumbled inaudibly and appeared to gasp for breath for several minutes after he was pumped with pentobarbital on Thursday in Georgia's death chamber."[3] Within a week of Blankenship's death, Danish pharmaceutical company Lundbeck announced that it would stop shipping pentobarbital to American prisons that carry out the death penalty by lethal injection.[4]

31.  On January 9, 2014, the State of Oklahoma executed Michael Lee Wilson using compounded pentobarbital from an Oklahoma pharmacy. His last words were "I feel my whole body burning."[5]

**Nationwide Fluctuation of Execution Methods**

32.  In the past six months, departments of correction around the country have depleted supplies of viable sodium thiopental, pentobarbital, and even propofol. As a result, some states have turned to methods of execution that have never been used before by any state, even in

---

[2]Matthew Busch, *Powell Says He's Sorry Before Death By Lethal Injection At Alabama's Holman Prison*, BIRMINGHAM NEWS, June 16, 2011, available at http://blog.al.com/spotnews/2011/06/powell_says_hes_sorry_before_d.html.

[3] Associated Press, *Georgia Inmate's Thrashing During Execution Raises New Questions About Death Row Drug*, July 28, 2011.

[4] 4 David Jolly, *Danish Company Blocks Sale of Drug for U.S. Executions*, N.Y. TIMES, July 1, 2011.

[5] Associated Press, *"I Feel My Whole Body Burning": Last Words of Man Executed by Lethal Injection in Oklahoma*, Jan. 10, 2013, *available at* http://www.dailymail.co.uk/news/article-2536976/I-feel-body-burning-Man-executed-lethal-injection-Oklahoma-beating-convenience-store-worker-death-1995.html?utm_source=Press+mailing+list&utm_campaign=d80580001c-2014_01_10_botched_execution&utm_medium=email&utm_term=0_022da08134-d80580001c-285915586.

animal euthanasia. Ohio, for example, has recently announced that it would implement a protocol calling for an intramuscular—rather than intraveneous—injection of 10 mg. of midazolam and 40 mg. of hydromorphone. This procedure has never before been used in an execution.

33. Other states have turned to compounding pharmacies to create facsimiles of unavailable drugs. Compounded drugs are currently not subject to FDA approval and have recently resulted in a meningitis outbreak that claimed 64 victims in 2012. While compounding pharmacies are currently not subject to FDA regulation, they must be licensed by the state's pharmacy board and comply with its regulations. Additionally, under the 2013 federal Drug Quality and Security Act, certain compounded drugs which are "copies" of approved drugs are subject to FDA oversight and approval.

34. At the present time, however, states have used compounding pharmacies to impose impenetrable barriers to inmates seeking to ascertain factual information regarding the drug which the state seeks to use in executions, including the source, quality, and efficacy of the drug. This puts inmates at a substantial risk of harm from improperly compounded or contaminated drugs.

**Louisiana's Lethal Injection Protocols**

35. The State and its agents, by statute, will execute Mr. Brumfield by the use of lethal injection. La. R.S. § 15:567 et seq.

36. The DOC's lethal injection protocol, which consists of prison directives, checklists, and any other documents that guide the prison in its administration of lethal injection, has been revised at least nine (9) times since the adoption of lethal injection in 1991.

37. Prior to the filing of the *Original Complaint* (Doc. No. 1) in this matter, the last-disclosed execution protocol consisted of:

    a.  A 9-page document dated January 7, 2010 and titled "Penitentiary Directive No. 09.049"; and

    b.  A 12-page checklist dated April 30, 2008.

38. The date on the "Penitentiary Directive No. 09.049" corresponds with the date on which the State executed Gerald Bordelon. Mr. Bordelon was the last person executed in Louisiana.

39. On June 17, 2013, approximately six months after the *Original Complaint* was filed, Defendants disclosed in discovery a set of documents collectively titled the "*Louisiana Execution Protocol*," on June 17, 2013 (hereinafter "2013 Protocol"). This protocol consists of the following documents:

    a.  A list of the holders of the "Execution Manual";

    b.  A telephone contact list;

    c.  A chain of command;

    d.  A list of institutional staff telephone numbers;

    e.  "Department Regulation No. C-03-001" dated August 1, 2012 (9 pages);

    f.  A copy of La. R.S. § 15:567-571;

    g.  "Penitentiary Directive No. 09.049" dated January 9, 2013 (8 pages);

    h.  "Form C-03-001-A" (Agreement by Witness to execution);

i.   A checklist of "Internal Procedures for Execution," dated January 10, 2013 (8 pages);

j.   An "LSP Pharmacist Checklist" (1 page);

k.   A list of execution team duties (1 page);

l.   "LCIW Policy No. 3-04-005," dated December 1, 2012 (5 pages);

m.  An undated checklist of "LCIW Internal Procedures for Execution" (1 page);

n.   A form letter from James LeBlanc to Burl Cain, advising that a death warrant has been set;

o.   A "Receipt of Warrant of Execution" form;

p.   A form letter from James LeBlanc to Bobby Jindal enclosing a death warrant;

q.   A form letter from James LeBlanc to "Clerk," enclosing redacted telephone numbers;

r.   A Clerk of Court Mailing List for Executions;

s.   A form letter from James LeBlanc to a victim's relative advising of an execution date;

t.   A form letter from James LeBlanc to a witness to the execution;

u.   An "Agreement by Witness to Execution" form;

v.   A "Request for Clergy Witness" form;

w.   A form regarding "Instructions for Disposition of Personal Property";

x.   A form regarding funeral arrangements; and

y.  A form letter from James LeBlanc to Bobby Jindal advising of phone numbers.

40.  The Defendants refused to disclose the protocol until June 17, 2013, and consequently Mr. Brumfield was not aware of the content of the protocol until after that date.

41.  Aside from length, there are several significant differences between the 2010 Protocol and the 2013 Protocol.

42.  Under the 2010 Protocol, a three-drug cocktail was used as the "lethal substance," namely, sodium thiopental, pancuronium bromide, and potassium chloride. The 2013 Protocol has changed the lethal substance to 5 g of "pentobarbitol [sic]," followed by a saline flush.

43.  Under the 2013 Protocol, there are now separate directives and checklists for male and female inmates, although all executions take place in the same location.

44.  The 2013 Protocol has also deleted several items from "Penitentiary Directive No. 09.049," including entire sections regarding preparations which formerly took place three days and one day prior to a scheduled execution.

45.  Under the 2013 Protocol, the Defendants have substituted a single dose of pentobarbital— an intermediate-acting barbiturate—for a three drug cocktail consisting of an ultra-short-acting barbiturate, a paralytic, and a salt to stop the heart.

46.  On February 7, 2013, Defendants filed an affidavit with this Court from the Director of the Louisiana State Prison Pharmacy, attesting that the Louisiana State Prison had in its possession a supply of pentobarbital which was purchased from Lundbeck, Inc. Rec. Doc. 30.

47.  According to documents disclosed by the Defendants in discovery, that supply of pentobarbital had an expiration date of "9/13."

48. The Louisiana Board of Pharmacy disclosed on December 19, 2013, that the Louisiana Department of Corrections did not have any expired stock of pentobarbital. Rec. Doc. 93-2.

49. Upon information and belief, the Defendants have obtained or attempted to obtain compounded pentobarbital from an out-of-state pharmacy, in violation of state and federal law.

50. Pentobarbital is not commonly used for general anesthesia purposes in humans because of its prolonged duration. Rather, in humans, pentobarbital is approved for use as a sedative-hypnotic or as an anticonvulsant.

51. Unlike the three-drug execution protocol approved of by the Supreme Court in *Baze v. Rees*, 553 U.S. 35 (2008), there is little scientific evidence on the effects of pentobarbital when injected into healthy and conscious humans in the amount and manner required by Louisiana's protocol.

52. Pentobarbital is not rapid-acting. Unlike sodium thiopental, an ultra-short acting barbiturate which takes effect within seconds, pentobarbital is a less lipid soluble and crosses the blood-brain barrier much more slowly.

53. Pentobarbital is more likely than sodium thiopental to precipitate out of solution in the intravenous line or in the bloodstream, becoming unable to affect the brain, which enhances the likelihood that it will not achieve its intended effect as quickly as sodium thiopental.

54. Upon information and belief, the use of pentobarbital alone will likely result in a "lingering death" in violation of the Eighth Amendment.

55. Upon information and belief, the use of pentobarbital alone will likely cause serious harm to the condemned inmate. Even if properly administered, pentobarbital can result in an insufficient loss of consciousness and sensation, causing the condemned inmate to suffer excruciating pain and suffering while still conscious.

## Lack of Review of the Protocol

56. On information and belief, the 2013 Protocol has not been examined by a licensed medical professional to ensure that there are adequate safeguards to protect Mr. Brumfield's constitutional rights against torture, pain, and suffering.

57. On information and belief, the 2013 Protocol was promulgated without any medical research or review to determine that a prisoner would not suffer a painful death.

58. On information and belief, no member of the medical community was involved in the adoption of the 2013 Protocol.

59. On information and belief, the DOC may attempt to substitute drugs within their lethal injection process without amending the 2013 Protocol.

## Risk of Constitutional Violations

60. On information and belief, the DOC will attempt to substitute drugs within their lethal injection process without creating procedures appropriate to the properties of the new drugs, such as how to flush the IV lines, the amount of the drug, or the timing of the administration of the drug.

61. On information and belief, Mr. Brumfield will suffer the wanton and unnecessary infliction of pain and torture, or a prolonged lingering death without careful review of the entire protocol if the DOC substitutes a different drug or compounded "copy" of pentobarbital for

FDA-approved pentobarbital. On information and belief, the protocol will not be carried out in accordance with the written instructions, or will be administered in such a way that fails to adequately safeguard Mr. Brumfield's rights.

62. The 2013 Protocol promulgated by the Defendants does not include adequate safeguards to protect Mr. Brumfield from cruel and unusual punishment.

63. On information and belief, Mr. Brumfield's execution will not be carried out in accordance with the written instructions, or will be administered in such a way that fails to adequately safeguard Mr. Brumfield's rights.

64. There is a reasonable likelihood that pentobarbital will be ineffectively delivered, and, as a result, it will not cause unconsciousness or adequate sedation for the duration of the execution process.

65. The intravenous tubing necessary to administer the drugs in question will not be inserted under the 2013 Protocol by a qualified medical professional. The Defendants John Does will insert the tubing that will result in a malfunction or the missing of a vein which will produce a tortuous result for Mr. Brumfield.

66. On information and belief, Defendants Does are not medical professionals and have no medical training.

67. On information and belief, in the past the DOC has employed corrections officers to carry out the execution.

68. The drug identified in the 2013 Protocol has expired or been stored improperly by the Defendants Does in advance of the execution and thus will not have the effect that the protocol anticipates.

16

69. On information and belief, the efficacy of the drug cannot be assured with any reasonable amount of certainty once it has been improperly stored or expired.

70. The members of the execution team (John Does) will not have received adequate training and will make errors in carrying out the execution pursuant to the 2013 Protocol.

71. Under the 2013 protocol, the execution will be carried out by Defendants John Does without adequate medical supervision.

72. On information and belief, the equipment used to carry out the execution under the 2013 Protocol has not been tested for efficacy or maintained by the Defendants since the last execution and thus will malfunction.

73. On information and belief, the Defendants will seek to unlawfully use drugs that have been compounded, creating a substantial risk that the drugs are impure, contaminated, or otherwise deficient.

74. Use of compounded pentobarbital would constitute a significant change in the lethal injection protocol, which poses a substantial risk of unnecessary pain or lingering death.

75. The equipment used to carry out the execution includes medical equipment that must be inspected by a medical professional to ensure that it can be used effectively.

76. The protocols are not adequately specific, and as such the execution may be carried out in different manners each time. There are no safeguards to protect against this variance under the 2013 Protocol.

77. There is nothing in the 2013 Protocol that requires Defendants John Does to become familiar with the drugs they are administering in order to understand their properties, the dangers associated with those drugs, and/or any other relevant medical information.

78. The 2013 Protocol fails to standardize the timing for the administration of the drugs, and the execution team thus may err in their delivery.

79. There is no provision for a medical history review by the Defendants under the 2013 Protocol to ensure that Mr. Brumfield does not take any medications or have any medical conditions that might interfere with the efficacy of the lethal injection protocol. Likewise, because any protocol and the drugs to be used are secret, Mr. Brumfield lacks adequate notice to independently investigate the likelihood of any negative drug interaction.

80. Those who will be selected to carry out the execution, Defendants John Does, lack the qualifications, training, and competence to do so in a constitutional manner under the 2013 Protocol.

81. The named Defendants know the Defendant John Does are unqualified to administer lethal drugs, but are deliberately indifferent to the risks that their failure to train and supervise the John Does will have on Mr. Brumfield's constitutional rights.

82. Defendants John Does have not engaged in adequate practice sessions or complied with other provisions of the 2013 Protocol.

83. The use of the 2013 Protocol creates a substantial risk that Mr. Brumfield will suffer the wanton and unnecessary infliction of pain and torture, or a prolonged, lingering death, as he is put to death. This includes experiencing substantial pain and suffering, conscious paralysis, suffocation, or conscious cardiac arrest. On information and belief, any purported revised and current protocol does not include adequate safeguards to protect Mr. Brumfield from cruel and unusual punishment.

84. On information and belief, any purported revised and current protocol will not be administered in a way that adequately protects Mr. Brumfield from cruel and unusual punishment.

### Lack of Attorney Access

85. Under the 2013 Protocol, attorneys are allowed to remain with the condemned inmate only "until the strap down team arrives or until the visit is terminated at the discretion of the Warden." The condemned inmate is given no right to an attorney present throughout his execution.

86. Without attorney access, there is no way to ensure that the execution protocol is carried out as directed.

87. Without attorney access, there is no way to confirm that the condemned inmate did not suffer pain and suffering while conscious.

88. Defendants' failure to provide inmates with meaningful access to counsel during the execution amounts to a denial of the right of access to the court system.

### Lack of Public Access

89. History shows that the evolving standards of decency in Louisiana have been shaped by public exposure to executions. The state switched from hanging to electrocution after a severely botched and gruesome public hanging in Jefferson Parish. Fifty years later, the state's move from electrocution to lethal injection was substantially affected by the publication of photos of the charred body of Robert Wayne Williams in the Angolite magazine, and reports of Jesse Tafero's head catching on fire during a Florida execution.

90. Executions in Louisiana are not currently public. The 2013 Protocol limits witnesses to between five and seven persons, including up to three members of the press selected by the Secretary, up to two victim family members, and other individuals selected by the Secretary.

91. Upon information and belief, even these limited witnesses are prevented from viewing the insertion of the lethal drug into the condemned inmate's vein.

92. The shroud of secrecy over lethal injections has deprived the public of assessing its contemporary approval of lethal injection and the death penalty in general.

93. Defendants' failure to provide public access to executions violates the First and Fourteenth Amendments, as well as Mr. Brumfield's right against cruel and unusual punishment as defined by contemporary standards of decency.

## Ex Post Facto Punishment

94. The Defendants' past practices in changing Louisiana's execution protocol make it substantially likely that Mr. Brumfield will suffer a different fate than is specified in the last-disclosed 2013 Protocol, whether the state changes the type or source of the drug or makes other changes in its protocol.

95. There is also a substantial probability, given the decision of the Fifth Circuit in this case, that the Defendants will make such changes without giving any notice to Mr. Brumfield.

96. The substitution of a compounded or different drug for FDA-approved pentobarbital qualifies as a significant change increasing the severity of Mr. Brumfield's punishment, in violation of the Ex Post Facto Clause.

## The Defendants are Responsible for Intervenor Brumfield's Harm

20

97. Warden Cain is responsible for ensuring that there is a constitutional protocol for executing Mr. Brumfield. He is also responsible for ensuring that executions are carried out in a constitutional fashion.

98. Warden Norwood is responsible for assisting Warden Cain in ensuring that there is a constitutional method of executing Mr. Brumfield.

99. Secretary LeBlanc is responsible for overseeing Warden Cain in his drafting of the protocols.

## CLAIMS FOR RELIEF

I. Executing Mr. Brumfield without notice of the procedures to be used to deprive him of his life and a meaningful opportunity to be heard regarding those procedures violates his right to procedural due process under the Fourteenth Amendment.

   a. Executing Mr. Brumfield without giving him fair notice of the lethal injection protocol and opportunity to be heard violates procedural due process. U.S. CONST. AMEND. XIV.

   b. By amending the protocols on the day of Gerald Bordelon's execution (January 7, 2010) and a mere month prior to Christopher Sepulvado's original execution date (February 13, 2013), the Defendants have precluded timely and effective evaluation and judicial review.

   c. The Defendants maintain that no inmate is entitled to notice of how he will be executed.

   d. The Defendants are deliberately indifferent to Mr. Brumfield's rights.

21

II. Executing Mr. Brumfield pursuant to the 2013 Protocol would violate his rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment and to equal protection of law.

    a. Among other violations, the 2013 Protocol fails to include adequate safeguards and/or will be administered in a way that fails to adequately protect Mr. Brumfield's constitutional rights to be free from cruel and unusual punishment.

    b. Among other violations, in exempting the protocol from the Louisiana Administrative Procedures Act, the state has attempted to thwart well-established administrative rules, in violation of due process.

    c. Among other violations, Defendants have, and will, materially deviate from any purported written execution protocol, impermissibly burdening Intervenor Brumfield's right to be free from cruel and unusual punishment and violating his right to equal protection under the law.

    d. Among other violations, Defendants may use compounded drugs in the 2013 Protocol, in violation of state and federal law, which poses a substantial risk of unnecessary pain and/or lingering death.

    e. The Defendants are deliberately indifferent to Mr. Brumfield's rights.

III. Executing Mr. Brumfield after substituting drugs used in any purported protocol without promulgating a new protocol would violate his rights to due process and to be free from cruel and unusual punishment, and would violate the prohibition of ex post facto punishment.

a.  The substitution of drugs without creating a new protocol to address the difference between the new drug and old drugs violates Mr. Brumfield's rights to due process, and will result in the infliction of cruel and unusual punishment.

b.  The substitution of drugs in the existing protocol or by creating a new protocol creates a substantial risk that the new drug will increase the severity of the punishment, in violation of the Ex Post Facto Clause.

c.  The Defendants are deliberately indifferent to Mr. Brumfield's rights.

IV.  The 2013 Protocol denies the condemned inmate access to counsel and the courts, in violation of the First, Sixth and Fourteenth Amendments.

a.  The 2013 Protocol expressly excludes the condemned inmate's attorney from the execution chamber, preventing attorney access and observation during the execution, and preventing access to the courts.

b.  The Defendants are deliberately indifferent to Mr. Brumfield's rights.

V.  The 2013 Protocol denies the public access to the execution, in violation of the First and Fourteenth Amendments, and Mr. Brumfield's right not to be subject to cruel and unusual punishment.

a.  The 2013 Protocol expressly excludes the public from witnessing executions, in violation of the right to public access to government action and Mr. Brumfield's right to a punishment in accordance with evolving standards of decency.

b.  The Defendants are deliberately indifferent to Mr. Brumfield's rights.

VI.  Request for Declaratory Judgment Pursuant to 28 U.S.C. § 1331.

a.  A declaration that it is unconstitutional under the Eighth and Fourteenth Amendments for the DOC to carry out an execution without first affording Mr. Brumfield notice and a meaningful opportunity to be heard regarding the execution protocol.

b.  A declaration that it violates the Eighth and Fourteenth Amendments for the DOC to carry out an execution using expired drugs, illegally-obtained drugs, drugs that were not properly stored in advance of the execution, or drugs obtained from a compounding pharmacy in violation of state and federal law.

c.  A declaration that it violates Article I, § 10 of the Constitution for the DOC to execute Mr. Brumfield using substituted drugs not specified in the current protocol.

d.  A declaration that it violates the Eighth and Fourteenth Amendments for the DOC to carry out an execution without a detailed protocol in place.

e.  A declaration that it violates the Eighth and Fourteenth Amendments for the DOC to execute Mr. Brumfield pursuant to 2013 Protocol.

f.  A declaration that it violates the Sixth and Fourteenth Amendments for the Defendants to prohibit Mr. Brumfield from having access to his attorneys during his execution.

g.  A declaration that it violates the First, Eighth, and Fourteenth Amendments for the Defendants to exclude the public from executions.

VII.  Request for a Permanent Injunction.

a.  A permanent injunction preventing the Defendants from executing Mr. Brumfield without affording notice of the protocol by which he will be executed at least six months in advance of any execution date.

b.  A permanent injunction preventing the Defendants from executing Mr. Brumfield without first promulgating an up-to-date protocol that comports with the protections guaranteed by the Eighth and Fourteenth Amendments and providing him adequate time to review and challenge it.

c.  A permanent injunction making all executions and the identities of the executioners public.

## DAMAGES

I.  As the actions and omissions of Defendants, their agents, employees, and/or representatives, proximately caused and/or were the moving force of the injuries and damages to Mr. Brumfield, Mr. Brumfield asserts claims under 42 U.S.C. § 1983, including, but not limited to, the following:

a.  Punitive damages;

b.  Presumed and nominal damages in the maximum amounts allowed by law; and

c.  Attorneys' fees and costs pursuant to 42 U.S.C. § 1988, or as allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Brumfield requests that this Court:

1.  Grant declaratory and permanent injunctive relief, as requested in this Complaint;

2.  Order the Defendants to provide timely notice to Intervenor Brumfield every time the execution protocol is modified, regardless of whether an execution date has been set;

3. Grant a permanent injunction enjoining defendants from executing Mr. Brumfield without first promulgating an up-to-date protocol and providing him adequate time to review and challenge it;

4. Grant a permanent injunction preventing the Defendants from executing Mr. Brumfield without affording access to the protocol by which he will be executed at least six months in advance of any execution date;

5. Grant a permanent injunction enjoining the DOC from carrying out an execution with expired drugs;

6. Grant a permanent injunction enjoining the DOC from carrying out an execution with compounded drugs;

7. Grant a permanent injunction enjoining the DOC from carrying out an execution without giving the condemned inmate access to counsel during the execution;

8. Grant a permanent injunction enjoining the DOC from carrying out an execution without giving the public access to the execution;

9. Grant a permanent injection enjoining the DOC from carrying out an execution pursuant to the 2013 Protocol;

10. Grant such further relief as it deems just and proper;

11. Exercise continuing jurisdiction over the matter in order to ensure ongoing adherence to the Constitution; and

12. Award Mr. Brumfield, as the prevailing party, attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 and the laws of the United States, court costs, expert costs, litigation expenses, and any such relief as the Court deems just and proper.

Respectfully submitted,

/s Cecelia Trenticosta Kappel
Cecelia Trenticosta Kappel, La. Bar No. 32736
Mercedes Montagnes, La. Bar No. 33287
The Promise of Justice Initiative
636 Baronne Street
New Orleans, LA 70113
Tel. (504) 529-5955
Fax (504) 558-0378

Nicholas Trenticosta, La. Bar Roll No. 18475
Center for Equal Justice
7100 St. Charles Avenue
New Orleans, LA 70118
Tel. (504) 864-0700

*Counsel for Kevan Brumfield*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and forgoing was filed electronically with the Clerk of Court using CM/ECF on this 10th day of January, 2014.  Notice of this filing as generated by the electronic filing system constitutes service of the filed document on counsel for the Respondent.

/s Cecelia Trenticosta Kappel
Cecelia Trenticosta Kappel