UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**JESSIE HOFFMAN, ET AL.**                                               **CIVIL ACTION**

**VERSUS**                                                                              **NO. 12-796-JJB-EWD**

**BOBBY JINDAL, GOVERNOR**
**OF LOUISIANA, ET AL.**

### RULING AND ORDER ON UNOPPOSED MOTIONS TO INTERVENE

Before the Court are three Motions to Intervene, filed by Todd Wessinger, Daniel Irish, and Shedran Williams (collectively, "proposed Intervenors").[1] Proposed Intervenors seek to intervene in this suit pursuant to Fed. R. Civ. P. 24(a) & (b). The proposed Intervenors assert that counsel for Jessie Hoffman was contacted and has no objection to their intervention in this case.[2] Additionally, the time period for opposing the Motions has passed and no party has submitted an opposition.

For the reasons set forth herein, the Motions to Intervene filed by Wessinger, Irish, and Williams are **GRANTED.**[3]

---

[1] R. Docs. 198, 199, 200.
[2] R. Doc. 198-1 at 3; R. Doc. 199-1 at 3; R. Doc. 200-1 at 3.
[3] Magistrate judges may "hear and determine" non-dispositive pre-trial motions pursuant to 28 U.S.C. § 636(b)(1)(A). "A motion to intervene is considered a non-dispositive motion." *Johnson v. Qualawash Holdings, LLC*, 2013 WL 3050021, at *2 (W.D. La. June 17, 2013) (citing *S.E.C. v. Koirnman*, 2006 WL 148733, at *2 (N.D. Tex. Jan. 18, 2006)). *See also, Stephens v. State Farm and Cas. Co.*, 2010 WL 1292719, at *3 (E.D. La. March 8, 2010) ("The portion of Road Home's motion seeking leave to intervene is a non-dispositive matter which I may address by order.").

I.  **Background**

   A. **Original Complaint**

Plaintiff Jessie Hoffman is currently incarcerated under a sentence of death at the Louisiana State Penitentiary in Angola, Louisiana ("Angola"). On December 20, 2012, Hoffman filed a Complaint against former Governor Bobby Jindal, James D. LeBlanc, Secretary of Louisiana Department of Public Safety and Corrections, Warden Burl Cain, Assistant Warden Angela Norwood, and the State of Louisiana through the Department of Public Safety and Corrections ("DOC") (collectively "Defendants"), seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983.[4] Hoffman challenges the constitutionality of his execution, asserting that the undisclosed method of execution in Louisiana constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments.[5] Although no date was set for his execution when he filed the Complaint, Hoffman seeks a permanent injunction barring Defendants from executing him through unconstitutional means.[6] Hoffman also seeks a declaratory judgment that the United States Constitution prohibits the DOC from carrying out an execution without first promulgating a viable protocol and providing him with a certified copy of said protocol with sufficient time for review before any scheduled execution date.[7]

   B. **Sepulvado Intervention**

On January 23, 2013, Christopher Sepulvado, an Angola inmate incarcerated under a sentence of death, filed a Motion to Intervene in this action.[8] On January 31, 2013, Sepulvado filed a Motion for Preliminary Injunction,[9] seeking to stay his execution, which was scheduled for

---

[4] R. Doc. 1.
[5] R. Doc. 1 at 5.
[6] R. Doc. 1 at 2, 5.
[7] R. Doc. 1 at 5-6.
[8] R. Docs. 11, 26.
[9] R. Doc. 14.

February 13, 2013. The Court granted Sepulvado's Motion to Intervene on February 6, 2013.[10] On February 7, 2013, the Court granted Sepulvado's Motion for a Preliminary Injunction and stayed his execution "until further orders of this court."[11] Upon appellate review, the Fifth Circuit reversed the preliminary injunction and stay of execution that was issued by this Court.[12] *Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013).

### C. Amended Complaint

While the appeal was pending, Hoffman and Sepulvado (collectively "Plaintiffs") filed a Motion for Leave to File an Amended Complaint on July 1, 2013, which the Court granted.[13] The Amended Complaint includes new allegations specific to a new execution protocol disclosed by Defendants during discovery on June 18, 2013.[14] In the Amended Complaint, Plaintiffs seek a permanent injunction to prevent their executions and seek a declaratory judgment that Defendants cannot execute Plaintiffs without allowing them access to counsel in the execution chamber.[15] Plaintiffs also seek a declaratory judgment that it is unconstitutional for Defendants to carry out an execution without first promulgating a viable protocol and providing Plaintiffs with a certified copy of the applicable protocol within six months before any scheduled execution date. Plaintiffs further seek a judgment ordering Defendants to timely notify Plaintiffs if the execution protocol is revised.[16] Plaintiffs assert that the additional claims are the result of Defendants' practice of revising the execution protocol on the eve of scheduled executions, not providing notice to the

---

[10] R. Doc. 26.
[11] R. Docs. 27, 28.
[12] R. Doc. 103.
[13] R. Docs. 65, 66.
[14] R. Doc. 65 at 2-3.
[15] R. Doc. 65-1 at 5.
[16] *Id.*

3

condemned inmate of such revisions, and prohibiting access to counsel at the time the condemned inmate is put to death.[17]

### D. Hampton, Code, Brumfield Intervention

On January 8, 2014, Bobby L. Hampton and Nathaniel Code, two other inmates incarcerated at Angola under sentences of death, filed Motions to Intervene in this matter.[18] On January 10, 2014, Kevan Brumfield, another inmate incarcerated at Angola under a sentence of death, filed a Motion to Intervene in this matter.[19] The three motions are nearly identical, seeking intervention under Fed. R. Civ. P. 24(a) and (b) and asserting the same allegations against Defendants as those made in the Plaintiffs' Amended Complaint.[20] On February 10, 2014, the Court granted all three motions, allowing Hampton, Code, and Brumfield to intervene in this matter.[21]

### E. Second Amended Complaint

Before the Court granted these motions to intervene, Plaintiffs filed a Motion for Leave to File Second Amended Complaint on January 17, 2014, which this Court granted.[22] In the Second Amended Complaint, Plaintiffs assert that Sepulvado was scheduled to be executed on February 5, 2014, but as of January 16, 2014, Defendants did not have any pentobarbital in their possession. According to Plaintiffs, the written execution protocol provides for pentobarbital as the singular lethal drug to be used in executions and requires the DOC to maintain 15 grams of unexpired pentobarbital in stock within 30 days of any scheduled execution date. Plaintiffs assert that these and other material deviations from the written protocol show a pattern of disregard for the very

---

[17] R. Doc. 65 at 3.
[18] R. Docs. 94, 95.
[19] R. Doc. 101.
[20] R. Docs. 94-1, 95-1, 101-2.
[21] R. Doc. 120.
[22] R. Docs. 104, 117.

4

protocol that is supposed to provide safeguards for the execution process and creates a substantial risk of harm. Plaintiffs further assert that they are at a substantial risk of suffering a lingering or unnecessarily painful death due to the nature of the drug itself, which may be expired and/or obtained from unregulated and unlawful sources.[23]

Plaintiffs also challenge the constitutionality of their executions, whether performed pursuant to the latest protocol that would require the use of expired and/or illegally-obtained drugs and does not adequately protect Plaintiffs from cruel and unusual punishment, or performed pursuant to a newly amended protocol with insufficient time for review and evaluation. Since pentobarbital, the drug identified in the DOC's last-disclosed execution protocol, is completely unavailable in the United States for use in executions, Plaintiffs assert there is a substantial risk that the drug will be changed at the last minute or illegally compounded in violation of Louisiana Administrative Code §§ 46:LIII.2303, 2305, 2535, and will subject Plaintiffs to a substantial risk of serious harm. Plaintiffs further assert that Defendants are in violation of the federal Controlled Substances Act by dispensing a Schedule II Controlled Dangerous Substances not in the course of professional practice and not for a legitimate medical purpose.[24] Plaintiffs assert that Defendants' past practices and current material deviations from their written execution protocol create a substantial risk of harm due to the lack of safeguards and subject Plaintiffs and other similarly situated condemned inmates to differential treatment, in violation of the Eighth and Fourteenth Amendments. Plaintiffs allege that such last-minute changes to the execution protocols and core deviations from the written protocol put Plaintiffs at a substantial risk of a violation of the Ex Post Facto Clause under Article I, § 10 of the Constitution, because the method of execution may

---

[23] R. Doc. 118 at 2.
[24] *See* 21 U.S.C. §§ 353(b), 829(a), 841(a)(1), and 843(a); 21 C.F.R. § 1306.04(a).

become more painful or protracted than the method in effect at the time they were originally sentenced.

Plaintiffs also seek a declaratory judgment that the United States Constitution prohibits Defendants from carrying out an execution without first promulgating a protocol that has been found constitutional by this Court and abiding by the protocol when an execution takes place. Plaintiffs also seek a judgment ordering Defendants to timely notify them if the protocol is revised. Plaintiffs allege that Defendants' lack of transparency regarding the execution protocol violates their First Amendment right of access to government proceedings and that the secrecy of the protocol constitutes cruel and unusual punishment under the Eighth Amendment. Plaintiffs further seek a declaratory judgment that Defendants cannot execute them without allowing access to counsel in the execution chamber from the time the strap-down team arrives until they are pronounced dead. Finally, Plaintiffs continue to seek a permanent injunction to prevent Defendants from executing them through unconstitutional means.

### F. Stay of Proceedings

On January 27, 2014, Sepulvado filed another Motion for a Stay of Execution, a Temporary Restraining Order, a Preliminary Injunction, and an Order Under the All Writs Act Staying His Execution, which was scheduled for February 5, 2014.[25] On February 3, 2014, this Court issued a Notice To Counsel, stating that the parties had discussed the pending motion and had agreed to a 90-day Temporary Restraining Order ("TRO").[26] On February 3, 2014, this Court also issued an Order granting a TRO, thereby restraining, enjoining, and prohibiting Defendants and their officers, agents, employees, and servants from executing Sepulvado for a period of 90 days from the date of the Order, or through May 4, 2014, without requiring renewal by either party until such

---

[25] R. Doc. 105.
[26] R. Doc. 116.

6

date or until the Court had ruled on the merits of Plaintiff's Motion for Preliminary Injunction.[27] On March 14, 2014, this Court extended the TRO through July 23, 2014.[28]

During a status conference held on May 7, 2014, the parties requested a stay of all proceedings, which this Court granted.[29] On May 28, 2014, the Court issued a Consent Order staying all proceedings and discovery and setting aside all trial settings and other deadlines until November 17, 2014, and prohibiting Defendants from carrying out "any executions of any of the Plaintiffs while this stay is in effect."[30] On November 13, 2014, the Court issued another Consent Order extending the stay of all proceedings and executions in this matter through June 25, 2015.[31] On June 23, 2015, the Court issued a third Consent Order extending the stay of all proceedings and executions in this case through July 11, 2016.[32] On June 1, 2016, the Court issued a fourth Consent Order, extending the stay of all proceedings and executions in this matter through January 8, 2018.[33]

### G. Proposed Motions to Intervene

On June 28, 2016, proposed Intervenors filed the three Motions to Intervene that are currently before the Court.[34] The Motions to Intervene are nearly identical[35] and raise the same grounds for intervention under Fed. R. Civ. P. 24(a) & (b). Each Motion asserts that the proposed Intervenor is entitled to intervene as a matter of right under Fed. R. Civ. P. 24(a) and is also permitted to intervene under Fed. R. Civ. P. 24(b).[36] Further, the three proposed Intervenor's

---

[27] R. Doc. 119.
[28] R. Doc. 155.
[29] R. Doc. 174.
[30] R. Doc. 178.
[31] R. Doc. 184.
[32] R. Doc. 188.
[33] R. Doc. 197.
[34] R. Docs. 198, 199, 200.
[35] The only difference between the three Motions is proposed Intervenor Wessinger's assertion that his sentence of death has been vacated by this Court, but that he filed a Motion to Intervene out of an abundance of caution pending resolution of his case before the Fifth Circuit. (R. Doc. 198-2 at 2 n.1).
[36] R. Doc. 198-1 at 2; R. Doc. 199-1 at 2; R. Doc. 200-1 at 2.

Complaints are identical, challenging the constitutionality of each proposed Intervenor's execution and seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983.[37] In addition to being identical to each other, each of the proposed Intervenor's Complaints contains a "Statement of Claims" that is identical to the "Statement of Claims" contained in the Plaintiffs' Second Amended Complaint.[38] For the sake of brevity, the Court will not restate those claims and instead refers the parties to the Court's prior discussion of Plaintiffs' Second Amended Complaint.[39]

## II.   Law and Analysis

Proposed Intervenors seek to intervene in this suit under Fed. R. Civ. P. 24(a).[40] That section provides that on "timely motion" the court must permit intervention by anyone who is either: (1) given an unconditional right to intervene by federal statute; or (2) "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[41] Proposed Intervenors do not assert that a federal statute grants them an unconditional right to intervene. Instead, they move for intervention under Fed. R. Civ. P. 24(a)(2).[42]

### A.  Timelines of the Motion to Intervene

"Whether leave to intervene is sought under section (a) or (b) of Rule 24, the application must be timely." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977) (citations

---

[37] R. Docs. 198-2, 199-2, 200-2.
[38] R. Doc. 198-2 at 4-6; R. Doc. 199-2 at 4-6; R. Doc. 200-2 at 4-6; *See* R. Doc. 118 at 4-7.
[39] *See* pages 3-5 of the instant Order.
[40] R. Doc. 198-1; R. Doc. 199-1; R. Doc. 200-1.
[41] Fed. R. Civ. P. 24(a).
[42] R. Doc. 198-1 at 2; R. Doc. 199-1 at 2; R. Doc. 200-1 at 2 ("[Proposed Intervenor] is entitled to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a) because (1) this application is timely; (2) [proposed Intervenor] "claims an interest relating to the . . . transaction which is the subject of the action;" (3) [proposed Intervenor] is "so situated that the disposition of the action may as a practical matter impair or impede [his] ability to protect that interest" and (4) [proposed Intervenor's] interests will not be adequately represented by existing parties.").

8

omitted). The timeliness of a motion to intervene is a matter committed to the sound discretion of the trial court. *McDonald v. E.J. Lavino*, 430 F.2d 1065, 1071 (5th Cir. 1970). Timeliness "is not limited to chronological considerations but 'is to be determined from all the circumstances.'" *Stallworth*, 558 F.2d at 263 (quotation omitted). The Fifth Circuit has set forth four factors to consider when evaluating whether a motion to intervene is timely: (1) the length of time during which the proposed intervenor should have known of his interest in the case before he petitioned to intervene; (2) the extent of prejudice that those parties already in the litigation would suffer "as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;" (3) the extent of prejudice to the proposed intervenor if he is not allowed to intervene; and (4) the existence of "unusual circumstances militating either for or against a determination that the application is timely." *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (citing *Stallworth*, 558 F.2d at 264-66).

Here, Hoffman filed suit on December 20, 2012.[43] Christopher Sepulvado, another Angola inmate, sought leave to intervene in this matter on January 23, 2013.[44] Almost a year later, Bobby Hampton, Nathaniel Code, and Kevan Brumfield, three other Angola inmates, sought leave to intervene in this matter in January 2014.[45] The Court granted each of these motions to intervene.[46] Proposed Intervenors first sought leave to intervene in this matter on June 28, 2016, almost three and a half years after the initial Complaint was filed.[47] Given the lengthy delay between the filing of the Complaint and the filing of the instant Motions to Intervene, the Court finds that the first factor weighs in favor of finding the Motions to Intervene are untimely.

---

[43] R. Doc. 1.
[44] R. Doc. 10.
[45] R. Docs. 94, 95, 101.
[46] R. Docs. 26, 120.
[47] R. Docs. 1, 198, 199, and 200.

9

However, the Court finds that the remaining three factors weigh in favor of finding the Motions to Intervene were timely filed. With respect to the second factor, the Court concludes that even if proposed Intervenors could have intervened in this matter sooner, allowing intervention at this time will not prejudice the existing parties in this litigation. As previously mentioned, three other Angola inmates incarcerated under sentences of death were allowed to intervene in this matter in February 2014, apparently without prejudicing the existing parties.[48] Since that time, all proceedings in this matter have been stayed through January 8, 2018 and there is no trial date currently set.[49] Further, no party has objected to the proposed interventions or asserted that the Motions to Intervene are untimely. As such, the Court finds that allowing intervention will not delay or disrupt litigation or prejudice the existing parties.

The Court also finds that the proposed Intervenors will be prejudiced if they are not allowed to intervene in this matter. Proposed Intervenors seek to intervene in this case to challenge Louisiana's execution protocol on the same grounds as those alleged by the Plaintiffs in their Second Amended Complaint. If this suit proceeds without the proposed Intervenors, a decision rejecting Plaintiffs' claims could establish unfavorable precedent that would make it more difficult for proposed Intervenors to succeed on similar claims brought in separate lawsuits. *See Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). The Court further finds that the Plaintiffs do not adequately represent the interests of proposed Intervenors because unlike the Plaintiffs, the proposed Intervenors' executions have not been stayed through January 8, 2018. Thus, the fourth factor weighs in favor of finding the Motions to Intervene are timely.

Based on the foregoing four-factor analysis, the Court finds the three Motions to Intervene to be timely.

---

[48] R. Doc. 120.
[49] R. Doc. 197.

## B. Intervention of Right

Pursuant to Fed. R. Civ. P. 24(a)(2), a party is entitled to intervene in a pending lawsuit when: (1) the motion to intervene is timely; (2) the potential intervenor asserts an interest that is related to the property or transaction that is the subject of the action in which he seeks to intervene; (3) the potential intervenor is so situated that disposition of the case may as a practical matter impair or impede his ability to protect his interest; and (4) the parties already in the action do not adequately protect the potential intervenor's interest. *Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir. 2001). As discussed above, the Court finds the three Motions to Intervene to be timely.

### i. Proposed Intervenors' Interest

"To prove the requisite interest, an intervenor must demonstrate a 'direct, substantial and legally protectable' interest in the property or transaction that is the subject of the suit." *League of United Latin American Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 187 (5th Cir. 1989). *See also, John Doe No. 1. v. Glickman*, 256 F.3d 371, 379 (5th Cir. 2001); *Sierra Club v. Epsy*, 18 F.3d 1202, 1207 (5th Cir. 1994); *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996). The Fifth Circuit has explained that "[b]y requiring that the applicant's interest be not only 'direct' and 'substantial,' but also 'legally protectable,' it is plain that something more than an economic interest is necessary." *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 465 (5th Cir. 1984). However, "In the context of intervention, the Fifth Circuit has warned against defining 'property or transaction' too narrowly." *Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001) (citing *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 (5th Cir. 1992)).

11

In the Motions to Intervene, each proposed Intervenor asserts that he "claims an interest relating to the . . . transaction which is the subject of the action."[50] Proposed Intervenors do not elaborate on this claim. The Court finds, however, that proposed Intervenors' interest in the subject matter of this case is identical to that of the existing Plaintiffs, namely, avoiding execution by Louisiana's allegedly flawed lethal injection protocol.[51] Each proposed Intervenor challenges "the constitutionality of his execution, whether performed pursuant to the latest protocol that would require the use of expired and/or illegally-obtained drugs and does not adequately protect [proposed Intervenor] from cruel and unusual punishment, or performed pursuant to a newly amended protocol with insufficient time for review and evaluation."[52] Each proposed Intervenor also asserts that Defendants' past practices and current material deviations from their written execution protocol create a substantial risk of harm and "subject [proposed Intervenor] and other similarly situated condemned inmates to different treatment, in violation of the Eighth and Fourteenth Amendments."[53] Plaintiffs make the same allegations in their Second Amended Complaint.[54] As such, the Court finds that proposed Intervenors have amply demonstrated a clear interest in the outcome of this case, such that factor two supports intervention.

### ii.     Adequacy of Representation

Proposed Intervenors have "the burden of demonstrating inadequate representation." *Hopwood v. State of Tex.*, 21 F.3d 603, 605 (5th Cir. 1994). "However, 'minimal' this burden may be, it cannot be treated as so minimal as to write the requirement completely out of the rule." *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984). "In a suit involving a matter of sovereign interest,

---

[50] R. Doc. 198-1 at 2; R. Doc. 199-1 at 2; R. Doc. 200-1 at 2.
[51] *See Roane v. Gonzales*, 269 F.R.D. 1 (D.D.C. 2010), vacated in part sub nom. *Roane v. Tandy*, 2012 WL 3068444 (D.C. Cir. July 6, 2012), and rev'd and remanded sub nom. *Roane v. Leonhart*, 741 F.3d 147 (D.C. Cir. 2014) (concluding that inmate was entitled to intervene as of right).
[52] R. Doc. 198-2 at 4; R. Doc. 199-2 at 4; R. Doc. 200-2 at 4.
[53] R. Doc. 198-2 at 5; R. Doc. 199-2 at 5; R. Doc. 200-2 at 5.
[54] R. Doc. 118 at 5-6.

the State is presumed to represent the interests of all its citizens." *Id*. Moreover, the Fifth Circuit has held that "'[w]hen the party seeking intervention has the same ultimate objection as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance.'" *Id.* (quoting *International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1981)).

In the Motions to Intervene, each proposed Intervenor asserts that his interests "will not be adequately represented by existing parties."[55] Although proposed Intervenors do not elaborate upon this assertion, the Court finds it "obvious that the existing parties to the suit may be inadequate representatives" of proposed Intervenors because unlike the Plaintiffs, there is no court-imposed stay prohibiting the proposed Intervenors' executions. *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). Thus, unlike the proposed Intervenors, Plaintiffs have no reason to seek the rapid resolution of this suit because Plaintiffs' executions have been stayed through January 8, 2018. *See Leonhart*, 741 F.3d at 151. Although the interests of the proposed Intervenors are aligned with those of the Plaintiffs, the Court finds that Plaintiffs are not adequately representing the proposed Intervenors' objectives.

### iii.    Ability of the Proposed Intervenors to Protect Their Interests

The fourth requirement for intervention of right is for the proposed Intervenors to show that they are so situated that disposition of the case may as a practical matter impair or impede their ability to protect their interests. *Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir. 2001). Here, each of the proposed Intervenors asserts that he is "so situated that the disposition of the action may as a practical matter impair or impeded [his] ability to protect that interest."[56] Again, proposed Intervenors do not elaborate upon this assertion. However, the Court finds that if this

---

[55] Doc. 198-1 at 2; R. Doc. 199-1 at 2; R. Doc. 200-1 at 2.
[56] R. Doc. 198-1 at 2; R. Doc. 199-1 at 2; R. Doc. 200-1 at 2.

13

suit proceeds without the proposed Intervenors, a decision rejecting Plaintiffs' claims could establish unfavorable precedent that would make it more difficult for proposed Intervenors to succeed on similar claims brought in separate lawsuits. *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014).

Based on the foregoing, the Court finds proposed Intervenors are entitled to intervention of right under Fed. R. Civ. P. 24(a).

### C. Permissive Intervention

The Court further finds that proposed Intervenors may also intervene in this action based on permissive intervention, pursuant to Fed. R. Civ. P. 24(b). Permissive intervention is provided for by Fed. R. Civ. P. 24(b) when, on timely motion, the movant seeks intervention based on a "conditional right to intervene" granted by statute or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(A) & (B). In exercising its discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, proposed Intervenors assert that they are entitled to intervene under Rule 24(b) because, "The questions of fact and law in this case are identical to the questions of fact and law in Mr. Hoffman's case" and that allowing them to intervene "will promote judicial economy."[57] The underlying claims in this litigation are Plaintiffs' legal challenges to Louisiana's execution protocol. Like the Plaintiffs, each of the proposed Intervenor's is incarcerated at Angola under a sentence of death and seeks to intervene in this case to challenge the constitutionality of Louisiana's execution protocol. Further, the proposed Intervenors' Complaints make the same allegations and seek the same form of relief sought by the Plaintiffs in their Second Amended

---

[57] R. Doc. 198-1 at 2-3; R. Doc. 199-1 at 2-3; R. Doc. 200-1 at 2-3.

14

Complaint.  The Court finds that proposed Intervenors' claims have common questions of law and fact with the main action because they, like the existing Plaintiffs, face execution under Louisiana's lethal injection protocol and seek to challenge the protocol on the same bases as those asserted by the Plaintiffs.  *See Roane v. Gonzales*, 269 F.R.D. 1, 6 (D.D.C. 2010).

Further, other Angola inmates incarcerated under sentences of death were allowed to intervene in this case in February 2014,[58] apparently without prejudicing the existing parties.  Since that time, this Court has stayed all proceedings in this matter and has stayed the Plaintiffs' executions through January 8, 2018.  As such, the Court finds that allowing proposed Intervenors to intervene in this action would not prejudice any of the existing parties and, in fact, no party has objected to the proposed interventions.

Based on the foregoing, the Court finds proposed Intervenors are entitled to intervene in this matter under Fed. R. Civ. P. 24(b).

### III.   Conclusion

For the reasons set forth herein, the Motions to Intervene filed by Todd Wessinger,[59] Daniel Irish,[60] and Shedran Williams[61] are **GRANTED.**

Accordingly,

**IT IS HEREBY ORDERED** that the Petitions of Intervention filed by Todd Wessinger,[62]

---

[58] R. Doc. 120.
[59] R. Doc. 198.
[60] R. Doc. 199.
[61] R. Doc. 200.
[62] R. Doc. 198-2.

15

Daniel Irish,[63] and Shedran Williams[64] shall be filed into the record in this matter.

Signed in Baton Rouge, Louisiana, on July 29, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[63] R. Doc. 199-2.
[64] R. Doc. 200-2.