UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JESSIE HOFFMAN, *et al*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-796-SDD-EWD |
| | ) | |
| BOBBY JINDAL, Governor of | ) | |
| Louisiana, *et al.*, | ) | |
| Defendants | ) | |

**PLAINTIFFS' RESPONSE TO THIRD-PARTY MOTION TO INTEVENE**

**MAY IT PLEASE THE COURT:**

Now come Jessie Hoffman, Christopher Sepulvado, Kevan Brumfield, Todd Wessinger, Daniel Irish, Shedran Williams, Jarrell Neal, Daniel Blank, James Tyler, Bobby Hampton, and Nathaniel Code, Plaintiffs and Intervenor-Plaintiffs in the above-captioned civil action, and submit this Response to the Attorney General of Louisiana's Motion to Intervene.

**I.    Background**

The Attorney General's motion to intervene in this case (Rec. Doc. 232 & 233) appears to be a belated attempt to thwart the progress of this litigation, which has been proceeding before this Court for nearly seven years, and will likely waste judicial time and resources. The Attorney General's interest in this litigation is adequately represented by the Department of Public Safety and Corrections ("DOC"), particularly since the Attorney General's Office is counsel and the proposed intervening answer mirrors that of the DOC. Finally, allowing the State to intervene as a separate party will prejudice the Plaintiffs in responding to several iterations of pleadings, and give the Defendants an opportunity to make litigation unduly burdensome for the Plaintiffs.

1

Plaintiff Jessie Hoffman filed this lawsuit on December 20, 2012, asserting that the lack of notice of the execution protocol violated his right to Due Process, and created an impermissible risk that Mr. Hoffman would suffer unnecessary infliction of pain, torture, or a prolonged lingering death in violation of the Eighth and Fourteenth Amendments. Rec. Doc. 1.[1] On **February 1, 2013**, counsel from the Attorney General's Office enrolled in this lawsuit. *See* Rec. Doc. 16 (noting enrollment of Assistant Attorney General Douglas Swenson on behalf of the Defendants). The Defendants, represented by counsel from the Attorney General's Office, filed a Motion to Dismiss under Rule 12(b)(6), asserting that the entire action should be dismissed and also that individual defendants—including the Governor and the State of Louisiana—should be dismissed. Rec. Doc. 40, 40-1. This Motion to Dismiss resulted in the Court dismissing the Governor and the State of Louisiana through the DOC from the lawsuit. Rec. Doc. 59. The suit was allowed to proceed as against Warden Burl Cain, Warden Angela Norwood, and Secretary James LeBlanc.[2] *Id.*

On May 20, 2016, Assistant Attorney General Elizabeth Murrill enrolled on behalf of all Defendants. Rec. Doc. 195. On June 1, 2016, the Court issued a consent order staying the proceedings. Rec. Doc. 197. On January 4, 2018, this Court issued another consent order staying the proceedings, again at the agreement of all parties. Rec. Doc. 216. Six months later, on July 11, 2018, the Defendants filed a consent motion requesting another extension of the stay. Rec.

---

[1] Plaintiff Christopher Sepulvado filed a motion to intervene on January 23, 2013 and moved for a preliminary injunction against his execution. Rec. Docs. 10, 14.

[2] Wardens Cain and Norwood have been succeeded by other individuals in these roles.

Doc. 226. On July 16, 2018, this Court granted the stay; it was not until July 17, 2018, that Attorney Murrill withdrew from this case.[3] Rec. Doc. 228.

An alleged disagreement between counsel for the Attorney General's Office and other counsel for the Defendants appears to form the basis of the current Motion to Intervene. *See* Rec. Doc. 233, at 2. The Attorney General claims that he did not consent to the July 16, 2018, stay. *Id.* However, after the motion to extend the stay was filed on July 11, 2018, five days passed in which the Attorney General had the opportunity to withdraw the motion—or even file a motion to intervene—before this Court granted the consent order. *See* Rec. Docs. 226, 227. The Attorney General did neither. The Attorney General also could have filed a motion to reconsider this Court's order but declined to do so. *See* Fed. R. Civ. P. 59, 60. Now, over six years after the Attorney General's Office first enrolled in this lawsuit, and over a year after they initially withdrew as counsel, the Attorney General seeks to intervene as a separate party. Because the Attorney General has no right to intervene under the Federal Rules, and because his intervention would prejudice the Plaintiffs, this Court should deny intervention.

## II. State Law Provides No Right of Intervention in this Federal § 1983 Lawsuit

As a preliminary matter, the Motion to Intervene claims that the Louisiana Constitution "empower[s]" the Attorney General to intervene in any civil action. Rec. Doc. 233, at 1, 5. This provision is a state constitutional rule that applies only to state courts. Matters of procedure in the federal courts are governed solely by the Federal Rules of Civil Procedure, even where there is a conflicting state law. *Hanna v. Plumer*, 380 U.S. 460, 473 (1965) (holding that any conflict between state procedural rules and the Federal Rules of Civil Procedure must be resolved in

---

[3] The Attorney General's Motion states that Attorney Murrill withdrew from representing the Governor and the DOC; however, the Governor and DOC were dismissed from this lawsuit at the request of the Defendants, as represented by counsel from the Attorney General's Office, in 2013. Rec. Doc. 59; *see* Rec. Doc. 233, at 2.

3

favor of use of the Federal Rules); Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts"). Rule 24 must govern this Court's analysis.

Even if this Court were to consider the ability of the Attorney General to intervene in "any civil action or proceeding" under state law, Louisiana courts have not interpreted the Attorney General's interests as prevailing over, or separate and distinct from, the interests of other government parties.[4] The Louisiana Supreme Court has long since held that this power is not triggered by lawsuits against agencies of the state—such as the Secretary of the DOC—that have been provided by the legislature with their own power to sue and be sued.[5] For example, in *Saint v. Allen*, the court found that the constitutional provision[6] provided the Attorney General the power only to prosecute and defend suits to which the state of Louisiana was a party, or to which the state "as a distinct entity, *apart from other entities or corporate agencies it may create*, has an interest."[7] "Interest" was not to be "received or interpreted in its broadest sense" but instead construed narrowly, with the legislature empowered to impose additional duties upon the Attorney General's office as it saw fit.[8] The *Allen* court rejected the Attorney General's

---

[4] *See State ex rel. Jones v. Doucet*, 14 So. 2d 622, 624 (1943) (holding that the Attorney General "cannot stand in judgment on a cause of action that is the property of one of its political subdivisions which has the right to sue and be sued"); *State ex rel. Caldwell v. Molina Healthcare, Inc.*, 2018-1768 (La. 05/08/19) (reiterating the "jurisprudential general rule" that the Attorney General has no power when the relevant governmental entity has the capacity to sue and be sued, absent "highly exceptional circumstances").

[5] Although the DOC is no longer a party to the suit because it is not a "person subject to suit under Section 1983", *see* Rec. Doc. 59 at 11-12, Plaintiffs have maintained suit against the entity through the Secretary who exercises its power to sue and be sued in his official capacity.

[6] The relevant wording was "streamlined" for purposes of the Louisiana Constitution of 1974, but made no substantive change to the Attorney General's powers in civil cases. *See State ex rel. Caldwell v. Molina Healthcare, Inc.*, 2018-1768 ( La. 05/08/19) (citing Lee Hargrave, *The Judiciary Article of the Louisiana Constitution of 1974*, 37 La. L. Rev. 765, 831 (Spring 1977)).

[7] 134 So. 246, 248-49 (1931).

[8] *Id.* Nor does any power afforded to the Attorney General by the Legislature create a protectable interest in this matter. La. R.S. § 49:257 does require that the Attorney General is given notice before the adjudication of the

broad interpretation of its constitutionally described duties as somehow undermining the separate nature of the state entity. *Id.* It has been firmly established that, unless the legislature provides otherwise, the Attorney General's duties are limited to representing the state's interests only when those interests are distinct from the interests of its agencies.[9]

## III.   The Attorney General has No Right to Intervene under Fed. R. Civ. P. 24(a)

The Attorney General's Motion fails to meet the standard for intervention as of right under Fed. R. Civ. P. 24(a). In order to intervene as of right, each of the four requirements of Rule 24(a) must be met: (1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit. *Bush v. Viterna*, 740 F.2d 350, 354 (5th Cir. 1984). The Attorney General's Motion fails to meet each of the four requirements as discussed below.

### A.  The Attorney General's Motion to Intervene is Untimely

The motion was filed seven years after this case was initiated and, if granted, the delay will significantly prejudice Plaintiffs. Determining the timeliness of a motion to intervene entails

---

constitutionality of a state statute, but the Plaintiffs' challenge here is not to a state statute but rather to the constitutionality of regulations and procedures promulgated by the DOC, specifically LSP Directive 09.049 and its associated protocols.

[9] In *United States v. Louisiana*, 751 F. Supp. 608 (E.D. La. 1990), the Attorney General attempted to "intervene" in a federal discrimination lawsuit brought against the state, as represented by its chief executive officer, the Governor. Similar to this case, the Attorney General filed a "notice to join," and enrolled separate counsel on behalf of the Attorney General's office. *Id*. at 613. Then, "[a]pparently realizing the blatant conflict of interest created by this designation, [the Attorney General] moved the very next day to withdraw his appointment of [separate counsel] and further to 'enroll' himself and certain members of his staff as counsel for the State." *Id*. The district court thereafter found that the question of whether the Attorney General could enroll with disparate positions to that of the current parties was a federal one and that "the Governor, not the Attorney General, is the superior representative of the State's interests." *Id*. at 614; *see also Williams v. McKeithen*, No. 71-98-B, 1990 WL 265971, at *1 (M.D. La. July 20, 1990) (memorandum submitted by the Governor regarding the role of the Attorney General).

consideration of four factors: (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.[10]

As discussed above, counsel at the Attorney General's office has been enrolled since 2013 and has been involved and informed as to all proceedings – including those that could have impacted whatever "stake" the state has as a distinct entity from the DOC in the case.[11]  The Defendants successfully moved to have the Governor and the DOC dismissed from the case in 2013, contrary to the Attorney General's claim that "no dispositive pleadings have been filed."[12] The fact that this particular Attorney General was not in office at that time is of no matter as elected officials step into the shoes of their predecessors.[13] Two years passed in which the Attorney General could have made a motion to intervene if there were legitimately a distinct state interest in the case, yet no such motion was filed.[14]  At the very least, the Attorney General

---

[10] *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977).

[11] In arguing that the Court should not take into consideration the amount of time that has passed since institution of this action, the Attorney General cites to *Doe #1 v. Glickman*, 256 F.3d 371, 377 (5th Cir. 2001), which actually provides support for Plaintiffs' position. In that case, the question of timeliness revolved around exactly when the would-be intervenor's "stake" in the lawsuit in question materialized because of a stay in parallel litigation. The motion to intervene was filed less than a month later. Any of the interests the Attorney General attempts to articulate would have materialized many years ago.

[12] *See* Rec. Docs. 40, 53, 233.

[13] *See, e.g.*, FRCP 25(d)(1) ("When a public officer is a party to an action in his official capacity and during its pendency … ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party.").

[14] The Attorney General does not deny that he agreed to extend the stay after taking office – claiming only that he needed "adequate time for a full review of the matter," but indicates that he would have opposed extending the stay

could have intervened more than a year ago when the parties extended the current stay "without any consultation with the Attorney General," but he instead chose to "withdr[aw] from representing the Governor, the Department, and officials of the Department."[15]

Contrary to the Attorney General's claim that the existing parties will not be affected by the intervention of a third party, the Plaintiffs will be significantly prejudiced by the addition of another Defendant seven years after the initiation of this litigation. First, doing so will essentially give Defendants two separate bites at the same apple for the purposes of discovery and motions practice – as evidenced by the submission of an additional proposed Answer to the Second Amended Complaint – when the Defendants were the ones who sought to have the Governor and DOC dismissed as parties to the case in 2013.[16] Furthermore, the parties would have to bear the logistical and financial burden of an additional round of depositions of the Attorney General, his staff, and other countless potential witnesses—all of whom by the Defendants' very own representation to this Court have made no "direct acts or omissions" with reference to the execution protocols, but are now alleging to have some interest above and beyond the individuals already deposed. The fact that "new Plaintiffs have been permitted to intervene in the case with regularity" is a red herring. Rec. Doc. 233, at 4. Each Plaintiff has an individual constitutional claim to protect for themselves, which is distinct and cannot be litigated by another individual or entity.[17] Additionally, Plaintiffs have consistently filed joint

---

two years later in 2018. Presumably, at some point during that two year period, the Attorney General had gotten up to speed on the issues and could have made a motion to intervene if there were legitimately a distinct state interest in the case.

[15] Rec. Doc. 233 at 2.

[16] Rec. Doc. 40.

[17] *See, e.g. Roane v. Leonhart*, 741 F.3d 147, 152 (D.C. Cir. 2014) (addition of intervening Plaintiffs to litigation challenging execution protocol requires no additional factual development).

pleadings wherever possible in order to conserve judicial resources. The untimely nature of this Motion will prejudice the Plaintiffs.

**B.  The Attorney General Has No Interest in the Subject of this Lawsuit that is Separate and Distinct from that of the Current Defendants**

The Attorney General's Motion is deficient under the second prong of Rule 24(a).  The designated role of the Attorney General in this lawsuit is to provide representation for the state officials that are its clients, which the Attorney General acknowledges has been the case since the very beginning of this litigation.[18] The only lapse in this representation occurred when counsel Murrill moved to withdraw on the basis that parties consented to a stay in July of 2018 "without any consultation with the Attorney General, who opposed further extension of that stay."[19] While this dispute is not the subject of this response, the Fifth Circuit has warned that "the Attorney General's right to represent state officials or state agencies cannot be gainsaid . . . but he must in fact <u>represent</u> them. He cannot ignore his clients and bind the State against their wishes."[20]

Moreover, the State of Louisiana has no interest that is separate from that of the current Defendants. The Rules of Civil Procedure require that a would-be intervenor have an interest in the lawsuit that is "direct, substantial, and legally protectable."[21] Although the Attorney General here is purporting to represent the interests of "the State at large," he has failed to articulate any state interest—aside from that of the DOC—that would be implicated in this litigation. Under

---

[18] *See e.g.*, Rec. Doc. 27 (minutes from the February 7, 2013 hearing on Plaintiffs' Motion for Preliminary Injunction), 63 (June 11, 2013 Answer), 70 (September 9, 2013 Motion to Dismiss); *see also* Rec. Doc. 233 ("They Attorney General enrolled in this matter in February 2013 as counsel for Bobby Jindal, Burl Cain, Angela Norwood, and the State of Louisiana through the Department of Public Safety and Corrections."); *see also La. Const.* art. IV, § 8 (providing that the Attorney General is the "chief legal officer of the state" who is authorized to act to protect "any right or interest of the state").

[19] *See* Rec. Doc. 228; Rec. Doc. 233 at 2.

[20] *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 843 (5th Cir. 1993).

[21] *Piambino v. Bailey*, 610 F.2d 1306, 1321 (5th Cir. 1980).

Louisiana law, the Attorney General is given selective authority to "institute, prosecute, or intervene[22] in any civil litigation or proceeding" but only "*as necessary for the assertion or protection of any right or interest of the state*."[23]

The governmental interests here are held by the Secretary of the DOC, who is "charged with executing condemned prisoners."[24] The Attorney General's office plays no role in that process. Like the state highway commission in *Saint v. Allen*, the DOC is a "body corporate with the power to sue and be sued,"[25] therefore, the Attorney General's general powers under the state constitution do not provide a basis for intervention. The Attorney General does not argue, nor could it under the *Allen* line of cases, *see* Part I *supra*, that the lawsuit somehow vests it with an interest; instead, the Attorney General references an "interest" the state has, as a distinct entity from the Defendants, "in ensuring that its laws are faithfully carried out and in advancing the orderly administration of justice."[26] This argument is unavailing. Again, in their own motion, counsel for the Defendants had the State, the very entity they seek to now intervene, and the Governor dismissed from this litigation. The reasoning for dismissing the Governor is most relevant for this issue before the Court. Defendants successfully argued that

---

[22] "Intervene" as used in state law and statutes does not carry the same meaning as it does under the federal rules governing third-party intervention. *See* La. C.C.P. Art. 1091, 1960 Official Revision Commentary ("The concepts of 'intervention of right' and 'permissive intervention' of Fed. Rule 24 are not suitable for implementing the substantive law of a civil law jurisdiction; and the test of 'a question of law or fact in common' of the federal permissive intervention is much too narrow and inflexible to define the traditional functions of intervention in the procedure of civilian jurisdictions."). The Attorney General's argument that the use of "intervene" in the state constitutional provision somehow gives him power in federal court to intervene under federal rules should not be credited.

[23] La. Const. Art. IV, § 8 (emphasis added).

[24] Rec. Doc. 59 at 12; La. R.S. § 15:568.

[25] La. R.S. § 36:401.

[26] *Cf. State ex rel. Guste v. Simoni, Heck & Associates*, 331 So. 2d 478, 482 (La. 1976) (distinguishing the *Allen* line of cases when the state itself was the owner of a building and thus had a cause of action arising out of defective construction by a state agency).

the Governor had no "direct participation . . . in carrying out the execution procedures" and that Plaintiffs had not established "any connection between [the Governor] and the allegedly unconstitutional lethal injection procedure."[27] The Court credited this argument and found that the Secretary of Corrections was the appropriate party to remain in the litigation.[28] The Attorney General cannot now, almost seven years later, claim to be the "the real party in interest." Rec. Doc. 233, at 6. The Attorney General cannot make an argument directly contrary to its own prior pleadings and this Court's decision in that regard is the law of the case.

### C.  Disposition of this Action would not Impede Interests of the Attorney General

The Attorney General has failed to make out the third requirement under FRCP 24(a): that the disposition of this action would impair or impede his ability to protect his interest. Because the Attorney General, as a representative for the "state as a whole" or the "state at large" does not have any independent interest or stake in this litigation, there is nothing that would be impaired or impeded by a disposition in this litigation. Rec. Doc. 233, at 6, 8. The Attorney General claims an interest in "carrying out lawful and valid sentences issued by State courts." Rec. Doc. 233, at 6. However, the Plaintiffs emphatically do not—and could not—challenge their underlying convictions or sentences in this lawsuit. *See Heck v. Humphrey*, 512 U.S. 477 (1994). The validity of the Plaintiffs' sentences are not at issue here. The issues in this lawsuit pertain to the *method* by which the Defendants seek to execute the sentences of the Plaintiffs.

---

[27] Rec. Doc. 53 at 8-9; Rec. Doc. 59 at 12 (finding that "Governor Jindal's only responsibility as alleged is appointing the Secretary and supervising his actions. However, the Secretary is charged with executing condemned prisoners and the Warden(s) are charged with overseeing the execution.").

[28] Rec. Doc. 59 at 12.

The Attorney General has no distinct interest in the method by which the sentences are carried out beyond that of the current Defendants.[29]

In the instance that Plaintiffs prevail in this suit, that result would not prevent the DOC from developing and instituting an alternative protocol that meets the constitutional standards as laid out by this Court. The validity of the underlying sentences, and the death penalty in general, would not be impacted by a decision favorable to the Plaintiffs. Finally, any interest in "seeing that final, valid convictions and death sentences are carried out" has been rejected by the Fifth Circuit when relied upon by district attorneys in Texas when the TDOC refused to appeal a ruling.[30]

### D. Any "State Interest" is Adequately Protected by the Existing Defendants

The Attorney General's Motion fails to establish inadequate representation under the fourth prong of Rule 24(a). The burden of establishing inadequate representation is heightened when the existing party is a governmental entity. [Cite?]. In these cases, the would-be intervenor has the elevated burden of demonstrating adversity of interest, collusion, or nonfeasance.[31] The Attorney General does not accuse Defendants of collusion or nonfeasance, but instead the Attorney General claims that the "Department [of Corrections] and the state as a whole have different interests" because the Attorney General's interests are "broader than those of the current Defendants."[32] Rec. Doc. 233 at 8.

---

[29] *See United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 415 (5th Cir. 1991) (a hypothetical possibility a would-be intervenor would have to respond to an argument in a subsequent action is not a sufficient practical impairment of interest).

[30] *See Saldano v. Roach*, 363 F.3d 545, 552-54 (5th Cir. 2004) (affirming the denial of a motion to intervene by the district attorney who prosecuted a capital case when counsel for the DOC declined to appeal the district court's reversal).

[31] *Id.* at 355; *see also In re Healthsouth Corp. Ins. Litig.*, 219 F.R.D. 688, 32 Employee Benefits Cas. (BNA) 2801 (N.D. Ala. 2004).

[32] Ironically, if the Plaintiffs had named as Defendants the Attorney General's Office, the State of Louisiana and/or the Louisiana Department of Justice, the Defendants would have had a valid motion to dismiss as the State is not a "person" under 28 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 68–70 (1989) (states and

Even if the Court were to find that the Attorney General, as a distinct party from the Secretary of the Department of Corrections, has some legally protectable interest in this litigation, adequate representation does not turn on whether or not the Attorney General agrees with every decision of the DOC Secretary and his staff. Instead, the relevant consideration is whether their interests are aligned as a practical matter "to the subject matter at hand" – here, in upholding the constitutionality of the DOC's lethal injection directive and protocol.[33] The Attorney General's proposed Answer demonstrates that there is no separate interest differentiating its position from what the current Defendants have already pled in their Answer, *see* Rec. Doc. 126, a fact that the Fifth Circuit has found indicates adequate representation.[34]

Indeed, the Attorney General's Motion itself is evidence of interest alignment. Among other examples, the Attorney General reports that the DOC "has requested that the Attorney General's office re-enroll in the case"[35] and that his office re-enrolled "as additional counsel for all defendants to carry out his obligations to defend the laws and see that the laws of the State of

---

state officials sued in their official capacities are not deemed "persons" subject to suit within the meaning of § 1983).

[33] *See e.g., Am. Fed'n of State, Cty. & Mun. Emples. (AFSCME) Council 79 v. Scott*, 278 F.R.D. 664, 670 (S.D. Fla. 2011) ("While a proposed intervenor and a party might, as a general matter, have different interests, the relevant Rule 24(a)(2) inquiry is whether the party will represent the proposed intervenor's interest with respect to the subject matter of the action. In the present case, the Governor's interests are directly aligned with the Secretary's. The Secretary's interests in defending Florida Statute § 944.474 are impaired only if the EO is ruled unconstitutional. However, the Governor, who issued the EO, has every reason to defend this policy.").

[34] In *Bush v. Viterna*, 740 F.2d at 357, the Court found adequate representation when would-be intervenor took "virtually identical positions" to those taken by the existing party, stating, "the Association has not indicated a single issue on which it and the Commission differ. The Association has not demonstrated that it has anything to contribute to this lawsuit beyond underlining the positions already taken by the Commission or that the Commission will not adequately present those common positions. In short, the same positions and defenses will be presented in this suit, whether or not intervention is allowed."

[35] The Attorney General is undoubtedly aware of the Rules of Professional Conduct and would not seek to represent clients with divergent interests. The fact that the Attorney General's assistants have enrolled on behalf of both the DOC and the Attorney General should be sufficient proof that the two parties' interests are aligned.

Louisiana are faithfully enforced and executed."[36] Any hypothetical future disagreements

regarding staying the proceedings are speculative and irrelevant. Courts have consistently held

that the possibility that parties may develop conflicting opinions in the future or the fact that

they may favor different tactical approaches does not meet the necessary adverse interest

requirement.[37] Because the Attorney General's interests are adequately represented by the

current Defendants, particularly as represented by counsel for the Attorney General's Office,

this Court should deny intervention.

**IV.    The Attorney General has Not Pled Sufficient Grounds to Warrant Intervention**

As the Attorney General has made clear in the motion to intervene and reiterated in public

statements, he is personally invested in ensuring "that final convictions . . . are carried out without

unnecessary delay or interference by the federal courts" without consideration of whether "the

Department has drugs available to carry out the sentences."[38] Furthermore, he believes "current

defendants may or may not intend to agree to another stay."[39] However, his desire to guard

against "further delay in this matter" does not provide a valid basis for intervention. The Fifth

Circuit has addressed the way for the Attorney General of Texas to properly handle a situation in

which he disagrees with a state agency: "[t]he unique position of the Attorney General requires

that when his views differ from or he finds himself at odds with an agency, then he must allow the

---

[36] Rec. Doc. 233 at 2.

[37] *See, e.g., Bush*, 740 F.2d at 356 (5th Cir. 1984) ("The mere possibility that a party may at some future time enter into a settlement cannot alone show inadequate representation."); *Weller v. Actors' Equity Association*, 93 F.R.D. 329, 330 (S.D.N.Y. 1981) (mere conclusory allegations that present party may enter into a settlement insufficient to show inadequate representation); *Bumgarner v. Ute Indian Tribe of Uintah and Ouray Reservation*, 417 F.2d 1305, 1308 (10th Cir. 1969) (tactical differences do not make inadequate the representation of those whose interests are identical); *Acuff v. United Papermakers,* 404 F.2d 169 (5th Cir.), *cert. denied*, 394 U.S. 987, 89 S. Ct. 1466, 22 L. Ed. 2d 762 (1968) (decision not to take an appeal does not show inadequate representation).

[38] Rec. Doc. 233 at 6-7.

[39] *Id.*; *see also, e.g.*, Julia O'Donoghue, "Louisiana AG Jeff Landry pushes new execution options: gas, electrocution, firing squad, hanging," *The Times-Picayune*, July 24, 2018.

13

assigned counsel or specially appointed counsel to represent the agency ***unfettered and uninfluenced*** by the Attorney General's personal opinion."[40] The same holds true in this case. The Attorney General and his assistants are lawyers bound by the Rules of Professional Conduct. They may not veto their clients' decisions by becoming parties to the case.[41]

## CONCLUSION

In sum, the Attorney General—who currently represents Defendants as counsel—has not met the high burden necessary for intervention of right under FRCP 24(a). A lawsuit against the DOC does not implicate the Attorney General's powers or duties under the Louisiana Constitution, and there is no independent interest in the litigation possessed by the "state" as a distinct entity. The Attorney General has provided no evidence of adversity of interest, collusion, or nonfeasance, and has filed a proposed Answer indicating that its position is substantially identical to what current Defendants pled in their Answer. The addition of a third-party Defendant would significantly prejudice Plaintiffs as it would give the Defendants an extra bite at the apple, absent any justification, when they were responsible for the dismissals of the Governor and state as parties from the suit.

/s/ Mercedes Montagnes

Cecelia Trenticosta Kappel (Bar No. 32736)
Mercedes Montagnes (Bar No. 33287)
The Promise of Justice Initiative
1024 Elysian Fields Avenue
New Orleans, LA 70117
Telephone: (504) 529-5955
Facsimile: (504) 595-8006
Email: ckappel@defendla.org
          mmontagnes@defendla.org

---

[40] *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 842 n.9 (5th Cir. 1993) (emphasis added).

[41] In fact, the Attorney General, like any other lawyer, cannot represent clients with conflicting legal positions.  La. Rule Prof. Conduct. 1.7(a).

On Behalf of Plaintiffs and Intervenor-
Plaintiffs: Jessie Hoffman, Christopher
Sepulvado, Kevan Brumfield, Todd
Wessinger, Daniel Irish, Shedran Williams,
Jarrell Neal, Daniel Blank, James Tyler,
Bobby Hampton, and Nathaniel Code

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

/s/ Mercedes Montagnes

Mercedes Montagnes