**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

JESSIE HOFFMAN, *et al.*

CIVIL ACTION

VERSUS

12-796-SDD-EWD

BOBBY JINDAL, *et al.*

## RULING

This matter is before the Court on the *Motion to Intervene*[1] filed by Jeff Landry, Attorney General for the State of Louisiana ("Attorney General Landry," "the Attorney General," or sometimes "the AG"). Plaintiff Jessie Hoffman and Intervenor-Plaintiffs Christopher Sepulvado, Kevan Brumfield, Todd Wessinger, Daniel Irish, Shedran Williams, Jarrell Neal, Daniel Blank, James Tyler, Bobby Hampton, and Nathaniel Code (collectively "Plaintiffs") filed a *Response*[2] in opposition to the motion. For the following reasons, the Court finds that the *Motion* shall be DENIED.

## I.    FACTUAL BACKGROUND

Plaintiff Jesse Hoffman ("Hoffman") is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana ("Angola").[3] He is sentenced to death, but there is currently no date set for his execution.[4] In his *Complaint*, filed on December 20, 2012, Hoffman alleges that the State of Louisiana's approach to the death penalty violates his right to due process and right to be free from cruel and unusual punishment because the State "lacks any current written rules, procedures, or protocols by which

---

[1] Rec. Doc. No. 232.
[2] Rec. Doc. No. 248.
[3] Rec. Doc. No. 1, p. 2.
[4] *Id*.
67120

to execute condemned inmates."[5] Further, Hoffman contends, the State's "lack of oversight and properly-trained personnel unnecessarily creates a wanton risk of pain and suffering," and the last-known execution protocol requires the use of a drug that "does not adequately protect Plaintiff from cruel and unusual punishment."[6]

In the nine years since the filing of Hoffman's *Complaint*, sixteen other incarcerated people have intervened as Plaintiffs in this litigation. On April 16, 2013, the Court dismissed Plaintiffs' claims against Governor Bobby Jindal and the Louisiana Department of Public Safety and Corrections ("DPSC"), finding that DPSC was a state agency and not a "person" subject to suit under 42 U.S.C. § 1983, and that the allegations against Governor Jindal were conclusory and impermissibly premised on a theory of *respondeat superior*.[7] Since May 7, 2014, this matter has remained stayed upon joint motions by the parties.

## II.    LAW AND ANALYSIS

### A.  Intervention of Right

Attorney General Landry asserts that he should be permitted to intervene on behalf of the State of Louisiana as a matter of right in this case. Intervention as a matter of right is governed by Federal Rule of Civil Procedure 24(a).The movant bears the burden of establishing his right to intervene, but Rule 24 is to be liberally construed; the United States Court of Appeals for the Fifth Circuit instructs that "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained."[8]

---

[5] *Id*. at p. 1.
[6] *Id*. at p. 1-2.
[7] Rec. Doc. No. 59, p. 11-12.
[8] *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)(quoting *Sierra Club v. Espy,* 18 F.3d 1202, 1205 (5th Cir.1994)).
67120

To intervene by right, the prospective intervenor either must be "given an unconditional right to intervene by a federal statute,"[9] or must meet each of the four requirements of Rule 24(a)(2):

(1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.[10]

Based on its review of the parties' briefs and the applicable law, the Court finds that Attorney General Landry has failed to demonstrate a legally sufficient interest and has not shown that whatever interest he may have is inadequately represented by the existing parties. The Court will address the parties' arguments in turn.

1. Interest

Rule 24(a)(2) requires that intervenors "claim[ ] an interest relating to the property or transaction that is the subject of the action."[11] Although "[t]here is not any clear definition of the nature of the interest ... that is required for intervention of right,"[12] the Fifth Circuit has previously interpreted Rule 24(a)(2) to require a "'direct, substantial, legally protectable interest in the proceedings.'"[13] The Fifth Circuit has held that, ultimately, the "inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way."[14]

---

[9] Fed. R. Civ. P. 24(a)(1).
[10] *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 463 (5th Cir.1984)(*en banc*).
[11] Fed. R. Civ. P. 24(a)(2).
[12] 7C Charles Alan Wright, et al., *Federal Practice and Procedure* § 1908.1 (3d ed. 2007) [*Wright & Miller*] (internal quotation marks omitted).
[13] *Edwards v. City of Houston,* 78 F.3d 983, 1004 (5th Cir. 1996).
[14] *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015).
67120

Attorney General Landry argues that he can intervene because the Louisiana Constitution designates him as "the chief legal officer of the state"[15] and specifies that "[a]s necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding. . .."[16] Of course, these state law provisions cannot provide the "unconditional right to intervene *by a federal statute*"[17] that forms one possible basis for an intervention of right. Nor do these provisions, in and of themselves, establish that the State has an interest in this matter, only that, when the State *does* have an interest, the Attorney General is theoretically empowered to intervene to assert or protect it. As observed by the Eastern District of Louisiana, however, the designation of the AG as the "chief legal officer" was intended by the drafters of the Louisiana Constitution "only as an introductory expression without substantive meaning with regard to powers, functions or duties."[18]

Attorney General Landry's articulation of the State's interest is wanting. He explains that his attempt to intervene is "grounded in the protection of State interests *at large*,"[19] a statement seemingly at odds with the doctrinal requirement that the intervenor's interest be more specific than merely "an undifferentiated, generalized interest in the outcome of an ongoing action," which is "too porous a foundation on which to premise intervention as of right."[20] Likewise, Landry's invocation of the State's "interest

---

[15] LA CONST Art. 4, § 8.

[16] *Id*.

[17] Fed. R. Civ. P. 24(a)(1) (emphasis added).

[18] *United States v. State of La.,* 751 F. Supp. 608, 619 (E.D. La. 1990).

[19] Rec. Doc. No. 233, p. 6 (emphasis original).

[20] *Texas v. U.S.,* 805 F.3d 653, 658, n. 3 (5th Cir. 2015)(quoting *Pub. Serv. Co. of N.H. v. Patch,* 136 F.3d 197, 205 (1st Cir.1998)).

67120

in ensuring that its laws are faithfully carried out and in advancing the orderly administration of justice"[21] is too general to fulfill the requirement that he have a "'direct, substantial"[22] interest in these proceedings. The Fifth Circuit in *Texas v. U.S.* cited with approval the Third Circuit's statement that "[i]ntervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought."[23] Attorney General Landry's interests appear to fulfill none of these criteria. A generalized interest in seeing "laws faithfully carried out" is not specific to him, and in fact, as Plaintiffs note, the Louisiana Supreme Court has instructed that the Attorney General's "constitutional 'duty of representing the state in all legal matters in which it has an interest' . . . does not result in the state 'thereby [being] granted an interest in claims belonging to its subdivision.'"[24]

Further, it is not clear how being allowed to intervene in these proceedings would concretely affect the State's purported interest, since Attorney General Landry's office already represents Defendant, DPSC Secretary LeBlanc[25] and, from that position, can make whatever arguments in defense of Louisiana law that it sees fit. Moreover, the AG's briefs call into question whether his interest is capable of definition, since at various points he defines it as "State interests at large," "advancing the orderly administration of justice,"

---

[21] Rec. Doc. No. 233, p. 7.

[22] *Edwards,* 78 F.3d at 1004.

[23] *Texas v. United States,* 805 F.3d 653, 658, n. 3 (5th Cir. 2015)(quoting *Kleissler v. U.S. Forest Serv.,* 157 F.3d 964, 972 (3d Cir.1998)).

[24] *State ex rel. Caldwell v. Molina Healthcare, Inc.,* 2018-1768 (La. 5/8/19), 283 So. 3d 472, 482. As Plaintiffs note, the Louisiana DPSC is no longer a party to the suit because the Court found that it is not a person subject to suit under 42 U.S.C. § 1983. Nevertheless, Plaintiffs maintain their suit against DPSC through the Secretary, who, they argue "exercises its power to sue and be sued in his official capacity." (Rec. Doc. No. 248, p. 4).

[25] Murrill moved to re-enroll on July 31, 2019 (Rec. Doc. No. 234) and is now listed as counsel for all Defendants.

67120

"seeing the lawsuit come to a timely resolution,"[26] and ensuring that the victims of crime "see justice for their loved ones carried out."[27]

Attorney General Landry gets more specific where he argues that the State has an interest "in seeing that final convictions and State court orders arising from cases are carried out without unnecessary delay or interference by the federal courts."[28] As Plaintiffs correctly note, however, *Heck v. Humphrey*[29] bars them from pursuing a § 1983 suit where "a judgment in favor of the plaintiff would necessarily imply the invalidity of [their] conviction or sentence."[30] Therefore, they explain, they "do not – and could not – challenge their underlying convictions or sentences."[31] Plaintiffs do not seek to invalidate their death sentences; instead, they take issue with "the *method* by which the Defendants seek to execute the sentences of the Plaintiffs."[32]

To the extent that Attorney General Landry seeks to intervene in order to defend a particular *method* of carrying out death sentences, Louisiana law is clear that it is the Secretary of Corrections, not the Attorney General, who is charged with that responsibility. Louisiana Revised Statute §15:568 provides that "[t]he secretary of the Department of Public Safety and Corrections, or a competent person selected by him, shall execute the offender in conformity with the death warrant issued in the case." Louisiana law also prescribes that "[e]very sentence of death executed on or after September 15, 1991, shall be by lethal injection."[33] The AG declares that his intervention

---

[26] Rec. Doc. No. 233, p. 6, 7, 8.
[27] *Id*. at p. 7.
[28] *Id*.
[29] 512 U.S. 477 (1994).
[30] *Id*. at 487.
[31] Rec. Doc. No. 248, p. 10.
[32] *Id*. (emphasis original).
[33] La. R.S. §15:569.

67120

is necessary because "the objective of the Plaintiffs is to prevent the State from carrying out lawful orders of execution."[34] This is an odd statement. The lawfulness of the policies and procedures surrounding executions in Louisiana is the question at the heart of this case. The desire that Louisiana law be swiftly carried out notwithstanding a pending constitutional challenge is not a valid State interest.

Another wrinkle in Attorney General Landry's argument is the fact that the State of Louisiana was, at one point, a Defendant in this lawsuit (through the Department of Public Safety and Corrections) – until it was dismissed, upon the motion of Defendants and their counsel from the Attorney General's office.[35] In that *Motion*, Defendants argued that this Court lacked subject matter jurisdiction over the State of Louisiana and the Department of Public Safety and Corrections because "a state [and its agencies] is not a 'person' under 42 U.S.C. § 1983."[36] The Court agreed, and dismissed the State of Louisiana through the DPSC from the lawsuit.[37] In the Court's view, the AG is arguably estopped from now contending that "the *State* is the real party in interest"[38] herein, when seven years ago the AG's office moved to dismiss the State on the basis that it was a legally improper party.

Ultimately, it is clear that Attorney General Landry's motion is premised not on some distinct State interest but on his objection to the fact that this matter has been stayed since 2014. He complains that the "victims of heinous crimes" have been negatively

---

[34] Rec. Doc. No. 233, p. 6.
[35] Louisiana's Attorney General at the time was not Jeff Landry but Buddy Caldwell. However, the legal argument advanced by the AG's office was correct and was accepted by the Court, regardless of which individual held the position at the time.
[36] Rec. Doc. No. 40-1, p. 9.
[37] Rec. Doc. No. 59, p. 11-12.
[38] Rec. Doc. No. 233, p. 6 (emphasis original).
67120

impacted because "the continuous delays in this matter are preventing them from seeing justice carried out."[39] The "continuous delays" in this matter are not, as Attorney General Landry implies, the result of judicial foot-dragging; in fact, the original stay and every extension thereto was implemented with the consent of all parties, including parties represented by the Attorney General's office. In fact, in 2016, Attorney General Landry's Solicitor General moved to extend the stay in this case.[40]

The procedural history is as follows: the stay was initiated via a May 7, 2014 *Status Conference* minute entry reflecting that "[t]he parties requested a stay of all proceedings which the court granted."[41] The same was memorialized in a *Consent Order*, implementing a stay through November 17, 2014.[42] On November 12, 2014, Defendants filed an *Unopposed Motion to Continue Status Conference and Extend Stay*, seeking an extension of the stay through June 25, 2015.[43] That *Motion* was granted by another *Consent Order*.[44] Defendants again filed an unopposed motion to extend the stay, this time through July 11, 2016.[45]

As noted above, it was not just "outside counsel" that sought extensions to the ongoing stay. On May 20, 2016, Elizabeth Murrill, the Solicitor General for Louisiana (the Attorney General's Office chief trial attorney), moved to enroll in this matter as additional counsel for Secretary LeBlanc[46] and then filed yet another *Unopposed Motion to Continue Status Conference and Extend Stay*, averring that "the facts and issues that are involved

---

[39] Rec. Doc. No. 233, p. 7.
[40] Rec. Doc. No. 196.
[41] Rec. Doc. No. 174.
[42] Rec. Doc. No. 178.
[43] Rec. Doc. No. 181.
[44] Rec. Doc. No. 184.
[45] Rec. Doc. No. 188.
[46] Rec. Doc. No. 193.
67120

in this proceeding continue to be in a fluid state, meaning that it would be a waste of resources and time to litigate this matter at present time"[47] and seeking a stay through January 8, 2018. Notably, the *Consent Order* proposed by the Solicitor General and ultimately entered by the Court explicitly stated that "this stay will not be construed as dilatory or causing unnecessary delay by any party."[48]

Come January 2018, the parties again sought to extend the stay; then, on July 11, 2018, Defendants filed another *Unopposed Motion* to extend the stay through July 2019.[49] After that motion was granted and a stay ordered through July 2019, Solicitor General Murrill and in-house Assistant Attorney General David G. Sanders moved to withdraw as counsel of record, stating that they were "no longer assigned to this case."[50] Attorney General Landry now argues that Murrill and Sanders withdrew essentially in protest, because the stay through July 2019 was sought "without consultation with the Attorney General, who opposed further extension of the stay."[51] The Court declines to be drawn into what has been characterized as a divergence of opinion between outside counsel retained by the Attorney General, the highest-ranking attorneys in the Attorney General's office, and Attorney General Landry himself.

The Court fails to see how the Attorney General's view of the stay creates a direct, substantial legal interest for the State of Louisiana, especially when the stay was granted based upon an *Unopposed Motion* by all parties. Perhaps the opinion of "outside counsel" representing Defendants and the opinions of the highest ranking attorneys in the Attorney

---

[47] Rec. Doc No. 196, p. 3.
[48] Rec. Doc. No. 197.
[49] Rec. Doc. No. 226.
[50] Rec. Doc. No. 228, p. 1.
[51] Rec. Doc. No. 233, p. 2.

67120

General's Office were not in harmony with Landry's preference, but this internal disagreement does not give rise to a "'direct, substantial, legally protectable interest in the proceedings'"[52] on behalf of the State. Attorney General Landry's desire to intervene in order to "oppose another stay of the proceedings"[53] strikes the Court as merely a "generalized preference that the case come out a certain way."[54] His frustration with the "considerable delays" – all of which were the result of joint motions by the parties – is not a legally cognizable interest to support his desire to intervene.

Other courts have allowed the Attorney General to intervene based on a relatively general articulation of the State's interest. For example, in the 2021 case *Brown v. Jefferson Parish School Board*, the Eastern District of Louisiana concluded that the State's asserted interest in "having its statutes and constitution correctly construed" and in "having [the Jefferson Parish School Board] [as a political subdivision of Louisiana] comply with Louisiana law,"[55] among others, was sufficient to justify intervention of right. A critical difference between *Brown* and the instant case, however, is that the Attorney General's interest was hardly contested in *Brown* because therein, the State's intervention was primarily premised on Federal Rule of Civil Procedure 24(a)(1), under which a state has the right to intervene if a party to a suit challenges the constitutionality of a state statute. Because that provision applied, the Attorney General's other asserted interests were made only in the alternative.[56] The Attorney General has not invoked Rule 24(a)(1) here, and it does not apply.

---

[52] *Edwards,* 78 F.3d at 1004.
[53] Rec. Doc. No. 233, p. 8.
[54] *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015).
[55] *Brown v. Jefferson Par. Sch. Bd.,* No. CV 21-40, 2021 WL 949679, at *8 (E.D. La. Mar. 12, 2021).
[56] *Id*. at *6 ("Alternatively, the State argues that it has a right to intervene under Rule 24(a)(2)...").
67120

2. Adequate Representation

Even assuming *arguendo* that the Attorney General carried his burden of establishing a substantial interest in these proceedings, Landry has not shown that his interest is inadequately represented by the existing parties. If, for purposes of this inquiry, the Court characterizes Landry's interest as seeing death sentences carried out according to state law, adequate representation exists because Louisiana charges the Secretary of Corrections with that duty, and the Secretary is already part of this suit.

The Fifth Circuit has made clear that the movant's burden of proving inadequate representation is a "minimal" one that is met if the movant shows that "'representation may be inadequate.'"[57] "Although the applicant's burden of showing inadequate representation is minimal, "it cannot be treated as so minimal as to write the requirement completely out of the rule."[58] The Fifth Circuit has held that "'[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance.'"[59] The Attorney General makes no such demonstration, or at least not a clear one.

The Attorney General repeatedly contends that he does not have "the same ultimate objective" as the existing Defendants, which is curious insofar as it implies that the existing Defendants are content with what the AG describes as unjustified and "continuous delays." Attempting to explain the inadequacy of Secretary LeBlanc's

---

[57] *Brown v. Jefferson Par. Sch. Bd.*, No. CV 21-40, 2021 WL 949679, at *8 (E.D. La. Mar. 12, 2021)(quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994)).
[58] *Cajun Elec. Power Co-op., Inc. v. Gulf States Utilities, Inc.*, 940 F.2d 117, 120 (5th Cir. 1991). (quoting *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir.1984)).
[59] *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984).
67120

representation of the State's interest, the AG bafflingly avers that "[t]he Department has is not in agreement not to extend the stay [sic]." Later, he adds the conclusory statement that "[t]he Department and the State as a whole have different interests."[60] This is an odd statement in light of the Attorney General's claimed interest in seeing state laws "faithfully carried out." Presumably, Secretary LeBlanc shares that interest. Moreover, Attorney General Landry informs the Court in his *Motion* that DPSC "has requested that the Attorney General re-enroll in the case,"[61] which, as Plaintiffs note, seems to be "evidence of interest alignment"[62] between the AG and DPSC.

Essentially, the Attorney General's argument for inadequate representation is that there is no current party to the lawsuit that is as opposed as he is to any further stays of this litigation, though he admits that DPSC "also may not decide to consent to further stays in this matter."[63] As discussed above, opposing further stays is not a legally cognizable interest; it is a *preference*, which the Fifth Circuit has held to be inadequate grounds for intervention. The Court finds Landry's opposition to further stays akin to similar interests that courts have deemed to be insufficient evidence of inadequate representation, including the possibility that one party may settle[64] and the possibility that the movant "would have handled the defense of the case differently"[65] than the existing parties.

---

[60] Rec. Doc. No. 233, p. 8.
[61] *Id*. at p. 2.
[62] Rec. Doc. No. 248, p. 12.
[63] *Id*.
[64] *Bush*, 740 F.2d at 356 (5th Cir. 1984) ("The mere possibility that a party may at some future time enter into a settlement cannot alone show inadequate representation").
[65] *Bumgarner v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 417 F.2d 1305, 1308 (10th Cir. 1969).
67120

Overall, the Court finds that the fact that the existing parties have, until now, repeatedly sought stays, does not mean that a direct, substantial, legal interest of the State of Louisiana is inadequately represented here. This is especially true since the Solicitor General, a member of the Attorney General's office, represents Secretary LeBlanc and the other DPSC Defendants and can counsel against further stays from that posture. Nor would DPSC's potential consent to another stay indicate that AG Landry was inadequately represented, as "the Attorney General cannot bind state officials, his clients, to his own policy preferences."[66]

Moreover, the Fifth Circuit has identified another presumption of adequate representation that arises "when the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor]."[67] As discussed *supra*, Secretary LeBlanc, the state official who represents the Attorney General's purported interest in this matter, is explicitly charged by Louisiana Revised Statute §15:568 with "execut[ing] the offender[s] in conformity with the death warrant issued in the case." If the Court credits Landry's argument that his interest is in seeing death sentences carried out, it is crystal clear that his interest will be adequately represented by Secretary LeBlanc in that regard, in addition to being *literally* represented by counsel from the AG's office.

Despite his attempts to articulate a State interest in this matter that is direct, substantial, and legally protectable, Attorney General Landry succeeds only in making it clear that he objects so vehemently to further stays that he will oppose them, "[w]hether

---

[66] *Saldano v. Roach*, 363 F.3d 545, 554 (5th Cir. 2004)(quoting *Clements,* 999 F.2d at 840).
[67] *Texas*, 805 F.3d 653, 662 (5th Cir. 2015) (internal citations omitted).

67120

the Department has drugs available to carry out the sentences"[68] or not. The Court rejects this interest. Attorney General Landry is, without question, described as the "chief legal officer" of the State by the Louisiana Constitution. Such does not bestow upon him the right to intervene in these proceedings, where it is clear that whatever interest the State has beyond an objection to further stays is already adequately represented by Secretary LeBlanc, the state official specifically charged with carrying out death sentences in Louisiana. To the extent that "the lawfulness of the penalty" or "whether to enforce it"[69] are at issue in this action, the Court fails to see how the Attorney General's presence as an Intervenor-Defendant would abet "the greater justice,"[70] nor how it would accomplish anything that he cannot otherwise accomplish via his office's representation of Secretary LeBlanc and the other DPSC Defendants. On this *Motion*, the burden belongs to the Attorney General, and he has fallen short. Because all four elements under Rule 24(a)(2) must be met for intervention of right and the Court finds that two of them – interest and adequate representation – are not met, it does not reach the other two.

## III. CONCLUSION

For the above reasons, Attorney General Landry's *Motion to Intervene*[71] is hereby DENIED. **IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>June 8, 2021</u>.

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[68] Rec. Doc. No. 233, p. 7.
[69] *Id*. at p. 6.
[70] *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015).
[71] Rec. Doc. No. 232.
67120