**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **JESSIE HOFFMAN** | * | **CIVIL ACTION No. 12-796** |
| **VERSUS** | * | **JUDGE SHELLY D. DICK** |
| **BOBBY JINDAL, ET AL.** | * | **MAG. JUDGE ERIN WILDER-DOOMES** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants, James M. LeBlanc, Secretary for the Louisiana Department of Public Safety (DPSC); Timothy Hooper, Warden of the Louisiana State Penitentiary; and his Assistant Warden, John Tubbs, bring this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because this case no longer presents any case or controversy for this Court to resolve, the Court lacks subject matter jurisdiction. Alternatively, if the Court determines that it has subject matter jurisdiction, the claims raised by the twelve inmates who intervened in this lawsuit since the stay went into effect in 2014 should all be dismissed for failure to state a claim.

## BACKGROUND

On December 20, 2012, Plaintiff, Jessie Hoffman, instituted this action.[1]  On January 23, 2013, Plaintiff Christopher Sepulvado intervened and filed his own Complaint.[2] Together, they presented challenges to Louisiana's method of execution primarily based upon alleged violations of their rights to due process and to be free from cruel and unusual punishment. They subsequently twice amended their Complaints.[3] In 2014, Plaintiffs Kevan Brumfield, Nathaniel

---

[1] Doc. 1.
[2] Doc. 47.
[3] Docs. 67, 118.

Code, and Bobby Lee Hampton intervened and filed their own Complaints.[4] On May 27, 2014, the Court issued a Consent Order staying this proceeding and all of its deadlines.[5] During the stay, which the parties agreed to extend several times, twelve other Plaintiffs intervened and filed complaints – Todd Kelvin Wessinger, Daniel Irish, Shedran Williams, Daniel Joseph Blank, Jarrell Neal, James Tyler, Anthony Bell, Jason Reeves, Willie Tart, Allen Robertson, Dustin Dressner, and Henri Broadway.[6]

## ARGUMENT

### I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION.

"Article III of the Constitution limits federal courts' [subject matter] jurisdiction to certain 'Cases' and 'Controversies.'"[7] "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'"[8] "[S]tanding is not dispensed in gross."[9] Rather, each "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."[10] Thus, for each claim, Article III requires each plaintiff to show that (1) he or she personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, (2) that the injury fairly can be traced to the challenged action, and (3) that the injury is likely to be redressed by a favorable decision.[11] "The party invoking federal jurisdiction bears the burden of establishing these elements."[12]

---

[4] Docs. 121, 122, 123, respectively.
[5] Doc. 178.
[6] *See* Intervenors' Complaints, Docs 202, 203, 204, 211, 212, 223, 253.
[7] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).
[8] *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).
[9] *Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)).
[10] *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).
[11] *Lujan*, 504 U.S. at 560–61 (cleaned up).
[12] *Id.* at 561.

"Future injuries . . . 'must be certainly impending to constitute injury in fact,' and '[a]llegations of possible future injury' are not sufficient."[13] Plaintiffs "cannot rely on speculation about 'the unfettered choices made by independent actors not before the court.'"[14] And while "past wrongs" can be "evidence of the likelihood of a future injury," they "do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."[15]

Like standing, ripeness is an "essential component of federal subject-matter jurisdiction."[16] The ripeness doctrine is "designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'"[17] "If the purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication."[18]

"A lack of subject matter jurisdiction may be raised at any time,"[19] and "federal courts are duty-bound to examine the basis of subject matter jurisdiction."[20] To maintain subject matter jurisdiction, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."[21] "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."[22]

---

[13] *Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017) (quoting *Clapper*, 568 U.S. at 409));

[14] *Clapper*, 568 U.S. at 414 n.5 (quoting *Lujan*, 504 U.S. at 562).

[15] *Crawford v. Hinds Cty. Bd. of Supervisors*, 1 F.4th 371, 371 (5th Cir. 2021) (cleaned up).

[16] *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir.2005).

[17] *Id.* (citing *Nat'l Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 807–08 (2003)).

[18] *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir.2010) (citing *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

[19] *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 935 (5th Cir. 2012).

[20] *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).

[21] *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997).

[22] Fed. R. Civ. P. 12(h)(3); *see also* Fed. R. Civ. P. 12(b)(1).

None of the Plaintiffs[23] in this matter has standing to challenge Louisiana's current method of execution (including DPSC's protocol) because none of them is presently threatened with any certainly impending injury that can be redressed by a decision of this Court. Parties not before the Court refuse to make available to Louisiana the lethal injection drugs authorized by DPSC's current protocol.[24] All of DPSC's recent attempts to obtain lethal injection drugs have failed.[25] DPSC has no ability to obtain the lethal injection drugs authorized by DPSC's current protocol nor any other potential lethal injection drugs in the foreseeable future.[26] Therefore, should a death warrant ever be issued for any Plaintiff, DPSC would not be able to carry it out.[27]

Plaintiffs' claims are also unripe. Because DPSC is unable to obtain the lethal injection drugs authorized by its current protocol now and in the foreseeable future, it is speculative that DPSC's current protocol will injure Plaintiffs as they anticipate, if at all. Permitting this case to go forward will achieve nothing but the litigation of mere hypotheticals and a waste of this Court's time and resources.

## II.    INTERVENORS' COMPLAINTS FAIL TO STATE A CLAIM.

Now that the stay has been lifted,[28]  the Court should dismiss the Complaints of Intervenors Wessinger, Irish, Williams, Blank, Neal, Tyler, Bell, Reeves, Tart, Robertson, Dressner, and Broadway ("Intervenors")[29] under Federal Rule of Civil Procedure 12(b)(6). Intervenors fail to meet the pleadings standard for method-of-execution claims as recognized by

---

[23] For purposes of this section, Plaintiffs refers to all seventeen of the inmates who are currently plaintiffs in this lawsuit, including the twelve inmates who have intervened in the lawsuit since the stay went into effect in 2014.
[24] *See* Exhibit "A", Affidavit of Sec. James M. LeBlanc.
[25] *See* Exhibit "B", Affidavit of Seth Smith.
[26] *Id.*
[27] *See* Exhibit "A", Affidavit of Sec. James M. LeBlanc.
[28] Doc. 256.
[29] Intervenors' Complaints, though not entirely identical, raise the same substantive allegations under the same constitutional provisions. Of those Complaints, the one filed in 2019 is the most complete statement of Intervenors' claims because it repeats all allegations made in prior Intervenors' Complaints and adds new or slightly modified allegations. *See* Doc. 253. And so, all references to Intervenors' claims refer to those in their 2019 Complaint.

binding Supreme Court and Fifth Circuit precedent rendered since the stay went into effect in 2014.

Intervenors' claims may be grouped into five categories. *Count I*—Alleged denial of Intervenors' right to procedural due process by not providing notice of the execution protocol and an opportunity to be heard in challenging it.[30] *Count II*—Allegation that executing Intervenors pursuant to the current protocol will violate their rights under the Eighth and Fourteenth Amendments.[31] *Count III*—Alleged violation of Intervenors' rights under the Eighth and Fourteenth Amendments and the prohibition against Ex Post Facto punishment if Defendants substitute the lethal injection drugs without promulgating a new protocol.[32] *Count IV*— Allegation that the protocol denies Intervenors access to the courts and counsel in violation of the First, Sixth, and Fourteenth Amendments.[33] *Count V*—Allegation that the protocol excludes public access to executions in violation of the First, Eighth, and Fourteenth Amendments.[34]

To survive a Rule 12(b)(6) motion to dismiss, Intervenors must plead enough facts "to state a claim to relief that is plausible on its face."[35] A claim is facially plausible when it pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[36] Intervenors' "allegations must be enough to raise a right to relief above the *speculative* level."[37] The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.[38] The factual allegations must "raise a reasonable expectation that discovery will reveal evidence" of

---

[30] Doc. 253, p. 36.
[31] *Id.*, pp. 37-38.
[32] *Id.*, p. 38.
[33] *Id.*, pp. 38-39.
[34] *Id.*, p. 39.
[35] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).
[36] *Id.*
[37] *Twombly*, 550 U.S. at 555 (emphasis added)
[38] *Id.*

liability.[39] Pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'"[40] Threadbare recitals of the elements of a cause of action, supported by conclusory statements, do not suffice.[41]

Accepting their well-pleaded factual assertions as true,[42] Intervenors nonetheless fail to state any claim upon which relief may be granted.

### A.    Intervenors Fail to State a Claim for Procedural Due Process.

Intervenors contend in Count I that executing them without fair notice of the lethal injection protocol and an opportunity to be heard violates their right to procedural due process.[43] Yet, this same claim was previously considered *and rejected* by the Fifth Circuit when this proceeding was on appeal in *Sepulvado v. Jindal*.[44] As determined by the Fifth Circuit, "[t]here is no violation of the Due Process Clause from the uncertainty that [the State] has imposed on [the inmate] by withholding the details of its execution protocol."[45] The court stated that such a right "would frustrate the State's significant interest in enforcing its criminal judgments" and that "[c]ourts are not supposed to function as boards of inquiry charged with determining best practices."[46]

Plaintiffs Hoffman and Sepulvado subsequently filed an Amended Complaint[47] asserting essentially the same due process claim. When Defendants moved to dismiss,[48] this Court

---

[39] *Id.* at 556.
[40] *Twombly*, 550 U.S. at 557 (brackets omitted).
[41] *Id.* at 555.
[42] "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff." *Lormand v. U.S. Unwired, Inc.*, 565 F .3d 228, 232-33 (5th Cir.2009). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 149–50.
[43]  Doc. 253, p. 36 – Count I.
[44] 729 F.3d 413 (5th Cir. 2013).
[45] *Id*. at 419.
[46] *Id.* (internal citations omitted).
[47] Doc. 67.
[48] Doc. 70.

observed that it was constrained to follow *Sepulvado* as binding precedent.[49] Accordingly, this

Court dismissed Plaintiffs' due process claim,[50] which is now the law of the case.[51]

Under *Sepulvado*, Intervenors' due process claims fails to state a cognizable liberty

interest. In 2017, the Fifth Circuit reaffirmed its *Sepulvado* holding when it addressed a similar

claim in *Whitaker v. Collier*.[52] In response to the plaintiffs' assertion that they were unable to

access information about their method of execution and alleged that the Texas Department of

Criminal Justice had failed to disclose or had concealed information concerning the method of

execution, the Fifth Circuit stated:

> "We rejected the plaintiffs' Fourteenth Amendment due process claim in
> *Sepulvado*. Disclosing information about the execution protocol 'so they can
> challenge its conformity with the Eighth Amendment – does not substitute for the
> identification of a cognizable liberty interest.' The lack of a cognizable liberty
> interest is fatal to the due process claim."[53]

The Fifth Circuit went on to hold, "The failure to disclose information or include a notice

requirement in the protocol does not offend the Eighth Amendment. Perhaps the state's secrecy

masks 'a substantial risk of serious harm,' but it does not create one."[54] The court found "no

case, in the context of executions, in which the Supreme Court has found a liberty interest to

exist, based on the contours of the Eighth Amendment, that goes beyond what that Amendment

itself protects."[55] Here, given that Intervenors' due process claim mirrors that of Plaintiffs, it

likewise fails to demonstrate a cognizable liberty interest and cannot survive a motion to

dismiss.[56]

**B.     Intervenors Fail to State an Eighth or Fourteenth Amendment Claim.**

---

[49] Doc. 99, p. 7.
[50] *Id.*
[51] *See Loumar, Inc. v. Smith*, 698 F.2d 759, 762-63 (5th Cir. 1983).
[52] 862 F.3d 490 (5th Cir. 2017).
[53] *Id.* at 500 (emphasis added).
[54] *Id.*
[55] *Id.* (emphasis added).
[56] *Id.*

Intervenors' Complaints principally challenge Louisiana's method of execution based upon the Eighth Amendment. In *Baze v. Rees*, the United States Supreme Court determined that, because some risk of pain is inherent in even the most humane execution method, the Constitution does not demand the avoidance of all risk of pain.[57] To constitute cruel and unusual punishment, an execution method must present a "substantial" or "objectively intolerable" degree of serious harm.[58] That an execution method may result in pain—either by accident or as an inescapable consequence of death—does not establish the sort of "objectively intolerable risk of harm" that qualifies as cruel and unusual.[59]

Following the stay of this proceeding, this area of law has increased in clarity. For instance, *Glossip v. Gross* held the Chief Justice's plurality opinion in *Baze* to be controlling.[60] The *Glossip* Court noted, "*Baze* . . . addressed the substantive elements of an Eighth Amendment method-of-execution claim" and "made clear that the Eighth amendment requires a prisoner to plead and prove a known and available alternative."[61] In 2019, the Court in *Bucklew v. Precythe* clarified that, whenever "the question in dispute is whether the State's chosen method of execution cruelly superadds pain to the death sentence, a prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason."[62] This standard governs both facial and as-applied constitutional challenges.[63]

---

[57]  553 U.S. 35, 47 (2008).
[58] *Id*. at 35–36.
[59] *Id*. at 50.
[60]  576 U.S. 863, 876–77 (2015).
[61] *Id.* at 880.
[62] 139 S.Ct. 1112, 1125 (2019) (emphasis added).
[63] *Id.* at 1125 ("*Glossip* left no doubt that this standard governs 'all Eighth Amendment method-of-execution claims.'").

The Court also clarified that "The Eighth Amendment does not come into play unless the risk of pain associated with the State's method is 'substantial when compared to a known and available alternative.'"[64] "[D]etermining whether a punishment is unconstitutionally cruel because of the pain involved . . . *has always involved a comparison with available alternatives*, not some abstract exercise in categorical classification."[65] Thus, two elements must be present when bringing method-of-execution claims. First, the method of execution must present "a risk that is 'sure or very likely to cause serious illness and needless suffering,' *and* give rise to 'sufficiently imminent dangers.'"[66]

To prove a "substantial risk of serious harm" a plaintiff must show "an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'"[67] A plaintiff must also identify an "alternative procedure" that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain."[68] Courts are instructed to use these same elements when reviewing whether plaintiffs have sufficiently pleaded a method-of-execution claim to survive a Rule 12(b)(6) motion to dismiss."[69]

### 1. Intervenors fail to plead any alternative method of execution.

Regardless of this Court's determination of the first element of *Baze-Glossip*, Intervenors do not plead a viable method-of-execution challenge because their Complaints utterly fail to assert any factual allegations setting forth an *alternative* method of execution. This shortcoming is fatal to Intervenors' ability to state a plausible Eighth Amendment claim under Rule 12(b)(6).

---

[64] *Id.*
[65] *Id.*, at 1126–27 (emphasis added.)
[66] *Glossip*, 576 U.S. at 877 (emphasis added) (quoting *Baze*, 553 U.S. at 50).
[67] *Baze*, 553 U.S. at 50 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, 846, & n.9 (1994)).
[68] *Id.* at 52.
[69] *Whitaker*, 862 F.3d at 501.

The 2019 Intervenors are the only Intervenors to acknowledge the alternative-method-of-execution requirement. But instead of satisfying the requirement, they blame their failure to identify an alternative on Defendants. [70] As noted earlier, inmates are not entitled to details regarding the execution protocol.[71] Intervenors' purported inability to present a reasonable alternative is also dubious in light of their extensive criticism of the current protocol, their quasi-scientific critiques of the efficacy of various execution drugs, their allusions to statements and reports that have surfaced in recent years, and their anecdotal accounts of supposedly "botched" executions occurring in other States. Incredulously, they would have this Court believe that, despite their apparent knowledge and resources, they have no idea what viable alternative method of execution may be available. Intervenors also do not explain how Defendants' communications with drug suppliers, compounders, and/or manufacturers are necessary to their satisfying this essential element.

Significantly, Plaintiffs do not even concede the possibility that there *could* be a viable alternative to the current method of execution.[72] While Intervenors indicate discovery is necessary to identify an alternative method, they are "not entitled to discovery without a properly pleaded complaint."[73] As noted by the Supreme Court, "[w]e see little likelihood that an inmate facing a serious risk of pain will be unable to identify an available alternative – assuming, of course, that the inmate is more interested in avoiding unnecessary pain than in delaying his

---

[70] Doc. 253, ¶183 ("Due to the Defendants' continued failure to provide details regarding the execution protocol, and particularly in light of official statements and the Department's 2015 Report, full discovery on the specifics of any protocol promulgated or under development, including all communications with drug suppliers, compounders, and/or manufacturers, and all other methods and/or mechanisms considered, would be necessary in order to provide any alternative, constitutional protocol.")

[71] *See Sepulvado*, 729 F.3d at 419.

[72] Yet, even an allegation that lethal injection could otherwise be implemented constitutionally would still be insufficient. *See Zink v. Lombardi*, 783 F.3d 1089, 1106–07 (8th Cir. 2015) ("[A]llegation . . . that 'other methods of lethal injection the Department could choose would be constitutional' does not contain sufficient factual matter to state a claim to relief that is plausible on its face."); *see also Whitaker*, 862 F.3d at 499 ("The plaintiffs merely advance the notion that there are FDA-approved barbiturates that could be administered with appropriate safeguards [which] is little more than a concession that there are constitutional ways for TDCJ to carry out executions.")

[73] *Whitaker*, 862 F.3d at 502 (citing *Twombly*, 550 U.S. at 559).

execution." Accordingly, all of Intervenors' claims challenging Defendants' method of execution under the Eighth Amendment must be dismissed for failing to plead an alternative method of execution.

### 2.    Intervenors fail to sufficiently plead that the current method of execution poses a substantial risk of serious harm.

Intervenors' Complaints are replete with shallow criticism and deep conjecture concerning Louisiana's current protocol (even though it has yet to be implemented in the State). As noted above, the first element of *Baze-Glossip* requires Intervenors to plead sufficient facts demonstrating that the current method of execution presents a substantial risk of serious harm.[74] Intervenors have set forth various allegations ostensibly in support of the claim that their Eighth Amendment rights[75] have been violated; however, those allegations do not amount to a cognizable method-of-execution claim because they fail to show a substantial risk of serious harm.

Intervenors first complain that the current protocol "fails to include adequate safeguards and/or will be administered in a way that fails to adequately protect [Intervenors'] constitutional rights to be free from cruel and unusual punishment."[76] This statement is threadbare on supporting facts. For example, Intervenors complain that no licensed medical professional has examined the protocol to ensure that "there are adequate safeguards to protect the condemned inmates' constitutional rights against torture, pain, and suffering."[77]

*Under Whitaker*, plaintiffs must make "factual assertions that would allow the court reasonably to infer that the lack of these safeguards creates a 'substantial risk of serious

---

[74] *Glossip*, 576 U.S. at 876–77.

[75] To the extent that Intervenors interweave their Eighth Amendment allegations with purported violations of their Fourteenth Amendment rights, it should be noted that any due process claims have already been disposed of by the Fifth Circuit in *Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013) and in this Court's prior ruling, *see* Doc. 99, as discussed above.

[76] Doc. 253, p. 37 – Count II(a).

[77] Doc. 253, ¶126.

harm.'"[78] While Intervenors here make some factual assertions, they do not lead to a reasonable inference that the lack of safeguards creates a substantial risk of serious harm.

Intervenors' critique rides upon the unbridled assumption that *there may be* as-yet-unknown inadequate safeguards in the protocol, which is purebred speculation of an indeterminate risk of pain. As noted by the Fifth Circuit, "[t]he allegation that the risk of pain is *indeterminate* fails the requirements of a method-of-execution claim on its face."[79] As well, Intervenors' allegation suggests that medical personnel are necessary to determine whether inmates' "constitutional rights" are sufficiently safeguarded by the protocol; however, that is a legal determination beyond any field of medical expertise. Moreover, the Supreme Court has noted that compliance with any medical standard is unnecessary for an execution to satisfy the Eighth Amendment.[80]

Relatedly, Intervenors deride the protocol on the basis that no medical research or review was performed.[81] However, this also does not give rise to an inference that the current protocol is devoid of adequate safeguards to the point of creating a substantial risk of serious harm. Intervenors conveniently ignore the fact that the involvement of a medical doctor at the level demanded would potentially jeopardize the physician's ability to practice medicine.[82] "[A] State isn't required to modify its protocol in ways that would require the involvement of 'persons whose professional ethics rules or traditions impede their participation.'"[83] Thus, Intervenors' call for required medical input and oversight is actually intended as a barrier to prevent implementation of a protocol that could reasonably satisfy that standard.

---

[78] *Whitaker*, 862 F.3d at 500 (citing *Glossip*, 576 U.S. at 876–77).
[79] *Id.*
[80] *Glossip*, 576 U.S. at 886.
[81] Doc. 253, ¶127.
[82] "The American Board of Anesthesiologists . . . voted in 2011 to revoke the certification of members who conduct lethal injections, which would effectively prevent them from working at most hospitals." Corinna Barrett Lain, *The Virtues of Thinking Small*, 67 U. Miami L. Rev. 397, 407 (2013).
[83] *Bucklew*, 139 S. Ct. at 1125 (quoting Alito, J., concurring).

Intervenors suggest that the protocol is "not adequately specific" and "in a constant state of flux"—though they admit the protocol was last amended in March 2014[84]—causing them to conclude that "executions *may* be carried out in different manners each time," and that there are no safeguards to protect against these supposed "variances."[85] Not only are these criticisms insufficient to infer the creation of a substantial risk of serious harm, Intervenors couch their complaint as potentially violative of the Ex Post Facto Clause and Equal Protection Clause, not the Eighth Amendment.[86]

Intervenors do not set forth a cognizable claim that the protocol constitutes "a law that changes the punishment, and inflicts greater punishment, than the law annexed to [Intervenors'] crime[s] when committed."[87] "[P]risoners fail to state a plausible *ex post facto* claim because the punishment—death—has remained the same; only the mode of producing death has changed, and the prisoners have not alleged superadded punishment or superior alternatives."[88] Here, Intervenors fail to connect the dots of their contentions with any allegations of likely superadded punishment or superior alternatives.

Intervenors' equal protection claim, which is premised upon their contention of *potentially* differential treatment under the protocol, is still founded upon the underlying supposition that said variances will present a substantial risk of serious harm. The Fifth Circuit, in *Wood v. Collier*, evaluated a 'class of one' equal protection claim premised upon inmates' assertion that they were entitled to re-testing of an execution drug just as other condemned inmates had received before them.[89] The Fifth Circuit determined their equal protection

---

[84] Doc. 253, ¶65.
[85] *Id*. ¶133 (emphasis added).
[86] *Id*.
[87] *See Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 516 (1995).
[88] *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (internal citations omitted).
[89] *Wood v. Collier*, 836 F.3d 534 (5th Cir. 2016).

argument was "a novel and flawed invocation of the equal protection doctrine" which ultimately did not change the analysis of their claim under the Eighth Amendment.[90] "[U]nder *Glossip*, the prisoners must establish that not re-testing the drug presents a sure or very likely risk of pain," and their "effort to draw upon equal protection works no change in the reach of the Eighth Amendment."[91]

 As stated by the Fifth Circuit, "knead[ing]" equal protection jurisprudence cannot escape the "reality is that these prisoners have not demonstrated that a failure to retest brings the risk of unnecessary pain forbidden by the Eighth Amendment. Attempting to bridge this shortfall in their submission with equal protection language, while creative, brings an argument that is ultimately no more than word play." To their detriment, Intervenors do not aver that the alleged lack of specificity, safeguards, or the "state of flux" concerning the protocol creates a sure or very likely risk of pain in violation of the Eighth Amendment. Phrasing their claim as a denial of equal protection does not overcome that deficit.

 The Fifth Circuit also applied in *Wood* an exception derived from the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture*[92] that recognized that equal protection claims like the present one must also fail due to the governmental discretion applicable to executions: "'treating like individuals differently is an accepted consequence of the discretion granted,' and allowing equal protection claims on such grounds 'would be incompatible with the discretion inherent in the challenged action.'"[93] The court reasoned that it was "within the discretion inherent" to the State of Texas "to re-test in one case, in the context of an ever-

---

[90] *Id.*
[91] *Id.*
[92] 553 U.S. 591, 603 (2008).
[93] *Wood*, 836 F.3d at 541 (quoting *Engquist*, 553 U.S. at 604).

changing array of suits attacking its use of capital punishment from all angles."[94] The same rationale applies here where Intervenors allege only the possibility for vague differential treatment in Defendants' application of the protocol, nor do they contend that such different treatment would necessarily be worse for them.

Intervenors next contend that the execution drugs will be substituted "without creating procedures appropriate to the properties of the new drugs, such as how to flush the IV lines, the amount of the drug, or the timing of the administration of the drug."[95] Not only do Intervenors argue deficiencies that are mere hypotheticals, they do not explain what specific drug(s) will be substituted so that one might reasonably infer that the procedures, amounts, or timing of their administration is thus inappropriate. Once again, Intervenors do not allege that these supposed omissions by Defendants will create a sure or very likely risk of pain.

Intervenors next theorize that the protocol "will be administered in such a way that [it] fails to adequately safeguard [their] rights."[96] Intervenors neglect to identify which rights (if any) will be potentially violated without safeguards in place. Intervenors also state that the protocol lacks "adequate safeguards to protect [them] from cruel and unusual punishment."[97] This allegation is nearly identical to Count 3 raised by the plaintiffs in *Whitaker*, in response to which the Fifth Circuit aptly noted, "also fails to state a claim."[98] Moreover, this statement is just the sort of blatant legal conclusion that *Iqbal* observes must be disregarded.[99]

Intervenors also speculate upon alleged problems with the delivery, expiration date, storage, and efficacy of the execution drugs[100] as well as the inspection and maintenance

---

[94] *Id.*
[95] Doc. 253 ¶134.
[96] Doc. 253, ¶¶139, 141.
[97] *Id*. ¶140.
[98] *Whitaker*, 862 F.3d at 500.
[99] 556 U.S. at 678–79.
[100] Doc. 253, ¶¶142–44.

procedures of the medical equipment that is to be used for executions.[101] These scenarios are similarly founded upon rank speculation. In *Whitaker*, the Fifth Circuit saw no reason to split from the Eighth and Eleventh Circuits' holdings that pleading such hypothetical risks was insufficient to state a claim that a method of execution created a substantial risk of severe pain.[102] As noted by the Fifth Circuit, even the allegation that an execution drug's beyond-use-date (*i.e.*, expiration date) "raises grave concerns about potency, sterility, and stability of the pentobarbital, and thus the risk of severe pain to the inmate … is the type of 'speculation that the current protocol carries a substantial risk of severe pain' that is insufficient even at the motion-to-dismiss stage."[103] The same outcome should apply here.

Intervenors' speculations upon the adequacy of training for the execution team also fail to support an Eighth Amendment claim. Intervenors primarily criticize "Defendants Does" because they "are not medical professionals," they may not receive "adequate training," and may not be "familiar with the drugs they are administering."[104] Conveniently, Intervenors do not indicate the amount of training, qualifications, or level of familiarity with the execution drugs necessary to meet any constitutional minimum standard. They likewise fail to allege that these supposed deficiencies are likely to result in a substantial risk of serious harm. Intervenors' criticisms essentially present a list of desired 'best practices'; yet, the Supreme Court cautioned courts not to be "transform[ed] … into boards of inquiry charged with determining 'best practices' for executions."[105] Intervenors also allege violations of various provisions of the federal Controlled

---

[101] *Id.*, ¶¶145–46.
[102] *Whitaker*, 862 F.3d at 499.
[103] *Id.*
[104] Doc. 253, ¶¶147–149, 151, 154–157. (Paragraphs 150, 152, and 153 criticize the protocol for lack of physician involvement.)
[105] *Baze*, 553 U.S. at 51.

Substances Act;[106] however, there is no private right of action under federal law to enforce these alleged violations.[107]

C.    **Plaintiffs Fail to State a Claim Under the Louisiana Administrative Procedures Act.**

Intervenors complain that the State has violated due process by exempting the protocol from the Louisiana Administrative Procedures Act (LAPA).[108] Intervenors' LAPA claim fails for two reasons. First, it is time barred by the applicable statute of limitations. Second, to the extent a violation of a state procedural law can rise to the level of a federal due process violation, Intervenors fail to state a cognizable liberty interest.

First, the protocol's exemption from the LAPA is set forth in Louisiana Revised Statute 15:569(D),[109] which was enacted by the Louisiana Legislature pursuant to Acts 2010, No. 889, §1 and became effective August 15, 2010. A "complaint may be subject to dismissal if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling."[110] Accordingly, this claim (which does not challenge the current execution protocol) was viable long before the present interventions and also before the instant suit was filed on December 20, 2012. Therefore, this claim is time-barred because Intervenors did not raise it within one year of the date the protocol was exempted from the LAPA (*i.e.*, by August 15, 2011).[111]

Second, an inmate has no plausible liberty interest in an execution protocol being made subject to a state's statutory requirements for rule-making, nor do Intervenors identify one.

---

[106] Doc. 253, ¶15.

[107] *Zink*, 783 F.3d at 1113.

[108] Doc. 253, p. 37 – Count II(b).

[109] "The provisions of the Administrative Procedure Act, R.S. 49:950, et seq., shall not apply to the procedures and policies concerning the process for implementing a sentence of death." La. Rev. Stat. 15:569(D).

[110] *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011).

[111] "The statute of limitations for section 1983 is supplied by state law, so Louisiana's one year prescriptive period applies." *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 739 (5th Cir. 2017), *as revised* (Mar. 13, 2017).

Intervenors' challenge to the protocol's exemption from the LAPA on the basis that it somehow increases the chance the protocol may create a substantial risk of serious harm is only a speculative risk. It is also noteworthy that the Federal Bureau of Prisons' 2019 execution protocol and addendum were held exempt from the federal Administrative Procedure Act's requirements for notice-and-comment rulemaking.[112] Thus, Intervenors' contention fails to state a claim.

**D.     Intervenors Fail to State a Claim Based on Deviations from the Execution Protocol.**

Intervenors raise the supposition that Defendants will materially deviate from any written protocol, thereby violating both the Eighth Amendment and their rights to equal protection.[113] This contention is speculative and places Defendants in a position where they will violate Intervenors' rights no matter what—either by following a protocol alleged to be unconstitutional *or* by materially deviating from the very same 'unconstitutional' protocol.

**E.     Intervenors Fail to State a Claim Based on Potential Use of Compounded Execution Drugs.**

Intervenors suggest that Defendants will violate state and federal law by using compounded drugs for their executions, which Intervenors contend automatically "poses a substantial risk of cruelly superadded pain and/or lingering death."[114] They allege that "compounded drugs are not subject to FDA approval,"[115] that compounded drugs may be obtained "from an out-of-state pharmacy, in violation of state and federal law,"[116] that compounded drugs will be dispensed without a prescription or a legitimate medical purpose,[117]

---

[112] *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 112 (D.C. Cir. 2020), *cert. denied sub nom. Bourgeois v. Barr*, 141 S. Ct. 180 (2020).
[113] Doc. 253, p. 37 – Count II(c).
[114] *Id*. – Count II(d). (Only the 2019 Intervenors' Complaint contains the words "cruelly superadded.")
[115] *Id*. ¶32.
[116] *Id*. ¶81.
[117] *Id*. ¶82.

and that they also present risks of contamination and/or painful and ineffective injections due to less quality control.[118]

In *Whitaker*, the Fifth Circuit considered a method-of-execution challenge regarding *compounded* pentobarbital at the motion to dismiss stage and recognized that the Eighth and Eleventh Circuits had found similar complaints to be insufficient.[119] The Eighth Circuit, in *Zink v. Lombardi*, considered alleged complications from the use of compounded drugs (*i.e.*, potency irregularities, allergic reactions, foreign particles, and alleged burning due to improper pH) and held that those sorts of allegations were too hypothetical to survive a motion to dismiss.[120] The Eleventh Circuit, in *Grissender v. Commissioner, Georgia Department of Corrections*, determined that complaints alleging "pharmacies that produce compounded pentobarbital are subject to . . . laxer monitoring . . . and lower standards [such that] the drugs they produce will lack the 'identity, potency, and purity' that is ensured by FDA monitoring" are still insufficient to "establish a high level of likelihood that [the inmate] will suffer serious illness or needless suffering during her execution."[121] The Fifth Circuit has likewise determined such speculative claims are insufficient even at the motion-to-dismiss stage.[122] Intervenors' claims regarding compounded drugs are similarly speculative and do not satisfy the pleading standard to survive a motion to dismiss.

### F.    Intervenors Fail to State a Claim Based on Potential Combination of Execution Drugs.

---

[118] *Id*. ¶84.
[119] *Whitaker*, 862 F.3d at 498–99; *see Zink v. Lombardi*, 783 F.3d 1089 (8th Cir. 2015) (en banc) (per curiam); *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275 (11th Cir. 2015) (per curiam).
[120] *Zink*, 783 F.3d at 1100.
[121] 779 F.3d 1275, 1279, 1283 (11th Cir. 2015).
[122] *Whitaker*, 862 F.3d at 499.

Intervenors theorize that the drug combination used to execute them "will cause a substantial risk of cruelly superadded pain and/or lingering death."[123] As noted previously, there is no Eighth Amendment right unless the State's method of execution imposes a "substantial" risk of pain "when compared to a known and available alternative."[124] Once again, Intervenors do not bother to identify a known and available alternative.

The drugs presently identified under the current protocol are either a single dose of pentobarbital or a combination of midazolam and hydromorphone.[125] Intervenors criticize the use of pentobarbital for being (1) slow to take effect, (2) not commonly used for general anesthesia, (3) a poor substitute for sodium thiopental (which is not available for executions[126]), and (4) unsubstantiated by scientific evidence about its effect.[127] These criticisms are not persuasive given the pervasive use of pentobarbital for executions nationwide.

As recognized by the Supreme Court last year in *Barr v. Lee*, pentobarbital "[h]as been used to carry out over 100 executions, without incident[,] [h]as been repeatedly invoked by prisoners as a less painful and risky alternative to the lethal injection protocols of other jurisdictions, [w]as upheld by this Court last year, as applied to a prisoner with a unique medical condition that could only have increased any baseline risk of pain . . . , [and h]as been upheld by numerous Courts of Appeal against Eighth Amendment challenges."[128] Indeed, the Federal Government has even selected a single dose of pentobarbital for use in its executions.[129] Given the widely accepted use of pentobarbital and Intervenors' failure to allege a likelihood of serious risk of harm, they fail to assert a plausible Eighth Amendment violation.

---

[123] Doc. 253, p. 37 – Count II(e). (Only the 2019 Intervenors' Complaint contains the words "cruelly superadded".)
[124] *Bucklew*, 139 S. Ct. at 1125 (internal quotation marks omitted) (quoting *Glossip*, 576 U.S. at 878).
[125] Doc. 253, ¶59.
[126] *Id.* ¶39.
[127] *Id*, ¶¶78–80, 83.
[128] 140 S. Ct. 2590, 2591 (2020).
[129] *Id*.

Intervenors also criticize the protocol's selection of midazolam and hydromorphone.[130] Yet, as acknowledged by the Supreme Court, "numerous courts have concluded that the use of midazolam . . . is likely to render an inmate insensate to pain."[131] In *Glossip*, experts on both sides supported the conclusion that midazolam could render a person insensate to pain.[132] The court was also not persuaded by the contention that midazolam has a "ceiling effect" that may negate its ability to render an inmate insensate.[133] Intervenors' allegations of possible "paradoxical reactions" from midazolam and hydromorphone are unintended side effects that do not amount to an Eighth Amendment violation.[134] Intervenors point to two prior executions utilizing midazolam and hydromorphone: Dennis McGuire in Ohio[135] and Joseph Wood in Arizona[136]; however, their unabashed conclusion that those inmates experienced pain does not meet the constitutional standard for alleging a cognizable Eighth Amendment violation. Anecdotal accounts by non-medical observers in Intervenors' Complaint also do not demonstrate a likelihood of a substantial risk of serious pain.

The 2019 Intervenors, on the other hand, suggest that seized fentanyl may be used for executions.[137] Those allegations lack any factual support. The current protocol does not authorize fentanyl, and Intervenors rely on statements not made by Defendants to suggest fentanyl's potential use.[138]

**G.    Intervenors Fail to State a Claim Based on Substitutions of Lethal Injection Drugs Without Promulgating a New Execution Protocol.**

---

[130] *See* Doc. 253, ¶¶88–113.
[131] *Glossip*, 576 U.S. at 881.
[132] *Id.* at 884.
[133] *Id.*
[134] *Id*. at 883
[135] Doc. 253, ¶¶101 and 104.
[136] *Id*. ¶106.
[137] *Id*. ¶¶114-125.
[138] *Id.* ¶¶77.

Intervenors complain that the substitution of drugs without creating a new protocol to address the difference between the new drugs and the old drugs violates their rights under the Eighth and Fourteenth Amendments.[139] Intervenors have failed to state a cognizable Eighth Amendment claim because they have not alleged that the new drugs will present a risk of pain that is substantial by comparison.[140] Intervenors' mere speculation that other, unknown drugs might be used falls far short of the "known and available" standard. Also, Intervenors' claim does not allege that the substitution of unidentified drugs without promulgating a new protocol will create a substantial risk of severe harm

Intervenors next suppose that the substitution of new drugs without promulgating a new protocol will violate the Ex Post Facto Clause.[141] However, this contention merely presumes there would be an increase in the severity of the punishment. As discussed previously, the Ex Post Facto Clause is not violated where only the mode of producing death has changed and there is no allegation of superadded punishment or superior alternatives.[142] Moreover, the Supreme Court determined many years ago that "[t]he constitutional inhibition of *ex post facto* laws was intended to secure substantial personal rights against arbitrary and oppressive legislative action, and *not to obstruct mere alteration in conditions deemed necessary for the orderly infliction of humane punishment.*"[143] Intervenors' allegations do not set forth an *ex post facto* claim.

### H.    Intervenors Fail to State a Claim that the Execution Protocol Denies Them Access to the Courts and Counsel Under the First, Sixth, or Fourteenth Amendments.

Intervenors contend that "[t]he Protocol expressly excludes the condemned inmate's attorney from the execution chamber, preventing attorney access and observation during the

---

[139] *Id.*, p. 38 – Count III(a).
[140] *See Bucklew*, 139 S.Ct. at 1125 (emphasis added) (quoting *Glossip*, 576 U.S. at 878).
[141] Doc. 253, p. 38 – Count III(b).
[142] *Zink*, 783 F.3d at 1108. (Internal citations omitted.)
[143] *Malloy v. South Carolina,* 237 U.S. 180, 183 (1915) (emphasis added).

execution, and preventing access to courts."[144] Similar claims were previously rejected by the Fifth Circuit in *Whitaker*.[145] The Fifth Circuit noted that "[t]he Sixth Amendment right to counsel only 'extends to the first appeal of right, and no further.'"[146]

As well, Intervenors have "not satisfied the pleading requirements of a method-of-execution claim because [they have] not identified a 'substantial risk of serious harm' from the lack of access."[147] They merely contend that counsel is necessary "to ensure that the execution protocol is carried out as directed,"[148] "to confirm that the condemned inmate did not suffer cruelly superadded pain and suffering while conscious,"[149] and "to seek an emergency stay of execution should something go wrong."[150] Intervenors' allegations present mere conjecture as to contingencies associated with the lethal injection that may never occur. Intervenors also do not explain how the need for attorney oversight will result in a substantial risk of serious harm. Thus, their claim falls short of satisfying "the strict substantive requirements for a method-of-execution claim."[151]

"[B]ecause [Intervenors have] not succeeded in pleading an underlying claim, [their] access-to-the-courts assertion fails as well."[152] They offer descriptions of botched executions in other States but make no such allegations about past executions in Louisiana. In any event, the

---

[144] Doc. 253, p. 38 – Count IV.

[145] However, the plaintiffs in *Whitaker* had raised their claims under the First, Sixth, and Eighth Amendments.

[146] *Id.* (quoting *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).

[147] *Whitaker*, 862 F.3d at 501 (quotation marks and citations omitted) (quoting *Glossip*, 135 S. Ct. at 2737).

[148] Doc. 253, ¶167.

[149] *Id.* ¶168. (It should be noted that the words "cruelly superadded" were inserted in this particular allegation for Doc. 253 but are not included in the prior Intervenors' Complaints; however, this does not change the result that this allegation still falls short of the pleadings standard.)

[150] *Id.* ¶169.

[151] *Id.*

[152] *Id.*

Fifth Circuit has found botched executions to be "[just the kind of 'isolated mishap' that is not cognizable via a method-of-execution claim."[153] This claim fails under Rule 12(b)(6).

## I.    Intervenors Fail to State a Claim that the Execution Protocol Excludes Public Access to Executions Under the First, Eighth, or Fourteenth Amendment.

Intervenors do not have standing to raise a potential First Amendment violation relating to the public's access to view executions.[154] While other courts have recognized a public right of access to executions,[155] neither the Supreme Court nor the Fifth Circuit has adopted this position. Furthermore, in *Holden v. Minnesota*, the Supreme Court determined that excluding the public and the press from executions does not affect an inmate's substantial rights.[156]

## J.    Damages are Barred by the Eleventh Amendment and Qualified Immunity.

Though Intervenors seek damages against Defendants, "neither a state nor its officials acting in their official capacities are 'persons' under § 1983."[157] Thus, Intervenors' damages claims against Defendants in their official capacities are barred under the Eleventh Amendment.

And Intervenors' individual-capacity damages claims are barred by qualified immunity. Though Intervenors do not plainly state which alleged acts or omissions caused their professed damages, it appears their damages claims are essentially the same as their Eighth Amendment claims, *i.e.*, that they will suffer a potential future injury in the form of superadded pain. While a

---

[153] *Whitaker*, 862 F.3d at 501 (relying on *Baze*, 553 U.S. at 50).

[154] "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Sec'y of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 955 (1984). Here, Intervenors claim that the *public's* purported right to public access has been violated, not their own rights ("The Protocol expressly exclude the public from witnessing executions, in violation of the right to public access to government action.").

[155] *See Calif. First Am. Coalition v. Woodford*, 299 F.3d 868, 877 (9th Cir. 2002) (holding that the public has a right of access to executions under *Richmond Newspapers v. Virginia*, 448 U.S. 555,  (1980), which recognized a right of access to certain criminal proceedings).

[156] 137 U.S. 483, 491 (1890).

[157] *Walters v. Livingston*, 642 F. App'x 416, 419 (5th Cir. 2016), quoting *Will v. Mich.Dep't of State Police*, 491 U.S. 58, 71 (1989).

future injury is actional under the Eighth Amendment,[158] the Fifth Circuit has applied qualified immunity analysis to future harms.[159] "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"[160] "[E]xisting precedent must have placed the statutory or constitutional question beyond debate."[161]

Intervenors have failed to allege a violation of a clearly established constitutional or statutory right because they have failed to plead an alternative method of execution [162] And the damages they seek for those alleged constitutional violations fail to meet the physical injury requirement of 42 U.S.C. §1997e(e). Therefore, Defendants are entitled to qualified immunity for the individual-capacity damages claims.

## CONCLUSION

For the reasons above, the Court should dismiss this case for lack of subject matter jurisdiction or, in the alternative, dismiss the Complaints of Intervenors Todd Kelvin Wessinger, Daniel Irish, Shedran Williams, Daniel Joseph Blank, Jarrell Neal, James Tyler, Anthony Bell, Jason Reeves, Willie Tart, Allen Robertson, Dustin Dressner, and Henri Broadway for failure to state a claim.

Respectfully Submitted,

  /s/ Jeffrey K. Cody
Jeffrey K. Cody (La. Bar # 28536)
jeffreyc@scwllp.com

---

[158] *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that a prison official's deliberate indifference to the potential future health risks of exposure to environmental tobacco smoke could constitute a claim under the Eighth Amendment).
[159] *See Johnson v. Epps*, 479 F. App'x 583, 591 (5th Cir. 2012).
[160] *Stauffer v. Gearhart*, 741 F.3d 574, 583–84 (5th Cir. 2014) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011)).
[161] *Id*.
[162] *Bucklew*, 139 S.Ct. at 1125.

**SHOWS, CALI & WALSH, L.L.P.**
628 St. Louis Street (70802)
P.O. Drawer (4425
Baton Rouge, Louisiana 70821
Telephone:(225) 346-1461
Facsimile: (225) 346-1467

Elizabeth Murrill (La. Bar Roll No. 20685)
*Solicitor General*
Louisiana Department of Justice
1885 North 3rd Street
P.O. Box 94005
Baton Rouge, Louisiana 70804-9005
Telephone: (225) 326-6200
Facsimile: (225) 326-6297
Email: MurrillE@ag.louisiana.gov

Jonathan Vining (La. Bar Roll No. 30781)
*General Counsel*
Louisiana Department of Public Safety &
Corrections
Legal Affairs
504 Mayflower Street (70802)
P.O. Box 94304
Baton Rouge, Louisiana 70804
Telephone: (225) 342-6728
Facsimile: (225) 342-3278
Email: JVining@corrections.state.la.us

**Counsel for Defendants**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **August 12, 2021**, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and notice will be sent to all counsel for Plaintiffs by operation of the court's electronic filing system.

___/s/ Jeffrey K. Cody___
JEFFREY K. CODY