**STATE OF LOUISIANA**

**PARISH OF EAST BATON ROUGE**

**BEFORE ME**, the undersigned Notary Public qualified in the aforesaid state and parish, personally came and appeared:

**JAMES M. LeBLANC**

who, after being duly sworn by me, did depose and state:

1. I have been employed by the Louisiana Department of Public Safety and Corrections ("DPSC") since 1973. I have been Secretary of DPSC ("Secretary") from January, 2008 through the present time. I served as Acting Chief of Operations for the Department for a period prior to that and as Warden of Dixon Correctional Institute for the preceding twelve (12) years. I have served in various capacities, including Undersecretary (1992 – 1995) as well as interim Director of Probation and Parole (1998 – 1999). I received a B.A. in Business Administration from Southeastern Louisiana University in December, 1972, with minors in Marketing and Accounting.

2. In 1991, the state of Louisiana ("State") changed its method of execution by electrocution for capital offenders. The state legislature enacted legislation, La. R.S. 15:567, *et seq.*, to ensure a more humane method for carrying out executions pursuant to a death warrant. That method requires the injection of a substance in a lethal quantity sufficient to cause death.

3. As Secretary I am required by Louisiana law to implement the execution protocol and carry out executions pursuant to death warrants. Louisiana law places the selection of the execution protocol in the discretion of me or my designee, and that includes the selection of the drugs that are to be used in executions.

4. The last time an inmate was executed in Louisiana was the execution of Gerald Bordelon on January 7, 2010. The protocol then required that executions be carried out using a drug combination that included sodium thiopental, pancuronium bromide, and potassium chloride. Following that execution, DPSC began to experience problems in obtaining these drugs, in particular the sodium thiopental. This lack of access was due to a refusal by pharmaceutical manufacturers and suppliers to provide drugs to correctional facilities that were to be used for lethal injection.

5. At the end of 2010, DPSC no longer held any stock of sodium thiopental, which is the drug that renders the condemned inmate insensate to the other drugs. The protocol was subsequently revised to replace sodium thiopental with a dose of pentobarbital, which other states had also begun utilizing due to the shortage of the former drug. At that time DPSC had access to pentobarbital.

6. For the last several years DPSC has had extreme difficulty in obtaining drugs that could be used for executions. By early 2013, DPSC no longer had a stock of, nor access to, the other drugs in the lethal injection sequence - pancuronium bromide and potassium chloride. The protocol was later revised to provide for a single dose of 5g pentobarbital, which has since become the most widely-used method of execution in the country and was adopted by the Federal Bureau of Prisons in 2019.

7. DPSC's stock of pentobarbital expired in the fall of 2013 before it could ever be utilized for any executions.

8. In December 2013, a death warrant was issued for the execution of Christopher Sepulvado, one of the Plaintiffs in this lawsuit, which was scheduled to occur on February 5, 2014. Because DPSC was unable to procure any pentobarbital in

time for the scheduled execution, DPSC was forced to look at alternative options involving available execution drugs.

9. On January 15, 2014, Ohio successfully utilized a drug combination of midazolam and hydromorphone in the execution of Dennis McGuire. DPSC already had a stock of midazolam available and was able to procure hydromorphone. On January 27, 2014, DPSC's protocol was revised to include the option of a drug combination of midazolam and hydromorphone. The current protocol was last revised on March 13, 2014, and continues to provide for a single dose of pentobarbital or, if that drug is not available, a combination of midazolam and hydromorphone.

10. The current protocol has yet to be implemented for any execution in Louisiana. Meanwhile, DPSC's stock of hydromorphone and midazolam that were to be utilized under the current protocol in 2014 has since expired.

11. To this date, DPSC remains unable to procure either pentobarbital or hydromorphone.

12. DPSC has received multiple correspondence from pharmaceutical companies prohibiting the use of their products for lethal injection. In 2018, DPSC executed a certification to Pfizer and its wholesaler (Morris & Dickson) in order to access potential execution drugs solely for the medical care needs of its inmate population. The drugs DPSC obtains from these companies are necessary to the provision of health care for its inmate population, and without this certification, DPSC would not be able to access these drugs; therefore, it cannot risk violating the certification. While DPSC has been able to acquire midazolam, it is strictly for use in medical procedures such as colonoscopies.

13. DPSC, acting through its Chief of Operations, Seth Smith, and/or one of its head pharmacists, previously contacted pharmaceutical manufacturers and/or suppliers seeking to procure drugs for use in executions; however, those efforts were not fruitful.

14. This problem is not limited solely to Louisiana but is experienced by other states that still permit capital punishment. It has been widely reported by the news media that various pharmaceutical companies have barred the use of their drugs for executions or refused, under pressure from death-penalty opponents, to sell or manufacture drugs for use in executions.

15. Part of the reason for pharmaceutical companies' reluctance to sell or manufacture drugs for use in executions is due to the fact their identities will not be protected but are regularly disclosed in the course of litigation. That information is subsequently leaked to anti-death-penalty advocates, subjecting the companies to harassment, intimidation, and/or harm.

16. Many courts have not deemed the identities of pharmaceutical companies worthy of protection from disclosure despite the assured hostility that awaits them. In 2014 this Court ordered in this very litigation the disclosure of the identity of a compounding pharmacy that had been in discussions with DPSC concerning a potential supply of pentobarbital. Once that information became public, the pharmacy refused to do any business with Louisiana. Compounding pharmacies have become the standard source of supply for lethal injection drugs in states like Texas where their identities have routinely been protected from disclosure.

17. Contrary to the allegations made in the Intervenors' Complaint (Doc. 253, ¶ 77), DPSC is not in possession of and has no plans to use seized fentanyl for lethal injection.

18. In light of the circumstances outlined above, DPSC is presently unable to procure any drugs that could be used for lethal injection and will not be able to do so in the foreseeable future. Should a death warrant be issued in the future, DPSC will not be able to carry out the order for lack of access to lethal injection drugs.

19. There are currently no death warrants in effect against any of the Plaintiffs in this matter.

20. This affidavit is based upon my personal knowledge, information, and belief.

Further, affiant sayeth not.

_____
JAMES M. LeBLANC

**SWORN TO AND SUBSCRIBED** before me, this __6__ day of __December__, 2021.

_____
NOTARY PUBLIC
NAME:
NOTARY/BAR ROLL NUMBER:
MY COMMISSION EXPIRES:

JONATHAN R. VINING
NOTARY PUBLIC
State of Louisiana
LA Bar #30781
My Commission Expires at Death