UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JESSIE HOFFMAN, ET AL. | CIVIL ACTION |
| VERSUS | 12-796-SDD-EWD |
| BOBBY JINDAL, GOVERNOR<br>OF LOUISIANA, ET AL. | |

**RULING**

Before the Court is Christopher Sepulvado's ("Plaintiff") *Motion for a Stay of Execution, a Temporary Restraining Order, a Preliminary Injunction and an Order Under the All Writs Act Staying Execution*.[1] The motion was filed on January 27, 2014. At the time, Christopher Sepulvado had an outstanding death warrant from Desoto Parish with an execution date of February 5, 2014.[2] The parties consented to a stay of execution through a series of orders which extended from February 3, 2014 to July 16, 2018.[3] On August 1, 2019, the Court extended the stay until pending motions to intervene were addressed.[4] On June 8, 2021, the Court denied the motions to intervene and lifted the stay.[5] For the reasons explained herein, Plaintiff's motion is DENIED WITHOUT PREJUDICE AS MOOT.

Plaintiff's original *Memorandum in Support* argued, *inter alia,* a violation of his Eighth Amendment rights because Defendants intended to use compounded

---

[1] R. Doc. 105, 109, 111.
[2] R. Doc. 97, 98.
[3] R. Doc. 119, 144, 149, 155, 178, 184, 188, 197, 277, 227.
[4] R. Doc. 236.
[5] R. Doc. 254, 256.

pentobarbital to carry out his execution and a violation of his Equal Protection rights due to deficiencies and non-compliance with execution protocol. Eight days before he was scheduled to be executed, Plaintiff submitted a *Supplemental Memorandum in Support*,[6] stating he had been advised Defendants changed the protocol and intended to execute him using 10mg of midazolam and 40mg of hydromorphone. Plaintiff again asserted an Eighth Amendment violation, pointing to the execution of Dennis McGuire in Ohio, which used the same drug combination and resulted in witness accounts of prolonged suffering prior to death. On January 30, 2014, Plaintiff filed a *Second Supplemental Memorandum in Support*,[7] advising the Court Defendants informed him they were "not prepared to identify his method of execution."

As discussed above, Plaintiff's execution was not carried out due to consent stay orders. After the stay was lifted, the parties filed a *Joint Status Report* on August 5, 2021,[8] which included the following statement from Defendants:

> Defendants presently have no drugs available for lethal injection nor do they have the ability to procure drugs in the foreseeable future. Therefore, they would not have the ability to execute Plaintiffs even should a death warrant be issued in the foreseeable future. Accordingly, as Defendants do not have the ability to implement an execution, Plaintiffs have no standing in this matter.

Also, Defendants filed a *Motion to Dismiss* on August 12, 2021,[9] making the following argument:

> None of the Plaintiffs in this matter has standing to challenge Louisiana's current method of execution (including DPSC's protocol) because none of them is presently threatened with any certainly impending injury that can be redressed by a decision of this Court. Parties not before the Court refuse to make available to Louisiana the lethal injection drugs authorized by DPSC's

---

[6] R. Doc. 109.
[7] R. Doc. 111.
[8] R. Doc. 261.
[9] R. Doc. 263.

current protocol. All of DPSC's recent attempts to obtain lethal injection drugs have failed. DPSC has no ability to obtain the lethal injection drugs authorized by DPSC's current protocol nor any other potential lethal injection drugs in the foreseeable future. Therefore, should a death warrant ever be issued for any Plaintiff, DPSC would not be able to carry it out.

Defendants' motion included an affidavit from the Secretary of Department of Corrections, James LeBlanc, who explained DPSC has not been able to procure pentobarbital or hydromorphone since its last stock expired. LeBlanc explained the difficulties DPSC has experienced in obtaining the necessary drugs:

> While DPSC has been able to acquire midazolam, it is strictly for use in medical procedures such as colonoscopies, as DPSC regularly receives letters from the pharmaceutical manufacturers and suppliers its contracts with that should it ever be determined that any drugs purchased through them are utilized for lethal injection, they will no longer sell *any drugs* to DPSC. The drugs DPSC obtains from these companies are necessary to the provision of health care for its inmate population; therefore, it cannot risk jeopardizing access to these drugs.[10]

LeBlanc further attests there are no current death warrants in effect against any of the Plaintiffs to this suit.[11]

"The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy."[12] "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."[13] "[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'"[14]

> To be cognizable in a federal court, a suit must be definite and concrete, touching the legal relations of parties having

---

[10] R. Doc. 263-2. Affidavit of Seth Henry Smith, Jr., also attached to Defendants' *Motion to Dismiss* (R. Doc. 263-3) attests that drug manufacturers and suppliers refuse to supply the drugs without the promise of confidentiality.
[11] R. Doc. 263-2, ¶ 19.
[12] *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975).
[13] *Id.*
[14] *Id.* (quoting *North Carolina v. Rice,* 404 U.S. 244, 246, (1971) (per curiam)).

3

>adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.[15]

The current circumstances reveal no controversy of sufficient immediacy and reliability to warrant relief. In challenging Louisiana's lethal-injection protocol and asking for a stay of his execution, Plaintiff asserts Defendants violate his Eighth Amendment and Equal Protection rights, through the means in which the drugs are obtained, the combination of drugs, and the way the drugs are administered. The circumstances have changed considerably since Plaintiff filed his motion on January 27, 2014. A death warrant is no longer imminent, and the Secretary of the Department of Corrections has informed the Court that no death warrants have been issued for any of the Plaintiffs to this suit. Based on Secretary LeBlanc's affidavit, DPSC has no identifiable means to obtain lethal injection drugs and it appears unlikely DPSC will be able to obtain the drugs for the foreseeable future.

The lack of a pending death warrant, coupled with the barriers and uncertainty facing Louisiana's lethal-injection protocol deprive Plaintiff's motion of the immediacy and the reality required to establish "a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law."[16] Plaintiff's motion is moot.

---

[15] *North Carolina v. Rice,* 404 U.S. 244, 246, (1971) (quoting  (1937) (internal marks omitted)).
[16] *Hall v. Beals*, 396 U.S. 45, 48 (1969).

Accordingly,

Plaintiff's *Motion for a Stay of Execution, a Temporary Restraining Order, a Preliminary Injunction and an Order Under the All Writs Act Staying Execution* (R. Doc. 105) is **DENIED WITHOUT PREJUDICE AS MOOT**.

Signed in Baton Rouge, Louisiana the 20th day of September, 2021.

*Shelly D. Dick*
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**