# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JESSIE HOFFMAN, et al.<br><br>Plaintiffs,<br><br>v.<br><br>BOBBY JINDAL, et al.<br><br>Defendants. | Civil Action No. 12-796-SDD-EWD |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF
### MOTION FOR RELIEF FROM JUDGMENT
### PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(6)

Pursuant to Federal Rule of Civil Procedure 60(b)(6), Plaintiffs Anthony Bell, Daniel Blank, Henry Broadway, Nathaniel Code, Jessie Hoffman, Danny Irish, Jason Reeves, Willie Tart, James Tyler, and Todd Wessinger (collectively, "Plaintiffs") respectfully move this Court for an order setting aside the judgment entered in this action.[1] As explained in the Court's March 30, 2022 Ruling, the Court determined at that time that there was "no live controversy" between the parties and that, accordingly, "the Court lacks subject-matter jurisdiction." *Hoffman v. Jindal*, No. 12-796, 2022 U.S. Dist. LEXIS 58565, at *32-33 (M.D. La. March 30, 2022) (Rec. Doc. 312). The Court thus granted Defendants' Motion to Dismiss, but dismissed Plaintiffs' claims "without prejudice." *Id.* at 23. As discussed below, there has since been a material and extraordinary change of circumstances that gives rise to a live controversy between the parties. Setting aside the prior order and Judgment and returning this case to the Court's active docket is therefore warranted under Fed. R. Civ. P. 60(b)(6).

---

[1] Plaintiffs Bobby Hampton, Allen Robertson, and Chris Sepulvado do not join in this motion, and, we understand, if the motion is granted, will seek to be dismissed from this action.

1

I.  **BACKGROUND**

Plaintiffs are each incarcerated under a sentence of death at the Louisiana State Penitentiary, in Angola, Louisiana.

In 2012, Plaintiff Jessie Hoffman brought an action pursuant to 42 U.S.C. § 1983 for violations and threatened violations of his rights under the First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. *See* Second Am. Compl. dated February 3, 2014 (Rec. Doc. 118). The other Plaintiffs intervened into the action commenced by Mr. Hoffman. (*See* Rec. Docs. 120 (Code), 201 (Wessinger, Irish), 210 (Blank), 222 (Tyler), and 252 (Reeves, Bell, Tart, Broadway).)

At the time of filing, Louisiana law provided that "[e]very sentence of death executed on or after September 15, 1991, shall be by lethal injection; that is, by the intravenous injection of a substance or substances in a lethal quantity into the body of a person convicted until such person is dead." La. R.S. § 15:569(B) (West 2024 (effect. 8/15/2015)). Based on the execution protocol ultimately disclosed[2] by the State, Mr. Hoffman argued, among other things, that he was at a substantial risk of suffering a lingering or unnecessarily painful death due to the nature of the lethal injection drugs to be used in executions, and that the execution protocol did not adequately protect him from cruel and unusual punishment due to the insufficient training, expertise, and supervision of those involved in the administration of the lethal drug. *Id.* at 1-2.

On August 12, 2021, Defendants filed a Motion to Dismiss contending that the Department of Corrections ("DOC") "ha[d] no ability to obtain the lethal injection drugs authorized by [the DOC's] current protocol nor any other potential lethal injection drugs in the foreseeable future." Rec. Doc. 263-1, at 4. In support of that contention, Defendants submitted the affidavits of

---

[2] Mr. Hoffman's original Complaint was filed after the DOC denied access to its execution protocol, and contained allegations that, *inter alia*, lack of notice as to how he would be executed violated due process. Rec. Doc. 1, at 10.

Secretary James LeBlanc and Seth Smith, Chief of Operations of the DOC. Rec. Docs. 263-2, & 263-3.

Plaintiffs filed a Motion for Jurisdictional Discovery, on September 20, 2021, arguing that they had no means of determining whether the representations in the affidavits submitted by the Defendants were true. Rec. Docs. 270 & 270-1. Over Defendants' objection, the Court granted limited jurisdictional discovery.

After that discovery was completed, Defendants submitted "substituted" affidavits from Secretary LeBlanc and Mr. Smith to provide "clarifications/corrections" that, the Court noted, "better explained the nuances of the DOC's inability to obtain the lethal injection drugs in more detail than the original affidavits." Rec. Doc. 312, at 8.

Significantly, Defendants argued that the State's inability to obtain lethal injection drugs was due at least in part to the fact that the State could not hide the identity of those who supplied the drugs. As explained by Mr. Smith, "[l]ethal injection drugs, especially pentobarbital, have been difficult to obtain without a promise of confidentiality and/or a non-disclosure agreement." Rec. Doc. 309-2, at ¶ 6; *see also* LeBlanc Aff'd., Rec. Doc. 309-1, at ¶¶ 15-16). Mr. Smith confirmed the State's position in his depositions in this action:

> "I reached out to every compounding pharmacy that I could get the phone number to within the State of Louisiana. I reached out to a few in Mississippi. I reached out to regular pharmacies in both states. Now, everyone I spoke with that was willing to even pursue this -- I say everyone, the vast majority were very much on, you know, we have to keep this tight lipped. We want privacy." Smith 2014 Dep., at 23, ll. 10-19 (excerpt attached as Ex. 1, at 004).

3

> "I don't care how we get it; if we use it, is the issue. If that wasn't the issue, we -- there's always a way to obtain something. But with our public disclosure laws, we are going to have to release how we got it." Smith 2021 Dep. at 42, ll. 21-25 (excerpt attached as Ex. 2, at 004).

*See also* Defendants' Reply Br. in Supp. of Mot. to Dismiss (Rec. Doc. 309, at 7) ("As shown by the history of this very litigation, [DOC] cannot guarantee that the source of lethal injection drugs will be maintained confidential. Thus, Defendants would be forced to disclose the source of execution drugs despite whatever agreements as to confidentiality may be in force for the benefit of other states.").

Addressing Defendants' Motion to Dismiss, the Court summarized the relevant evidence, "setting the record straight," and held that the "uncontroverted testimony in this matter has established that Louisiana is unable to obtain execution drugs from compounding pharmacies or FDA-approved pharmaceutical companies." Rec. Doc. 312, at 10, 19. "Given the Defendants' virtual inability to obtain lethal injection drugs," the Court further explained, "Plaintiffs cannot demonstrate a reasonable expectation that Defendants will resume executing prisoners without significant and substantial changes to the execution protocol or the law." *Id.* at 21.

In reaching that decision, the Court rejected Plaintiffs' argument that "the protocol can change at any moment," and that "their challenges are not limited to just the three drugs that are currently authorized under the protocol." *Id.* at 19. The Court found that argument unavailing because "[t]he only legal method of execution in the State of Louisiana is lethal injection," and that, "[w]hile the Secretary of the [DOC] is tasked with carrying out a death warrant," he "may only 'cause the execution of the condemned *as provided by law.*'" Rec. Doc., at 19 (emphasis in original). On that point, the Court specifically noted the testimony of Secretary LeBlanc "that the way to move forward with executions in Louisiana is legislatively," but that, "legislative efforts to change the means of execution have failed." *Id.* at 11.

4

Because of the unavailability of lethal injection drugs, the Court determined that "Defendants are no longer engaging in the behavior the Plaintiffs have deemed unconstitutional in their lawsuit allegations," and, "[t]here being no live controversy," the Court determined that it "lacks subject-matter jurisdiction" and granted Defendants' motion, dismissing Plaintiffs' claims "without prejudice." Rec. Doc. 312, at 22-23. Of particular relevance here, the Court also noted that, "[i]ndeed, if a live controversy re-emerges [through legislation or revisions to the execution protocol], Plaintiffs may employ the same procedural mechanisms they have previously used to seek the relief they desire." *Id.* at 21.

Plaintiffs filed a Motion for Reconsideration (Rec. Doc. 315) which was denied by the Court. Rec. Doc. 317. In that Ruling, the Court addressed Plaintiff's argument that reconsideration was warranted by a recent press release from then Attorney General Jeff Landry, in which he contended that it was the Plaintiffs' lawsuit that was "preventing executions and not the state's inability to procure the drugs." *Id.* at 4. The Court found that the Attorney General's opinion to the media did not amount to "new evidence." The Court went further, however, noting that "[i]f Attorney General Landry is somehow successful in the future at accomplishing that which has yet to be accomplished by the legislature – an alternative means of execution in Louisiana, Plaintiffs and Defendants will have an entirely different execution protocol over which to litigate." *Id.*

Only very recently, what the Court noted the legislature had previously been unable to accomplish – alternative means of execution – came about. On March 5, 2024, at the urging of now Governor Landry, the Louisiana Legislature passed Act 5 of the Second Extraordinary Session of 2024, amending La. R.S. § 15:569-70 to add two new methods of execution in addition to lethal injection – nitrogen gas and electrocution – effective July 1, 2024:

5

> At the discretion of the secretary of the Department of Public Safety and Corrections and with no preference to the method of execution, every sentence of death shall be by one of the following methods:
>
> **(1)** Intravenous injection of a substance or substances in a lethal quantity into the body.
>
> **(2)** Nitrogen hypoxia.
>
> **(3)** Electrocution, causing to pass through the body of the person convicted a current of electricity of sufficient intensity to cause death, and the application and continuance of such current through the body of the person convicted until such person is dead.

La. R.S. § 15:569 (West 2024 (effect. 7/1/24)).

Moreover, Act 5 seeks to overcome one of the major hurdles in obtaining lethal injection drugs previously advanced by the State by imposing new and extreme secrecy provisions. These provisions, the State hopes, will open up new sources of such drugs by keeping the Plaintiffs, the Court, and the public entirely in the dark. Indeed, as the author of the secrecy provision, Representative Muscarello, explained during a February 21, 2024 meeting of the House and Government Affairs Committee, "Let me be clear, we haven't performed an execution in close to 20 years, my appreciation. The reason we are not doing that is because we don't have this [secrecy] law." Louisiana House of Rep. Archived Video, House & Gov, Feb. 21, 2024 HCR-3, at 0:55:13-0:55:22, https://house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2024/feb/0221_24_HG (last visited June 7, 2024).

Specifically, the amended law "ensure[s] **absolute confidentiality** of the identifying information of **any person, business, organization, or other entity directly or indirectly involved in the execution of a death sentence within this state**. This confidentiality provision shall prevail over any conflicting provision in state law related to public disclosure." La. R.S. § 15:570(G) (West 2024) (emphasis added). The new law hides, *inter alia*:

6

> [t]he identity of any person who participates in or performs ancillary functions in the execution process, including a person or business that delivers, dispenses, distributes, supplies, manufactures, or compounds the drugs, equivalent drug products, pharmacy-generated drugs, device drugs, medical supplies, medical equipment, or other supplies or materials intended for use by the Department of Public Safety and Corrections in the administration of an execution . . .

and

> information or records of any person or business that delivers, dispenses, distributes, supplies, manufactures, or compounds the drugs, equivalent drug products, pharmacy-generated drugs, device drugs, medical supplies, medical equipment, or other supplies or materials [intended for use in executions]

La. R.S. § 15:570(G) (West 2024).

By e-mail dated May 1, 2024, Plaintiffs' counsel requested certain information from the DOC, including: (a) whether the DOC has obtained or attempted to obtain or compound any lethal injection drugs; (b) whether the DOC remains unable to procure any drugs that could be used for lethal injection; (c) whether the DOC has the necessary materials and equipment for an execution by electrocution or nitrogen hypoxia; and (d) whether Department Regulation No. C-03-001 (the State's execution protocol) has been modified as respects lethal injection, nitrogen hypoxia or electrocution. May 1, 2024 Email chain between L. Wright and J. Cody & C. Tomeny (Ex. 3). The DOC, however, declined to answer most of those queries, responding only that it has not procured any drugs intended to be used for lethal injection and has not made any changes to its lethal injection protocol. *Id.*

On April 2, 2024, Louisiana State Senator Jackson-Andrews introduced Senate Bill 430 to remove nitrogen hypoxia as a permissible method of execution under Act 5 (effect. 7/1/2024). *See* Louisiana State Legislature, 2024 Regular Session, SB430, https://legis.la.gov/legis/BillInfo.aspx?i=247018 (last visited June 10, 2024). Senate Bill 430 was introduced based on objections in the Jewish community that gassing executions would evoke harmful and traumatic historical association with execution methods used during the Holocaust.

7

On April 22, 2024, after a vote of 22 yeas to 16 nays, SB430 passed and was sent to the House for consideration. *Id.* On May 21, 2023, the Louisiana House of Representatives' Committee on Administration of Criminal Justice voted SB430 down by a vote of 8 nays to 3 yeas. Ex. 4, at 004 (Roll Call and Record Vote, May 21, 2024 Session).

In light of the amendments to La. R.S. § 15:569-70, and the Louisiana Legislatures' recent decision not to remove nitrogen hypoxia as an authorized execution method, Plaintiffs are now able to "demonstrate a reasonable expectation that Defendants will resume executing prisoners" (Rec. Doc. 312, at 21) according to one of the newly added methods that has been added by the Louisiana legislature, and the parties now "have an entirely different execution protocol over which to litigate." Rec. Doc. 317, at 4. As the Court previously noted, "Plaintiffs may employ the same procedural mechanisms they have previously used to seek the relief they desire." (Rec. Doc. 312 at 21.) Accordingly, setting aside the prior order of dismissal and returning this case to the Court's active docket are warranted under Fed. R. Civ. P. 60(b)(6).[3]

## II.   ARGUMENT

### A.   Applicable Legal Standard.

Under Federal Rule of Civil Procedure 60(b), "[o]n motion and just terms," the court may relieve a party from an order dismissing a matter, such as the Court's ruling here. Rec. Doc. 312; Fed. R. Civ. P. 60(b). The rule allows such relief for five enumerated reasons, and, in addition,

---

[3] If this motion is granted, Plaintiffs will promptly request that a scheduling conference be held to discuss next steps. This will include a discovery schedule to obtain the information described above that Defendants have refused to provide, specifically, details regarding the State's intention, readiness and capabilities to utilize the methods of execution that will be allowed under the recent amendments to La. R.S. § 15:569, as well as details regarding any revised execution protocol the State intends to issue and utilize when it resumes scheduling executions. This information is necessary to elicit from the State the details regarding how it intends to try to proceed with and conduct executions of Plaintiffs. That information, in turn, will allow Plaintiffs to more specifically and precisely plead the manner in which their constitutional rights will be violated should the State be allowed to proceed in the manner it intends. This is similar to the types of information that were previously the subject of extensive pre-trial litigation between the parties the Court presided over. For these reasons, this motion pursuant to FRCP 60(b)(6) – as opposed to an entirely new action, albeit one that would likely be referred to this Court as a related case – affords the best and most reasonable vehicle for efficiently identifying, narrowing, and resolving the parties' disputes.

where the more specific circumstances set out in Rules 60(b)(1)–(5) are not present (as here), under subsection (6), for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

"Rule 60(b)(6) is a grand reservoir of equitable power to do justice . . . The broad language of clause (6) gives the courts ample power to vacate judgments whenever such action is appropriate to accomplish justice." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 642 (5th Cir. 2005) (*quoting Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1458 (5th Cir. 1992)) (internal quotations omitted). *See also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 848, (1988) ("Rule 60(b)(6) . . . gives federal courts broad authority to grant relief . . . upon such terms as are just . . . .") Thus, in exercising such discretion, district courts should apply Rule 60(b)(6) "in a liberal spirit." *United States v. Cato Bros.*, 273 F.2d 153, 157 (4th Cir. 1959).

While "Rule 60(b) vests wide discretion in courts, . . . relief under Rule 60(b)(6) is available only in 'extraordinary circumstances.'" *Buck v. Davis*, 580 U.S. 100, 123 (2017) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)); *see also Clark v. Davis*, 850 F.3d 770, 778 (5th Cir. 2017). Whether there are "sufficiently extraordinary" circumstances is within "the district court's sound discretion." *Booker v. Singletary*, 90 F.3d 440, 442 (11th Cir. 1996) (quotation omitted). "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in the appropriate case, '"the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process."' *Buck,* 580 at 123 (quoting *Liljeberg*, 486 U.S. at 863–64).

Finally, a Rule 60(b)(6) motion "must have been made within a reasonable time." Fed. R. Civ. P. 60(c)(1).

**B.    Extraordinary Circumstances Are Present That Justify Relief Under Rule 60(b)(6) In Order to Accomplish Justice.**

9

The procedural history of this case cries out for relief under Rule 60(b)(6). As explained above, this case was previously dismissed by the Court, without prejudice, for one simple reason – Defendants were unable to perform the only permitted method of execution under Louisiana law. At the time of Defendants' Motion to Dismiss, lethal injection was "[t]he only legal method of execution in the State of Louisiana" (Rec. Doc. 312, at 19; emphasis in original), the Defendants demonstrated to the Court's satisfaction "that Louisiana is unable to obtain execution drugs from compounding pharmacies or FDA-approved pharmaceutical companies," (*id.*), and, "[g]iven the Defendants' virtual inability to obtain lethal injection drugs, Plaintiffs cannot demonstrate a reasonable expectation that Defendants will resume executing prisoners without significant and substantial changes to the execution protocol or the law" (*id.* at 21).

Those circumstances have now changed in an extraordinary way due to the amendment of La. R.S. § 15:569 and 570. Act 5, effective July 1, 2024, adding two new methods of execution in addition to lethal injection – nitrogen gassing and electrocution – and it shrouds the entire process in secrecy, thus creating potential new sources to obtain lethal injection drugs.

With the passage of Act 5, Plaintiffs now have a reasonable expectation that Defendants will resume executing prisoners by one of these three methods. Indeed, the lawmakers who introduced the legislation expressly sought the addition of alternative methods of execution in order to hasten the execution of inmates on Louisiana's death row. Nor would the State have included strict secrecy provisions in the amendment if it did not intend to utilize those provisions to try to secure lethal injection drugs that it contends are not currently available.

Significantly, the current circumstances – legislation establishing new, alternative methods of execution – were contemplated by both the Defendants and the Court. One of Defendants' key witnesses, Secretary LeBlanc, explained "that the way to move forward with executions in

Louisiana is **legislatively**." Rec. Doc. 312, at 11; (emphasis added); *see also* Smith 2021 Dep., at 44, ll. 16-17 ("Changing legislation would be the only option.") (Ex. 2, at 005).

In addition, the Court noted that, "[w]hile the Secretary of the [DOC] is tasked with carrying out a death warrant," he "may only 'cause the execution of the condemned *as provided by law.*'" Rec. Doc. 312, at 19 (emphasis in original). The Court further noted, in denying Plaintiffs' Motion for Reconsideration, that "[i]f Attorney General Landry is somehow successful in the future at accomplishing that which has yet to be accomplished by the legislature – an alternative means of execution in Louisiana, Plaintiffs and Defendants will have an entirely different execution protocol over which to litigate." Rec. Doc. 317, at 4. In that event, as the Court properly observed, "a live controversy [would] re-emerge," in which case "Plaintiffs may employ the same procedural mechanisms they have previously used to seek the relief they desire." Rec. Doc. 312, at 21.

Indeed, those reasons presumably were why "[b]oth the *Order* and the *Judgment* clearly state that the dismissal is without prejudice." *Hoffman v. Jindal*, No. CV 12-796-SDD-EWD, 2022 WL 16571312, at *2 (M.D. La. Nov. 1, 2022) (emphasis in the original). The Court understood, correctly, that there was the potential the State would pass legislation allowing alternative means of execution and/or modify the execution protocol, that, based on such actions Plaintiffs would have a reasonable expectation that executions would resume, that a live controversy would reemerge, and that the parties would then have an entirely different execution protocol over which to litigate. Stated simply, the Court described the circumstances necessary to allow Plaintiffs to reopen this case – when there are "significant and substantial changes to the execution protocol or the law." Rec. Doc. 312, at 21. With the enactment of the amendments to La. R.S. § 15:569-70,

11

effective July 1, 2024, that day has now come. *See Fed. Trade Comm'n v. Hewitt*, 68 F.4th 461, 468 (9th Cir. 2023) (change in law can be sufficient to show "extraordinary circumstances").

The Supreme Court has held that Rule 60(b)(6) "provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'" *Liljeberg,* 486 U.S. at 864 (quoting *Klapprott v. United States*, 335 U.S. 601, 614-615 (1949)). Here, there have now been "significant and substantial changes to . . . the law" that constitute extraordinary circumstances. The parties' disputes are no longer moot, a live controversy has reemerged, and, in order to accomplish justice, Plaintiff should now be allowed to "employ the same procedural mechanisms they have previously used to seek the relief they desire." Rec. Doc. 312, at 21.

Moreover, allowing the State to proceed with executions by secret means is fundamentally unfair and fraught with problems, and the utter lack of transparency will likely undermine the public's confidence that the death penalty is being administered fairly and properly in Louisiana. *See, e.g.,* May 1, 2019 testimony of Doctor Nicholas Mitchell, Policy Research fellow specializing in race and racism at the Jesuit Social Research Institute at Loyola University in New Orleans, in opposition to HB 258 (an earlier version of the secrecy provision that was eventually enacted in Act 5):

> As a matter of public policy, I'm here to express my opposition to HB 258 on the grounds of Government Accountability and transparency. Bluntly stated, if the state wishes to claim the right to execute a citizen, then it should not hide the complete means by which it carries out that task. I base my opposition on two concerns. First and foremost, foremost the public has a right to know how its tax dollars are being spent.
>
> \*\*\*
>
> Second, public discourse allows for scrutiny, and scrutiny is healthy. Capital punishment is, by law, supposed to be humane. This is why Louisiana does not allow execution by gas chamber, electric chair or hanging HB258 would remove the scrutiny required to guarantee that an execution is not tantamount to torture.
>
> \*\*\*
>
> How are we supposed to know that the drugs were the drugs used were mixed in the right quantity, or were the correct dosage or even even if the correct drug was used rather than an experimental one. The only safeguard against such a horrific event, although it is not a guarantee against it, is the continued disclosure of who supplies, transports and manufactures the substances used in an execution. The citizens of the State of Louisiana, regardless of if they support capital punishment or oppose it, have a right to know who is supplying the means by which the state ends a life as a matter of public policy, the government has a legal responsibility and an ethical imperative to disclose the complete means by which it carries out a capital sentence.

Louisiana House of Rep. Archived Video, Criminal Justice, May 1, 2019 HCR-6, at 4:35:46–4:38:17, https://house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2019/may/0501_19_HG (last visited June 7, 2024).

Accordingly, setting aside the prior Judgment and returning this action to the Court's active docket is warranted under Rule 60(b)(6).

### C.     Plaintiffs' Rule 60(b)(6) Motion is Timely.

A motion under Rule 60(b)(6) must be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). *See also In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004) (citing *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287-88 (5th Cir. 1985)). Although the Supreme Court has yet to define what constitutes a "reasonable time" under Rule 60(c)(1), the Fifth Circuit has explained that "[r]easonableness turns on the 'particular facts and circumstances of the case.'" *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994) (citing *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 119 (5th Cir. 1992)). In assessing the particular facts of any given case, the Fifth Circuit considers "whether the party opposing the motion has been prejudiced by the delay in seeking relief. . . ." *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 930 (5th Cir. 1976) (*quoting* 11 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2866, at 228-29).

Here, La. R.S. § 15:569 does not take effect until July 1, 2024, and only weeks ago when the Legislature voted down SB430 was its conclusively determined that there would be no further amendments to La. R.S. § 15:569. By making this motion prior to, and in anticipation of, the new law (and its now confirmed language) becoming effective, Plaintiffs' Rule 60(b)(6) motion is unquestionably timely.

Moreover, Defendants will not be prejudiced if the Court grants this motion. In fact, Defendants should have anticipated this motion based on the Court's rulings in granting their Motion to Dismiss (Rec. Doc. 312) and denying Plaintiffs' Motion for Reconsideration (Rec. Doc. 317).

In addition, it is inconceivable that Defendants will be able to advance any credible argument that they would somehow be prejudiced if Plaintiffs are given a full and fair opportunity to litigate the actual and alleged violations of his constitutional rights. To the contrary, profound

injustice will result if Plaintiffs are denied the opportunity to do so. *See O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) ("In a capital case, we must be particularly certain that the legal issues 'have been sufficiently litigated,' and the criminal defendant accorded all the protections guaranteed him by the Constitution of the United States.") (citing *Shaw v. Martin*, 613 F.2d 487, 491 (4th Cir. 1980)).

Accordingly, the present motion is timely, and thus satisfies the requirement set forth in Fed. R. Civ. P. 60(c)(1).

### III. CONCLUSION

For the foregoing reasons, there are extraordinary circumstances that provide a clear "reason that justifies relief" under Rule 60(b)(6). Plaintiffs thus respectfully request that the Court set aside the prior Judgment in this case and return the case to the Court's active docket.

Dated: June 14, 2024

                Respectfully submitted,

                /s/ Cecelia Trenticosta Kappel
                Cecelia Trenticosta Kappel, La. Bar No. 32736
                The Promise of Justice Initiative
                1024 Elysian Fields Avenue
                New Orleans, Louisiana 70117
                Tel: 504-529-5955
                Email: ckappel@defendla.org

                ***Counsel for Plaintiffs Anthony Bell, Daniel Blank, Henri Broadway, Nathaniel Code, Jessie Hoffman, Daniel Irish, Jason Reeves, Willie Tart, James Tyler, and Todd Wessinger***

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and forgoing was filed electronically with the Clerk of Court using CM/ECF on this 14th day of June, 2024. Notice of this filing as generated

by the electronic filing system constitutes service of the filed document on counsel for the Defendants.

                                              <u>/s/ Cecelia Trenticosta Kappel</u>
                                              Cecelia Trenticosta Kappel