IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JESSIE HOFFMAN** | * | **CIVIL ACTION NO. 12-796** |
| **VERSUS** | * | **JUDGE SHELLY D. DICK** |
| **BOBBY JINDAL, ET AL.** | * | **MAGISTRATE JUDGE ERIN WILDER-DOOMES** |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT

Plaintiffs ask the Court to pour new wine into an old bottle. They say that their claims challenging the State's old death penalty protocol—which the Court dismissed as moot because the State could not acquire the necessary drugs—have sprung back to life now that the State has enacted brand new death penalty legislation. Plaintiffs characterize that new legislation as "a material and extraordinary change of circumstances that gives rise to a live controversy between the parties." ECF No. 318-1 at 1. The response "warranted" under Federal Rule of Procedure 60(b)(6), they say, is for the Court to "[s]et aside" the judgment dismissing their claims "and return[] this case to the Court's active docket." *Id.*

Plaintiffs are clear about why they want this Court to reopen this case "as opposed to [their filing of] an entirely new action, albeit one that would likely be referred to this Court as a related case." *Id.* at 8 n.3. They want to reopen "discovery" here because it "affords [them] the best and most reasonable vehicle" for accessing "the types of information" they need to build their case against the new legislation. *Id.* Reopening discovery here, they say, will allow them to figure out how "their constitutional rights will be violated" (if at all) by the new law and bypass the

1

"extensive pre-trial litigation" that was required to gain access to that information in this case. *Id.* The upshot: Plaintiffs want this Court to ignore Article III just long enough for them to find a justiciable issue.

That desire cannot get around the fact that the Court has lacked jurisdiction over the present claims for the last two years and counting. Plaintiffs say nothing about whether the State is now able to acquire the necessary drugs—the condition that originally mooted their claims.

And now their claims are doubly moot because the law they want to declare unconstitutional and enjoin as such is no longer the law. True, the 2014 Protocol is still on the books, but the underlying legislation has changed, and the protocol must change along with it. Developing a new protocol, of course, takes time. So until that happens, there are no procedures for carrying out executions under the new law, and so no procedures for Plaintiffs to challenge. Whatever "disputes" (ECF No. 318-1 at 12) Plaintiffs may have with the new legislation (and any protocol that one day may be issued to carry out the new legislation), those are a different controversy for which new jurisdiction must be established under the traditional pleading standards.

It is troubling that Plaintiffs would ask to reopen this case for the express purpose of bypassing the Federal Rules of Civil Procedure for how all plaintiffs must bring claims, establish jurisdiction, and develop evidence. Plaintiffs' Motion should be denied for what it is: a Trojan horse meant to smuggle new claims into the shell of

a moot case. Not only is that an abuse of Rule 60(b), the Court lacks jurisdiction to do it.[1]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This constitutional challenge to the State's method of execution started about twelve years ago in 2012. Two years later, Plaintiffs filed a Second Amended Complaint challenging the protocol the Defendants issued in 2013 (2013 Protocol). ECF No. 118. In 2014, Defendants issued a new "execution protocol dated March 12, 2014" (2014 Protocol). ECF No. 312 at 4. The 2014 Protocol provided lethal injection as the State's only method of execution. La. Rev. Stat. § 15:569 (amended 2024). Other inmates intervened, and their Complaints in Intervention,[2] though not entirely identical, challenged the 2014 Protocol. *See* ECF Nos. 202, 203, 204, 211, 212, 223, 253.

Two years ago, in 2022, the Court dismissed Plaintiffs claims as moot. *See* ECF No. 312. "Setting the Record Straight," the Court held that Defendants were unable to obtain the drugs necessary to carry out any executions. *Id.* at 10. "[T]he Defendants' virtual inability to obtain lethal injection drugs" rendered Plaintiffs unable to "demonstrate a reasonable expectation that Defendants will resume executing prisoners without significant and substantial changes to the execution

---

[1] To be clear, Defendants are not arguing that the Court lacks jurisdiction to consider Plaintiffs' Rule 60(b)(6) Motion. A court always has jurisdiction to consider its own jurisdiction. *See Santos v. Reno*, 228 F.3d 591, 597 n.11 (5th Cir. 2000). Instead, Defendants' position is that the Court lacks jurisdiction to grant the relief that Motion asks for: reopening moot claims.

[2] Of those Complaints, the one filed in 2019 (ECF No. 253) is the most complete statement of Plaintiffs' claims because it repeats all allegations made in prior Complaints and adds new or slightly modified allegations. Defendants thus treat the 2019 Complaint in Intervention (ECF No. 253) as the operative Complaint.

protocol or the law." *Id.* at 21. With "no live controversy, the Court lack[ed] subject-matter jurisdiction" and dismissed Plaintiffs' claims "without prejudice." *Id.* at 23. The Court instructed Plaintiffs that, "if a live controversy re-emerges," they should "employ the same procedural mechanisms they have previously used to seek the relief they desire." *Id.* at 21.

When Plaintiffs later asked the Court to reconsider, the Court declined. If the Legislature "in the future" were to pass "an alternative means of execution in Louisiana," the Court explained that "Plaintiffs and Defendants [would] have an entirely different execution protocol over which to litigate." ECF No. 317 at 4. "However, the claims . . . currently before the Court do not present a live case and controversy and are moot." *Id.*

On March 5, 2024, the Legislature enacted new method-of-execution legislation. The new law provides that "every sentence of death shall be by one of [three methods of execution]": (1) lethal injection, (2) "[n]itrogen hypoxia," and (3) "[e]lectrocution." La. Rev. Stat. § 15:569 (effective July 1, 2024). The new law also includes a new "confidentiality provision" to protect the identity "of any person, business, organization, or other entity directly or indirectly involved in the execution of a death sentence within this state." *Id.* § 15:570(G). About a month later, Plaintiffs filed this Motion for Further Relief. ECF No. 318.

## ARGUMENT

**I.    PLAINTIFFS' CLAIMS ARE STILL MOOT.**

"Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases and controversies." *Payne v. Progressive Fin. Servs., Inc.*, 748

4

F.3d 605, 607 (5th Cir. 2014) (citing U.S. Const. art. III, § 2, cl. 1). "This clause requires that parties seeking to invoke federal-court jurisdiction demonstrate that they have a legally cognizable interest or personal stake in the outcome of the case." *Id.* "The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021).

Plaintiffs bear the "initial burden of establishing the trial court's jurisdiction." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993). Their burden, however, never ceases; they "constantly bear[] the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Defendants bear the burden to prove "that a once-live case has become moot." *West Virginia v. EPA*, 597 U.S. 697, 719 (2022). The burden then flips back to Plaintiffs to show that an exception to the mootness doctrine applies. *See Davis v. FEC*, 554 U.S. 724, 128 (2008); *Libertarian Party v. Dardenne*, 595 F.3d 215, 216–17 (5th Cir. 2010) (placing on plaintiffs "burden of proving both prongs [of capable of repetition, yet evading review exception]").

Here, Defendants treat the 2019 Complaint in Intervention (ECF No. 253) as the operative Complaint for the reasons previously explained. *See supra* n.2; ECF No. 263-1 at 4 n.29. In that Complaint, Plaintiffs raised seven "Claims for Relief" challenging the constitutionality of the 2014 Protocol and requesting declaratory and injunctive relief from that Protocol:

5

- Claim I alleged that Plaintiffs' Fourteenth Amendment due process rights were violated "without notice of the procedures to be used [under the 2014 Protocol]" and "a meaningful opportunity to be heard regarding *those procedures.*" ECF No. 253 at 36 (emphasis added).

- Claim II alleged that the 2014 Protocol violated Plaintiffs' rights "to be free from cruel and unusual punishment and to equal protection of law" under the Eighth and Fourteenth Amendments. *Id.* at 37.

- Claim III alleged that "substituting drugs . . . *without promulgating a new protocol*" violated Plaintiffs' "rights to due process and to be free from cruel and unusual punishment" and "ex post facto punishment." *Id.* at 38 (emphasis added).

- Claim IV alleged that the 2014 Protocol denied Plaintiffs "access to counsel and the courts, in violation of the First, Sixth, and Fourteenth Amendments." *Id.*

- Claim V alleged that the 2014 Protocol violated the First and Fourteenth Amendments by withholding "public access to the execution." *Id.* at 39.

- Claim VI was a "Request for Declaratory Judgment" to declare the 2014 Protocol unconstitutional in the ways described in the Claims. *Id.* at 39–40.

- Claim VII was a "Request for a Permanent Injunction" to enjoin Defendants from executing Plaintiffs in the allegedly unconstitutional ways described in the Claims. *Id.* at 41.

In 2022, Defendants proved those claims were moot. The Court held that there was "no live controversy" because of "pharmaceutical companies' unwillingness to sell their products to departments of corrections for use in capital punishment." ECF No. 312 at 23. Plaintiffs were unsuccessful at showing that their claims fit any exception to the mootness doctrine. *See* ECF No. 312 at 20 ("Plaintiffs' claims do not fall into the exception to mootness for claims that are capable of repetition, yet evading review."); *id.* at 21 ("To the extent that Defendants' policy could be characterized as voluntary cessation, this argument too fails."). Accordingly, "the Court lack[ed] subject-matter jurisdiction." *Id.* at 23.

The claims challenging the 2014 Protocol are the only ones before the Court and the ones on which the Court's jurisdiction rises and falls. Plaintiffs want the Court to reopen the case so that they can get discovery to build new claims against the new legislation and any subsequent protocol that Defendants may issue.

The trouble with Plaintiffs' request is that their claims are more moot now than ever. Plaintiffs' position is not that Defendants have overcome their "virtual inability to obtain lethal injection drugs"—the condition that originally mooted their claims. ECF No. 312 at 21. They, in fact, say nothing about that. Instead, they argue that, "[w]ith the enactment of the amendments to La. [Rev. Stat.] § 15:569-70, . . . [t]he parties' disputes are no longer moot, [and] a live controversy has reemerged." ECF No. 318-1 at 11–12.

Yet at the same time, Plaintiffs freely admit that the amendments created "an alternative means of execution in Louisiana" that is "an entirely different [legal

7

regime] over which to litigate." ECF No. 318-1 at 5, 8 (quoting ECF No. 317 at 4). They describe the amendments as expanding the 2014 Protocol twice over, "add[ing] two new methods of execution in addition to lethal injection – nitrogen gas and electrocution," and a brand "new . . . 'confidentiality provision.'" *Id.* at 5–6 (quoting La. Rev. Stat. § 15:570(G)).

Plaintiffs are right that the law in Louisiana is now "entirely different." *Id.* at 8. They are wrong about the legal consequences of that difference. The new legislation does not somehow revive their claims against the 2014 Protocol. Just the opposite.

The new legislation doubly moots Plaintiffs' claims. "[M]ootness is the default . . . where, as here, a statute or regulation is amended . . . after plaintiffs bring a lawsuit challenging the legality of that statute or regulation." *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023) (collecting cases); *see N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 590 U.S. 336, 338–39 (2020) (finding moot "Petitioners' claim for declaratory and injunctive relief with respect to the City's old rule" after "the City amended the rule"). Declaring the 2014 Protocol unconstitutional and enjoining it as such would not "grant any effectual relief." *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). Indeed, Defendants have yet to issue a new protocol for the new legislation.

While lethal injection remains one of the methods authorized by the new legislation, Plaintiffs' claims against lethal injection remain moot because Plaintiffs offer no evidence that Defendants are now able to obtain the necessary drugs. The

8

closest Plaintiffs get is to speculate that the State enacted the brand new, never-litigated confidentiality provision in "hopes" that it might "open up new sources of such drugs." ECF No. 318-1 at 6.

As before, "Plaintiffs' speculation about what Defendants may do . . . or what drug they may use if an execution warrant is issued at some uncertain time in the future . . . do[es] not present a concrete and definite controversy." ECF No. 312 at 20. Without that information, "[a]ny analysis the Court conducts would be a purely academic exercise." *Id.* "How can the Court meaning[ful]ly evaluate whether Defendants' execution protocol violates the Plaintiffs' constitutional rights if no party to this suit even knows how, when, or if any Louisiana death row inmate will be executed?" *Id.* "The barriers and uncertainty facing Louisiana's lethal injection protocol deprive Plaintiffs' claims of the immediacy and reality required to establish a present, live controversy of the kind that must exist to avoid advisory opinions on abstract propositions of law." *Id.*

Plaintiffs "presum[e]" that the Court must have dismissed their claims "without prejudice" to open the door for a motion like this one. ECF No. 318-1 at 11. Not so. "[J]urisdictional dismissals (such as those made on standing and mootness grounds) are typically done without prejudice." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 388 (5th Cir. 2024) (modifying a "dismissal to be *without* prejudice" where the district court "mistakenly dismissed [a] claim *with* prejudice" on jurisdictional grounds). Given the state of the law, there was no reason that Defendants "should have anticipated" that Plaintiffs

9

would take the without-prejudice dismissal as license to override Article III. ECF No. 318-1 at 14. The Court properly has guarded its own jurisdiction, and ceasing that effort now would not only prejudice Defendants but also harm public confidence in the judiciary. *See Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021) (explaining that "jurisdictional questions often implicate 'the public's confidence' in judicial power" (quoting *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011))).

What's more, even if the Court had jurisdiction to reopen this case (it does not), Plaintiffs would have to amend their Complaint to challenge the new legislation. Plaintiffs tip their hand when they argue that "executions *by secret means* [are] fundamentally unfair" and "the utter *lack of transparency* will likely undermine the public's confidence." ECF No. 318-1 at 12 (emphasis added). Those transparency claims are not before the Court because, as Plaintiffs' evidence acknowledges, "this [secrecy] law" has never existed before. *Id.* at 6 (addition in original). It is doubtful Plaintiffs would have good cause to add those new claims now or in the future when Defendants issue a new protocol. *See Whitaker v. City of Houston*, 963 F.2d 831, 837 (5th Cir. 1992) (affirming denial of "post-dismissal Rule 15(a) motion to amend [the] complaint" because plaintiff "waited almost thirty days [after dismissal] to file a motion for leave to amend").

To recap, Plaintiffs' claims challenged the 2014 Protocol. Those claims became moot in 2022 because of Defendants' inability to get the drugs necessary to carry out executions. Those claims remain moot because Plaintiffs offer no evidence

10

eliminating that inability and now also because the statute enabling the 2014 Protocol is no longer the law. All to say, there still is no live controversy here that would empower the Court to reopen this case. If Plaintiffs want to challenge the *new* legislation (or any *new* protocol that may be issued in the future), the jurisdictionally proper course is to file a *new* complaint with *new* claims against the *new* legislation and/or *new* protocol—"the same procedural mechanisms they have previously used to seek the relief they desire." ECF No. 318-1 at 8 (quoting ECF No. 312 at 21). Following that route all along would have conserved judicial and taxpayer resources devoted to resolving Plaintiffs' improper Motion.

**II.    PLAINTIFFS DO NOT MEET THE STEEP STANDARD FOR RULE 60(B)(6) RELIEF.**

Wholly apart from a lack of jurisdiction, Plaintiffs do not qualify for extraordinary relief under Rule 60(b)(6) in multiple ways.

For one, Plaintiffs' timeliness argument focuses on the wrong date. They say that their Motion is not too late because they filed it only "weeks" after "the Legislature voted down" a proposed amendment to the new legislation. ECF No. 318-1 at 14. Their Motion, however, is premature. Throughout this case, Plaintiffs have challenged the *procedures* provided by the agency's protocol, and not the bare methods of execution provided by the underlying statute. Now that the underlying statute has changed, the procedures must also change—which will happen when the Department of Public Safety and Corrections issues a new protocol. Until that happens, however, there are no new procedures "over which to litigate." *Id.* at 8.

For another, they "cannot obtain relief [from dismissal] unless" they can show that they have "good" claims to bring against the new protocol. *Buck v. Davis*, 580

11

U.S. 100, 126 (2017) ("showing 'a good claim or defense' is a precondition of Rule 60(b)(6) relief" (quoting 11 Wright & Miller, Federal Practice and Procedure § 2857)). Even they do not know how they will "specifically and precisely plead the manner in which their constitutional rights will be violated [if at all] should the State be allowed to proceed [under the new law]." ECF No. 318-1 at 8 n.3. That alone warrants denial of their Rule 60(b)(6) Motion.

For yet another, Plaintiffs must "show 'extraordinary circumstances' justifying the reopening of [the] final judgment" that dismissed their claims. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). "This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." *Id.* (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 873 (1988) (Rehnquist, C.J., dissenting)).

"[T]he desirability of finality in judgments" in cases like this one[3] weighs "*against* the grant of a 60(b) motion." *Fackelman v. Bell*, 564 F.2d 734, 736 (5th Cir. 1977) (emphasis added). That is because "the 'whole purpose' of Rule 60(b) 'is to make an exception to finality.'" *Buck*, 580 U.S. at 126 (quoting *Gonzalez*, 545 U.S. at 529). Put otherwise, there is a presumption *in favor of* "the finality of judgments" and *against* reopening them under Rule 60(b). *Gonzalez*, 545 U.S. at 535 (quoting

---

[3] In cases involving structural-reform injunctions (which this case does not), the pro-finality policy weighs in *favor* of granting Rule 60(b) motions to dissolve those injunctions and restore state and local control. *See Horne v. Flores*, 557 U.S. 433, 450 (2009) (emphasizing that, "in recognition of the features of institutional reform decrees, . . . courts must take a 'flexible approach' to Rule 60(b)(5) motions addressing such decrees" (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 381 (1992))); *id.* ("ensur[ing] that 'responsibility for discharging the State's obligations is returned promptly to the State and its officials' when the circumstances warrant" (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004))).

12

*Liljeberg*, 486 U.S. at 873 (Rehnquist, C.J., dissenting)).[4] "It is not enough that the granting of relief [under Rule 60(b)] might have been permissible, or even warranted—denial must have been so unwarranted as to constitute an abuse of discretion." *Diaz v. Stephens*, 731 F.3d 370, 374 (5th Cir. 2013) (alterations omitted) (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981)).

Plaintiffs' only stated ground for relief from dismissal is that the new legislation is a "'significant and substantial change[] to . . . the law' that constitute[s] extraordinary circumstances." ECF No. 318-1 at 12. By their lights, (a) reopening moot claims to then (b) reopen discovery to (c) discover what those claims might be to then (d) amend their complaint to (e) raise those new claims would "accomplish justice." *Id*. They cite a total of eight cases[5] to support their position. *Id*. at 8–13. Some of those cases grant Rule 60(b)(6) relief, and some deny relief. Either way, those cases show just how extraordinary the circumstances must be to reopen a judgment and just how far below that standard Plaintiffs' request falls.

Start with the "ordinary" cases that denied Rule 60(b)(6) relief.

---

[4] This presumption "reflects the foundational idea that if 'conclusiveness did not attend the judgments of [judicial] tribunals,' parties would not 'invoke[]' the 'aid of [such] tribunals' for 'the vindication of rights of person and property.'" *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 426 (2d Cir. 2019) (Calabresi, J., dissenting) (alternations in original) (quoting *S. Pac. R. Co. v. United States*, 168 U.S. 1, 49 (1897)). It is unsurprising, then, that the Fifth Circuit and others have held that relief under any subsection of Rule 60(b) is an "extraordinary remedy." *See, e.g.*, *Goldstein v. MCI WorldCom*, 340 F.3d 238, 258 (5th Cir. 2003); *LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 949 (7th Cir. 2019); *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1191 (10th Cir. 2018); *Johnson v. Arden*, 614 F.3d 785, 799 (8th Cir. 2010); *Goodman v. Bowdoin Coll.*, 380 F.3d 33, 48 (1st Cir. 2004).

[5] Plaintiffs also cite (ECF No. 318-1 at 9) *Clark v. Davis*, 850 F.3d 770 (5th Cir. 2017). *Clark*, however, is not an "extraordinary circumstances" case because it denied the Rule 60(b)(6) motion for being "untimely." 850 F.3d at 783 ("Because we conclude that the Rule 60(b)(6) motion was untimely, we do not address [the extraordinary circumstances argument].")

13

**Ordinary case number 1**: *Gonzalez*, 545 U.S. 535. *See* ECF No. 318-1 at 9. In *Gonzalez*, the "only ground for reopening the judgment" was a subsequent change in the law. 545 U.S. at 536. The Supreme Court rejected that argument: "It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, [the law changed]." *Id.*

**Ordinary case number 2**: *Booker v. Singletary*, 90 F.3d 440 (11th Cir. 1996). *See* ECF No. 318-1 at 9. *Booker* is like *Gonzalez*. In *Booker*, the Rule 60(b)(6) movant called for the case to be reopened "because there ha[d] been a change in the law." 90 F.3d at 442. The Eleventh Circuit held that a "change in the law" is not by itself "extraordinary." *Id.* (quoting *Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir. 1987)). "Something more than a mere change in the law is necessary . . . to provide the grounds for Rule 60(b)(6) relief." *Id.* (cleaned up).

While *Gonzalez* and *Booker* involved a change in decisional law, the idea is the same for legislative changes. "It is hardly extraordinary that subsequently, after [Plaintiffs'] case was no longer pending," *Gonzalez*, 545 U.S. at 536, the Legislature did what legislatures do and enacted new legislation—which Plaintiffs knew was coming. In their words, changing the methods of execution through new legislation had been expressly "contemplated by both the Defendants and the Court" and testified to by witnesses for at least a year before this case was dismissed. ECF No. 318-1 at 10–11.

**Ordinary case number 3**: *United States v. Cato Bros.*, 273 F.2d 153 (4th Cir. 1959). Plaintiffs quote *Cato Brothers*, an old case from the Fourth Circuit, to establish

14

that Rule 60(b)(6) should be applied "in a liberal spirit." ECF No. 318-1 at 9 (quoting *Cato Bros.*, 273 F.2d at 157). In *Cato Brothers*, however, the district court's grant of relief to reduce a money judgment was too "liberal" because "the District judge had no power to amend the judgment in [that] way." 273 F.2d at 154, 157. Similarly, reopening Plaintiffs' moot claims here would be an ultra vires action.

**Ordinary case number 4**: *Hesling v. CSX Transp., Inc.*, 396 F.3d 632 (5th Cir. 2005). *Hesling* is Plaintiffs' last "denial" case, cited for the proposition that Rule 60(b)(6) gives courts "broad equitable power to do justice" and "vacate judgments whenever such action is appropriate to accomplish justice." ECF No. 318-1 at 9 (quoting is *Hesling*, 396 F.3d at 642). That power, however, was not broad enough to reopen the judgment in *Hesling*. The Fifth Circuit there affirmed the denial of the Rule 60(b)(6) motion because the defendant's failure to turn over "discovery documents" was not extraordinary enough. *Hesling*, 396 F.3d at 643. If discovery violations fall short of extraordinary, then so too does the routine passing of legislation that the record here predicted would happen at least a year before this case was dismissed. ECF No. 318-1 at 10–11.

Now contrast those "ordinary" cases with the truly extraordinary circumstances in the cases that granted relief.

**Extraordinary case number 1**: *Liljeberg*, 486 U.S. 847. *See* ECF No. 318-1 at 9, 12. It is not every day that a district judge gets close to violating (if not actually violates) the federal recusal statute. *See id.* at 867–68. The judge there declined to disqualify himself from the case even though he had "a fiduciary interest in the

15

litigation" that "create[d] precisely the kind of appearance of impropriety that [the federal recusal statute] was intended to prevent." *Id.* at 867. The judge's "failure to stay informed of this fiduciary interest" likely violated that statute. *Id.* at 867–68. More importantly, "his silence . . . deprived" the parties "of a basis for making a timely motion for a new trial and . . . an issue on direct appeal." *Id.* at 867. And so, "the appropriate remedy was to vacate the [district] court's judgment." *Id.* at 850.

**Extraordinary case number 2**: *Buck*, 580 U.S. 100. *See* ECF No. 318-1 at 9. The Supreme Court reopened Mr. Buck's criminal sentence because "[r]elying on race to impose a criminal sanction 'poisons public confidence' in the judicial process." *Id.* (quoting *Davis v. Ayala*, 576 U.S. 257, 285 (2015)). Keeping the sentence in place, the Supreme Court reasoned, would "injure[] not just the defendant, but 'the law as an institution, . . . the community at large, and . . . the democratic ideal reflected in the processes of our courts." *Id.* (quoting *Rose,* 443 U.S. at 556). "Such concerns are precisely among those . . . supporting relief under Rule 60(b)(6)." *Id.*

**Extraordinary case number 3**: *Harrell v. DCS Equipment Leasing Corporation*, 951 F.2d 1453 (5th Cir. 1992). *See* ECF No. 318-1 at 9. There, the Fifth Circuit reopened a *default* judgment because a *jury verdict* in a different case had found no liability. *Harrell*, 951 F.2d at 1459. It is quite extraordinary to have a no-liability "verdict resulting from [a] trial" in one case and a default judgment in another case. *Id.* That is "strong[]" evidence that keeping the default judgment in place "would be an injustice" and that it should give way "so those claims could be tried." *Id.*

**Extraordinary case number 4**: *Klapprott v. United States*, 335 U.S. 601 (1949). *See* ECF No. 318-1 at 12. In *Klapprott*, "a [naturalized] citizen was stripped of his citizenship by his Government, without evidence, a hearing, or the benefit of counsel, at a time when his Government was then holding the citizen in jail with no reasonable opportunity for him effectively to defend his right to citizenship." 335 U.S. at 615. The Supreme Court reopened the sentence under Rule 60(b)(6) because it was "appropriate to accomplish justice." *Id.* at 614–15.

In each of those extraordinary cases, there was some error (appearance of impropriety, race-infected criminal process, defaulted claims that clearly had merit or lacked due process). That just is not the case here. If anything, the policy concerns at play in the extraordinary cases—promoting public confidence in the judiciary and accomplishing justice—weigh in favor of keeping this case closed. The "full and fair opportunity to litigate" any claims Plaintiffs may have against the new legislation (and any new protocol that one day may exist) is available to them by filing a new lawsuit. ECF No. 318-1 at 14. That result not only offers them the "[]justice" they seek, *id.* at 15, that result is constitutionally required.

## CONCLUSION

For all of these reasons, the Court should deny Plaintiffs' extraordinary request under Rule 60(b)(6) to reopen the judgment dismissing this case as moot.

Respectfully Submitted

/s/ Jeffrey K. Cody
Jeffrey K. Cody (La. Bar Roll No. 28536)
jeffreyc@scwllp.com
Caroline M. Tomeny (La. Bar Roll No. 34120)
caroline@scwllp.com

17

**SHOWS, CALI & WALSH, L.L.P.**
628 St. Louis Street (70802)
P.O. Drawer 4425
Baton Rouge, Louisiana 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-1467

Jonathan Vining (La. Bar Roll No. 30781)
*General Counsel*
Louisiana Department of Public Safety & Corrections
Legal Affairs
504 Mayflower Street (70802)
P.O. Box 94304
Baton Rouge, Louisiana 70804
Telephone: (225) 342-6728
Facsimile: (225) 342-3278
Email: jonathan.vining@la.gov

**Counsel for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of July, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ Jeffrey K. Cody
Jeffrey K. Cody