IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JESSIE HOFFMAN, et al<br><br>       Plaintiffs,<br><br>    v.<br><br>BOBBY JINDAL, et al<br><br>       Defendants. | Civil Action No. 12-796-SDD-EWD |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR RELIEF FROM JUDGMENT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(6)**

**I.     INTRODUCTION**

Any honest evaluation of the present circumstances calls for the Court to reopen this case and return it to the active docket. Rather than face those circumstances head on, Defendants resort to obfuscation, red herrings, and willful blindness.

First, Defendants ignore the fundamental fact that the Louisiana legislature recently amended La. R.S. §§ 15:569-70, passed into law as Act 5,[1] effective as of July 1, 2024, so that executions may now resume in Louisiana. Act 5 has two main components to pave the road for executions in Louisiana: (1) secrecy to hide sources of execution drugs, and (2) availability of alternative methods of execution. Defendants do not address in any way the fact that, under current law, electrocution and nitrogen gassing are now authorized methods of execution under Louisiana law. Indeed, these amendments are exactly what the Court and Defendants themselves anticipated might happen. As explained in Plaintiffs' opening brief, one of Defendants' key witnesses,

---

[1] *See* Acts 2024, 2nd Ex. Sess., No. 5 https://www.legis.la.gov/Legis/ViewDocument.aspx?d=1353035.

1

Secretary LeBlanc, readily admitted "that the way to move forward with executions in Louisiana is legislatively." Rec. Doc. 312, at 11. The Court specifically noted that, if the legislature passes "an alternative means of execution in Louisiana, Plaintiffs and Defendants will have an entirely different execution protocol over which to litigate," and "Plaintiffs may [then] employ the same procedural mechanisms they have previously used to seek the relief they desire." Rec. Doc. 312, at 17 and 21. The legislature has acted, there are now new methods of execution as well as extreme secrecy, and Plaintiffs are entitled to seek the relief they desire. Defendants' utter silence on this critical and extraordinary change in circumstances is deafening.

Second, Defendants attempt to draw attention away from the fundamental change in circumstances by their myopic focus on the 2014 Protocol. Plaintiffs have always challenged the constitutionality of the ***methods*** of execution—and including, now, the two new methods—not simply the protocol of the moment. Moreover, Defendants' reliance on the 2014 Protocol is illusory. Defendants have not asserted nor offered sworn testimony or other evidence to suggest that the 2014 Protocol has been revoked, or that, in view of the newly enacted secrecy law, that they no longer have access to the lethal injection drugs identified in the 2014 Protocol. Either way, if and when Defendants issue a new protocol to address the mechanics of executions, Plaintiffs will address them in due time just as they have done every other time that the Defendants have altered the execution protocol. The continued ability of the Defendants to alter their protocol does not deprive this Court of jurisdiction over the critical issues that exist now.

Third, Defendants' contention that Plaintiffs bear the burden of coming forward with evidence that the DOC has or is able to obtain execution drugs is circular nonsense. Only Defendants are in a position to address that question, and indeed, have outright refused to disclose the answer. Defendants' attempt to hide that information behind the curtain of secrecy is telling.

2

Certainly, if Defendants cannot in fact obtain lethal injection drugs now or in the foreseeable future, they should say so. The only inference to be drawn from Defendants' gamesmanship is that the opposite is true.

Finally, under the current circumstances, considering Act 5, Plaintiffs are at immediate and real risk of execution under the new Louisiana law, and presently have the right and standing to assert constitutional challenges. Defendants have chosen to stick their collective heads in the stand, and, thus, have failed to advance any credible argument that no case and controversy presently exists. Rather than litigate this case on the merits and in a timely manner, Defendants are attempting to hide behind a veil of secrecy to deny Plaintiffs' access to this Court and force Plaintiffs to litigate at the "eleventh hour"[2] when an execution is set.

In sum, Plaintiffs' current claims are cognizable, and remain as ripe now as they will be after a death warrant issues, at which time a Plaintiff identified for execution would have only 60-90 days to challenge the constitutionality of the way Defendants intend to kill them.

For the foregoing reasons, as explained more fully below, this Court should grant Plaintiffs' Rule 60(b)(6) motion, reopen the case, return it to the active docket, and promptly schedule a conference to address how the case will now proceed.

## II. ARGUMENT

---

[2] Defendants have a long history of advancing timeliness arguments in this Court to attempt to defeat Plaintiffs' claims. When Plaintiff Sepulvado was scheduled for execution, Defendants complained that he "should not be allowed to wait until the eleventh hour to question the method of his execution." Rec. Doc. 21, at 4. Then, in the Fifth Circuit, the Defendants made the argument that Sepulvado should have attempted to discover the execution protocol *before* he was scheduled for execution, and his attempts to discover information and file suit after his execution warrant was set were "intentionally dilatory." *See Original Appellant Brief, Sepulvado v. Jindal*, No. 13-70007, at 16; 2013 WL 7809730, at *1, *6. It is clear that the Defendants' strategy is to withhold information until it is too late, then attempt to paint Plaintiffs as being dilatory. The very opposite is true: Plaintiffs seek to litigate these claims in the normal course of litigation, and not at the eleventh hour before an execution.

      **A.**      **Defendants' Argument That Plaintiffs' Claims Are "*Still Moot*" Is Wrong**

Defendants' argument that Plaintiffs' claims are "still moot," Rec. Doc. 327 at 4-11, is based on an incorrect reading of the Court's 2022 dismissal order and the incorrect premise that the Plaintiffs are challenging *only* the 2014 Protocols.

      **1.**      **The Court's Reasoning For Dismissing The Case In 2022 Was Narrowly Tailored, But Contemplated The Present Motion**

First, the Court was correct that "[w]hen the Plaintiffs filed suit in December 2012, the claims were ripe for review," and that "a controversy remained" after the facts of the case evolved and Plaintiffs' complaint was amended twice. Rec. Doc. 312 at 17. However, in dismissing the case in 2022, the Court's reasoning was narrowly tailored. Specifically, the Court found, at that time, that (1) "[t]he only legal method of execution in the State of Louisiana [was] lethal injection" and (2) "[t]he uncontroverted testimony in this matter has established that Louisiana is unable to obtain execution drugs from compounding pharmacies or FDA-approved pharmaceutical companies." Rec. Doc. 312 at 19 (emphasis in original). The definition of "still" is "without motion,"[3] or in other words "all the same," but contrary to that meaning there have been substantial changes since the Court's 2022 dismissal ruling.

Second, lethal injection is no longer the only legal method of execution in the state of Louisiana. Rather, the Legislature changed the law this year to allow the state of Louisiana to electrocute Plaintiffs or asphyxiate them with nitrogen gas. La. R.S. 15:569 (West 2024) (eff. 7/1/24). Moreover, Defendants present no allegations, evidence or sworn affidavits that Defendants do not have the means to utilize either of these authorized methods of execution to kill any of the Plaintiffs. In fact, Defendants' opposition is utterly silent with respect to these other

---

[3] *See* https://www.merriam-webster.com/dictionary/still?src=search-dict-box#dictionary-entry-3 (last visited Aug. 2, 2024).

methods. Significantly, while Defendants state that they "have yet to issue a new protocol for the new legislation," Rec. Doc. 327 at 8, a DOC protocol does not determine whether Plaintiffs can be executed. Instead, under Louisiana law, if a state court judge issues a death warrant, the Secretary of the Department of Corrections is required to set a date for the execution of the condemned person between 60 and 90 days from the date the warrant is issued, or between thirty and forty-five days from the expiration or a stay or reprieve. La. R.S. 15:569(B)-(C). Unlike the situation in 2022, when Defendants presented sworn testimony that Louisiana could not obtain drugs for lethal injection (which was at the time the only legal method of execution), there is no present evidence that the DOC could not execute an individual within the next 60 to 90 days if a death warrant issued tomorrow.[4]

Third, there also has been a substantial change of circumstances with respect to lethal injection. Specifically, the addition of a new secrecy provision in Act 5. As Representative Muscarello, the author of HB6, which would become Act 5, testified, "we haven't performed an execution in close to 20 years . . . because we don't have this [secrecy] law." *See* Rec. Doc. 318-1 at 6. But, the State now has Act 5, which was intended to open up new sources of lethal injection drugs under the cover of secrecy. Additionally, the State still has a lethal injection protocol, namely the 2014 Protocol. The new statutory language in Act 5 did not render the 2014 Protocol inoperative, and Defendants have offered no sworn testimony or evidence that it has been revoked or altered. The circumstances surrounding the Defendants' ability to obtain the drugs specified in the 2014 Protocol, however, have significantly changed.

---

[4] To be clear, *only the Defendants* possess the information as to their ability to obtain substances for use in lethal injection, and/or the components necessary to execute with electricity or gas. Plaintiffs cannot be expected to come forward with facts that have been hid from them. Instead, Plaintiffs have pointed to a significant change in the circumstances—secrecy and availability of alternate means—which have been identified by both Defendants and this Court as sufficient to establish standing, that is, ability of the Defendants to execute the Plaintiffs.

Moreover, Defendants' opposition brief exhibits gamesmanship with respect to its ability to obtain lethal injection drugs. Defendants' brief carefully dances around the topic of lethal injection drugs, Rec. Doc. 327 at 8-9, and even blames Plaintiffs for failing to provide evidence that the Defendants are not able to obtain the execution drugs. *Id.* at 8. Obviously, only Defendants know whether they have or will be able to obtain the drugs in the foreseeable future. What is striking and telling is the fact the Defendants have refused to disclose the current status of their efforts to obtain execution drugs.

If Defendants have not obtained execution drugs and truly remain unable to do so for the foreseeable future, they could have simply and honestly said as much by submitting sworn affidavits from DOC officials—similar to the statement previously submitted to this Court. *See* Rec. Docs 309-1 and 309-2. After all, that was the very premise of their successful effort to have this case dismissed on mootness grounds in the first place. In other words, Defendants could have established mootness—with respect to Plaintiffs' lethal injection challenge—just as they did before. The fact that Defendants have not taken a similar approach here suggests, if not confirms, that Defendants are not in a position to make the same affirmative statements now. Rather, simple logic dictates that Defendants are in fact able to obtain execution drugs, currently or in the foreseeable future, and are just not being forthcoming with the Court and the parties.

Additionally, after this case was dismissed without prejudice, Defendants agreed to a voluntary process whereby they would keep Plaintiffs' counsel apprised on a quarterly basis regarding: "1) whether any changes have been made to the lethal injection protocol; and 2) whether DOC has procured any drugs intended to be used for lethal injection." *See* Oct. 13, 2022 email from J. Cody to M. Montagnes (Ex. 5).[5] Last month, and only after Plaintiffs filed their Rule

---

[5] Exhibits 1-4 were submitted with Plaintiffs' Op. Br. (Rec. Docs. 318-2 through 318-5).

6

60(b)(6) motion, Defendants indicated that they would no longer honor this agreement and provide the promised information. *See* July 1, 2024 email from J. Cody to L. Wright (Ex. 6 at 6.001-6.002). Defendants claim that the new secrecy law of La. R.S. 15:570 somehow renders this information nonpublic. But, the answers to the agreed upon questions are either "yes" or "no," and answering the questions would not disclose any information that is even arguably protected by the 2024 amendments to La. R.S. 15:570. *See* July 2, 2024 email from L. Wright to J. Cody (Ex. 6 at 6.001). Why would Defendants refuse to answer these questions and hide behind the secrecy law if they, in fact, remain unable to obtain the execution drugs? This is just another example of Defendants' gamesmanship and hiding the ball.

At a minimum, Defendants' strategy cries out for the case to be reopened so that the Plaintiffs can pursue their claims at least with respect to lethal injection. But, if Defendants are intent on hiding the truth and refusing to disclose information about their ability to obtain lethal injection drugs, the Court should reopen the case to allow the Plaintiffs to immediately establish exactly what capabilities the Defendants have now and will have in the foreseeable future to proceed with execution using lethal injection drugs and what they are hiding from the Court. As the Court will recall, when the Defendants relied on their alleged inability to obtain execution drugs in support of their motion to dismiss, the Court properly granted Plaintiffs limited discovery to establish the facts. Rec. Doc. 299. There is no reason that the Court should not follow a similar process now.

### 2. Defendants Are Wrong That Plaintiffs Are Only Challenging The 2014 Protocol

Contrary to Defendants' argument, Plaintiffs are not ***only*** challenging the 2014 Protocol. Rather, Plaintiffs are challenging the constitutionality of the ***methods*** of execution that the State is authorized to use to execute condemned individuals. When this case was originally filed, the State

had been refusing to disclose any execution protocol. *See* Rec. Doc. 312 at 2 citing Rec. Doc. 37 at 3. Nonetheless, the Court found that Plaintiffs' claims were ripe for review at that time. Rec. Doc. 312 at 17. Even after Defendants altered the protocol in 2013 and then again in 2014, the Court found that "a controversy remained" and allowed the Plaintiffs to amend their complaint as the facts evolved. *Id.* To be clear, Plaintiffs did not have to file a new action—as Defendants now argue (Rec. Doc. 327 at 11)[6]—each time the protocol changed. As of now, the 2014 Protocol remains the operative protocol and, as explained above, the changed circumstances create a controversy between the parties with respect to the constitutionality of the lethal injection protocol and the Defendants execution of Plaintiffs according to that protocol that warrants reopening of the case. But, if the Court reopens the case and Defendants change the protocol yet again, which one of Defendants' witness testified could be done "in a day, four hours" (*see* Ex. 7 at 7.004, Smith Dec. 9, 2021 Dep. Tr. at 18:10-25), the Court should permit the Plaintiffs to amend their complaint as the facts evolve—just as it has done in the past.

### 3. Defendants' Case Law Is Unavailing

Defendants' attempt to shoehorn Plaintiffs into the mootness exception test is misplaced. Rec. Doc. 327 at 5-7. Defendants are essentially advancing an indirect motion to dismiss argument. But, Defendants have failed to advance credible arguments that no case and controversy exists in light of the amendments to La. R.S. §§ 15:569-70. The 2014 Protocol is still in effect, and La. R.S. §§ 15:570(G) provides Defendants' their desired secrecy provisions to obtain lethal injection drugs from alternate sources. Defendants have presented no evidence to suggest that they will not use the provision as its author intended, and in fact Defendants are already hiding behind the secrecy

---

[6] Defendants argument is that "[i]f Plaintiffs want to challenge the *new* legislation (or any *new* protocol that may be issued in the future), the jurisdictionally proper course is to file a *new* complaint with *new* claims against the *new* legislation and/or *new* protocol."

provisions and refusing to disclose if they already have obtained such drugs. *See supra* at 4-5. Moreover, Defendants have conspicuously declined to re-affirm the current truth of Secretary Leblanc's 2022 affidavit stating that Defendants are "unable to procure any drugs that could be used for lethal injection" and that, "[s]hould a death warrant be issued in the future, the DPSC will not be able to carry [it] out for lack of access to lethal injection drugs." Rec. Doc. 309-1 at para. 18. Furthermore, La. R.S. §§ 15:569 authorizes two additional methods of execution, and Defendants have offered no evidence that they will not utilize these methods to execute any of the Plaintiffs, nor that a protocol is required (it is not) to perform an execution under Louisiana law. These changed circumstances present a live controversy, and as the Court previously stated, "if a live controversy re-emerges, Plaintiffs may employ the same procedural mechanisms they have previously used to seek the relief the desire." Rec. Doc. 312 at 21. This is exactly what Plaintiffs are now doing.

Defendants' reliance on *Freedom From Religion Found., Inc. v. Abbott*, 58 F. 4th 824, 832 (5th Cir. 2023), and *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 590 U.S. 336, 338-39 (2002), for the argument that Plaintiffs' claims remain moot simply because Louisiana has amended La. R.S. §§ 15:569-70 is misplaced and wrong. In *Freedom From Religion Foundation*, the Texas Reservation Board issued a regulation known as the Capital Exhibit Rule that permitted members of the public to submit exhibits for display on the Texas capital grounds. *Freedom*, 58 F.4th at 827. In 2015, Texas' Governor ordered the removal of an exhibit submitted by members of the Freedom organization. *Id.* at 827-28. Members of the Freedom organization appealed claiming that the removal violated their First Amendment rights. *Id.* at 828. While on appeal, the Board repealed the Capital Exhibit Rule, such that the permanent injunctive relief that the Freedom organization sought was no longer available, and therefore the Freedom organization lacked a

9

cognizable interest in the outcome of the case, rendering the case moot. *Id.* at 828, 831. The collection of cases cited in *Freedom* also resulted in situations where courts have found actions to be moot because a statute, regulation, or rule was repealed or amended to remove the complained of defect. *Id.* at 832.

This was exactly the same issue in *N.Y. State Rifle*. There, petitioners sought declaratory and injunctive relief in challenging a New York City rule regarding the transport of firearms. *N.Y. State Rifle*, 590 U.S. 336, 337 (2020). After the Supreme Court granted certiorari, New York City amended the statute to permit the precise relief that petitioners requested. *Id.* at 338.

The current situation is quite different from all of these cases. Act 5 did not repeal execution by lethal injection in Louisiana—rather it strengthened it to "ensure absolute confidentiality of the identifying information of any person, business, organizations, or other entity directly or indirectly involved in the execution of a death sentence," not to mention adding additional methods of execution that do not require drugs. Act 5 (La. R.S. §§ 15:569-70 (West 2024) (eff. 7/1/2024)).[7] Nor did Act 5 repeal the 2014 Protocol. At bottom, nothing in Act 5 granted the declaratory and injunctive relief requested by Plaintiffs, namely preventing the Defendants from violating Plaintiffs' "rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment and to equal protection of law." Rec. Doc. 253 at 37; *see also id.* at 41.

### B. Justice Demands That the Case Be Reopened And That Plaintiffs Be Permitted To File An Amended Complaint

Plaintiffs recognize that it will be necessary to amend their complaint. That will be necessary, at a minimum, to specifically address the Plaintiffs' constitutional claims directed to

---

[7] *See e.g.*, Rec. Doc. 309-1 (Dec. 6, 2021 Aff. of J. LeBlanc) at para. 16 (stating that "[c]ompounding pharmacies have become the standard source of supply for lethal injection drugs in states like Texas where there identifies have routinely been protected from disclosure.") Louisiana's new secrecy law is strikingly similar to Texas' confidentiality provision. *Compare* La. R.S. 15:570(G) (West 2024) (eff. 7/1/24) *with* Texas Code of Crim. Proc. Ann. art. 43.14(b) (West).(eff. 9/1/2015).

the two new execution methods authorized by Act 5—electrocution and "nitrogen hypoxia" that became effective since the case was dismissed. Moreover, if Defendants modify the current protocol and/or issue a new protocol that changes the manner in which they intend to implement executions, amendments to Plaintiffs' complaint may also be required. The need to amend Plaintiffs' complaint if Defendants alter the current protocol or issue a new protocol, however, does not in any way support Defendants' argument that this case should not be reopened. To the contrary, the case needs to be reopened so that Plaintiffs may pursue their cognizable claims related to the lethal injection protocol. But, if the facts revolving the protocol evolve, as they have in the past, Plaintiffs should be granted to leave to amended their complaint to address the evolving facts.

### C. Defendants Fail To Rebut The Extraordinary Nature of Plaintiffs' Request To Reopen This Case

Defendants do not deny that they will *not* be prejudiced if the Court grants Plaintiffs' motion and reopens the case. Rec. Doc. 327 at 11-17. Rather, Defendants spend more than six pages arguing that Plaintiffs' request is premature because the Defendants have yet to issue a new execution protocol following the effective date of Act 5, and that Plaintiffs' requests are not extraordinary.

Defendants' prematurity argument is unavailing. First, Defendants have not represented that they have revoked the 2014 Protocol, nor have they represented to this Court that they continue to have no access to execution drugs now or in the foreseeable future. Barring such evidence or even representations by the Defendants, for this Court to deny reopening would be to force Plaintiffs into last-minute litigation once execution dates are set. Defendants have a practice of revising or issuing new protocols on the eve of execution dates, which hinders timely litigation of any claims related to method of execution. The last three execution dates are illustrative. After Plaintiff Sepulvado's initial execution warrant was issued in December of 2012, the Defendants

11

issued a new protocol on January 9, 2013. Prior to his second, February 5, 2014, execution date, the Defendants issued a new protocol on January 27, 2014. *See* Rec. Doc. 108-1. The Defendants even issued a new protocol on January 7, 2010, two days before Gerald Bordelon was executed. If and when Defendants alter the protocol, or issue different protocols for different methods, and the facts evolve as they did multiple times before in this case,[8] amendments to the operative complaint can address these issues.

Defendants' argument that there are no extraordinary circumstances is disingenuous and callous. Defendants present no independent case law suggesting that constitutional challenges of the methods of execution do not present extraordinary circumstances. The issue here is access to the courts by individuals sentenced to death. "In a capital case, we must be particularly certain that the legal issues 'have been sufficiently litigated,' and the criminal defendant accorded all the protections guaranteed him by the Constitution of the United States." *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) citing *Shaw v. Martin*, 613 F.2d 487, 491 (4th Cir. 1980); *see also Williams v. State of Georgia*, 349 U.S. 375, 391 (1955) ("That life is at stake is of course another important factor in creating the extraordinary situation. The difference between capital and noncapital offenses is the basis of differentiation in law in diverse ways in which the distinction becomes relevant."). Under this Court's broad and equitable discretion to grant relief where justice requires it, this case should be reopened. *See Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 642 (5th Cir. 2005) ("The broad language of clause (6) gives the courts ample power to vacate judgments whenever such action is appropriate to accomplish justice.").

---

[8] *See* Rec. Doc. 67 (First Amended Complaint to address the 2013 protocol); Rec. Doc. 118 (Second Amended Complaint to address alternate lethal injection methods added to the execution protocol); Rec. Doc. 137 (Second Supp. Memo. in Supp. of Mot. for Sanctions) at 2-3 (discussing Defendants' belated disclosures revealing ongoing meetings and talks over a period of months regarding modifications to the execution protocol).

12

### III. CONCLUSION

For the foregoing reasons, and as a result of the amendments to La. R.S. §§ 15:569-70, Plaintiffs' claims are cognizable, and not moot. Present extraordinary circumstances warrant the reopening of the case under Rule 60(b)(6).

Plaintiffs thus respectfully request that the Court set aside the prior judgment in this case and return the case to the Court's active docket.

Dated: August 7, 2024

                                            Respectfully submitted,

                                            /s Cecelia Trenticosta Kappel
                                            Cecelia Trenticosta Kappel, La. Bar No. 32736
                                            The Promise of Justice Initiative
                                            1024 Elysian Fields Avenue
                                            New Orleans, Louisiana 70117
                                            Tel: 504-529-5955
                                            Email: ctkappel@defendla.org

                                            ***Counsel for Plaintiffs Anthony Bell, Daniel Blank, Henri Broadway, Nathaniel Code, Jessie Hoffman, Daniel Irish, Jason Reeves, Willie Tart, James Tyler, and Todd Wessinger***

### CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was filed electronically with the Clerk of Court using CM/ECF on this 7th day of August, 2024. Notice of this filing as generated by the electronic filing system constitutes service of the filed document on counsel for the Defendants.

                                            /s Cecelia Trenticosta Kappel
                                            Cecelia Trenticosta Kappel