No. 25-____

# In the United States Court of Appeals for the Fifth Circuit

IN RE GARY WESTCOTT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS; AND DARREL VANNOY, IN HIS OFFICIAL CAPACITY AS WARDEN OF THE LOUISIANA STATE PENITENTIARY,

*Petitioners,*

_____

On Petition for Writ of Mandamus from the
United States District Court for the Middle District of Louisiana
3:12-cv-00796-SDD-EWD

_____

## EMERGENCY PETITION FOR WRIT OF MANDAMUS AND ADMINISTRATIVE STAY

_____

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

MORGAN BRUNGARD
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for Petitioners*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Petitioners—as "governmental" parties—need not furnish a certificate of interested persons.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

TABLE OF CONTENTS .........................................................ii

TABLE OF AUTHORITIES.....................................................iv

STATEMENT REGARDING ORAL ARGUMENT .................................1

STATEMENT OF RELIEF SOUGHT ...........................................2

INTRODUCTION...............................................................2

ISSUES PRESENTED ...........................................................4

STATEMENT OF FACTS ........................................................5

REASONS THE WRIT SHOULD ISSUE...................................12

    I.  Petitioners Are Entitled to Mandamus Relief.......................12

        A.  The Middle District Clearly and Indisputably Erred. ..............12

            1.  The Middle District identified no "extraordinary circumstances."....................................................13

            2.  This Court's cases foreclose Rule 60(b)(6) relief based on changes in law. .........................................16

            3.  The still-moot nature of Plaintiffs' original lawsuit reinforces the Middle District's lack of Article III authority. ...............19

        B.  Petitioners Have No Other Adequate Means of Relief. ...........22

        C.  A Writ Is Appropriate Under the Circumstances....................23

    II. Petitioners Are Entitled to an Administrative Stay. ............24

CONCLUSION ............................................................................ 26

CERTIFICATE OF SERVICE ..................................................... 27

CERTIFICATE OF COMPLIANCE ............................................ 28

# TABLE OF AUTHORITIES

## Cases

*Ackermann v. United States*,
  340 U.S. 193 (1950) ............................................................................ 16

*Adams v. Thaler*,
  679 F.3d 312 (5th Cir. 2012) .............................................................. 17

*Agostini v. Felton*,
  521 U.S. 203 (1997) ............................................................................ 18

*Batts v. Tow-Motor Forklift Co.*,
  66 F.3d 743 (5th Cir. 1995) ........................................................ 16, 17

*Crutsinger v. Davis*,
  936 F.3d 265 (5th Cir. 2019) .............................................................. 14

*Freedom From Religion Found., Inc. v. Abbott*,
  58 F.4th 824 (5th Cir. 2023) .............................................................. 20

*Gonzalez v. Crosby*,
  545 U.S. 524 (2005) ............................................................................ 18

*Hernandez v. Thaler*,
  630 F.3d 420 (5th Cir. 2011) .............................................................. 17

*Hess v. Cockrell*,
  281 F.3d 212 (5th Cir. 2002) .............................................................. 14

*In re A&D Interests, Inc.*,
  33 F.4th 254 (5th Cir. 2022) ........................................................ 12, 22

*In re Abbott*,
  800 F. App'x 296 (5th Cir. 2020) ....................................................... 24

*In re Hot-Hed Inc.*,
  477 F.3d 320 (5th Cir. 2007) .............................................................. 13

iv

*In re JPMorgan Chase & Co.,*
    916 F.3d 494 (5th Cir. 2019) ....................................................... 12, 23

*In re Lloyd's Register N. Am., Inc.,*
    780 F.3d 283 (5th Cir. 2015) ............................................................ 23

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) ....................................................... 22, 23

*Kirksey v. City of Jackson,*
    714 F.2d 42 (5th Cir. 1983) .............................................................. 18

*Klapprott v. United States,*
    335 U.S. 601 (1949) ......................................................................... 14

*Liljeberg v. Health Servs. Acquisition Corp.,*
    486 U.S. 847 (1988) ......................................................................... 18

*Nairne v. Landry,*
    No. 24-30115 (5th Cir.) .................................................................... 23

*Payne v. Progressive Fin. Servs., Inc.,*
    748 F.3d 605 (5th Cir. 2014) ............................................................ 19

*Priester v. JP Morgan Chase Bank, N.A.,*
    927 F.3d 912 (5th Cir. 2019) .................................................... 3, 14, 16

*Su v. Wilmington Tr., Nat'l Ass'n,*
    839 F. App'x 884 (5th Cir. 2021) ...................................................... 14

*U.S. ex rel. Garibaldi v. Orleans Parish Sch. Bd.,*
    397 F.3d 334 (5th Cir. 2005) .......................................................... 3, 13

*United States v. Denson,*
    603 F.2d 1143 (5th Cir. 1979) .......................................................... 13

*Uzuegbunam v. Preczewski,*
    141 S. Ct. 792 (2021) ....................................................................... 19

*Will v. United States,*
   389 U.S. 90 (1967) ................................................................. 12

**Statutes**

28 U.S.C. § 1292(a) ...................................................................... 22

28 U.S.C. § 1651(a) ........................................................................ 2

La. Rev. Stat. § 15:569 ................................................................... 8

**Other Authorities**

16 Wright & Miller, Federal Practice and Procedure § 3933.1 (3d ed.)
   (June 2024 Update) .............................................................. 12

Greg LaRose, *Louisiana Man with Execution Date Next Month Dies at
   Angola*, Yahoo! News (Feb. 23, 2025), tinyurl.com/5cnx4232 ............. 11

*Promise Made, Promises Kept: Justice Coming for Crime Victims*, Office
   of the Governor (Feb. 10, 2025), tinyurl.com/4zndvb2m ...................... 9

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 1 ...................................................... 19

## STATEMENT REGARDING ORAL ARGUMENT

Because the issues presented in this petition are straightforward, the State believes that the Court can resolve the petition without argument. If argument would help the Court, the State respectfully requests that the Court hold argument by telephone or Zoom as expeditiously as possible, given Plaintiff Hoffman's impending execution on March 18.

## STATEMENT OF RELIEF SOUGHT

Petitioners respectfully request mandamus relief—as soon as practicable—directing the Middle District to vacate the Ruling entered on February 21, 2025, which grants Plaintiffs' Rule 60(b)(6) motion to reopen the proceedings below. *See* Dist. Ct. ECF 337 (reproduced at App.001–9).[1] In addition, because the Middle District has scheduled a status conference for tomorrow (Monday, February 24) at 1:30pm, Petitioners respectfully request that this Court *immediately* enter an administrative stay of the February 21 Ruling pending the Court's disposition of this petition for writ of mandamus.

## INTRODUCTION

Thirteen years ago, Plaintiffs—prisoners on Louisiana's death row—filed this lawsuit challenging Louisiana's lethal-injunction protocol as a violation of the U.S. Constitution. Three years ago, the Middle District (Dick, J.) dismissed the lawsuit for lack of jurisdiction because it was undisputed that Louisiana lacked the drugs necessary to carry out its lethal-injection protocol. That mootness defect remains today.

---

[1] This Court has appellate jurisdiction to issue mandamus relief under the All Writs Act, which provides in relevant part that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

One year ago, the Louisiana Legislature changed state law to (as relevant here) add nitrogen hypoxia as a method of execution. On June 14, 2024, Plaintiffs filed a Rule 60(b)(6) motion asking the Middle District to reopen this case so Plaintiffs can turn it into a challenge against nitrogen as a method of execution. The Middle District took no action for eight months. Then, on Friday afternoon, February 21—approximately three weeks away from Plaintiff Hoffman's scheduled execution on March 18— the Middle District issued the Ruling at issue here, which grants Plaintiffs' Rule 60(b)(6) motion. On Saturday afternoon, February 22, the Middle District set a status conference for Monday afternoon, February 24.

This is an egregiously wrong use of Rule 60(b)(6)—and there is no valid basis for permitting Plaintiffs to use an old lawsuit challenging Louisiana's lethal-injection protocol as a vehicle for bringing an entirely new challenge to nitrogen. This Court has long held that Rule 60(b)(6) relief "is appropriate only in 'extraordinary circumstances.'" *Priester v. JP Morgan Chase Bank, N.A.*, 927 F.3d 912, 913 (5th Cir. 2019) (quoting *U.S. ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 397 F.3d 334, 337 (5th Cir. 2005)). But the Middle District never identified any such extraordinary circumstance. It simply pointed to the fact that Louisiana changed its

law—something States do all the time. And that says nothing of two other reasons why the Middle District clearly and indisputably erred: one, the Ruling directly contradicts this Court's well-settled precedent holding that a change in law is not a sufficient basis for Rule 60(b)(6) relief; and two, the Ruling is *ultra vires* because the Middle District continues to lack Article III jurisdiction over the claims in this lawsuit.

Plaintiffs' recourse, if any, is to file a new lawsuit challenging Louisiana's new law—but they have refused to do so for a year now. Their strategic decisions cannot countenance the Ruling's egregious misuse of Rule 60(b)(6). <u>Accordingly, the State respectfully requests that the Court *immediately* stay the Ruling, as the Middle District has scheduled a status conference for Monday, February 24, at 1:30pm. In addition, the State respectfully requests that the Court issue mandamus relief directing the Middle District to vacate the February 21 Ruling.</u>

## ISSUES PRESENTED

Whether the Middle District clearly and indisputably erred in granting Plaintiffs' Rule 60(b)(6) motion based on a new law that Plaintiffs' dismissed (and still-moot) suit did not, and could not, challenge.

## STATEMENT OF FACTS

**1.** This case began in 2012 when Plaintiff Jessie Hoffman (sentenced to death for raping and murdering a woman) sued then-Louisiana Governor Bobby Jindal and other state officials (together, the State or Petitioners).[2] *See* Dist. Ct. ECF 1. He alleged that the State's lethal-injection method of execution, and the lethal-injection protocol, violated his constitutional rights. *See id.* The next year, Plaintiff Christopher Sepulvado (sentenced to death for murdering his six-year-old stepson) intervened. *See* Dist. Ct. ECF 10.

In 2014, Plaintiffs asked for leave to file a "Second Amended Complaint" to "include[] allegations specific to the newly-discovered evidence of deviations from the written execution protocol, and the possibility that the Defendants may now be using a compounded facsimile of pentobarbital instead of pharmacygrade pentobarbital." Dist. Ct. ECF 104 at 3. The district court granted leave (Dist. Ct. ECF 117), and the Second Amended Complaint was docketed (Dist. Ct. ECF 118).

---

[2] For the sake of simplicity, and because the thirteen-year-old docket in this case is convoluted (including the dismissal of various parties), "Petitioners" here refers only to Secretary Westcott of the Louisiana Department of Public Safety and Corrections and Darrel Vannoy, Warden of the Louisiana State Penitentiary.

Other death-row inmates thereafter intervened, and their Complaints in Intervention, though not entirely identical, also challenged the lethal-injection protocol (the Protocol). *See* Dist. Ct. ECF 202, 203, 204, 211, 212, 223, 253. Of those Complaints, the one filed in 2019 (Dist. Ct. ECF No. 253, reproduced at App.033–77) is the most recent and complete statement of Plaintiffs' claims because it repeated allegations made in prior Complaints and added new or slightly modified allegations.

From the first page, the 2019 Complaint asserted that the Protocol constitutes "cruel and unusual punishment due to the insufficient training, expertise, and supervision of those involved in the administration of the lethal drug(s) as well as the arbitrary and haphazard implementation of the protocol." App.033. And the claims for relief centered on that theory:

- Claim I: claim that executing Plaintiffs "without giving them fair notice of the lethal injection protocol and opportunity to be heard violates procedural due process," App.068.

- Claim II: claim that executing Plaintiffs "pursuant to the current Protocol would violate their rights," App.069.

- Claim III: claim that executing Plaintiffs "after substituting drugs used in any purported protocol without promulgating a new protocol" would violate their rights, App.070.

6

- Claim IV: claim that "[t]he Protocol denies the condemned inmate access to counsel and the courts," App.070.

- Claim V: claim that "[t]he Protocol denies the public access to the execution," App.071.

- Claim VI: claim seeking declarations that, among other things, "it violates the Eighth and Fourteenth Amendments" to "carry out an execution using expired drugs, illegally-obtained drugs, drugs that were not properly stored in advance of the execution, or drugs obtained from a compounding pharmacy in violation of state and federal law"; to "us[e] the midazolam and hydromorphone protocol"; and to "us[e] fentanyl or any other drugs seized by law enforcement," App.071–72.

To that end, the 2019 Complaint also requested relief directly aimed at the lethal-injection Protocol. For example, it demanded a permanent injunction enjoining the State "from carrying out an execution with expired drugs," or "with compounded drugs." App.074. It also broadly demanded that the Middle District enjoin the State "from carrying out an execution pursuant to the current Protocol." App.075.

**2.** In 2022, the Middle District dismissed Plaintiffs' claims as moot. *See* Dist. Ct. ECF 312 (reproduced at App.010–32). The Middle District recognized that the State was unable to obtain the drugs necessary to carry out any executions. The State's "virtual inability to obtain lethal injection drugs," the Middle District continued, rendered Plaintiffs unable to

7

"demonstrate a reasonable expectation that Defendants will resume executing prisoners without significant and substantial changes to the execution protocol or the law." App.030. With "no live controversy, the Court lack[ed] subject matter jurisdiction" and dismissed Plaintiffs' claims without prejudice. App.032.

Plaintiffs moved for reconsideration, which the Middle District denied. *See* Dist. Ct. ECF 317 (reproduced at App.078–81). If the Legislature "in the future" were to select "an alternative means of execution in Louisiana," the Middle District explained, Plaintiffs would have "an entirely different execution protocol over which to litigate." App.081.

**3.** Two years later, in March 2024, the Legislature did just that. The Legislature passed a new underlying method-of-execution statute, which in turn required promulgation of a new protocol. The new method-of-execution statute provides that "every sentence of death shall be by one of [three methods of execution]": (1) lethal injection, (2) "[n]itrogen hypoxia," and (3) "[e]lectrocution." La. Rev. Stat. § 15:569 (effective July 1, 2024).

In response (and for almost a year now), Plaintiffs have refused to file a new lawsuit challenging the new statute. Instead, on June 14, 2024, they filed a Motion for Relief from Judgment Pursuant to Federal Rule of Civil

8

Procedure 60(b)(6). *See* Dist. Ct. ECF 318. They asked the Middle District to vacate the judgment of dismissal and reopen the case so they can challenge the new methods of execution and protocols. *Id.* The State opposed. *See* Dist Ct. ECF 327. The State argued that (a) the only claims before the Middle District challenged the lethal-injection Protocol and sought to enjoin it on that basis, (b) those claims are still moot because the State still cannot obtain the required drugs, and thus (c) the Middle District lacked jurisdiction to reopen moot claims. *Id.* The Rule 60(b)(6) motion was fully briefed by August 9, 2024. *See* Dist. Ct. ECF No. 330. The Middle District did not act on that motion between June 2024 and February 2025.

**4.** On February 10, 2025, Louisiana Governor Jeff Landry announced that the State had finalized a nitrogen protocol "that allows for the sentences of those on Death Row to be carried out." *See Promise Made, Promises Kept: Justice Coming for Crime Victims*, Office of the Governor (Feb. 10, 2025), tinyurl.com/4zndvb2m. The Governor included a brief summary of the protocol, which explains that "[e]xecution by nitrogen hypoxia is accomplished by placing a mask on the inmate's face and replacing oxygen with nitrogen gas." *Id.*

Following the Governor's announcement, Plaintiffs again refused to file a new lawsuit. Instead, they doubled down on their Rule 60(b)(6) motion, asking for leave to file an emergency supplemental memorandum in support of that motion. *See* Dist. Ct. ECF 331. The Middle District granted their request (Dist. Ct. ECF 333), and their emergency supplemental memorandum was docketed on February 11, 2025 (Dist. Ct. ECF 335). Still, the Middle District did not act. On February 14, Plaintiffs filed another motion, this time for an expedited hearing on their eight-month-old Rule 60(b)(6) motion. *See* Dist. Ct. ECF 336 at 1. Their reason: "the State ha[d] obtained death warrants" for two Plaintiffs, "Christopher Sepulvado and Jessie Hoffman with execution dates scheduled early next month on March 17 and March 18, respectively." *Id.* Still, the Middle District did not act.

At 2pm on Friday, February 21, the Middle District issued a nine-page Ruling, granting "expedited consideration" of the Rule 60(b)(6) motion and granting the Rule 60(b)(6) motion itself. Dist. Ct. ECF 337 (reproduced at App.001–9). Although Plaintiffs' long-dismissed lawsuit challenged only Louisiana's lethal-injection Protocol—a challenge that remains moot today—the Middle District stated: "In light of Louisiana's state law now providing new methods of execution, a new protocol addressing death by

10

nitrogen hypoxia, and the state court's definitive actions of issuing death warrants, the Court finds that Plaintiffs have established extraordinary circumstances"—a necessary prerequisite to granting Rule 60(b)(6) relief. App.006. The Middle District also reframed this lawsuit to be about "Louisiana's execution protocol" generally, rather than its lethal-injection Protocol. App.007–8. But the Middle District admitted that Plaintiffs would have to "amend[] this lawsuit to challenge the current protocol." App.007. On that reasoning, the Middle District "VACATED" the "March 31, 2022 Judgment, which dismissed this matter without prejudice." App.009.

On Plaintiffs' motion, the Middle District entered an order on Saturday afternoon setting a scheduling conference for tomorrow, February 24, at 1:30pm. Dist. Ct. ECF 340. Also over the weekend, Plaintiff Sepulvado died from health complications, leaving only Plaintiff Hoffman with a currently scheduled execution (March 18). *See* Greg LaRose, *Louisiana Man with Execution Date Next Month Dies at Angola*, Yahoo! News (Feb. 23, 2025), tinyurl.com/5cnx4232.

## REASONS THE WRIT SHOULD ISSUE

As explained below, Petitioners are plainly entitled to mandamus relief. For that reason, Petitioners also request an immediate administrative stay of the Ruling pending the Court's disposition of this petition.

## I.    PETITIONERS ARE ENTITLED TO MANDAMUS RELIEF.

Petitioners are entitled to mandamus relief because (A) their right to the writ is clear and indisputable, (B) they have no other adequate means to obtain relief, and (C) the writ is appropriate under the circumstances. *In re A&D Interests, Inc.*, 33 F.4th 254, 256 (5th Cir. 2022).

### A.    The Middle District Clearly and Indisputably Erred.

Mandamus relief is warranted where "the district court clearly and indisputably erred such that 'there has been a usurpation of the judicial power.'" *Id.* at 257 (quoting *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019)). That includes a district court's failure to stay within "a lawful exercise of its prescribed jurisdiction," as well as a district court's "disregard of the Rules of Civil Procedure." *Will v. United States*, 389 U.S. 90, 95–96 (1967) (citation omitted); *accord* 16 Wright & Miller, Federal Practice and Procedure § 3933.1 (3d ed.) (June 2024 Update) ("The clearest traditional office of mandamus and prohibition has been to

control jurisdictional excesses, whether the lower court has acted without power or has refused to act when it had no power to refuse."). Indeed, when a party seeks a writ of mandamus "to confine a trial court to a lawful exercise of its prescribed authority, the court should issue the writ almost as a matter of course." *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (internal quotation marks omitted); *accord United States v. Denson*, 603 F.2d 1143, 1145 (5th Cir. 1979) (en banc).

The Middle District's Ruling requires mandamus relief for at least three independent reasons: (1) the Middle District did not identify any "extraordinary circumstances" warranting Rule 60(b)(6) relief; (2) this Court's longstanding precedent forecloses using Rule 60(b)(6) to reopen cases based on changes in law; and (3) the still-moot nature of Plaintiffs' original lawsuit reinforces the Middle District's lack of Article III jurisdiction to enter its Ruling.

### 1.    The Middle District identified no "extraordinary circumstances."

"Rule 60(b)(6) authorizes a federal district court to relieve a party from a final judgment for 'any ... reason justifying relief' other than a ground covered by clauses (b)(1) through (b)(5) of the rule." *U.S. ex rel. Garibaldi*, 397 F.3d at 337 (citing *Hess v. Cockrell*, 281 F.3d 212, 215–16

(5th Cir. 2002)). This Court has long interpreted this language to mean that "Rule 60(b)(6) motions 'will be granted only if extraordinary circumstances are present.'" *Hess*, 281 F.3d at 216; *see Priester*, 927 F.3d at 913 (Rule 60(b)(6) relief "is appropriate only in 'extraordinary circumstances.'"). Because "[t]his is a strict standard," *Crutsinger v. Davis*, 936 F.3d 265, 270 (5th Cir. 2019), it is difficult to find decisions from this Court permitting Rule 60(b)(6) relief. *See Su v. Wilmington Tr., Nat'l Ass'n*, 839 F. App'x 884 (5th Cir. 2021) (distinguishing *Klapprott v. United States*, 335 U.S. 601 (1949), where "the Supreme Court concluded that 'a citizen was stripped of his citizenship by his Government ... with no reasonable opportunity for him effectively to defend his right to citizenship,' justifying relief under Rule 60(b)(6)").

The Middle District's Ruling here, however, did not come close to identifying extraordinary circumstances similar to the facts in *Klapprott*. In fact, only one sentence in the Ruling even gestures at this prerequisite for Rule 60(b)(6) relief: "In light of Louisiana's state law now providing new methods of execution, a new protocol addressing death by nitrogen hypoxia, and the state court's definitive actions of issuing death war-

rants, the Court finds that Plaintiffs have established extraordinary circumstances." App.006. With all respect, nothing about those things is "extraordinary" in any sense of that term. State legislatures pass new state laws and update their policies and procedures *all the time*. Similarly, state courts enforce state laws by issuing death warrants *all the time*. There is nothing extraordinary or unique about the fact that these things have happened in Louisiana.

Perhaps recognizing as much, the Middle District added a sentence vaguely noting "[t]he significant demands of justice, i.e. access to the courts and the protection of constitutional rights in relation to human life." *Id.* With all respect, denying Plaintiffs' Rule 60(b)(6) motion would not somehow deny them "access to the courts" or abridge "the protection of constitutional rights in relation to human life." To reiterate, for nearly a year (and to this day), Plaintiffs have opted not to file a new lawsuit challenging Louisiana's new law. But for that strategic decision, Plaintiffs could be almost a year into litigation on their challenge; in fact, perhaps the challenge could have been resolved by now.

On that score, moreover, Supreme Court precedent forecloses any suggestion that Rule 60(b)(6) can be used to accommodate Plaintiffs' strategic litigation decisions. *See Ackermann v. United States*, 340 U.S. 193, 198 (1950) ("There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from."); *see also* App.006 & n.38 (agreeing that Rule 60(b)(6) "cannot operate to relieve a party from the 'free, calculated, and deliberate choices he has made'").

In short, by failing to identify any extraordinary circumstance permitting Rule 60(b)(6) relief, the Middle District clearly and indisputably erred in granting Plaintiffs' motion.

### 2. This Court's cases foreclose Rule 60(b)(6) relief based on changes in law.

The Middle District's error is compounded by the fact that this Court's precedents have long foreclosed attempts to use Rule 60(b)(6) to reopen cases based on changes in law. "The 'general rule' is that a change in decisional law 'will not normally constitute an extraordinary circumstance, and cannot alone be grounds for relief from a final judgment pursuant to Rule 60(b).'" *Priester*, 927 F.3d at 913 (quoting *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 748, 750 (5th Cir. 1995)). Indeed, the

Court has emphatically rejected the idea that "a 'change in law' automatically allow[s] cases to be reopened." *Id.* For, "[i]f that were the law, then anytime the Supreme Court resolved a circuit split[,] courts that had taken the rejected position would have to restart long-resolved cases." *Id.*

The Court has applied this general rule, moreover, even where the Rule 60(b)(6) movant identified clear reasons why the change in law arguably would have led to a different outcome in his original suit. *See, e.g.*, *Hernandez v. Thaler*, 630 F.3d 420 (5th Cir. 2011) (the Supreme Court's later change in law regarding the calculation of AEDPA's limitations period—which would have rendered petitioner's habeas petition timely— was not an extraordinary circumstance); *Adams v. Thaler*, 679 F.3d 312, 320 (5th Cir. 2012) (the Supreme Court's later change in law adding an equitable exception to excuse a habeas petitioner's procedural default— where the *Adams* petitioner's original case was denied on procedural-default grounds—was not an extraordinary circumstance).

This is an *a fortiori* case. There is no Supreme Court, or even Fifth Circuit or Louisiana Supreme Court, precedent that has changed Louisiana law regarding execution by lethal injection—and even if there were, this Court's precedents would squarely foreclose using Rule 60(b)(6) to

17

reopen this lawsuit based on that change in law. And that is what makes the Middle District's use of Rule 60(b)(6) even more egregiously wrong: The Ruling reopens this lawsuit based on a *legislative* change in law, and a new method of execution, that Plaintiffs' lawsuit does not (and could not) challenge. The Middle District conceded this point in stating that Plaintiffs would have to "amend[] this lawsuit to challenge the current protocol." App.007. Because this Court's precedents squarely bar reopening this lawsuit under Rule 60(b)(6) based on changes in law that would otherwise govern the original lawsuit, *a fortiori* they emphatically bar reopening this lawsuit to challenge a new law altogether.[3] Like in *Kirksey*, "the issues can be more clearly and directly presented in a new action, one that does not carry either the freight of old issues or the

---

[3] Notably, Rule 60(b)(6)'s next-door neighbor—Rule 60(b)(5)— allows relief from a judgment when "applying it prospectively is no longer equitable" due to "subsequent changes in either *statutory* or decisional law." *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (emphasis added). That (b)(5) contemplates the exact issue here (change in statutory law after dismissal) and denies relief for dismissals like this one that "do[] not stand in the way of a new action," *Kirksey v. City of Jackson*, 714 F.2d 42, 44 (5th Cir. 1983), reinforces Plaintiffs' inability to invoke (b)(6). *See Gonzalez v. Crosby*, 545 U.S. 524, 528–29 (2005) ("Rule 60(b)(6) ... permits reopening when the movant shows 'any ... reason justifying relief from the operation of the judgment' other than the more specific circumstances set out in Rules 60(b)(1)–(5)." (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 873 (1988))).

weight of [twelve] years of no longer relevant briefs and papers." 714 F.2d at 44.

### 3. The still-moot nature of Plaintiffs' original lawsuit reinforces the Middle District's lack of Article III authority.

One final fact reinforces the clear and indisputable error in the Ruling: It is an affront to Article III itself. "Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases and controversies." *Payne v. Progressive Fin. Servs., Inc.*, 748 F.3d 605, 607 (5th Cir. 2014) (citing U.S. Const. art. III, § 2, cl. 1). To that end, "parties seeking to invoke federal-court jurisdiction demonstrate that they have a legally cognizable interest or personal stake in the outcome of the case." *Id.* "The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021).

The mootness problem that forced the Middle District to dismiss this lawsuit in 2022 remains present today. As recounted above, Plaintiffs' various iterations of their allegations in this lawsuit focus exclusively on Louisiana's lethal-injection protocol. But, as the Middle District

said, there is "no live controversy" because of "pharmaceutical companies'
unwillingness to sell their products to departments of corrections for use
in capital punishment." App.032. The Middle District thus rightly con-
cluded that "claims presented in the matter currently before the Court do
not present a live case and controversy and are moot." App.081. *Nothing
about this has changed.* Plaintiffs' challenge to the lethal-injection proto-
col remains just as moot today as it was in 2022.

That underscores the highly improper nature of what has happened
below: The Middle District continues to lack Article III jurisdiction in this
long-dismissed lawsuit, *and yet* has attempted to reopen it so that Plain-
tiffs may "amend[] this lawsuit" (App.007) to try to create Article III ju-
risdiction. That is a shocking abuse of Article III authority that, accord-
ing to Petitioners' research, appears to be unprecedented across the Na-
tion. In ordinary cases, "mootness" ends litigation where "a statute or
regulation is amended ... after plaintiffs bring a lawsuit challenging the
legality of that statute or regulation." *Freedom From Religion Found.,
Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023) (collecting cases). Applied
here, that would mean that this lawsuit is, if anything, *doubly* moot—

both because the original reason for mootness (Louisiana's lack of neces-
sary drugs) exists today and because Louisiana has now adopted a differ-
ent method of execution that this lawsuit does not challenge.

The Middle District appeared to recognize this problem because it
went out of its way to end the Ruling by rewriting the operative com-
plaints in this case to be more broadly about "Louisiana's execution pro-
tocol"—and thus, "there is [now] an actionable case and controversy" in
light of Louisiana's adoption of a new method of execution. App.007–8.
As recounted above, Plaintiffs' own allegations reject that high-level
characterization of their lawsuit. But more fundamentally, the Middle
District in the same breath acknowledged that Plaintiffs would have to
"amend[] this lawsuit" to actually challenge Louisiana's new method of
execution—which reinforces that this case is currently moot. App.007.
And finally, even if the Middle District's reframing of Plaintiffs' allega-
tions were correct, that would just run into the "change in law" problem
detailed above, *supra* Section I.A(2), which independently requires man-
damus relief.

Respectfully, the Middle District cannot use Rule 60(b)(6) to reopen
an unquestionably moot lawsuit so that Plaintiffs can challenge a new

method of execution altogether. That clear and indisputable error is offensive to the very nature of Article III power.

## B. Petitioners Have No Other Adequate Means of Relief.

As the preceding arguments suggest, Petitioners also have no other adequate means of relief to challenge the Middle District's Rule 60(b)(6) error. *See In re A&D Interests, Inc.*, 33 F.4th at 256. The Ruling, for example, does not issue the sort of injunctive relief that permits an interlocutory appeal under 28 U.S.C. § 1292(a). Nor would an appeal from any ultimate "final decision[]," *id.* § 1291, be adequate. For, by that time, "the harm"—*i.e.*, forcing Petitioners to participate in a procedurally improper method-of-execution challenge on the eve of a scheduled execution—"will have already been done" and "cannot be put back in the bottle." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc). Because Plaintiffs have refused to file a new lawsuit for nearly a year, and because the Middle District took no action on the Rule 60(b)(6) motion for eight months, time is now of the essence—and the only adequate means of relief from the Ruling below is an expeditious mandamus order.

## C.    A Writ Is Appropriate Under the Circumstances.

Finally, issuing mandamus relief is appropriate for at least two overarching reasons. *In re A&D Interests, Inc.*, 33 F.4th at 256. *First*, this Court has explained that issuing the writ is "especially appropriate," *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 294 (5th Cir. 2015), where the issues presented have "importance beyond the immediate case," *In re Volkswagen of Am., Inc.*, 545 F.3d at 319; *accord In re JPMorgan Chase & Co.*, 916 F.3d at 499.

That is the case here both because of the nature of this lawsuit and because of the venue in which it is filed. This lawsuit is effectively a small class action brought by prisoners on Louisiana's death row; so, how this lawsuit proceeds (if it proceeds at all) has across-the-board ramifications for Louisiana's interest in finality and justice regarding those who have been convicted of the most heinous crimes imaginable. This lawsuit also is filed in the Middle District, where most, if not all, lawsuits challenging the constitutionality of Louisiana laws are filed. Many of those laws are, by their nature, iterative, including voting cases where maps are drawn and redrawn. *See, e.g.*, *Nairne v. Landry*, No. 24-30115 (5th Cir.) (oral argument heard Jan. 7, 2025) (appeal from Middle District's (Dick, J.)

permanent injunction against Louisiana's House and Senate maps). It is thus extraordinarily important to Louisiana that the Ruling below be vacated before it becomes a playbook for resurrecting long-dead cases simply because there was a legislative change in law.

*Second*, it is important to account for the timeline leading up to the Ruling and the timeline ahead. The Middle District took no action on Plaintiffs' Rule 60(b)(6) motion for eight months after they filed it. Then, three weeks before Plaintiff Hoffman is scheduled to be executed, the Middle District issued its Ruling. Petitioners cannot know the future, but if this artificially compressed timeline prompts an attempt to stay Hoffman's execution date, Petitioners will be back in this Court on another mandamus petition. To avoid any potential delay, therefore, it is extremely important that this Court immediately vacate the Ruling, so that, if Plaintiffs wish to challenge Louisiana's new law, they can file the new lawsuit that they have so far refused to file.

## II. PETITIONERS ARE ENTITLED TO AN ADMINISTRATIVE STAY.

For all of these same reasons, Petitioners respectfully request that this Court immediately enter an administrative stay of the Ruling. *See,*

*e.g.*, *In re Abbott*, 800 F. App'x 296, 298 (5th Cir. 2020) (per curiam) ("Entering temporary administrative stays so that a panel may consider expedited briefing in emergency cases is a routine practice in our court."). The Middle District has scheduled a status conference for tomorrow (Monday, February 24) at 1:30pm. Dist. Ct. ECF 340. And Plaintiffs have told the Middle District that they will immediately seek "expedited discovery," followed by "amended pleadings" and "briefing of a motion for preliminary injunction." Dist. Ct. ECF 339-1.

As explained above, nothing more should happen in this docket because the Middle District clearly and indisputably erred in granting Rule 60(b)(6) relief in the first place. Moreover, if any of these actions occur and Petitioners are forced to comply with the Middle District's orders— all while Plaintiffs try to run out the clock on Plaintiff Hoffman's scheduled execution on March 18—that is a bell that cannot be unrung. Accordingly, Petitioners respectfully request that the Court immediately enter an administrative stay of the Middle District's February 21 Ruling pending this Court's disposition of the petition for writ of mandamus.

# CONCLUSION

The Court should immediately enter a stay of the Middle District's February 21 Ruling. The Court should also grant this petition for writ of mandamus, directing the Middle District to vacate its February 21 Ruling.

Dated:   February 23, 2025

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

*J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA
Solicitor General

MORGAN BRUNGARD
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I certify that on February 23, 2025, I filed the foregoing brief with the Court's CM/ECF system. Pursuant to Federal Rule of Appellate Procedure 21, I also emailed courtesy copies to Plaintiffs' counsel of record and the chambers of the Honorable Shelly Dick.

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 4,945 words; and

(2) the typeface requirements of Rule 21(d)(1) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

Dated:    February 23, 2025

28

# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

February 23, 2025

Mr. Jorge Benjamin Aguinaga
Louisiana Department of Justice
1885 N. 3rd Street
Baton Rouge, LA 70802

     No. 25-30088   In re: Gary Westcott
                   USDC No. 3:12-CV-796

Dear Mr. Aguinaga,

We have docketed the petition for writ of mandamus and
administrative stay, and ask you to use the case number above in
future inquiries.

Filings in this court are governed strictly by the Federal Rules
of **Appellate** Procedure. We cannot accept motions submitted under
the Federal Rules of **Civil** Procedure. We can address only those
documents the court directs you to file, or proper motions filed
in support of the appeal. See Fed. R. App. P. and 5th Cir. R. 27
for guidance. We will not acknowledge or act upon documents not
authorized by these rules.

All counsel who desire to appear in this case must electronically
file a "Form for Appearance of Counsel" naming all parties
represented within 14 days from this date, see Fed. R. App. P.
12(b) and 5th Cir. R. 12. This form is available on our website
www.ca5.uscourts.gov. Failure to electronically file this form
will result in removing your name from our docket. Pro se parties
are not required to file appearance forms.

ATTENTION ATTORNEYS: Attorneys are required to be a member of the
Fifth Circuit Bar and to register for Electronic Case Filing. The
"Application and Oath for Admission" form can be printed or
downloaded from the Fifth Circuit's website, www.ca5.uscourts.gov.
Information on Electronic Case Filing is available at
www.ca5.uscourts.gov/cmecf/.

ATTENTION ATTORNEYS: Direct access to the electronic record on
appeal (EROA) for pending appeals will be enabled by the U S
District Court on a per case basis. Counsel can expect to receive
notice once access to the EROA is available. Counsel must be
approved for electronic filing and must be listed in the case as
attorney of record before access will be authorized. Instructions

for accessing and downloading the EROA can be found on our website at http://www.ca5.uscourts.gov/docs/default-source/forms/instructions-for-electronic-record-download-feature-of-cm. Additionally, a link to the instructions will be included in the notice you receive from the district court.

Sealed documents, except for the presentence investigation report in criminal appeals, will not be included in the EROA. Access to sealed documents will continue to be provided by the district court only upon the filing and granting of a motion to view same in this court.

We recommend that you visit the Fifth Circuit's website, www.ca5.uscourts.gov and review material that will assist you during the appeal process. We especially call to your attention the Practitioner's Guide and the 5th Circuit Appeal Flow Chart, located in the Forms, Fees, and Guides tab.

ATTENTION: If you are filing Pro Se (without a lawyer) you can request to receive correspondence from the court and other parties by email and can also request to file pleadings through the court's electronic filing systems. Details explaining how you can request this are available on the Fifth Circuit website at http://www.ca5.uscourts.gov/docs/default-source/default-document-library/pro-se-filer-instructions. This is not available for any pro se serving in confinement.

**Special guidance regarding filing certain documents:**

General Order No. 2021-1, dated January 15, 2021, requires parties to file in paper highly sensitive documents (HSD) that would ordinarily be filed under seal in CM/ECF. This includes documents likely to be of interest to the intelligence service of a foreign government and whose use or disclosure by a hostile foreign government would likely cause significant harm to the United States or its interests. Before uploading any matter as a sealed filing, ensure it has not been designated as HSD by a district court and does not qualify as HSD under General Order No. 2021-1.

A party seeking to designate a document as highly sensitive in the first instance or to change its designation as HSD must do so by motion. Parties are required to contact the Clerk's office for guidance before filing such motions.

**Sealing Documents on Appeal:** Our court has a strong presumption of public access to our court's records, and the court scrutinizes any request by a party to seal pleadings, record excerpts, or other documents on our court docket. Counsel moving to seal matters must explain in particularity the necessity for sealing in our court. Counsel do not satisfy this burden by simply stating that the originating court sealed the matter, as the circumstances that justified sealing in the originating court may have changed or may not apply in an appellate proceeding. It is the obligation of counsel to justify a request to file under seal, just as it is their obligation to notify the court whenever sealing is no longer necessary. An unopposed motion to seal does not obviate a counsel's obligation to justify the motion to seal.

Case 2:25-cv-00088-SDD    Document: 42    Page: 31    Date Filed: 02/23/2025    of 39

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Mary Frances Yeager, Deputy Clerk
504-310-7686

cc:  Ms. Nishi L Kumar
     Mr. Michael L. McConnell
     Mr. Michael David Rubenstein

Case 2:25-cv-00088-SDD   Document: 42   Page: 41   Date Filed: 02/23/2025 of 39

Provided below is the court's official caption. Please review the parties listed and advise the court immediately of any discrepancies. If you are required to file an appearance form, a complete list of the parties should be listed on the form exactly as they are listed on the caption.

————————

Case No. 25-30088

————————

In re  Gary Westcott, Secretary, Louisiana Department of Public Safety and Corrections; Darrel Vannoy, Warden, Louisiana State Penitentiary, In His Official Capacity,

Petitioners