FILED
1992 APR 21 AM 12 24

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID FIERRO, et al.,               )
                                    )
          Plaintiffs,               )    No. C-92-1482 MHP
                                    )
     -vs.-                          )    MEMORANDUM AND ORDER
                                    )
                                    )
JAMES GOMEZ, et al.,                )
                                    )
          Defendants.               )
_____)

At 11:23 a.m. on April 18, 1992 this court received a writ of mandamus from the Ninth Circuit ordering it to vacate the temporary restraining order which it had issued on April 17, 1992. A written opinion which stated the reasons for the Ninth Circuit's decision was issued at 3:00 p.m. April 18, 1992. That decision held that <u>Younger v. Harris</u>, 401 U.S. 37 (1971), precluded this court from issuing a temporary restraining order in this case. However, as it is unclear to this court how the Ninth Circuit interpreted the use and implications of <u>Younger</u> abstention in this case, this court can only follow the exact wording of the mandate issued by the Ninth Circuit and the exact wording of the relief granted to defendants in this case. The Ninth Circuit mandate stated that the "The April 18, 1992, order from the district court restraining and enjoining James Gomez and Daniel Vasquez from inflicting the punishment of death by the

1

administration of lethal gas upon Robert Alton Harris, David Fierro, Albert Gilbert Ruiz, and any members of the purported class is VACATED."

In comportment with the Ninth Circuit's writ of mandamus, this court vacated the temporary restraining order. The decision of the Ninth Circuit did not order this court to dismiss plaintiffs' action. In the absence of such an order, this court assumes that it maintains jurisdiction over the case. In addition, this court has inherent power to regulate the litigation before it and to impose sanctions against a party who intentionally destroys evidence while under a duty to preserve it, Computer Assoc. Int'l, Inc. v. American Fundware, Inc., 133 FRD 166, 170 (D. Co. 1990); see also Graham v. Teldyne-Continental Motors, 805 F.2d 1386, 1390 n.9 (9th Cir. 1986). Therefore, good cause appearing, the Court makes the following findings:

1. Defendants have contested the reliability of eyewitness reports and recollections concerning the pain and suffering experienced by prisoners executed by lethal gas. Indeed, they have argued that eyewitness accounts of gas chamber executions are not competent evidence to the fact that death by lethal gas is slow, painful, and torturous. Defendants' counsel argued:

> [A]s far as the descriptions [of executions] we have here, all we have are what people have been able to observe, what they then attempt to intuit from that. That doesn't tell us anything really about what actually happened . . . . We don't know what they were observing.

They may well be observing nothing more than their own distaste at watching this event happen.

2. Plaintiffs' medical experts have expressed skepticism about the time estimates of loss of consciousness made by San Quentin correctional staff members between 1951 and 1967 as reported in the prison's Lethal Gas Chamber Execution Records. This skepticism is rooted in reasonable medical and scientific evidence.

3. Evidence critical to petitioners' claim that execution by lethal gas is torturous, painful and cruel in violation of the Eighth Amendment will be irretrievably lost unless the impending execution is video tape recorded. Videotaping the execution of Robert Harris is necessary to preserve material evidence not otherwise available from any other source.

4. Robert Harris has agreed and consented to the videotaping of his execution by Russell Stetler for use as evidence in the present lawsuit.

In addition, the court places the following conditions on the videotaping:

1. Mr. Stetler is authorized to videotape Robert Harris only. Mr. Stetler may not videotape anyone who is watching the execution or anyone involved in carrying out the execution.

2. Mr. Stetler is to film the entire execution from the time Mr. Harris is placed in the gas chamber to the time his body is removed from the chamber.

3

3. Within twenty-four hours after the execution, the videotape is to be deposited with the court under seal. The tape shall not be provided to anyone, including the parties in this action, except under order of the court.

4. <u>No copies</u> shall be made of the tape except by order of the court.

5. San Quentin officials are authorized to exercise appropriate security measures, but may not do anything to interfere with the execution of this order. Any interference with the videotaping of the Harris execution will be deemed to be a violation of the order punishable by contempt proceedings.

If defendants agree to stipulate that eyewitness accounts of gas chamber executions are probative as to the issue of whether that method of execution is cruel and unusual punishment the court will consider withdrawing this order.

IT IS SO ORDERED.

Dated: _____    _____
MARILYN HALL PATEL
United States District Judge