IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JESSIE HOFFMAN** | * | **CIVIL ACTION NO. 12-796** |
| **VERSUS** | * | **CHIEF JUDGE SHELLY D. DICK** |
| **BOBBY JINDAL, ET AL.** | * | **MAGISTRATE JUDGE ERIN WILDER-DOOMES** |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO VIDEOTAPE AND/OR LIVESTREAM EXECUTION**

The Court should deny Plaintiffs' motion to permit "undersigned counsel or their designee to videotape Plaintiff Jessie Hoffman's execution." ECF No. 348. As Plaintiffs acknowledge (at 4), Louisiana law prohibits public executions. *See* La R.S. § 15:569(A) ("Every execution shall be made in a room entirely cut off from view of all except those permitted by law to be in the room."). For good reason—the State "has an interest in preserving the dignity of the procedure." *Baze v. Rees*, 553 U.S. 35, 57 (2008) (plurality op.). And Louisiana law already strikes a balance between those procedural protection and public access by allowing at least five witnesses and two members of the media to view the execution. La R.S. § 15:570(A) ("Every execution of the death sentence shall take place in the presence of," among others, "[n]ot less than five nor more than seven other witnesses."). Plaintiffs' last-minute motion provides no sound reason to depart from that balance—much less a legally cognizable one.

**I.    Plaintiffs have no constitutional right to witness an execution publicly.**

Notwithstanding state law's clear mandate, Plaintiffs gesture (at 4) to the First, Eighth, and Fourteenth Amendments to the United States Constitution, as well as La. Const. Art. III § 15. Nothing about any of those Amendents creates a constitutional right to view an execution publicly in contravention of state law. *See Garrett v. Estelle*, 556 F.2d 1274, 1276 (5th Cir. 1977) ("the protection which the first amendment provides to the news gathering process does not extend to

1

matters not accessible to the public generally, such as filming of executions in Texas state prison"); *Rice v. Kempker*, 374 F.3d 675, 679 (8th Cir. 2004) ("Courts presented with the specific question of whether video cameras may be banned from the execution chamber have consistently held that such bans do not violate the First Amendment."); *Lawson v. Dixon*, 336 N.C. 312, 312 (1994) ("plaintiffs…do not have a right under either the First or Fourteenth Amendments to the United States Constitution or under Article 1, Section 14 of the North Carolina Constitution to audiotape or videotape plaintiff Lawson's scheduled execution"); *Halquist v. Dep't of Corr.*, 113 Wash. 2d 818, 822 (1989) (ban on videotaping of executions was proper); *see also Pell v. Procunier*, 417 U.S. 817, 833 (1974) ("It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." (citation omitted)). Perhaps recognizing that glaring legal deficiency, Plaintiffs cite *Kennedy v. Louisiana* for a general explanation of what constitutes excessive capital punishment. 554 U.S. 407, 411 (2008). But that hardly demonstrates a freewheeling right to have cameras in the execution chamber.

**II.    Plaintiffs have no claims pending concerning nitrogen hypoxia.**

This case is not reopened and, even when it was open, the claims did not concern execution by nitrogen hypoxia. So it is entirely unclear the procedural basis for Plaintiffs' Motion to Videotape and/or Livestream the execution of Jessie Hoffman scheduled for today. *See* ECF No. 384. There are no claims pending in this proceeding related to the State's nitrogen hypoxia protocol. The last complaint filed in this case was in 2019, well-before the adoption of nitrogen hypoxia as a method of execution under Louisiana law, and indeed, that complaint only raises claims related to Louisiana's lethal injection protocol. *See* ECF No. 253. As both the Court and Plaintiffs contemplated, should this matter be reopened, Plaintiffs would need to amend their complaint to allege claims related to nitrogen hypoxia. Plaintiffs have not done so. <u>Thus, there are</u>

no claims pending before this Court related to nitrogen hypoxia. As a result, Plaintiffs' last minute request to videotape and/or livestream Mr. Hoffman's execution by nitrogen hypoxia is not relevant to any of the claims pending in this newly reopened lawsuit and should be denied.

### III. Plaintiffs' request is an attempt to circumvent binding Fifth Circuit precedent *arising from this very case.*

Plaintiffs argue that their counsel or counsel's designee should be permitted to videotape Mr. Hoffman's execution. This request is a thinly-veiled attempt to permit Mr. Hoffman to have counsel present during his execution, a claim he raised in *Hoffman v. Westcott*. In that case, this Court found that Mr. Hoffman was not likely to prevail on the merits of this claim, because "the Fifth Circuit holds that a claim of the right to counsel 'during the events leading up to and during the execution' under the First, Sixth, and Eighth Amendment is 'without merit.'" *Hoffman v. Westcott* at ECF No. 89, p. 26. This request to videotape Mr. Hoffman's execution is merely an attempted end-run around Fifth Circuit precedent.[1]

### IV. Even if Plaintiffs' case were open and any legal claim cognizable, their motion fails on its merits.

"Nitrogen hypoxia has been used successfully four times by the State of Alabama." *Hoffman v. Westcott*, No. 25-70006 (5th Cir. Mar. 14, 2025), ECF 54 at 2. However, Plaintiffs continue to rely on media accounts as support for their arguments that Alabama executions have been cruel and unusual. ECF 348-1 at pg. 2. Videotaping is an unnecessary practice that has only been permitted by district courts in two other states (as pointed out by Plaintiffs), and never has this particular issue been addressed by this Court or by the Fifth Circuit.

As support for their request to videotape/livestream the execution, Plaintiffs first cite to *In re Thomas*, 155 F.R.D. 124 (D. Md. 1994), a thirty year-old case out of the United States District

---

[1] Moreover, Plaintiffs wholly fail to identify any right or explain the basis upon which they should have the right to have counsel present at an execution other than their own.

Court for the District of Maryland. There, the district court granted a prospective habeas petitioner's petition to videotape the execution of another inmate. *Id*. at 126. The State of Maryland argued that videotaping would infringe upon the confidentiality surrounding the execution. *Id*. at 126-127. Unlike Maryland's state law, which permitted "limited public access" to executions in 1992, Louisiana does not provide for public executions. *See* La. R.S. 15:569. Furthermore, Louisiana law explicitly provides for the "absolute confidentiality of the identifying information of any person, business, organization, or other entity directly or indirectly involved in the execution of a death sentence within this state." La. R.S. 15:570.

Whereas the court in *In re Thomas* determined that "[a]uthentic privacy interests asserted in the execution process would not be disturbed by the proposed discovery," *In re Thomas*, 155 F.R.D. at 127, authentic privacy interests that are protected by Louisiana law *would* be disturbed should Hoffman's execution be videotaped or livestreamed. It is also notable that in that case, Mr. Thomas did not seek permission to televise the execution, or to make a "public spectacle" of it, which is exactly what Plaintiffs wish to accomplish through their pending motion. *Id*.

The second case Plaintiffs rely upon for support is *Fierro v. Gomez*, No. C-92-1482-MHP (N.D. Cal. Apr. 21, 1992), another thirty-year-old case from a non-binding court - the United States District Court for the Northern District of California. In that case, the reliability of eyewitness reports and recollections concerning the pain and suffering of prisoners executed in gas chambers was also in question. *Id*. at 2. It is significant, however, that these gas chambers differ substantially from the nitrogen hypoxia system in place at Louisiana State Penitentiary. Whereas the California inmate would have been locked in a chamber that would slowly fill with lethal gas, Louisiana's system—which mirrors the constitutionally sound system in place in Alabama—delivers Nitrogen rapidly through a full-face respirator mask in view of "not less than five nor more than seven other

4

witnesses," among others required to be present by statute La. R.S. 15:1570(A). Another significant difference is the absence of Mr. Hoffman's consent to such videotaping. In *Fierro v. Gomez*, the individual to be executed "agreed and consented" to the videotaping of his execution. *Id*. at 3. Defendants are not aware of any statement from Mr. Hoffman agreeing to the Plaintiffs' proposal.

Both the Fifth Circuit and the Eleventh Circuit have found that Plaintiffs, Jessie Hoffman and Kenneth Smith respectively, have failed to show a substantial likelihood of success on the merits. At this point, "[n]itrogen hypoxia has been used successfully four times by the State of Alabama." *Hoffman v. Westcott*, No. 25-70006 (5th Cir. Mar. 14, 2025), ECF 54 at 2. There is no need to videotape an execution where a proven method will be utilized.

Indeed, livestreaming Hoffman's execution would be even more intrusive than videotaping it. As discussed above, Plaintiffs cite *In re Thomas,* 155 F.R.D.124 (D. Md. 1994) to support their position that the execution of Hoffman should be videotaped. However, Plaintiffs fail to note that the court in *Thomas* specifically noted that "Mr. Thomas does not seek permission to televise Mr. Thanos's execution, or in any way make a public spectacle of it." *Id*. at 127. Plaintiffs seek to livestream the execution, which is akin to televising.

Furthermore, by livestreaming Hoffman's execution, Plaintiffs are asking the State to make a public spectacle of the execution. Louisiana moved away from public executions around 1901, over one hundred years ago, and now Plaintiffs propose that this Court bring them back. Livestreaming Hoffman's execution would amount to conducting a public execution. Although, executions were moved out of the public forum and into prisons, Louisiana has implemented procedures that ensure executions remain open to public scrutiny. La. R.S. 15:569 (applies to who can attend an execution). By requiring the State to livestream Hoffman's execution, this Court

5

would frustrate Louisiana law and public policy by allowing the entire world into the execution chamber. There is no First Amendment right to video or tape executions. In *Garrett v. Estelle,* 556 F.2d 1274 (5th Cir.1977), *cert. denied,* 438 U.S. 914, 98 S.Ct. 3142, 57 L.Ed.2d 1159 (1978)*,* the Fifth Circuit held that the First Amendment does not require Texas to allow televised executions. Plaintiffs cannot force the State livestream Hoffman's execution under the guise of protecting first amendment rights.

Livestreaming the execution is akin to televising it, which was not even permitted in *In re Thomas*. By requesting that the execution of Jessie Hoffman be livestreamed, Plaintiffs are essentially advocating for a public right to access executions. Plaintiffs do not have standing to raise a potential First Amendment violation relating to the public's access to view executions.[2] While other courts have recognized a public right of access to executions,[3] neither the Supreme Court nor the Fifth Circuit has adopted this position. Furthermore, in *Holden v. Minnesota*, the Supreme Court determined that excluding the public and the press from executions does not affect an inmate's substantial rights.[4] *Holden* has not been disturbed, and it is clear that Plaintiffs have no substantial right in whether the public may view an execution.

One final note: to the extent Plaintiffs request that the execution procedure be recorded in its entirety, and perhaps livestreamed to an untold number of viewers, Plaintiffs' request violates State law. La R.S. § 15:570(F) requires anonymity for all those involved in the execution procedure, other than the warden, the coroner, the inmate's priest/minister, and the neutral witnesses. In other words, the identities of the prison staff and those who assist in the execution

---

[2] "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 955 (1984).
[3] *See Calif. First Am. Coalition v. Woodford*, 299 F.3d 868, 877 (9th Cir. 2002) (holding that the public has a right of access to executions under *Richmond Newspapers v. Virginia*, 448 U.S. 555, (1980), which recognized a right of access to certain criminal proceedings).
[4] 137 U.S. 483, 491 (1890).

6

must be kept confidential under State law. But that confidentiality would be turned on its head were this Court to order a broad right to record everything done in the execution chamber. There is no justification to override that State law here.

## CONCLUSION

For all of the reasons set forth herein, the Court should deny Plaintiffs' motion to have the execution of Jessie Hoffman videotaped or livestreamed.

Respectfully Submitted

/s/ Jeffrey K. Cody
Jeffrey K. Cody (La. Bar Roll No. 28536)
jeffreyc@scwllp.com
Caroline M. Tomeny (La. Bar Roll No. 34120)
caroline@scwllp.com
**SHOWS, CALI & WALSH, L.L.P.**
628 St. Louis Street (70802)
P.O. Drawer 4425
Baton Rouge, Louisiana 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-1467

Jonathan Vining (La. Bar Roll No. 30781)
*General Counsel*
Louisiana Department of Public Safety & Corrections
Legal Affairs
504 Mayflower Street (70802)
P.O. Box 94304
Baton Rouge, Louisiana 70804
Telephone: (225) 342-6728
Facsimile: (225) 342-3278
Email: jonathan.vining@la.gov

**Counsel for Defendants**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 18th day of March, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ Caroline M. Tomeny
Caroline M. Tomeny
